## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN AND JANE DOES 1-9 | ) | |
| Employees/Agents of the Federal Bureau | ) | |
| of Investigations, | ) | |
| on behalf of themselves | ) | |
| and those similarly situated, | ) | |
| | ) | Case No. |
| *Plaintiffs*, | ) | |
| | ) | ORAL ARGUMENT REQUESTED |
| v. | ) | |
| | ) | |
| DEPARTMENT OF JUSTICE | ) | |
| James McHenry | ) | |
| Acting Attorney General of the | ) | |
| United States, | ) | |
| | ) | |
| *Defendant*. | ) | |
| _____ | ) | |

## PLAINTIFFS' MOTION FOR
## <u>A TEMPORARY RESTRAINING ORDER</u>

Comes now Plaintiffs, on behalf of themselves and those similarly situated, by and through undersigned counsel, with their Motion for a Temporary Restraining Order against Defendant, and state as follows:

Plaintiffs are nine current FBI agents and other personnel who are assigned to the Washington, DC field office and who, in the past, worked on matters related to the investigation and prosecution of persons involved in the attack on the United States Capital on January 6, 2021, and other matters involving former President Donald Trump. Plaintiffs pursue claims on their own behalf and on behalf of a class of at least 6,000 current and former FBI agents and other personnel who are similarly situated.

During his campaign for reelection, Mr. Trump made various public statements promising retaliation and retribution against those persons whom he perceived as enemies, including

members of law enforcement.   On or about January 31, 2025, Defendant DOJ summarily terminated all of the attorneys who prosecuted January 6 cases.

On or about February 2, 2025, Plaintiffs were ordered to fill out an online survey in which they were to identify the work they did on January 6 cases and the Mar-a-Lago classified documents case.  Plaintiffs were informed that this information would be aggregated and provided to officials of the Trump administration.  Ostensibly, this information is going to be used to identify FBI agents to be terminated or otherwise subjected to retaliation.  Plaintiffs aver that the survey will generate a "system of records" that is searchable by name, and that they have a right to protect their anonymity and confidentiality of information about their activities as employees of the FBI. Thus, Plaintiffs bring suit herein to respectfully ask the Court to protect their rights under the Privacy Act of 1974, 5 U.S.C. §552a(b).

In this Motion, Plaintiffs respectfully ask this Court to temporarily restrain Defendant from aggregating and disseminating information to the President, Vice President, members of their staff, or any other persons not subject to the Privacy Act, that identifies Plaintiffs and the work they performed on the Jan. 6 and Mar-a-Lago cases.  Plaintiffs will suffer irreparable harm should the information at issue be leaked or published, which cannot be repaired by compensatory damages. More importantly, the damage to the national security apparatus of this nation would also be irreparably harmed.

For these reasons, and those developed in the attached Memorandum of Law, Plaintiffs' Motion for a Temporary Restraining Order is sound, and should be GRANTED.

Respectfully submitted,

/s/*Pamela M. Keith*
Pamela M. Keith [448421]

2

Scott M. Lempert [1045184]
CENTER FOR EMPLOYMENT JUSTICE
650 Massachusetts Ave. NW
Suite 600
Washington, DC 20001
(202) 800-0292
pamkeith@centerforemploymentjustice.com
Slempert@centerforemploymentjustice.com
*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JOHN AND JANE DOES 1-9 | ) | |
| Employees/Agents of the Federal Bureau | ) | |
| of Investigations, | ) | |
| on behalf of themselves | ) | |
| and those similarly situated, | ) | |
| | ) | Case No. |
| *Plaintiffs*, | ) | |
| | ) | ORAL ARGUMENT REQUESTED |
| v. | ) | |
| | ) | |
| JAMES MCHENRY, | ) | |
| Acting Attorney General of the | ) | |
| United States, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR A**
**<u>TEMPORARY RESTRAINING ORDER</u>**

Comes now Plaintiffs, John and Janes Does 1-9 (hereinafter "Plaintiffs") on behalf of themselves and all similarly situated FBI agents and employees, by and through undersigned counsel, with their Motion for a Temporary Restraining Order, and state as follows:

## <u>INTRODUCTION</u>

Plaintiffs, John and Jane Does 1-9, and the Class they seek to represent, are current and former agents and employees of the Federal Bureau of Investigations (hereinafter "Defendant" or "the FBI"), who worked on FBI investigations related to the January 6, 2021, attack on the United States Capitol building ( "the Jan. 6 cases"), and/or the mishandling of classified information and storage of classified documents at the residence of Donald Trump ("the Mar-a-Lago case"). On information and belief, the Class Plaintiffs seek to represent includes at least 6,000 current and former similarly situated FBI agents and personnel.

4

Plaintiffs come before this Court seeking immediate relief. On or about February 2, 2025, the FBI ordered Plaintiffs to fill out a survey outlining what specific work they did on Jan. 6 and Mar-a-Lago cases. Plaintiffs were informed by their management that the information provided was going to be aggregated and provided to the senior officials of the Trump administration. To place this directive in context, on or about January 31, 2025, DOJ terminated hundreds of lawyers who participated in the prosecution of the Jan. 6 cases, and/or the Mar-a-Lago case. Those attorneys were not fired for disciplinary or performance reasons, but solely because they faithfully executed their duties. Indeed, as a result of their work, more than 1,500 convictions were obtained, and dozens more were in process.

Plaintiffs now have reason to believe that they are next in line to be summarily terminated for purely political reasons, which they assert is a violation of their First and Fifth Amendment Rights, and is otherwise unlawful. Defendants acts violate Plaintiffs' rights as government employees not to be discriminated or retaliated against due to their political affiliation or the perception thereof. These acts also violate Plaintiffs' substantive and procedural due process rights.

Not only do Plaintiffs assert that they are likely to be terminated in the very near future (i.e., the week of February 2-9), but also that their identities and personal information could easily be leaked or published to make them targets for the convicted felons who were recently pardoned, or any number of other bad actors seeking revenge. Indeed, some personal information about FBI agents has already appeared on the dark web, and Plaintiffs have reason to fear for their own safety and that of their families. Pursuant to the First and Fifth Amendment, Plaintiffs move this Court for a temporary restraining order prohibiting the FBI, DOJ or any other component of the

administration from aggregating, publishing or disseminating any personal identifying information or any information about the specific activities of any FBI agents or personnel.

Plaintiffs' Motion is sound and therefore should be GRANTED, and an ORDER from the Court issued to encompass the relief requested.

## **STANDARD OF REVIEW**

In order to obtain a temporary restraining order, a party must show: (i) it will suffer irreparable injury unless the order issues; (ii) the threatened injury to it outweighs any damage to the opposing party; (iii) the temporary restraining order, if issued, will not be adverse to the public interest; and (iv) a substantial likelihood exists that it will prevail on the merits. *See Software Testing Solutions, Inc. v. United States,* 58 Fed. Cl. 533, 536 (2003); *EDP Enters., Inc. v. United States,* 56 Fed. Cl. 498, 499 (2003); *OAO Corp. v. United States,* 49 Fed. Cl. 478, 480 (2001). A temporary restraining order should not be granted unless the movant, by a clear showing, carries the burden of persuasion. *See Mazurek v. Armstrong,* 520 U.S. 968, ,972 (1997) (citing 11A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2948, at 129-30 (2d ed.1995)); *see also GEO Grp. Inc. v. United States*, No. 11-490C, at *3 (D.C. Cir. Aug. 9, 2011).

District courts enjoy broad discretion in awarding injunctive relief. *See Wagner v. Taylor*, 836 F.2d 566, 575 (D.C. Cir. 1987); *National Mining Ass'n v. U.S. Army Corps of Engineers*, 145 F.3d 1399, 1408 (D.C. Cir. 1998). The granting of injunctive relief is not immediately appealable, but the denial of injunctive relief may be immediately appealed as a final order subject to interlocutory review. *Deaver v. Seymour*, 822 F.2d 66, 68 (D.C. Cir. 1987) (citing 28 U.S.C. § 1292(a)(1) (1982)). Furthermore, injunctive relief should be granted where "plaintiffs' injury" is of such *imminence* that there is a clear and present need for equitable relief to

prevent irreparable harm." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).  *See also Sherley v. Sebelius*, 644 F.3d 388, 405 (D.C. Cir. 2011).

## RELEVANT FACTS

Plaintiffs are a group of FBI agents and staff members who, in the course of their assigned duties, worked on investigations or prosecutions of persons involved in the planning, incitement, and execution of the January 6, 2021, attack on the United States Capitol, and/or worked on the investigation of the unlawful retention, removal and storage of highly sensitive and classified documents by former President Trump.

During his campaign for president, Mr. Trump made repeated public pronouncements about seeking "retribution" for the Jan. 6 defendants, whom he referred to as "political hostages." *See e.g.*, *Trump's Novel Take on January 6: Calling Convicted Rioters 'Hostages,"* Jan. 13, 2024, https://www.theguardian.com/us-news/2024/jan/13/trump-january-6-rioters-hostages.  The press also noted that Mr. Trump has repeatedly made public pronouncements that he would seek revenge on those he perceived as his enemies:

> Trump routinely calls for adverse actions against his perceived enemies and often makes veiled threats — a dynamic present during his first term in office that accelerated as he battled for reelection.  After his inauguration, Trump will have new avenues to make good on those calls. He's also assembling a team that would be well-positioned to carry out any vows for retribution.

*See Trump's Vows for Revenge Take on New Seriousness*, Nov. 19, 2024, https://thehill.com/homenews/administration/4996981-trump-enemies-fear-retribution/.  On or about January 31, 2025, DOJ terminated dozens of prosecutors who handled Jan. 6 cases for no discernable reason other than they displeased Donald Trump.

On or about February 2, 2025, some of the Plaintiffs received the survey at EXHIBIT 1, to self-report what work they did on the Jan. 6 cases or the Mar-a-Lago case.  As can be seen in

EXHIBIT 1, the intention of the survey is to determine the degree and nature of the recipient's involvement in such investigative matters. In a conference call on February 2, 2025, some of the Plaintiffs were informed by management that they were required to fill out the survey reporting their activities on the Jan. 6 and Mar-a-Lago cases, and that such information was going to be forwarded to members of Mr. Trump's executive team. Others were told that their managers would be filling out the survey on their behalf.

There can be no legitimate business purpose for such a list, other than to identify persons for adverse action, including and up to termination. Indeed, it has been widely reported that Mr. Trump intends to purge the FBI of all persons he perceives to be "enemies." *See e.g.,* "FBI Executives Ousted and Personnel Under Internal Review as Trump DOJ Fires Jan. 6 Capitol Riot Prosecutors,"    https://www.cbsnews.com/news/fbi-agents-on-jan-6-capitol-riot-trump-investigations-to-be-fired-sources-say/. Plaintiffs have not and will not provide prior approval for the dissemination of their personal information or information that ties them to specific Jan. 6 and Mar-a-Lago case activity.

## **ARGUMENT**

Plaintiffs are entitled to injunctive relief from this Court if they can establish that: (i) they will suffer irreparable injury unless the order issues; (ii) the threatened injury to them outweighs any damage to the opposing party; (iii) the temporary restraining order, if issued, will not be adverse to the public interest; and (iv) a substantial likelihood exists that it will prevail on the merits. As held in *J.D. v. Azar*, 925 F.3d 1291, 1309 (D.C. Cir. 2019), this Court may grant the injunctive relief requested herein, without having to consider the merits of class certification if such is impracticable in the time needed to issue injunctive relief, and such is the case here.

I.    **PLAINTIFFS WILL SUFFER IRREPARABLE HARM IF THEY ARE PUBLICLY IDENTIFIED AS AGENTS WHO WORKED ON DONALD TRUMP CASES**

Plaintiffs argue that the real threat of public disclosure of their information is sufficiently real and severe to warranted injunctive relief from this Court.  Once their names are public, particularly if also associated with work against Mr. Trump, Plaintiffs and their families will be vulnerable not just to violent actions from the Jan. 6 convicted felons they helped bring to justice, but also any number of other bad actors, both foreign and domestic, who may be interested in retribution.  This is precisely why, in previous cases, DOJ has strenuously argued that FBI agents have an inherent interest in maintaining their anonymity.  *See Armstrong v. Executive Ofc. of the President*, 97 F.3d 575, 581 (D.C. Cir. 1996) (citing *Baez v. Department of Justice*, 647 F.2d 12328, 1339 (D.C. Cir. 1980) for the proposition that "FBI agents always have a privacy interest in the disclosure of their names.").  While the court in *Armstrong* rejected a blank prohibition against such disclosures in all circumstances, it reasoned that in cases such as this one, the interest in the privacy of FBI agents is obvious:

> Take for example a gathering of FBI agents who are discussing counter-intelligence operations in a hostile country. Disclosure of the names of these agents would implicate an important privacy interest because release of the names could provide information to the target country and put the agents in danger.

*Armstrong, supra* at 582.  The court in *Lesar v. United States Dept. of Justice*, 636 F.2d 472, 487 (D.C. Cir. 1980) reached a similar conclusion, holding that:

> [t]he agent by virtue of his official status does not forgo altogether any privacy claim in matters related to official business. As several courts have recognized, these agents have a legitimate interest in preserving the secrecy of matters that conceivably could subject them to annoyance or harassment in either their official or private lives.

In this instance, the risk is far greater than mere "annoyance or harassment."  Plaintiffs helped to convict leaders of this country's most notorious domestic terrorism groups, such as the Proud

Boys, the Patriot Front, the Oath Keepers and the Three Percenters. These militia or paramilitary organizations are known to stockpile weapons, and have already demonstrated a willingness to engage in violence against government entities. Once Plaintiffs' names and identifying information appears on social media, it would be all but impossible to contain how far and wide such information would go. Therefore, the best and only remedy Plaintiffs have is prior restraint.

To the extent that Defendant insists that it has no intention of publicly disclosing the information gathered, Plaintiffs point out that even holding such information in a single document or spreadsheet would make it easier for it to be attained through hacking, or, for example, if control of FBI computers was given to a person with no proper status to have access to sensitive government data systems. *See e.g.,* "Treasury Gives Elon Musk's Team Access to Federal Payment System: Sources," Feb. 2, 2025, https://abcnews.go.com/US/treasury-dept-elon-musks-team-access-federal-payment/story?id=118380399. Defendant may not be in a position to assure Plaintiffs' personal and identifying information will remain safe within its systems, but at a minimum, Defendant should be ordered not to share such information with any person, regardless of their title or status, who could potentially publish it in some form or fashion, or use it for unlawful purposes.

## II.  THE RISK TO PLAINTIFFS OF DISCLOSURE OF THEIR PERSONAL INFORMATION FAR OUTWEIGHS ANY INTEREST DEFENDANT MIGHT HAVE IN AGGREGATING OR DISCEMINATING THE INFORMATION AT ISSUE

Plaintiffs assert that the singular purpose for the information requested in the survey is to identify persons for retaliation and retribution in a manner similar to what was done in the unlawful purge of DOJ attorneys. To the extent that management personnel have a legitimate interest in understanding what kind of work FBI agents have been doing, it would be asking for a much broader recounting of FBI agent work, and would not be asking only about work on Jan. 6 and

Mar-a-Lago cases. This survey request has nothing to do with identifying good or bad performance, nor does it have any remedial, developmental or other legitimate purpose.

Thus, in balancing the harm to Plaintiffs against the harm to Defendant should injunctive relief be issued, there is no comparison. There is absolutely no harm to Defendant in being prohibited from disseminating, publishing or storing information that would subject agents to harassment, threats or worse. Any legitimate managerial function that Defendant might wish to execute can be done with information already available to FBI supervisors and managers. Thus, there is no legitimate business purpose to the survey, and only serious risk of the information being leaked, hacked or otherwise disseminated once it is aggregated. For these reasons, Plaintiffs prevail on the second prong of the analysis.

### III.    THE INTEREST OF THE PUBLIC WILL BEST BE SERVED BY ISSUANCE OF THE RESTRAINING ORDER

It must not be lost on the Court that the approximately 6,000 agents at issue in this case did not only work on Jan. 6 or Mar-a-Lago cases. Most of them have faithfully served the people of the United States for years, staving off all manner of threats to our national security and rule of law. It is therefore manifestly in the best interest of the United States for those persons to remain on the job, and not to be targeted for reprisal, either from dangerous elements in the population at large, or the malign purposes of the leadership of their own agency and government. To put it the opposite way, the interests of the public would be greatly harmed if Donald Trump and his agents in the DOJ and elsewhere, were able to threaten or attack FBI agents by weaponizing the information gathered about their activities.

Plaintiffs also aver that it is in the public interest that persons are not discouraged from joining the FBI, or remaining with the service, due to fear for their personal safety. Publication of the information at issue here would have devastating long-term consequences on the FBI's ability

to recruit and retain employees for years to come.  This is particularly true because Defendant is seeking information even about former agents and employees.  Should it become the norm that FBI personnel are subject to reprisal years after their service, such would have a catastrophic effect on the willingness of patriotic citizens to serve in our intelligence agencies.

Plaintiffs are asking the Court for minimal intercession to ensure that the proverbial cat is not let out of the bag before anything can be done to prevent the ensuing damage.  An order from this Court to the FBI, DOJ and the Trump administration prohibiting the sharing or publication of FBI personnel information is a minor annoyance at worst for Defendant, but serves as an effective measure to protect the public interest in a strong and reliable FBI now, and into the future.

## IV.     PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

What the Trump administration is attempting to do to this nation's law enforcement and intelligence agencies is completely unprecedented.  The termination of hundreds of DOJ attorneys has sent shock waves through the DOJ, and the nation as a whole.  DOJ attorneys were summarily fired as retribution for executing their duties in a way that offended the current president.  But it cannot be lost on the Court that the core of the President's displeasure is that DOJ's work harmed Mr. Trump personally, and harmed his political ambitions as a candidate for public office.  Mr. Trump's public pronouncements about his intentions to exact revenge are too many to recount here.  Importantly, those threats came to fruition when the Trump administration fired DOJ attorneys.  Therefore, the harm that Plaintiffs' fear is by no means speculative.  It is in this context that the Court must consider Plaintiffs' claims that the FBI's attempt to identify them for imminent retaliatory action violates their Constitutional rights under the First and Fifth Amendments.

Plaintiffs predicate their underlying claim on the fact that Defendant has no legitimate basis to aggregate the information requested, and certainly no legitimate interest in publishing it, or

making it available to persons without a legitimate reason to access such information. Therefore, Plaintiffs are entitled to preliminary injunctive relief to protect their Constitutional rights and to shield them from harms that would certainly be caused by publication of information about their activities.

A.    <u>**Plaintiffs' Constitutional Claims are Meritorious**</u>

1.    *The Court Must Enjoin Activity by Defendant Designed to Retaliate Against Plaintiffs Due to Their Perceived Political Affiliation*

Any governmental action that burdens individuals unequally but does not burden a "suspect class" must survive a "rationality," or "rational-basis" review. *Steffan v. Aspin*, 8 F.3d 57, 63 (D.C. Cir. 1993). Rationality review requires that the action be "rationally related to a legitimate governmental purpose." *City of Cleburne v. Cleburne Living Center, Inc*., 473 U.S. 432, 446 (1985). Plaintiffs aver that Defendant's actions in this case do not survive the rational basis review.

In *Elrod v. Burns,* 427 U.S. 347 (1975), the Supreme Court declared unconstitutional the dismissal of non-policymaking government employees because of their partisan political affiliation or non-affiliation. *See Comm. to Protect First Amendment v. Bergland*, 626 F.2d 875, 878 (D.C. Cir. 1979). In this case, Plaintiffs aver that they are being targeted for retaliation for their non-affiliation, or insufficient loyalty or partisanship in favor of Mr. Trump. *See Heffernan v. City of Paterson, N.J.*, 578 U.S. 266, 268, 272 (2016). The fact that only Plaintiffs (i.e., persons who worked on Jan. 6 and Mar-a-Lago cases) are being singled out for scrutiny and likely retaliation cements the fact that Defendant's actions are politically motivated. Plaintiffs' terminations would clearly violate the law, but so too would other acts of Defendant that constitute disparate treatment. *See Steffan v. Aspin*, 8 F.3d 57, 67 (D.C. Cir. 1993) (citing *Rutan v.*

*Republican Party of Illinois,* 497 U.S. 62 (1990) (prohibition against discrimination based on political affiliation extends to employment decisions other than firing).

The holding in *Branti v. Finkel*, 445 U.S. 507, 516-17 (1980) is instructive here. In that case, the court held that an incoming Democratic public defender overstepped when it took adverse action against a Republican assistant public defender solely on his political affiliation. The court ruled that continued employment could not be conditioned upon allegiance to the political party in control. See id. Importantly, the court noted that the role of a public defender is to serve clients, rather than any partisan interest, and the same is very much true here. *See Branti*, 445 U.S. at 519.

Forcing some employees, but not others, to be registered and identified by the work they did on politically charged matters constitutes disparate treatment based on perceived political loyalties, and more importantly, has a serious chilling effect on current and future employees. Notably, it is only the employees whose identifying information and connection to the Jan. 6 and Mar-a-Lago cases is in the "system of records" created by the survey, who will be subject to future retaliatory action, and who will be, at this present time, vulnerable to irreparable harm should the information from that survey fall into the wrong hands, either willfully or accidentally.

Furthermore, Defendant has no conceivable legitimate business purpose in compiling the information sought in the survey. The format of the survey at EXHIBIT 1 does not elicit information from the respondent that could be used for any legitimate purpose. The survey does not seek to ascertain if the respondent executed his or her duties competently. The information gathered does not serve any purpose such as training, or review of systems and processes. Plaintiffs defy Defendant to identify a single legitimate purpose for the information requested.

Inasmuch as the survey itself, and the information contained therein has no rational basis, and the mere fact that some agents and employees are required to fill it out while others are not,

establishes clear improper disparate treatment in violation of the First Amendment. The context of Mr. Trump's manifest intent to terminate FBI agents and employees who have displeased him provides sufficient basis for the Court to intervene. And the fact that any leak or improper publication of the information in that survey would have devastating consequences on Plaintiffs and the people of the United States, warrants the Court's exercise of extraordinary and immediate action in the issuance of a temporary restraining order.

2.     *Defendant's Actions Will Create Immediate Reputational Harm In Conjunction with Likely Employment Loss, which Triggers their Procedural Due Process Rights*

In this circuit, a plaintiff may avail himself of the "reputation plus" claim, which requires the conjunction of official defamation and an adverse employment. *See Jefferson v. Harris*, 170 F. Supp. 3d 194, 205 (D.D.C. 2016). As recently explained in *McCabe v. Barr*, 490 F. Supp. 3d 198, 220-21 (D.D.C. 2020), a plaintiff pursuing such a claim must establish that (a) the government's defamation resulted in harm to some interest beyond reputation, such as the loss of present or future government employment; and (b) that the government has actually stigmatized his or her reputation by, for example, charging the employee with dishonesty, and that the stigma has hampered future prospects. *See id.* (quoting *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1111 (D.C. Cir. 1985)).

In the Complaint, Plaintiffs assert that Defendant's gathering, storage and potential dissemination of the information sought by the survey damages both their reputations, and will also lead to their imminent termination. Importantly, Mr. Trump has made very clear that he believes that the work done by Plaintiffs was somehow wrongful, politically motivated and indicative of poor character. In so doing, Plaintiffs articulate a "reputation plus" or "stigma plus" type of claim that has been recognized as actionable by the Supreme Court. *See Rosen v. N.L.R.B*,

735 F.2d 564, 571 n.8 (D.C. Cir. 1984) (citing *Paul v. Davis*, 424 U.S. 693 (1976) ("[a]ppellants must allege the invasion of other legally cognizable interests which, when conjoined with appellant's interest in reputation, suffice to state a claim of deprivation of ….interest under the Due Process Clause.") *(*citing *Mosrie v. Barry,* 718 F.2d 1151, 1159 (D.C. Cir. 1983), and Monaghan, *Of "Liberty" and "Property,"* 62 CORNELL L.REV. 405, 427 (1977) (discussing "reputation-plus" interests that *Paul v. Davis* acknowledged were protected under the Due Process Clause but which, absent an interest in reputation, would not support a due process claim).

The government violates an individual's constitutional due-process rights if it deprives her of a liberty or property interest without providing sufficient procedural protections. *See Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 538 (D.C. Cir. 2015). One of the liberty interests protected by the Fifth Amendment is the right to "follow a chosen profession free from unreasonable governmental interference." *Id.* (quoting *Greene v. McElroy*, 360 U.S. 474, 492 (1959)). A plaintiff can show a deprivation of that liberty interest under the stigma-plus theory when the government takes certain adverse actions, and those actions foreclose her freedom to pursue a chosen profession. *See  Campbell v. District of Columbia*, 894 F.3d 281, 288 (D.C. Cir. 2018).

It cannot be disputed that Plaintiffs have an interest in not losing their current employment without due process.  That is precisely what the Civil Service Reform Act (CSRA) enshrines in statute by the creation of the Merit System Protections Board, and other regulatory schemes to ensure that government workers are not terminated for arbitrary or capricious reasons.  And even if there may be special rules for the FBI, the provisions of the Constitution still apply and prevail, particularly when the actions of the agency are manifestly dangerous and unjust.  It is this right,

Case 1:25-cv-00325     Document 3     Filed 02/04/25     Page 17 of 23

married with Plaintiffs' liberty and property interest in their good names and reputations, that gives the Court the ability to take either injunctive or corrective action against abuses by DOJ.

It is critical to note that should Plaintiffs' names and information about their actions be made public, not only could foreclose their ability to remain employed at the FBI, but it could very well impede their ability to work for any clandestine, intelligence or law enforcement entity in the future. Plaintiffs must not be so deprived without any due process protection. Again, once the identifying information is available and published, the irreparable harm is done.

> 3.     *Plaintiffs' Fifth Amendment Rights to Privacy Outweigh any Governmental Interest in the Information Gathered by the FBI Survey*

A Sixth Circuit case considered a situation analogous to the one at bar. In *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998), a group of undercover agents brought suit to prevent disclosures from their personnel files for fear that a violent gang they were investigating would use that information to exact revenge. *Id.* at 1063. In conducting a substantive due process analysis under the Fifth and Fourteenth Amendments, the court concluded that plaintiffs' rights to privacy outweighed any interest in disclosure. Specifically, the court held that there was no doubt that the officers or their family members would suffer irreparable harm from violence resulting from disclosure. *See id.* The same is true in this case, particularly if this Court considers the many violent offenders who are now at large, and in a position to seek retribution against the agents whose work put them in prison.

If ever there was a case in which the balance of interests favors protection private of information rather than disclosure, it is this one. Not only would allowing Defendant to aggregate, use and possibly disseminate information about the activities of FBI agents cause immediate harm to the Plaintiffs, it would drastically and irreparably harm the ability of the FBI and other intelligence services from being able to recruit and retain officers in the future. Plaintiffs thus

17

assert that the careful balancing of interests contemplated by *Kallstrom, supra*, weighs almost entirely in favor of granting the relief requested.

  **B.**  **Plaintiffs will be Able to Establish that the Information Compiled by the Survey Meets the Definition of a "System of Records."**

  The Privacy Act applies to information that is "about an individual," that is stored in a system of records "under the control of any agency," and that is "retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." *See Wilson v. Libby*, 535 F.3d 697, 707 (D.C. Cir. 2008) (citing 5 U.S.C. § 522(a)(4), (5)). In this case, Plaintiffs assert that the information requested in the survey meets the standards to be protected by the Privacy Act, and as such, that they have a legal right and interest in maintaining its non-disclosure.

  To have a claim pursuant to 5 U.S.C. § 552a, Plaintiffs must establish that the information they wish to protect is part of a system of records. According to *Henke v. U.S. Department of Commerce*, 83 F.3d 1453, 1456 n.1 (D.C. Cir. 1996), a "system of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying information assigned to the individual." (citing 5 U.S.C. §§552(a)(5)). By that definition, the survey attached as EXHIBIT 1 identities FBI agents by name, title and work location, and then connects to each individual their duties and actions with respect to Jan. 6 cases and the Mar-a-Lago case. While the survey itself may not be a "system of records," the information adduced by the survey would be. Any database that houses the responses to the survey would clearly be searchable by the name of the agent, and thus the data collected would meet the definition of a "system of records."

### C.     Plaintiffs Are Entitled to Protect Their Information from Being Disclosed

In *Wilson v. Libby, supra*, one of the Plaintiffs, Valerie Plame Wilson, was a CIA clandestine agent. *See Wilson v. Libby*, 535 F.3d at 702-703. During the period prior to the second Gulf War, in which George W. Bush was seeking reasons to go to war with Iraq, Deputy Secretary of State Richard Armitage disclosed to a Washington Post reporter that Ms. Wilson was a CIA agent, thus "blowing her cover," and effectively ruining her career. *See id.*.

Ms. Wilson and her husband brought suit to recover damages for what was manifestly a politically motivated and unauthorized disclosure of information about Ms. Wilson's CIA activity, in violation of the Privacy Act. *See id.* The Wilsons brought various constitutional claims, and for reasons that are beyond the scope of the analysis here, their claims were dismissed. There are two important holdings from the *Wilson* case that are applicable here. The first is that Ms. Wilson had a valid claim with respect to improper disclosure by the agency, but failed to properly exhaust administrative remedies. Plaintiffs point to the fact that this holding at least implies that politically motivated disclosure of information about agents to discredit them would be actionable if properly pursued.

The other pertinent holding is that the *Wilson* Court expressly held that the Office of the President and Vice President are excluded from the provisions of the Privacy Act. *Id.* at 708. So if Defendant was permitted to provide the aggregated FBI list to the President or Vice President, or members of their staff, there is no law that would protect Plaintiffs or prohibit the President or Vice President from publicly disclosing that information. As was true with CIA agent Wilson, the disclosure itself could ruin the careers of FBI agents and personnel, and would cause harm that is not reparable by damages, even if an agent is able to later obtain financial compensation.

Plaintiffs ask the Court to contemplate the damage that would be done to them and to the entire operation of the FBI should confidential information about thousands of current and former FBI agents and employees be made public or accessible to persons not covered by the Privacy Act, who would in turn have a free and unfettered capacity to publicly disclose that information. In this case, the Court's first and best option is to prevent such disclosures from happening by enjoining the agency, and to provide protection on a class-wide basis, rather than to further bog-down an already over-burdened administrative system with trying to pick up the pieces after our national security apparatus is shattered.

## <u>CONCLUSION</u>

Plaintiffs, on behalf of themselves and a putative class of at least 6,000 current and former FBI agents and employees, come before this Court asking for modest intervention to prevent the dissemination of sensitive information that would identify them and the specific work they did in cases against involving the former President. Although such temporary relief is extraordinary in nature, so too is the threat to personnel in our intelligence and law enforcement services. Plaintiffs assert that the irreparable harm that would be done to them, their families and the national security of the United States far outweighs any burden or trespass on Defendant's authority. For these reasons, this Motion is sound and should be GRANTED.

Respectfully submitted,

/s/*Pamela M. Keith*
Pamela M. Keith [448421]
Scott M. Lempert [Bar No. 1045184]
CENTER FOR EMPLOYMENT JUSTICE
650 Massachusetts Ave. NW
Suite 600
Washington, DC 20001
(202) 800-0292
pamkeith@centerforemploymentjustice.com

Slempert@centerforemploymentjustice.com
*Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Motion for a Temporary Restraining Order,

Memorandum of Law in Support of Plaintiff's Motion for a Temporary Restraining Order, and

Proposed ORDER was served on Defendant by in-person service of process on this 4th day of

February 2025.

Executive Office for United States Attorneys
U.S. Department of Justice
950 Pennsylvania Avenue NW
Room 2242
Washington, DC 20530-0001

Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530-001

Federal Bureau of Investigation
J. Edgar Hoover Building
935 Pennsylvania Avenue NW
Washington, DC 20535-0001

/s/*Pamela M. Keith*
Pamela M. Keith

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JOHN AND JANE DOES 1-9    )
Employees/Agents of the Federal Bureau )
of Investigations,       )
on behalf of themselves     )
and those similarly situated,    )
            ) Case No.
   *Plaintiffs*,     )
            ) ORAL ARGUMENT REQUESTED
v.            )
            )
DEPARTMENT OF JUSTICE   )
James McHenry      )
Acting Attorney General of the   )
United States,       )
            )
   *Defendant*.     )
_____)

## **PROPOSED ORDER**

This case having come before the Court on Plaintiffs' Motion for a Temporary

Restraining Order, and in consideration of Plaintiffs' Memorandum of Law in support thereof,

this Court hereby GRANTS the Motion and issues the following ORDER:

1. That the Federal Bureau of Investigations (FBI) is hereby ORDERED to cease and desist

   its efforts to gather and aggregate information about the activities of FBI agents with

   respect to the January 6, 2021, attack on the Capitol, and/or the unlawful removal, retention

   and storage of classified documents by former President Donald Trump.

2. That the FBI and the Department of Justice (DOJ) are hereby enjoined and prohibited from

   sharing any such information with persons in the Office of the President, the Office of the

   Vice President, and any other persons who are not directly assigned to and employed by

   the FBI or the DOJ.

3. That the FBI, DOJ and the entire administration of Donald Trump is hereby prohibited and enjoined from publishing, releasing, leaking, sharing or disseminating any information about FBI agents that is held in a "system of records" as that term is defined in the Privacy Act of 1974, 5 U.S.C §552a.

This ORDER will remain in effect until _____, at which time the Court will hear from the parties via filed briefs on the need to extend this relief to issue a preliminary injunction against Defendant, and the Donald Trump administration.

So ORDERED,


_____                                    _____
Date                                        United States District Court Judge