UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN AND JANE DOES 1-9,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF JUSTICE,<br><br>Defendant. | Civil Action No. 25-0325 (JMC) |

**DEFENDANT'S OPPOSITION**
**TO MOTION FOR TEMPORARY RESTRAINING ORDER**

Defendant the Department of Justice ("Department") respectfully submits this Opposition to Plaintiffs' motion for a temporary restraining order.

**INTRODUCTION**

In this action, and in the related action, *Federal Bureau of Investigation Agents Association v. Department of Justice*, Civ. A. No. 25-0328 (JMC) (D.D.C.) ("*FBI Agents*"), Plaintiffs seek emergency injunctive relief against the government based on purported future events that have not yet occurred and for which they have failed to plausibly plead facts demonstrating an imminent risk that they will occur. Plaintiffs' speculation regarding future events is insufficient to support the extraordinary remedy of a temporary restraining order. Accordingly, as discussed more fully below, Plaintiffs' motion for temporary restraining order should be denied.

**BACKGROUND**

I. **Factual Background.**

The Department issued a memorandum dated January 31, 2025, to the Federal Bureau of Investigation ("FBI") that directed the FBI to provide lists, by noon on February 4, 2025, of "all current and former FBI personnel assigned at any time to investigations and/or prosecutions

relating to (1) events that occurred at or near the United States Capitol on January 6, 2021; and (2) *United States v. Haniyeh, et al.*, 24 Mag. 438 (S.D.N.Y.)."  Driscoll Email, enclosed herewith as Exhibit 1 ("Opp'n Ex. 1").  The FBI provided its response to the Department by the stated deadline.  As stated in an email from the FBI's Acting Director, the data that it provided "identified employees only by Unique Employee Identifier [ ], their current title, their title at the time of the relevant investigation or prosecution, the office to which they are currently assigned, their role in the relevant investigation or prosecution, and the date of last activity related to the investigation or prosecution."  Driscoll Email, Opp'n Ex. 1.  The email stated that "the FBI does not consider anyone's identification on one of these lists as an indicator of misconduct. The lists simply reflect that an FBI employee was assigned to an appropriately authorized and predicated matter at a moment in time."  *Id.*

## II.    The Privacy Act Permits Intra-Agency Exchanges of Information.

The Privacy Act permits the FBI to provide to officials within the Department, of which the FBI is a component, information contained in FBI records regarding its employees when those officials have a need for the information in the performance of their duties.  5 U.S.C. § 552a(b)(1); *see also Walker v. Ashcroft*, Civ. A. No. 99-2385, 2001 WL 37153642, at *8 n.6 (D.D.C. Apr. 30, 2001) ("FBI employees and federal prosecutors are considered employees of the same agency, namely the Department of Justice. As such, the need to know exception properly applies to disclosures between these employees."), *aff'd*, No. 01-5222, 2002 WL 335530, at *1 (D.C. Cir. Jan. 25, 2002).  The stated purpose for the Department seeking the information from the FBI was to "'commence a review process'" in conjunction with an Executive Order directing the Attorney General to review the activities of all departments and agencies exercising civil or criminal enforcement authority of the United States. Bove Email, Opp'n Ex. 2 (underline in original); Exec. Order 14,147, "Ending the Weaponization of the Federal Government," 90 Fed. Reg. 8235 (Jan.

20, 2025) (the "Executive Order").  The Department has made clear that "[n]o FBI employee who simply followed orders and carried out their duties in an ethical manner with respect to January 6 investigations is at risk of termination or other penalties. The only individuals who should be concerned about the process initiated by [the] January 31, 2025 memo[randum] are those who acted with corrupt or partisan intent, who blatantly defied orders from Department leadership, or who exercised discretion in weaponizing the FBI." *Id.*  This inquiry plainly falls within the official duties of Department officials, and thus, the request is consistent with the provisions of the Privacy Act.  Although the unstated premise of Plaintiffs' motion is that the Executive Order is somehow unlawful, the Complaint does not assert a claim challenging the lawfulness of that Order.  Indeed, any such challenge would fail—it is beyond dispute that the President has the authority to investigate potential misconduct within the Executive Branch.  U.S. Const. art. II, § 1, cl. 1 ("The executive Power shall be vested in a President of the United States.").

III.    **Plaintiffs' Allegations in This Suit and in *FBI Agents***

Plaintiffs are a putative class of FBI agents who allegedly were asked to self-report their activities on the January 6, 2021, and Mar-a-Lago cases and who allege that their employment information has been aggregated and will be provided to senior members of the administration. Compl. (ECF No. 5) ¶¶ 1, 58.  These allegations appear to be a reference to the above-referenced lists submitted by the FBI to Department leadership.  As an initial matter, Plaintiffs' assertion that agents via the Department's January 31, 2025, memorandum were asked to report activities concerning the Mar-a-Lago case is inaccurate.  The internal data collection request did not seek information of that sort.  *See* Driscoll Email, Opp'n Ex. 1 (noting that January 31, 2025, data call was for information related to January 6, 2021, cases and *Haniyeh*, a terrorism-related case).

Plaintiffs claim that the lists will be used to terminate their employment based on recent employment actions taken against other employees in other Department components, who they do

not allege are similarly situated to them. *Id.* ¶¶ 35, 41.  They also speculate that the lists might be leaked outside the government to individuals that harbor ill will toward them but fail to plead any specific facts to support that allegation. *Id.* ¶ 65.  They purport to bring claims under the First Amendment (count I), Fifth Amendment-Due Process (count II), Fifth Amendment-Right to Privacy (count III), and the Privacy Act, 5 U.S.C. § 552a (count IV).  The sole relief sought for counts I, III, and IV is injunctive relief and the sole relief sought for count II appears to be declaratory relief. *Id.* ¶¶ 79, 78, 86, 99.

As addressed below, Plaintiffs in this case have not satisfied the standard for obtaining a temporary restraining order and the proposed injunction is not narrowly tailored to the claims they have asserted.  The same is true for the plaintiffs in *FBI Agents*, and any differences between the Complaint in that case and this case are immaterial.  For instance, the plaintiffs in *FBI Agents* purport to assert a claim based on section 552a(e)(6) of the Privacy Act, in addition to section 552a(b), the sole Privacy Act claim asserted in this case.  But Section 552a(e)(6) solely applies to regulate disseminations of Privacy Act records made to persons outside an agency, *Lamb v. Millennium Challenge Corp.*, 228 F. Supp. 3d 28, 40 (D.D.C. 2017), and no such dissemination has been alleged in *FBI Agents* or this case.  Moreover, although the FBI Agents Association has joined as a plaintiff in *FBI Agents*, any alleged standing of the Association would be derivative of the standing of its members, and its request for extraordinary emergency relief fails for the same reasons as its members' requests. *See, e.g.*, *Sierra Club v. EPA,* 292 F.3d 895, 898 (D.C. Cir. 2002); *Am. Chemistry Council v. Dep't of Transp.,* 468 F.3d 810, 815 (D.C. Cir. 2006).  Indeed, as discussed herein, the individual Doe plaintiffs in this suit and *FBI Agents* have failed to plausibly plead standing for the prospective relief they seek, and accordingly, the association likewise would lack standing to sue.

## LEGAL STANDARD

A temporary restraining order "is an extraordinary, if not drastic, remedy." *Nat'l Treasury Emps. Union v. United States*, Civ. A. No. 19-0050 (RJL), 2019 WL 266381, at *2 (D.D.C. Jan. 18, 2019). It is "reserved for cases where plaintiffs will suffer irreparable injury before a preliminary injunction hearing is even held." *Id.* "An application for a [temporary restraining order] is analyzed using factors applicable to preliminary injunctive relief." *Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 81 (D.D.C. 2018).

Similarly, "a preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). A party seeking preliminary relief must make a "clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest." *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (quoting *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 505 (D.C. Cir. 2016)). The moving party bears the burden of persuasion and must demonstrate, "by a clear showing," that the requested relief is warranted. *Hospitality Staffing Sols., LLC v. Reyes*, 736 F. Supp. 2d 192, 197 (D. D.C. 2010) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).

Before the Supreme Court's decision in *Winter*, courts weighed these factors on a "sliding scale," allowing "an unusually strong showing on one of the factors" to overcome a weaker showing on another. *Damus v. Nielsen*, 313 F. Supp. 3d 317, 326 (D.D.C. 2018) (quoting *Davis v. Pub. Benefit Guar. Corp.*, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009)). The D.C. Circuit has suggested, without deciding, that *Winter*—which overturned the Ninth Circuit's "possibility of irreparable harm" standard—"should be read to abandon the sliding-scale analysis in favor of a 'more demanding burden' requiring plaintiffs to independently demonstrate both a likelihood of

success on the merits and irreparable harm." *Bartko v. Dep't of Just.*, Civ. A. No. 13-1135 (JEB), 2015 WL 13673371, at *1 (D.D.C. 2015) (citing *Sherley v. Sebelius*, 644 F.3d 388, 392–93 (D.C. Cir. 2011), and *Davis*, 571 F.3d at 1292); *see also League of Women Voters*, 838 F.3d at 7 (declining to address whether "sliding scale" approach is valid after *Winter*).   That said, the Supreme Court has confirmed that a plaintiff must satisfy all elements of the standard to succeed. *See, e.g.*, *Murthy v. Missouri*, 603 U.S. 43, 99 n.18 (2024) ("To obtain a preliminary injunction, [plaintiff] was required to establish that she is likely to succeed on the merits, that she would otherwise suffer irreparable harm, and that the equities cut in her favor. (citing *Winter*)).

Even before *Winter*, courts in this Circuit consistently stressed that "a movant must demonstrate 'at least some injury' for a preliminary injunction to issue."  *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (quoting *CityFed Fin. Corp. v. OTS*, 58 F.3d 738, 747 (D.C. Cir. 1995)).  Thus, "if a party makes no showing of irreparable injury, the court may deny the motion without considering the other factors."  *Henke v. Dep't of Interior*, 842 F. Supp. 2d 54, 59 (D.D.C. 2012) (quoting *CityFed Fin. Corp.*, 58 F.3d at 747); *see also Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 ("A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief.").

A movant alleging "speculative injuries" cannot meet the "'high standard for irreparable injury' sufficient to warrant the extraordinary relief of a" temporary restraining order, and "the Court need not reach the other factors relevant to the issue of injunctive relief."  *United Farm Workers v. Chao*, 593 F. Supp. 2d 166, 171 (D.D.C. 2009) (quoting *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297); *see Bartko*, 2015 WL 13673371 at *2 ("[t]he Court need not grant injunctive relief 'against something merely feared as liable to occur at some indefinite time'")

(quoting *Wis. Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985)). "[T]he movant must demonstrate the injury is of such 'imminence' that there is a clear and present need to equitable relief to prevent irreparable harm." *Id.* (quoting *Jud. Watch, Inc. v. Dep't of Homeland Sec.*, 514 F. Supp. 2d 7, 10 (D.D.C. 2007)). And where a party seeks to change the status quo through action rather than merely to preserve the status quo—typically the moving party must meet an even higher standard than in the ordinary case: the movant must show 'clearly' that [it] is entitled to relief or that extreme or very serious damage will result." *Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006) (citing authorities).

## ARGUMENT

Plaintiffs' claims rest on a request for employment information by the Attorney General to the FBI as part of a review process in connection with a directive in an Executive Order that Plaintiffs do not allege to be unlawful. Plaintiffs seek a temporary restraining order based on speculation involving future predictions of potential harm related to the information provided. But Plaintiffs' speculation is a plainly insufficient basis to obtain extraordinary, emergency relief. Indeed, Plaintiffs have failed to plausibly plead or demonstrate any imminent, reasonably certain harm, which is necessary to obtain emergency injunctive relief.

For example, Plaintiffs do not plausibly plead that their employment will be terminated. To the contrary, they have been specifically advised that adverse action will not be taken against them if they did not engage in misconduct. Bove Email, Opp'n Ex. 2. Plaintiffs also neither allege that any of their employment information has been provided outside the Department nor that the Department has authorized the dissemination of information of any other similarly situated employee outside the Department as to plausibly create any inference that such a future disclosure

might imminently occur.[1]  Plaintiffs' request for a temporary restraining order is based entirely on speculation, which is insufficient as discussed more fully below.

## I.    <u>Plaintiffs Are Unlikely to Succeed on Their Claims.</u>

Plaintiffs' motion for a temporary restraining order should be denied as a threshold matter based on a lack of standing, which would preclude Plaintiffs from succeeding on their claims. Standing is a necessary predicate to any exercise of federal jurisdiction and, when it is lacking, the dispute fails to present a concrete case or controversy under Article III. *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133-34 (2011); *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012).  To establish standing, Plaintiffs must demonstrate that they suffered an injury-in-fact, specifically an injury that is "'concrete, particularized, and actual or imminent;'" that the injury is "'fairly traceable to the challenged action;'" and that it is "likely," not speculative, that the injury is "'redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013); *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560-61 (1992).  Plaintiffs bear the burden of establishing each element.  *Lujan*, 504 U.S. at 561.

Importantly, standing is "'not dispensed in gross.'"  *Davis v. FEC*, 554 U.S. 724, 734 (2008).  "Rather, 'a plaintiff must demonstrate standing for each claim he seeks to press and 'for each form of relief' that is sought."  *Id.*  Here, in each of the four counts of the Complaint Plaintiffs seek prospective relief only, either injunctive relief (counts I, III and IV) or an apparent declaration of an alleged due process violation (count II).  Under *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), a plaintiff has standing to seek prospective relief, such as an injunction, only if the plaintiff

---

[1]    In *FBI Agents*, Plaintiffs allege that "Elon Musk of DOGE recently shared the names and titles" of certain civil servants holding 'relatively obscure climate-related government positions[.]'"  Compl. ¶ 50, *FBI Agents*, ECF No. 1.  Mr. Musk, however, is neither a Department official nor a defendant in this case and neither set of plaintiffs plausibly plead that Mr. Musk has access to, or the intent to distribute, any FBI-generated list.

has sufficiently alleged that it is threatened with future illegality. *See id.* at 105, 109; *see also Comm. in Solidarity with People of El Salvador v. Sessions*, 929 F.2d 742, 744 (D.C. Cir. 1991) ("In injunction suits, plaintiffs usually must establish that the allegedly illegal actions of the past are causing or threatening to cause them present injuries.").

It is well settled that "'[a]n allegation of future injury'" to support the injury-in-fact element of standing "passes Article III muster only if it 'is 'certainly impending,' or there is a 'substantial risk' that the harm will occur.'" *In re Off. of Pers. Mgmt. Data Sec. Breach Litig. ("OPM")*, 928 F.3d 42, 54 (D.C. Cir. 2019); *see also Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir. 2021) ("Because Kareem's complaint 'seeks prospective declaratory and injunctive relief, he must establish an ongoing or future injury that is 'certainly impending'; he may not rest on past injury.'") In addition to being "'certainly impending,'" *Kareem*, 986 F.3d at 865, allegations of future injury, moreover, must be "particular and concrete." *Steel Co. v. Citizens for a Better Env't.,* 523 U.S. 83, 109 (1998).

But no "certainly impending" future injury has been alleged here. At best, Plaintiffs have speculated about the potential for future injury based on conclusory allegations, which is insufficient. *See Air Excursions v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023) (conclusory statements are insufficient to establish standing). In assessing whether a Complaint has adequately pled standing, the Court must set "'mere conclusory statements' aside" and determine whether the Complaint contains "'sufficient factual matter, accepted as true,' to support an inference of standing" that is "'plausible on its face.'" *Id.* This "requires 'more than a sheer possibility' that the plaintiff has standing to sue." *Id*. at 278.

Here, Plaintiffs speculate that they face the prospect of potential future termination as a result of the information about their employment that the FBI has provided to officials within the

Department.  But they allege no facts to plausibly raise an inference that their termination from employment is "certainly impending" as a result of the employment information that has been provided.  Their speculation rests solely on employment actions taken against certain other employees from within a different component of the Department,[2] and speculation resting on an unspecified chain of future actions that have yet to occur.  *United Transp. Union v. Interstate Commerce Comm'n*, 891 F.2d 908, 912 (D.C. Cir. 1989) ("When considering any chain of allegations for standing purposes, we may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties) and those which predict a future injury that will result from present or ongoing actions[.]")

Plaintiffs' concerns about a possible public disclosure of their employment information also are too speculative to satisfy the "imminent risk" requirement of the future injury requirement for standing.  Plaintiffs have not alleged any misuse of their employment information—the provision of employment information from the FBI to the Department is consistent with the Privacy Act as already noted above—or any specific facts, such as a recent instance in which employment information of any similarly situated employee has been leaked by the Department, from which a plausible inference of "imminent risk" could be established.  *See Am. Fed'n of Gov't Emps. v. Off. of Pers. Mgmt.*, 928 F.3d 42, 58 (D.C. Cir. 2019) (recognizing that allegations of

---

[2]    The plaintiffs in *FBI Agents* also allege that the January 31, 2025, memorandum ordered eight senior FBI officials to resign or be terminated.  Compl. ¶ 42, *FBI Agents*, ECF No. 1.  That allegation, however, is insufficient to establish standing for prospective relief in the absence of sufficient allegations that the Plaintiffs, who are alleged to be special agents, face an "imminent risk" of an impending adverse action.  *Kareem*, 986 F.3d at 865.  Moreover, Plaintiffs in *FBI Agents* seek as emergent relief an injunction enjoining the Department and the United States "from publicly disclosing the names of FBI personnel[,]" not taking any future, entirely speculative personnel actions.  Prop. Order, *FBI Agents*, ECF No. 2-2.  As such, even were the plaintiffs in *FBI Agents* correct that certain high-ranking FBI officials were recently terminated, that does nothing to support the Court issuing a gag order on the Government here.

misuse of personal information is necessary to confer standing based on a fear of identity theft resulting from an alleged data breach); *see also Owner-Operator Indep. Drivers Ass'n, Inc. v. Dep't of Transp.*, 879 F.3d 339, 345 (D.C. Cir. 2018) ("the mere existence of inaccurate database information is not sufficient to confer Article III standing" without "the dissemination of that information"). Accordingly, because Plaintiffs lack standing to seek prospective relief, they are not likely to succeed on the merits of their claims and their request for a temporary restraining order should be denied.

Even if they have standing, Plaintiffs' claims fail on the merits. Given the limited time to respond to Plaintiffs' motion for temporary restraining order prior to the hearing the morning of February 6, 2025, the Department is not in a position to address the numerous substantive flaws in Plaintiffs' claims in detail. For present purposes, it suffices to note that the Privacy Act permits the intra-agency sharing of information of the type at issue as already noted above and that Plaintiffs have failed to plausibly plead any constitutional violation. *See generally Langeman v. Garland*, 88 F.4th 289, 295-97 (D.C. Cir. 2023) (holding that a FBI agent lacked a constitutionally protectable property interest in his continued employment and failed to plead a deprivation of a liberty interest under a "reputation-plus" or "stigma or disability" theory in the absence of allegations that "the FBI actually revealed his identity in any defamatory public statement" and in the absence of any allegation of an adverse employment action).

## II. Plaintiffs Have Failed to Establish That They Will Suffer Irreparable Harm Absent an Immediate Injunction.

Plaintiffs must make a "clear showing" of irreparable harm, which they have failed to do for reasons already addressed above. The "standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22. It is not enough to "simply sho[w] some 'possibility of irreparable injury.'" *Nken v. Holder*,

556 U.S. 418, 434 (2009).  The "injury must be both certain and great; it must be actual and not theoretical."  *Wis. Gas*, 758 F.2d at 674.

As discussed above, Plaintiffs' alleged harm is based on a series of speculative future events.  Indeed, the central premise of Plaintiffs' speculation is that someone, somewhere, at some time may leak the compiled list.  Putting aside that the list will contain no names (just identification numbers, *see supra*), such speculation runs contrary to the well-established presumption of regularity in government operations.  *United States v. Chem. Found.*, 272 U.S. 1, 14–15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.").  Plaintiffs can point to nothing that suggests the Government intends to make public the list in this case.  To the contrary, the Department and FBI management have repeatedly stressed the purpose of the list is to conduct an internal review, not expose dedicated special agents to public insult or ridicule.  As the Acting Director wrote:

> let it be absolutely clear that we do not view anyone's identification on one of these lists as an indicator of misconduct. As you know, when there are allegations of misconduct, the FBI has a long-standing and robust process for evaluating and adjudicating those allegations. We require strict adherence to employee standards of conduct and have a robust disciplinary process if an employee deviates from those standards. This well-established process both ensures accountability and affords employees appropriate due process and review in accordance with existing policy and law. That process and our intent to follow it have not changed.

Driscoll Email of Fed. 1, 2025, Opp'n Ex. 3; *see also* Kissane Email of Feb. 2, 2025, Opp'n Ex. 4 (providing FAQ about list and confirming that "[w]e do not view anyone's identification on the list as an indicator of any misconduct").

Ultimately, Plaintiffs' speculation of a future leak is far from sufficient to support a sweeping extraordinary injunction on the Executive.

**III.    The Requested Injunctive Relief Exceeds the Allegations in The Complaint and <u>Would Not Be in The Public Interest.</u>**

Plaintiffs' request for temporary restraining order also should be denied because the relief requested in the proposed order accompanying that motion exceeds the injunctive relief sought in the Complaint and the limited facts alleged in the Complaint pled in support of that relief.  As the relief requested far exceeds what this Court could permissibly order based on Plaintiffs' limited allegations, the requested temporary injunctive relief would exceed this Court's jurisdiction to grant and would not be in the public interest.

The Complaint requests the following as injunctive relief: that the Court "enjoin the aggregation, storage, reporting, publication or dissemination of any list or compilation of information that would identify FBI agents and other personnel, and tie them directly to Jan. 6 and Mar-a-Lago case activities."  Compl. (ECF No. 5) ¶¶ 70, 86, 99.  Plaintiffs also appear to seek a declaration that "Defendant violates Plaintiffs' substantive and procedural due process rights by forcing them to fill out a survey that places them at risk for severe, underserved reputational damage without the opportunity to be fully heard and to respond regarding the same." *Id*. ¶ 78.

In contrast, the proposed order accompanying the motion for temporary restraining order seeks relief far beyond the injunctive relief sought in the Complaint or that could possibly be supported by Plaintiffs' limited allegations.  Specifically, Plaintiffs ask the Court to order:

1.    That the Federal Bureau of Investigations (FBI) is hereby ORDERED to cease and desist its efforts to gather and aggregate information about the activities of FBI agents with respect to the January 6, 2021, attack on the Capitol, and/or the unlawful removal, retention and storage of classified documents by former President Donald Trump.

2.    That the FBI and the Department of Justice (DOJ) are hereby enjoined and prohibited from sharing any such information with persons in the Office of the President, the Office of the Vice President, and any other persons who are not directly assigned to and employed by the FBI or the DOJ.

3.     That the FBI, DOJ and the entire administration of Donald Trump is hereby prohibited and enjoined from publishing, releasing, leaking, sharing or disseminating any information about FBI agents that is held in a "system of records" as that term is defined in the Privacy Act of 1974, 5 U.S.C §552a.

Proposed Order (ECF No. 3) at 22-23.

"As a general rule, 'a preliminary injunction may not issue when it is not of the same character as that which may be granted finally and when it deals with matter outside the issues in the underlying suit.'" *Sai v. Transp. Sec. Admin.*, 54 F. Supp. 3d 5, 9 (D.D.C. 2014).  Thus, a preliminary injunction that "deals with a matter lying wholly outside the issues in the suit" or would provide relief that could not be provided "in any final injunction that may be entered" would not be proper.  *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945).

This established rule "cuts to the subject matter jurisdiction of the court." *Sai,* 54 F. Supp. 3d at 9.  "Thus, just as a court lacks jurisdiction over a motion for a preliminary injunction in the absence of a complaint . . ., the court also lacks jurisdiction over a motion when it 'raises issues different from those presented in the complaint.'" *Id.*; *see also Adair v. England*, 193 F. Supp. 2d 196, 200 (D.D.C. 2002); *accord Stewart v. U.S. Immigr. & Naturalization Serv.*, 762 F.2d 193, 198-99 (2d Cir. 1985).

"[A]n injunction must be narrowly tailored to remedy the harm shown." *Gulf Oil Corp. v. Brock*, 778 F.2d 834, 842 (D.C. Cir. 1985).  Plaintiffs' requested injunction is not narrowly tailored and would impair disclosure obligations of the government, such as under the Freedom of Information Act or in the event of a Congressional inquiry.  Moreover, Plaintiffs' cited cases fail to support enjoining the Executive's speech based on fears of future disclosure.  For example, Plaintiffs in this suit cite *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1070 (6th Cir. 1998), suggesting it is analogous to this case and supports issuing a prior restraint.  Mot. (ECF No. 3) at 17–18.  But the Sixth Circuit in *Kallstrom* expressly rejected imposing any blanket disclosure

prohibition despite finding that the municipality had, in fact, previously disclosed the plaintiffs' information unlawfully. It wrote, "we believe that the district court properly refused the officers' request for injunctive relief containing a broad prohibition against the release of personal information about the officers[.]" *Id.* at 1068. Instead, based on the prior unlawful disclosure of the plaintiffs' information (again, no such past disclosure is alleged here), the court required the municipality to provide notice before any future disclosure. *Id.* at 1070. Requiring notice of future disclosures to remedy past unlawful disclosures is a far cry from imposing an anticipatory proscription on government disclosure.

The plaintiffs in *FBI Agents* cite *Calvillo Manriquez v. Devos*, 345 F. Supp. 3d 1077, 1106 (N.D. Cal. 2018), and *Krebs v. Rutgers*, 797 F. Supp. 1246, 1259 (D.N.J. 1992), for the position that "courts will grant preliminary relief to protect Privacy Act interests from non-compensable damages associated with improper disclosure." Pls. Br. at 14–14, *FBI Agents*, ECF No. 2-1. But neither case parallels the circumstance here. In *Calvillo Manriquez*, a group of plaintiffs sought provisional relief stemming from injuries caused by the adoption of a challenged student loan rule. 345 F. Supp. 3d at 1085. After finding the plaintiffs demonstrated, in part, a likelihood of success in their rule challenge and irreparable harm from it, the court issued a preliminary injunction. But none of the terms of the injunction sought to gag the Government. Instead, it prohibited the Government from using the rule and seeking to collect student loan debts of the plaintiffs. *Id.* at 1110. In *Krebs*, the court dismissed the plaintiffs' Privacy Act claims, 797 F. Supp. at 1256, and instead, that court enjoined a public university from disclosing class lists containing social security numbers under the Family Educational Rights and Privacy Act based on its prior unlawful

disclosure of the same. *Id.* at 1260. In other words, the court in *Krebs* granted equitable relief to remedy past unlawful disclosures, not a restraint based on speculative future ones.

Accordingly, because the requested temporary injunctive relief exceeds the scope of the Complaint and Plaintiffs cite no support for enjoining the Executive based on speculative fears of future unlawful disclosures, Plaintiffs' motion should be denied for this additional reason.

## CONCLUSION

For these reasons, the Court should deny the motion for a temporary restraining order.

Dated: February 6, 2025                    Respectfully submitted,

                                           EDWARD R. MARTIN, JR., D.C. Bar #481866
                                           United States Attorney

                                           BRIAN P. HUDAK
                                           Chief, Civil Division


                                           By: _____ /s/ *Jeremy S. Simon* _____
                                               JEREMY S. SIMON, D.C. BAR #447956
                                               DIMITAR P. GEORGIEV, D.C. BAR #1735756
                                               Assistant United States Attorneys
                                               601 D Street, NW
                                               Washington, DC 20530
                                               (202) 252-2500 (main)

                                           *Attorneys for the United States of America*