## SWORN DECLARATION OF JANE DOE #3    (25-325)

I, Jane Doe #3, being of sound mind and over the age of eighteen (18), do hereby state that I have personal knowledge of the matters asserted herein, and should I be called to testify in a court of competent jurisdiction, would state the following:

1. I am currently employed by the FBI as a staff employee. I have been employed with the FBI since 2017.

2. I am a career service employee, and not a political appointee. I did not exercise policy making authority with respect to any of my fellow FBI personnel.

3. My duties include providing intelligence analysis and examining background information.

4. On or about January 10, 2021, I was first assigned to support work on cases related to the events that took place on January 6, 2021 (hereinafter "January 6 Cases"). I recall that nearly all personnel were asked to help initially, as there was so much information to review.

5. I executed my duties in support of January 6 investigations at the direction of my supervisors, and in cooperation with personnel from the Department of Justice for a short while, less than three months. I was then assigned to other matters.

6. During the entire time that I supported January 6 Cases, I was never accused of violating FBI policies or procedures, or of executing my duties in a partisan or biased fashion.

7. During my entire FBI career, I have never been accused of being biased, weaponized or partisan in the execution of my duties.

8. I also assert that when I was assigned to support January 6 Cases, I was not given the option to decline my duties because of my political views or opinions. In fact, to my knowledge, the topic of my political views or opinions played no role whatsoever in the

assignment of my duties. In other words, I was given direct orders to execute my duties to the best of my abilities and in accordance with FBI policies, and that is precisely what I did.

9. On or about February 2, 2025, I received an email from my superiors instructing me to fill out a survey that was disseminated by the FBI, in which I was to identify what kinds of tasks I executed in relation to January 6 Cases.

10. Never before in my tenure with the FBI was I ever sent such a survey.

11. Although I had a great deal of trepidation about filling out the survey and its purposes, I filled it out as I was directed to do by my superiors.

12. I am aware that the survey I filled out was forwarded by the FBI to DOJ in accordance with instructions from Acting Deputy Attorney General, Mr. Emil Bove III.

13. I was never given a reason as to why I should be included on this list, other than the fact that I worked on January 6 Cases.

14. It is my understanding that at this time, if I were asked if I am under investigation for misconduct, I would not know how to answer, and would have to disclose the "review" being conducted by DOJ of my actions on January 6 Cases.

15. I believe that this has a current, immediate negative impact on what assignments I can currently take, and that I would be obligated to reveal this fact to a prosecutor if asked.

16. Because not all employees were assigned January 6 Cases, and some who were did not have to fill out the survey and are not on the list sent to DOJ, I believe that I am now at a distinct disadvantage vis-à-vis those employees with respect to competitive career moves.

17. I also assert that the accusation that I undertook my duties for partisan and weaponized reasons is defamatory and patently false. My actions with respect to the January 6 Cases were

strictly driven by the execution of my duties in accordance with my training, and had nothing to do with my personal views or allegiance to any political party.

18. In every January 6 case I worked on, there was ample reliable evidence that a violation of the federal criminal code had occurred, and it was my job to analyze data for that specific purpose.

19. I attest to the fact that being on Mr. Bove's list will cause me reputational harm that may impact me for the remainder of my career. The harm to my current ability to do my duties is real and tangible.

20. I have been informed that any derogatory information in my personnel record will impact my ability to be promoted. This would be the first such derogatory information associated with me since I began working at the FBI.

21. I am also extremely worried about what impact this investigation will have on my future job prospects, as I will likely have to disclose the existence of this investigation on any security clearance or job inquiries.

22. I am aware of the fact that several pardoned January 6 convicted felons, and those who support them, have been actively seeking information about the agents and employees who worked on those cases and have been active on social media demanding information about us.

23. I am extremely worried and anxious about my personal safety and that of my family should the fact that I worked on January 6 Cases be publicly disclosed. My concern extends not only to the actions of January 6 convicted felons, but also to others who may hold a grudge against the FBI.

24. The FBI has already communicated recent doxing and swatting incidents against personnel who worked on either the January 6 Cases or the Mar-a-Lago classified documents

case. The threat against me and others like me is very real, and is causing great anxiety amongst FBI personnel. It is not imaginary or speculative.

25. I assert that what is happening at the FBI is politically driven, and that I may be targeted if I assert any political views with friends or family. I have taken the step of contacting my county supervisor of elections to ask that my voter registration information be privatized. I have also decided to avoid any political conversations with colleagues and friends while off duty.

26. I further have serious concerns about my private emails and text messages being accessed by the FBI to ascertain my political leanings.

27. I have heard rumors that some of the software we use on government devices is able to listen in to ambient sounds via the microphones on our devices. I have not been able to corroborate that, but more senior personnel have specifically advised me to turn off all of my government devices when they are not in use and to be very careful what I say while those devices are on.

28. Finally, since this investigative process began, I have been deeply negatively impacted emotionally and mentally. These actions by DOJ have demoralized me and many of my colleagues who were simply doing our jobs.

And further Affiant sayeth not.

I, Jane Doe, do swear and/or affirm under the federal penalties for perjury that the foregoing statements are true to the best of my knowledge and recollection.

2/24/2025
Date

*Jane Doe #3*
Jane Doe #3

4