UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN AND JANE DOES 1 TO 9, et al.,

        Plaintiffs,

    v.

DEPARTMENT OF JUSTICE, et al.,

        Defendants.

Civil Action Nos.
25-0325 (JMC), 25-0328 (JMC)

**DEFENDANTS' COMBINED OPPOSITION TO PLAINTIFFS' MOTION FOR
EXPEDITED DISCOVERY AND MOTION TO DISMISS**

## TABLE OF CONTENTS

Table of Contents .................................................................................................................. i

Table of Authorities ............................................................................................................. ii

Introduction ........................................................................................................................... 1

Background ............................................................................................................................. 4

    I.      Factual Background ................................................................................ 4

    II.     Procedural Background ........................................................................ 6

Legal Standards .................................................................................................................... 9

Argument ............................................................................................................................... 10

    I.      The Court Should Dismiss This Consolidated Case For Lack of Subject-Matter Jurisdiction And For Failure To State A Claim. ................................................... 10

        A.     The Court Lacks Subject-Matter Jurisdiction Because Plaintiffs Have Failed To Plead Facts To Establish Standing. ............................................. 10

        B.     Plaintiffs Have Failed to State Any Claim Upon Which Relief Can Be Granted. ............................................................................................... 21

    II.     Even if Plaintiffs' Claims Could Proceed, Plaintiffs Are Not Entitled to Expedited Discovery. ........................................................................................................... 29

        A.     Any Discovery At This Juncture Is Inappropriate Because The Court Has Not Yet Determined Its Own Jurisdiction. ............................................. 29

        B.     Plaintiffs Are Not Entitled to Expedited Discovery Because They Have Failed to Establish Good Cause. ........................................................... 34

Conclusion ............................................................................................................................. 41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Excursions v. Yellen*,
  66 F.4th 272 (D.C. Cir. 2023) ..............................................................................12

*Aland v. Dep't of Interior*,
  Civ. A. No. 22-5821, 2022 WL 18027569 (N.D. Ill. Dec. 30, 2022) ...............................30, 31

*Am. Butterfly Ass'n v. Wolf*,
  977 F.3d 1244 (D.C. Cir. 2020) ............................................................................10

*Am. Chem. Council v. Dep't of Transp.*,
  468 F.3d 810 (D.C. Cir. 2006) .............................................................................11

*Am. Fed. of Lab. v. Dep't of Lab.*,
  Civ. A. No. 25-0339 (JDB), 2025 WL 543938 (D.D.C. Feb. 7, 2025) ...................................20

*Am. Fed'n of Gov't Employees v. HUD*,
  118 F.3d 786 (D.C. Cir. 1997) .............................................................................27

*Am. Nat'l Ins. Co. v. FDIC*,
  642 F.3d 1137 (D.C. Cir. 2011) ............................................................................10

*Anderson v. U.S. Att'ys Off.*,
  Civ. A. No. 91-2262, 1992 WL 159186 (D.D.C. Jun. 19, 1992) ........................................32

*Aref v. Lynch*,
  833 F.3d 242 (D.C. Cir. 2016) .............................................................................21

*Ariz. Christian Sch. Tuition Org. v. Winn*,
  563 U.S. 125 (2011) .........................................................................................11

*\*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................10, 31, 37, 40

*\*Attkisson v. Holder*,
  113 F. Supp. 3d 156 (D.D.C. 2015) ...........................................................35, 36, 37, 38

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .........................................................................................31

*Bennett v. Spear*,
  520 U.S. 154 (1997) .........................................................................................28

*Brewer v. Holder*,
    Civ. A. No. 08-1747 (BJR), 2013 WL 12399112 (D.D.C. Dec. 16, 2013).............................11

*Capital Eng'g & Mfg. Co. v. Weinberger*,
    Civ. A. No. 87-1623, 1988 WL 13272 (D.D.C. Feb. 5, 1988) ..................................33

*Chavous v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*,
    201 F.R.D. 1 (D.D.C. 2001) ...........................................................32

*Chichakli v. Tillerson*,
    882 F.3d 229 (D.C. Cir. 2018) .......................................................24

*Chudasama v. Mazda Motor Corp.*,
    123 F.3d 1353 (11th Cir. 1997) ......................................................33

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)...................................................................11

*Clapper v. Amnesty Int'l*,
    568 U.S. 398 (2013) .................................................................11

*Clemmons v. Dep't of Homeland Sec.*,
    Civ. A. No. 06-0518 (RCL), 2007 WL 2059796 (D.D.C. July 13, 2007)...................32

*Connick v. Myers*,
    461 U.S. 138 (1983) .............................................................21, 22

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
    603 U.S. 799 (2024) .................................................................28

*Costal States Gas Corp. v. Dep't of Energy*,
    84 F.R.D. 278 (D. Del. 1979) ........................................................33

*Covad Commc'ns Co. v. Revonet, Inc.*,
    250 F.R.D. 14 (D.D.C. 2008)..........................................................32

*Cox v. Sec'y of Lab.*,
    739 F. Supp. 28 (D.D.C. 1990) .......................................................29

*Davis v. FEC*,
    554 U.S. 724 (2008) .................................................................11

*Dhiab v. Obama*,
    787 F.3d 563 (D.C. Cir. 2015) .......................................................29

*Diamond Servs. Mgmt. Co., LLC v. C&C Jewelry Mfg., Inc.*,
   Civ. A. No. 19-7675, 2021 WL 2433653 (N.D. Ill. June 15, 2021) .......................................30

*Disability Rts. Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*,
   234 F.R.D. 4 (D.D.C. 2006) ...................................................................................................34

*Diversity v. Bernhardt*,
   490 F. Supp. 3d 40 (D.D.C. 2020) .........................................................................................19

*Doe v. Dep't of Just.*,
   660 F. Supp. 2d 31 (D.D.C. 2009) .........................................................................................25

*Doe v. Stephens*,
   851 F.2d 1457 (D.C. Cir. 1988) .............................................................................................23

*Dominguez v. UAL Corp.*,
   666 F.3d 1359 (D.C. Cir. 2012) .............................................................................................11

*Dunlap v. Presidential Advisory Comm'n on Election Integrity*,
   319 F. Supp. 3d 70 (D.D.C. 2018) .........................................................................................34

*E. Tex. Motor Freight Sys. Inc., v. Rodriguez*,
   431 U.S. 395 (1977) ...............................................................................................................11

*Elgin v. Dep't of Treasury*,
   567 U.S. 1 (2012) ..............................................................................................................24, 27

*Equal Rts. Ctr. v. Post Props., Inc.*,
   633 F.3d 1136 (D.C. Cir. 2011) .............................................................................................20

*FAA v. Cooper*,
   566 U.S. 284 (2012) ..........................................................................................................23, 24

*\*Garcetti v. Ceballos*,
   547 U.S. 410 (2006) ..........................................................................................................21, 22

*Graham v. Ashcroft*,
   358 F.3d 931 (D.C. Cir. 2004) ...............................................................................................28

*Gulf Coast Mar. Supply, Inc. v. United States*,
   867 F.3d 123 (D.C. Cir. 2017) ...............................................................................................10

*Guttenberg v. Emery*,
   26 F. Supp. 3d 88 (D.D.C. 2014) ...........................................................................................38

*Haase v. Sessions*,
  835 F.2d 902 (D.C. Cir. 1987) ................................................................................................9

*Haase v. Sessions*,
  893 F.2d 370 (D.C. Cir. 1990) ..............................................................................................23

*Harrison v. Bowen*,
  815 F.2d 1505 (D.C. Cir. 1987) .......................................................................................24, 27

*In re Cheney*,
  406 F.3d 723 (D.C. Cir. 2005) ..............................................................................................29

*In re Off. of Pers. Mgmt. Data Sec. Breach Litig.* ("OPM"),
  928 F.3d 42 (D.C. Cir. 2019) ................................................................................... 12, 16, 27

*Institut Pasteur v. Chiron Corp.*,
  315 F. Supp. 2d 33 (D.D.C. 2004) .........................................................................................31

*Janay v. Blinken*,
  743 F. Supp. 3d 96 (D.D.C. 2024) .........................................................................................28

*Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*,
  402 F.3d 1249 (D.C. Cir. 2005) .............................................................................................10

*Kaplan v. Cent. Bank of the Islamic Republic of Iran*,
  896 F.3d 501 (D.C. Cir. 2018) ..............................................................................................30

*Kareem v. Haspel*,
  986 F.3d 859 (D.C. Cir. 2021) ................................................................................. 12, 15, 19

*Kauffman v. Anglo-Am. Sch. of Sofia*,
  Civ. A. No. 89-3419 (RCL), 1992 WL 200025 (D.D.C. July 30, 1992) .................................33

*Kelly v. Raimondo*,
  Civ. A. No. 20-3203 (RDM), 2022 WL 14807447 (D.D.C. Oct. 26, 2022) ...........................32

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ...............................................................................................................9

*Lamb v. Millennium Challenge Corp.*,
  228 F. Supp. 3d 28 (D.D.C. 2017) .........................................................................................23

*Langeman v. Garland*,
  88 F.4th 289 (D.C. Cir. 2023) ................................................................................. 16, 26, 27

*Legal Tech. Group, Inc. v. Mukerji*,
　Civ. A. No. 17-0631 (RBW), 2017 WL 7279398 (D.D.C. Jun. 5, 2017) ...............................34

*Loumiet v. United States*,
　225 F. Supp. 3d 79 (D.D.C. 2016) ........................................................................32

*Lujan v. Defs. of Wildlife*,
　504 U.S. 555 (1992) ...........................................................................9, 11, 19

*Maljack Prods., Inc. v. Motion Picture Ass'n of Am.*,
　Civ. A. No. 90-1121, 1990 WL 157900 (D.D.C. Oct. 3, 1990) ...........................................33

*McCabe v. Barr*,
　490 F. Supp. 3d 198 (D.D.C. 2020) .......................................................................28

*McHugh v. Ill. Dep't of Transp.*,
　55 F.4th 529 (7th Cir. 2022) ............................................................................31

*New Mexico v. Musk*,
　Civ. A. No. 25-0429 (TSC), 2025 WL 520583 (D.D.C. Feb. 18, 2025)...................................17

*Notaro v. Koch*,
　95 F.R.D 403 (S.D.N.Y. 1982) ...........................................................................34

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Dep't of Transp.*,
　879 F.3d 339 (D.C. Cir. 2018)...........................................................................16

*Prows v. Dep't of Just.*,
　Civ. A. No. 87-1657, 1988 WL 8256 (D.D.C. Jan. 22, 1988)................................................33

*Risley v. Hawk*,
　108 F.3d 1396 (D.C. Cir. 1997) ..........................................................................23

*Rutman Wine Co. v. E.&J. Gallo Winery*,
　829 F.2d 729 (9th Cir. 1987) ...........................................................................33

*Sai v. Dep't of Homeland Sec.*,
　99 F. Supp. 3d 50 (D.D.C. 2015) ........................................................................32

*Sanchez-Mercedes v. Bureau of Prisons*,
　453 F. Supp. 3d 404 (D.D.C. 2020) ...................................................................9, 10

*Scott v. Conley*,
　937 F. Supp. 2d 60 (D.D.C. 2013) .......................................................................23

*Sierra Club v. EPA,*
    292 F.3d 895 (D.C. Cir. 2002) ........................................................................................11

*Sinclair Nat'l Bank v. Off. of the Comptroller of the Currency,*
    Civ. A. No. 00-2398, 2000 WL 34012862 (D.D.C. Dec. 18, 2000) .........................................33

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.,*
    549 U.S. 422 (2007) ....................................................................................................30

*Solidarity with People of El Salvador v. Sessions,*
    929 F.2d 742 (D.C. Cir. 1991) .......................................................................................11

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ......................................................................................................12

*Taylor v. Clark,*
    821 F. Supp. 2d 370 (D.D.C. 2011) ...................................................................................9

*Theint Win Htet v. Trump,*
    Civ. A. No. 24-1446 (RC), 2025 WL 522033 (D.D.C. Feb. 18, 2025)....................................28

*Transp. Coal. v. Dep't of Transp.,*
    Civ. A. No. 20-0883 (CKK), 2021 WL 7287302 (D.D.C. Mar. 21, 2021) ...........................32

*True the Vote v. IRS,*
    Civ. A. No. 13-0734 (RBW), 2014 WL 4347197 (D.D.C. Aug. 7, 2014) .............................35

*United States v. Fausto,*
    484 U.S. 439 (1988) ....................................................................................................28

*United States v. United Mine Workers of Am.,*
    330 U.S. 258 (1947) ...............................................................................................29, 30

*United Transp. Union v. Interstate Com Comm'n,*
    891 F.2d 908 (D.C. Cir. 1989) .......................................................................................15

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens,*
    529 U.S. 765 (2000) ....................................................................................................31

*Walker v. Ashcroft,* Civ. A.,
    No. 99-2385 (GK), 2001 WL 37153642 n.6 (D.D.C. Apr. 30, 2001)....................................24

**Statutes**

5 U.S.C. § 552a(b)(1) ...............................................................................................24, 25

5 U.S.C. § 552a(b)(3) ...........................................................................................24, 25, 26

5 U.S.C. § 552a(e)(6) ................................................................ 2, 7, 22, 23

5 U.S.C. § 552a(g)(1) ................................................................ 23, 24

5 U.S.C. § 706(2) ........................................................................ 7

28 U.S.C. § 1361 ..................................................................... 7, 29

**Rules**

Fed. R. Civ. P. 7(m) .................................................................... 9

Fed. R. Civ. P. 12(b)(1) .............................................................. 1, 3, 9

Fed. R. Civ. P. 12(b)(6) .............................................................. 10, 21

Fed. R. Civ. P. 26(f) ..................................................................... 3

**Other Authorities**

Exec. Order 14,147: Ending the Weaponization of the Federal Government,
    90 Fed. Reg. 8235 (Jan. 20, 2025) ................................................ 4, 25

System of Records,
    70 Fed. Reg. 7513 (Feb. 14, 2005) ................................................. 25

Defendants, the Department of Justice ("Department") and the United States of America (collectively, "Defendants"), respectfully move this Court to dismiss the above-captioned case and the related action, *Federal Bureau of Investigation Agents Association v. Department of Justice*, Civ. A. No. 25-0328 (JMC) (D.D.C.) ("*FBI Agents*") pursuant to Federal Rules of Civil Procedure (the "Rules") 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim for which relief may be granted. Because there is no viable claim, and for the other reasons set forth below, Plaintiffs' Motion for Expedited Discovery (ECF No. 20)[1] also should be denied.

## INTRODUCTION

These two consolidated cases seek a prophylactic injunction against the Executive based on an asserted fear that a public disclosure by the Department of a list containing Plaintiffs' names and work on January 6 matters might occur at some point in the future, but they fail to provide any supporting facts to establish either their standing to sue or the existence of any actionable underlying claim. Although Plaintiffs assert that such a disclosure would cause harm to at least some of them (i.e., those members of the putative class or the FBI Agents Association whose affiliation with the Federal Bureau of Investigation ("FBI") and January 6 matters is not yet publicly known) were it to occur, that is not an issue ripe for consideration by the Court.

*First*, the Court lacks subject-matter jurisdiction because the "named" Plaintiffs (i.e., those proceeding under "Doe" pseudonyms and the agents' association) lack standing to bring these cases. As this Court recognized during the hearing on Plaintiffs' motions for temporary restraining orders, "a fear of something happening is not sufficient even if . . . the fear is a serious one." Hearing Tr. (Feb. 6, 2025) at 23. Plaintiffs' Amended Complaint fails to plead specific facts that

---

[1]     Citations to docket filings are to filings made in the lead action in this consolidated matter, *Does v. Department of Justice*, Civ. A. No. 25-0325 (JMC) (D.D.C.) ("*Does*"), unless otherwise noted herein.

could raise a plausible inference that, absent injunctive relief, there is an imminent risk of public disclosure of the list at issue. Their alleged standing to sue instead rests on speculation and conclusory allegations, neither of which is sufficient to satisfy the requirements of Article III.

*Second*, neither the creation of the list by the FBI at the Department's request, nor the FBI's sharing of the list with the Department, constitutes a violation of any of the Constitutional or statutory provisions Plaintiffs identify in their pleadings. Plaintiffs' First Amendment claims fail because the list at issue relates to the performance of Plaintiffs' official duties and thus does not reflect any protected activity covered by that Amendment. Plaintiffs' Fifth Amendment claim fails because the only substantive law they identify as the basis for that claim is the Privacy Act, and as discussed further below, their Privacy Act claims fail. They also have not identified any deprivation of process by the FBI's compilation of work performed in their official duties or the sharing of that information with the Department, of which the FBI is a component. Moreover, as the Supreme Court and the D.C. Circuit have consistently stated, there is no recognized Fifth Amendment right to privacy that Plaintiffs may judicially vindicate.

Plaintiffs' statutory claims fare no better. Their claims based on sections 552a(b) and 552a(e)(6) of the Privacy Act fail for numerous reasons. First, Plaintiffs seek as a remedy injunctive relief, but the Privacy Act only affords injunctive relief for claims based on certain subsections, specifically, those pertaining to amending records or requesting access to records. Those sections do not form the bases for Plaintiffs' claims and require administrative exhaustion in any event. Second, Plaintiffs' claim under section 552a(e)(6) fails because that section does not apply to intra-agency disclosures. Third, to state a claim under the Privacy Act for alleged violations of sections 552a(e)(6) or 552a(b), Plaintiffs must plead that they have experienced actual pecuniary harm from an alleged improper disclosure. But Plaintiffs plead only a fear of future

harm, which is insufficient to state a claim under the Privacy Act.  Finally, Plaintiffs have failed to plead any improper disclosure.  The list at issue was compiled in connection with an Executive Order directing the Attorney General to commence an internal review.  Department officials thus have a need to know the information to perform their official duties in carrying out that Executive Order.  Moreover, there exists a routine use for sharing of personnel information between the FBI and the Department, providing a further independent basis to dismiss Plaintiffs' Privacy Act claims.

Plaintiffs' Administrative Procedure Act ("APA") claim fails because the Civil Service Reform Act is the exclusive remedy for any claim by FBI personnel regarding their employment. Further, and equally dispositive, Plaintiffs have failed to identify a final agency action subject to judicial review.  Finally, Plaintiffs' mandamus claim fails because they have not identified a nondiscretionary duty owed to them related to the list at issue.

Because Plaintiffs' claims are subject to dismissal under Rules 12(b)(1) and 12(b)(6), they are not entitled to conduct expedited discovery and their motion for leave to do so should be denied. At a minimum, Plaintiffs' untenable motion should be held in abeyance while the Court considers Defendants' motion to dismiss.  Were the Court to consider the discovery motion despite the pending dispositive motion,  Plaintiffs still would not be entitled to expedited discovery because (1) their discovery requests are not narrowly tailored to discover information relevant to their preliminary injunction motion, (2) the burden on the Department to respond to the discovery requests on an expedited basis—which likely requires coordination with multiple agencies and departments, including the White House—would be disproportionately heavy, and (3) Plaintiffs should not be permitted to seek merits discovery at this early stage of the litigation as the parties have not had the requisite Rule 26(f) conference.

For these reasons, Defendants respectfully request that the Court deny Plaintiffs' motion for expedited discovery (ECF No. 20), grant the Department's motion to dismiss, and dismiss these consolidated cases in their entirety.

**BACKGROUND**

## I.    Factual Background

On January 20, 2025, the President directed the Attorney General to

> take appropriate action to review the activities of all departments and agencies exercising civil or criminal enforcement authority of the United States, including, but not limited to, the Department of Justice, the Securities and Exchange Commission, and the Federal Trade Commission, over the last 4 years and identify any instances where a department's or agency's conduct appears to have been contrary to the purposes and policies of this order, and prepare a report to be submitted to the President, through the Deputy Chief of Staff for Policy and the Counsel to the President, with recommendations for appropriate remedial actions to be taken to fulfill the purposes and policies of this order.

Exec. Order 14,147: Ending the Weaponization of the Federal Government § 3, 90 Fed. Reg. 8235, 8235 (Jan. 20, 2025).  Plaintiffs have not alleged that the Executive Order is unlawful or that there would be any basis for the Department not to comply with the Order.  Am. Compl. (ECF No. 24) ¶¶ 62-63.

Following the issuance of the Executive Order, the Acting Deputy Attorney General requested the FBI—a component of the Department—to "identify the core team in Washington, D.C. responsible for the investigation related to events on January 6, 2021."  Acting Deputy AG Feb. 5, 2025, Email (ECF No. 11-3) at 2.  According to an email dated January 31, 2025, the FBI's acting leadership failed to comply with that request "necessitat[ing]" the Department's issuance of a broader directive to the FBI on January 31, 2025, specifically, to identify all FBI personnel assigned to investigations relating to January 6, 2021.  *Id.*; *see also* Acting Deputy Director Feb. 2, 2025, Email (ECF No. 11-5) at 3-4.  That email explained the broader request "was intended to obtain a complete data set that the Justice Department can reliably pare down to the core team that

will be the focus of the weaponization review pursuant to the Executive Order."  Acting Deputy

AG Feb. 5, 2025, Email (ECF No. 11-3) at 2.  The "information requested was intended to

'commence a review <u>process</u>'" pursuant to the Executive Order.  *Id.* (underline in original).  The

email emphasized:

> [n]o FBI employee who simply followed orders and carried out their duties in an
> ethical manner with respect to January 6 investigations is at risk of termination or
> other penalties.  The only individuals who should be concerned about the process
> initiated by my January 31, 2025 memo are those who acted with corrupt or partisan
> intent, who blatantly defied orders from Department leadership, or who exercised
> discretion in weaponizing the FBI.

*Id*. at 3.  The Department specifically asked for the following information:

> All current and former FBI personnel assigned at any time to investigations and/or
> prosecutions relating to (1) events that occurred at or near the United States Capitol
> on January 6, 2021; and (2) *United States v. Haniyeh*, et al., 24 Mag. 438
> (S.D.N.Y.).  These lists should include relevant supervisory personnel in FBI
> regional offices and field divisions, as well as at FBI headquarters.  For each
> employee included in the list, provide the current title, office to which the person
> is assigned, role in the investigation or prosecution, and date of last activity relating
> to the investigation or prosecution.

Acting Deputy Director Feb. 5, 2025, Email (ECF No. 11-5) at 3-4.

    In response, the FBI provided to the Department a list that "identified employees only by

Unique Employee Identifier" and included "their current title, their title at the time of the relevant

investigation or prosecution, the office to which they are currently assigned, their role in the

relevant investigation or prosecution, and the date of last activity related to the investigation or

prosecution."  Acting FBI Director Feb. 4, 2025, Email (ECF No. 11-2) at 1.  The list was derived

from information contained in the FBI's Sentinel case management system as well as information

from a survey to FBI personnel identified from Sentinel as having worked on January 6 matters.

Acting Deputy Director Feb. 2, 2025, Email (ECF No. 11-5) at 2.  With respect to the survey,

employees had the option of "submit[ing] their own information to ensure accuracy" or could

"request their management to answer the questionnaire on their behalf."  *Id.*  Subsequently, the

FBI provided the Department with the names associated with each employee identifier on the list. Ex. 1, Acting FBI Director Feb. 6, 2025, Email (attached hereto).

## II.     <u>Procedural Background</u>

Plaintiffs in *Does*, consist of nine individuals proceeding under pseudonym who are allegedly "employees of the FBI who worked on Jan. 6 and/or Mar-a-Lago cases." *Does* Compl. (ECF No. 5) ¶ 1. *FBI Agents*, in contrast, is not a putative class. Instead, it is brought by an association of current and former FBI agents as well as six Doe plaintiffs[2] described as "Special Agents, forensic examiners, a forensic chemist, and an intelligence analyst." *FBI Agents* Compl. (ECF No. 1) ¶ 5.

On February 6, 2025, the Court consolidated the two cases. *See* Feb. 6, 2025, Min. Entry. For ease of references, the Plaintiffs in this case and the *FBI Agents* matter are collectively referred to as "Plaintiffs," unless otherwise separately identified. On February 24, 2025, Plaintiffs filed a combined Amended Complaint (ECF No. 24, "Am. Compl.").

The Amended Complaint alleges that the Doe Plaintiffs are "Special Agents, forensic examiners, a forensic analyst, and an intelligence analyst." Am. Compl. (ECF No. 24) ¶ 6. Doe Class Plaintiffs allegedly are "Special Agents and other FBI employees." *Id.* ¶ 7. "Each is currently employed by the FBI." *Id.* ¶¶ 6, 7. The Amended Complaint does not allege whether their positions are public-facing, or whether their names already are in the public domain as a result of the performance of their duties. Doe Class Plaintiffs purport to represent a putative class of FBI employees, though the Amended Complaint does not outline the class, other than to allege the "disclosure of the identities of Plaintiffs and other similarly situated persons would cause

---

[2]     The initial *FBI Agents* complaint named seven plaintiffs. Compl. at 1, *FBI Agents*, *supra*, ECF No. 1. On February 23, 2025, one plaintiff voluntarily dismissed his claims pursuant to Rule 41. Withdrawal Notice, *FBI Agents*, *supra*, ECF No. 25.

irreparable harm to Plaintiffs by exposing them to the reasonable probability of violence." *Id.*
¶ 124.

Plaintiffs speculate that the list provided by the FBI to the Department will be used to
terminate their employment based on limited examples of recent employment actions taken against
other employees in other Department components, who they do not allege are similarly situated to
them. *Id.* ¶¶ 85, 89. They also speculate that the list might be leaked outside the government to
individuals that harbor ill will toward them but fail to plead any specific facts to support that
allegation. *Id.* ¶ 90. Plaintiffs purport to bring claims under the Privacy Act, 5 U.S.C. § 552a(e)(6)
and 552a(b) (counts I, II), *id.* ¶¶ 94-101; the APA, 5 U.S.C. § 706(2) (count III), *id.* ¶¶ 102-04;
mandamus, 28 U.S.C. § 1361, *id.* ¶¶ 105-10; First Amendment retaliation (count V), *id.* ¶¶ 111-21;
Fifth Amendment-Right to Privacy (count VI), *id.* ¶¶ 122-25; and First Amendment—Free Speech
(count VII), *id.* ¶¶ 126-31. They seek injunctive relief, mandamus, and attorney's fees. *Id.* at 39.

Simultaneously with the filing of their initial complaints, Plaintiffs also moved for a
temporary restraining order. *See generally* TRO Mot. (ECF No. 3).[3] Their pleadings and motions
rest entirely on speculation about the alleged "threat of public disclosure of their information."
*See id.* at 9; Am. Compl. (ECF No. 24) ¶ 75 ("Consolidated Plaintiffs continue to live in a state of
fear that their names will be disclosed to the public after A/DAG Bove did not make any
affirmative statements that he would protect these individuals' names from public disclosure.");
*id.* ¶ 81 ("Given A/DAG Bove's earlier [unidentified] comments, consolidated Plaintiffs remain
fearful that their identities, specifically their names, will be released to the public."); *id.* ¶ 90 ("On
information and belief, in conjunction with the suspected unlawful adverse employment actions

---

[3]     *See also* TRO Mot., *FBI Agents*, *supra*, ECF No. 2. The two motions for temporary
restraining orders filed in these consolidated cases raised substantially similar arguments.

they are planning, Defendants have persisted in the position that they have lawful authority to publicly disseminate the names of targeted agents, including but not limited to those employees who responded to the Survey, and/or those employees who the Defendants plan to demote, transfer and/or terminate based on this survey, and/or publicly disseminate employees' responses to the Survey questions outlined above."); *id.* ¶ 91 ("Defendants will not disavow the public disclosure, notwithstanding that federal law prohibits such an action.").

Following the hearing on Plaintiffs' TRO motions, the parties negotiated a consent order that the Court adopted. Order (ECF No. 14). Consistent with its representations during the hearing, the Government agreed "not [to] disseminate the list at issue in these consolidated cases (and any subsequent versions of that list, including any record pairing the unique identifiers on the list to names) to the public, directly or indirectly, before the Court rules on Plaintiffs' anticipated motions for a preliminary injunction." *Id.* ¶ 1. The Court also set a briefing schedule on Plaintiffs' anticipated motion for preliminary injunction. *Id.* ¶ 3. Consistent with that scheduling order, Plaintiffs filed their motion for preliminary injunction. *See generally* Prelim. Inj. Mot. (ECF No. 25). Defendants' response to that motion is due on March 14, 2025.

Approximately ten days after the temporary restraining order hearing and seven days before their preliminary injunction motion was due, Plaintiffs moved for leave to serve on Defendants broad discovery requests on an expedited basis that go far beyond the limited issues currently before the Court. *See generally* Pl.'s Disc. Reqs. (ECF No. 20-2) at 6-8. The discovery requests consist of fifteen interrogatories (including sub-paragraphs) and nine requests for production. *Id.* Much of the information sought by Interrogatory Nos. 1 to 5 and Document Request Nos. 1 to 3 concerns the development and purpose of the FBI's survey, even though that information already appears in the record. Plaintiffs' expansive discovery requests also seek lists

of Executive Branch employees with access to the list provided by the FBI to the Department (Interrogatory Nos. 6 to 8, Document Request No. 3), and communications internal to the Department related to its ongoing review (Interrogatory Nos. 9 to 15, Document Request Nos. 3 to 9).  Plaintiffs allegedly require this broad information "to seek a temporary restraining order and/or preliminary injunction against the Department of Justice and United States of America enjoining the Defendants from publicly disclosing the names of targeted individuals at the Federal Bureau of Investigation while this litigation proceeds."  Mot. for Expedited Disc. (ECF No. 20-1) at 7.  As reflected in the Local Civil Rule 7(m) statement to that motion, Defendants oppose that motion, including on the basis that Plaintiffs' expansive discovery is not warranted at this early stage of the litigation.  *See* Resp. to Court Order (ECF No. 21) at 1-2.  The Court did not order Defendants to respond to Plaintiff's expedited discovery motion until two days after Plaintiffs' preliminary injunction motion filing deadline. *See* Min. Order (Feb. 19, 2025).

For the reasons that follow, this consolidated matter should be dismissed and Plaintiffs' request for leave to take expedited discovery should be denied as moot, if not on the merits outright.

## LEGAL STANDARDS

A motion to dismiss for lack of standing is properly considered under Rule 12(b)(1), as "the defect of standing is a defect in subject matter jurisdiction."  *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).  Established law requires the Court to "determine whether it has subject matter jurisdiction in the first instance." *Taylor v. Clark*, 821 F. Supp. 2d 370, 372 (D.D.C. 2011) (cleaned up).  Federal courts are courts of limited jurisdiction and the law "presume[s]" that "a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  "To survive a Rule 12(b)(1) motion, a plaintiff must establish the Court's jurisdiction over his claims." *Sanchez-*

*Mercedes v. Bureau of Prisons*, 453 F. Supp. 3d 404, 414 (D.D.C. 2020). "The Court must 'assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Id.* (quoting *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)). The court may consider materials outside the pleadings in determining whether it has jurisdiction. *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). "If the Court determines that it lacks jurisdiction as to any claim, it must dismiss that claim." *Sanchez-Mercedes*, 453 F. Supp. 3d at 414. A "dismissal for want of subject-matter jurisdiction can only be without prejudice[.]" *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1253 (D.C. Cir. 2020).

A complaint must be dismissed if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). The Court must "take as true all well-pled factual allegations within [a plaintiff's] complaint" while also "disregard[ing] any legal conclusions, legal contentions couched as factual allegations, and unsupported factual allegations within the complaint." *Gulf Coast Mar. Supply, Inc. v. United States*, 867 F.3d 123, 128 (D.C. Cir. 2017).

## ARGUMENT

**I.    The Court Should Dismiss This Consolidated Case For Lack of Subject-Matter Jurisdiction And For Failure To State A Claim.**

### A.    The Court Lacks Subject-Matter Jurisdiction Because Plaintiffs Have Failed To Plead Facts To Establish Standing.

From the beginning, Defendants have challenged Plaintiffs' standing to bring these claims. TRO Opp'n (ECF No. 11) at 8-11. Standing is a necessary predicate to any exercise of federal jurisdiction and, when it is lacking, the dispute fails to present a concrete case or controversy under

Article III. *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133-34 (2011); *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012).    To establish standing, Plaintiffs must demonstrate that they suffered an injury-in-fact, specifically an injury that is "concrete, particularized, and actual or imminent;" the injury is "fairly traceable to the challenged action;" and that it is "likely," not speculative; and the injury is "redressable by a favorable ruling." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013) (quotation marks omitted); *Lujan*, 504 U.S. at 560-61. Plaintiffs bear the burden of establishing each element. *Lujan*, 504 U.S. at 561. And, when plaintiffs purport to represent a putative class as the Doe Class Plaintiffs do in this case, the standing analysis necessarily focuses on whether the putative class representatives have standing to sue in their own right and "once a plaintiff's individual claims fail, he cannot be an adequate representative for class claims under Rule 23." *Brewer v. Holder*, Civ. A. No. 08-1747 (BJR), 2013 WL 12399112, at \*4 (D.D.C. Dec. 16, 2013) (citing *E. Tex. Motor Freight Sys. Inc., v. Rodriguez*, 431 U.S. 395, 403 (1977)). Similarly, when as here an association plaintiff does not plead any facts to establish standing in its own right as to the claims at issue, its standing would be derivative of the standing of its members. *See, e.g.*, *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002); *Am. Chem. Council v. Dep't of Transp.,* 468 F.3d 810, 815 (D.C. Cir. 2006).

Importantly, standing is "not dispensed in gross." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (quotation marks omitted). "Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Id.* (quotation marks omitted). Here, Plaintiffs seek solely prospective relief and thus must sufficiently allege they face an imminent threat of future harm to have standing to seek the requested relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 109 (1983); *Comm. in Solidarity with People of El Salvador v. Sessions*,

929 F.2d 742, 744 (D.C. Cir. 1991) ("In injunction suits, plaintiffs usually must establish that the allegedly illegal actions of the past are causing or threatening to cause them present injuries.").

It is well settled that an "allegation of future injury" to support the injury-in-fact element of standing "passes Article III muster only if it is certainly impending, or there is a substantial risk that the harm will occur." *In re Off. of Pers. Mgmt. Data Sec. Breach Litig. ("OPM")*, 928 F.3d 42, 54 (D.C. Cir. 2019) (quotation marks omitted); *see also Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir. 2021) ("Because [plaintiff's] complaint seeks prospective declaratory and injunctive relief, he must establish an ongoing or future injury that is certainly impending; he may not rest on past injury." (quotation marks omitted)). In addition to being "certainly impending," *Kareem*, 986 F.3d at 865 (quotation marks omitted), allegations of future injury, moreover, must be "particular and concrete." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 109 (1998).

But Plaintiffs here do not allege a "certainly impending" future injury. *Kareem*, 986 F.3d at 865. At best, Plaintiffs speculate about the potential for future injury based on conclusory allegations that are insufficient. *See Air Excursions v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023) (conclusory statements are insufficient to establish standing). In assessing whether a complaint has adequately pled standing, this Court must set "mere conclusory statements aside" and determine whether the Amended Complaint contains "sufficient factual matter, accepted as true, to support an inference of standing" that is plausible on its face.'" *Id.* (quotation marks omitted). This "requires more than a sheer possibility that the plaintiff has standing to sue." *Id*. at 278 (quotation marks omitted).

Plaintiffs identify in their pleadings two potential future injuries. First, they speculate that they face the prospect of potential future termination from the information about their employment that the FBI has provided to officials within the Department. Am. Compl. (ECF No. 24) at 2 ("The

consolidated Plaintiffs collectively seek this Court's protection from Defendants' anticipated adverse employment actions against them and similarly situated FBI personnel"); *id.* ¶ 85 ("On information and belief, acting leadership at [the Department] J is planning the imminent, mass, unlawful termination, or other adverse action, of Bureau employees who had any involvement in certain investigations related to President Trump, including lawful investigation of January 6 cases and the lawful search of President Trump's residence at Mar-a-Lago."). To support their allegations, Plaintiffs allege "on information and belief" from news articles that several FBI employees are allegedly "targeted for unlawful firing or other adverse employment action," *id.* ¶ 86, and also point to public comments by the President that some FBI employees may be terminated, *id.* ¶ 89. But they allege no facts to plausibly raise an inference that their termination from employment is "certainly impending" as a result of the employment information that has been provided. *See generally* Am. Compl.

Second, Plaintiffs speculate that Defendants will publicize the names on the list. Am. Compl. (ECF No. 24) ¶ 90 ("On information and belief, in conjunction with the suspected unlawful adverse employment actions they are planning, Defendants have persisted in the position that they have lawful authority to publicly disseminate the names of targeted agents, including but not limited to those employees who responded to the Survey, and/or those employees who the Defendants plan to demote, transfer and/or terminate based on this survey, and/or publicly disseminate employees' responses to the Survey questions outlined above."). It is telling that none of the declarations Plaintiffs have submitted in support of their motion for preliminary injunction— which exclusively asks the Court to enjoin Defendants from publicizing the list–includes any statement supporting their allegations that Defendants intend to publicize the list or terminate their employment. During the TRO hearing, Plaintiffs' counsel asserted "[t]he clients we have, of

course are on the inside," "[t]here is information, of course, that has been fed to us about the imminency [of public disclosure]" and "[i]f we need to go into more detail with the Court, we can certainly go down that route[.]" Hearing Tr. (Feb. 6, 2025) at 17. Choosing quantity over substance, Plaintiffs have submitted twelve declarations. The declarations by Jane Doe #1 (*FBI Agents*) (ECF No. 25-10), Jane Doe #2 (*FBI Agents*) (ECF No. 25-11), Jane Doe #3 (*FBI Agents*) (ECF No. 25-12), John Doe #1 (*FBI Agents*) (ECF No. 25-13), John Doe #3 (*FBI Agents*) (ECF No. 25-14), John Doe #4 (*FBI Agents*) (ECF No. 25-15), Jane Doe #1 (*Does*) (ECF No. 25-16), Jane Doe #2 (*Does*) (ECF No. 25-17), and Jane Doe #3 (*Does*) (ECF No. 25-18) appear nearly identical in form and substance, and only address those individual Plaintiffs' concerns regarding the Department's internal review. *See, e.g.*, Jane Doe #3 (*Does*) Decl. (ECF No. 25-18) ¶¶ 20-21 (expressing concerns about the impact of the review on the Plaintiffs' future job prospects); *id.* ¶ 22 (expressing safety concern should plaintiff's information be released). Nothing in the declarations expresses personal knowledge (or even rumors) that Defendants intend to release Plaintiffs' names.

The remaining declarations are equally immaterial. The declarations by Frank Figliuzzi and Lewis Schiliro describe internal processes based on the declarants' knowledge of those processes decades ago; neither declaration is based on personal knowledge of the Department's review at this time. *See* Figliuzzi Decl. (ECF No. 25-19); Schiliro Decl. (ECF No. 25-20). The association's declaration likewise describes its mission and membership, FBI Agents Ass'n Decl. (ECF No. 25-9) ¶¶1-17; regurgitates the allegations in the Amended Complaint, *id.* ¶¶ 18-36; and offers conclusory statements regarding the alleged harm the association or its members may suffer without details that can be properly tested or scrutinized, *id.* ¶¶ 37-59. None of the declarations—the first documents Plaintiffs submit under penalty of perjury—assert either (1) the declarant is

imminently threatened by an adverse personnel action, or (2) the declarant has any personal knowledge that Defendants intend to publicize Plaintiffs' names.

In fact, contemporaneous emails to FBI personnel expressly state no personnel actions will be taken as to any individual unless the internal review reveals an individual had engaged in misconduct. Acting Deputy Att'y Gen. Feb. 5, 2025, Email (ECF No. 11-3) at 3. Moreover, any such outcome is speculative and would rest on a chain of future actions that have yet to occur. *United Transp. Union v. Interstate Com. Comm'n*, 891 F.2d 908, 912 (D.C. Cir. 1989) ("When considering any chain of allegations for standing purposes, we may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties) and those which predict a future injury that will result from present or ongoing actions[.]")

Plaintiffs also allege the Department ordered eight senior FBI officials to resign or be terminated. Am. Compl. (ECF No. 24) ¶ 65. That allegation, however, is insufficient to establish standing for prospective relief for several reasons. Plaintiffs do not allege facts to raise a plausible inference that they personally face an "imminent risk" of an impending adverse action. *Kareem*, 986 F.3d at 865. Indeed, they do not allege any facts about their employment with the FBI and their role with respect to January 6 matters that would allow this Court to plausibly infer that they are similarly situated to the senior FBI officials they reference. Accordingly, even if Plaintiffs were correct certain high-ranking FBI officials were recently terminated or resigned, that does nothing to support Plaintiffs' claims that they personally face imminent termination particularly in the absence of any allegations as to their seniority, position, or role in January 6 matters.

Plaintiffs' concerns about a possible public disclosure of their employment information also are too speculative to satisfy the "imminent risk" requirement of the future injury requirement for standing. Am. Compl. (ECF No. 24) ¶ 90. Plaintiffs have not alleged any misuse of their

employment information—the provision of employment information from the FBI to the Department is consistent with the Privacy Act as discussed further below—or any specific facts, such as a recent instance in which employment information of any similarly situated employee has been released by Defendants, from which a plausible inference of "imminent risk" could be established. *See OPM*, 928 F.3d at 58 (recognizing that allegations of misuse of personal information is necessary to confer standing based on a fear of identity theft resulting from an alleged data breach); *Owner-Operator Indep. Drivers Ass'n, Inc. v. Dep't of Transp.*, 879 F.3d 339, 345 (D.C. Cir. 2018) ("the mere existence of inaccurate database information is not sufficient to confer Article III standing" without "the dissemination of that information"). As to the above-referenced eight senior FBI officials, Plaintiffs rely on a news report for that allegation. Am. Compl. (ECF No. 25) ¶ 65. They have not alleged the Department publicly disclosed the names of those senior FBI officials or any Department memoranda in which the names allegedly were referenced. *See generally id.* The "fact that the media reported on [an FBI agent's] termination does not establish that [the Department has] made a public disclosure of any defamatory statements." *Langeman v. Garland*, 88 F.4th 289, 296 (D.C. Cir. 2023) (quotation marks omitted).

During the hearing on Plaintiffs' motions for temporary restraining orders, the Court pressed Plaintiffs for "specific evidence" showing the list at issue will be disclosed to the public. Hearing Tr. (Feb. 6, 2025) at 11:25; *see also id.* at 13 (the Court asking Plaintiffs' counsel "what is the evidence that you have that the names of the agents who filled out surveys is that there's been some agency decision contemplated or finalized that that information is going to be released?"). Other than speculation regarding an alleged disclosure of the senior FBI officials referenced above, *id.* at 16 ("the acting deputy attorney general issued a list of eight names of FBI officials who were being terminated without any due process"), Plaintiffs referenced a January 20

Executive Order "naming [fifty-one] intelligence officers who had signed a letter [and made public] back in 2020." *Id*. at 17. But those individuals had already voluntarily put their names into the public by signing an open letter. *See* Public Statement on the Hunter Biden Emails (Oct. 19, 2020), available at https://www.politico.com/f/?id=00000175-4393-d7aa-af77-579f9b330000 (last visited Feb. 26, 2025).

Plaintiffs also appear to ask the court to take judicial notice of media reports about the Department of Government Efficiency and its alleged access to personnel information in various government agencies. For example, Plaintiffs cite to a CNN report to assert "White House Advisor Elon Musk . . . recently shared the names and titles of individual civil servants[.]" Am. Compl. (ECF No. 24) ¶ 57. The Amended Complaint is littered with similar citations to various media publications. *Id*. ¶¶ 21, 23, 33, 34, 39, 40, 46, 47, 52, 54, 57, 60, 64, 65, 85, 86, 89. "[T]hese reports," however, "cannot substitute for specific facts in an affidavit or a verified complaint that clearly show that immediate and irreparable injury, loss, or damage will result." *New Mexico v. Musk*, Civ. A. No. 25-0429 (TSC), 2025 WL 520583, at *4 (D.D.C. Feb. 18, 2025) (quotation marks omitted).

Perhaps recognizing the futility of their claims, Plaintiffs seek to discredit the government's opposition to an indefinite preliminary injunction as "odd[]" despite Plaintiffs' failure to plead any viable underlying claim or risk of imminent harm to support such extraordinary relief. Am. Compl. ¶ 90 (alleging "[Defendants] oddly rejected Plaintiffs['] proposals to maintain the status quo during the course of this litigation by agreeing to an extension of the current Consent Order."). Other than their conclusory allegations, Plaintiffs offer nothing in support of their standing to seek prospective relief.

The Department has repeatedly represented that it has no present intention of publicizing the list at issue. The Department did so in its opposition to the motions for temporary restraining orders. TRO Opp'n (ECF No. 11) at 12 ("[T]he Department and FBI management have repeatedly stressed the purpose of the list is to conduct an internal review, not expose dedicated special agents to public insult or ridicule."). The Department reiterated this assurance during the hearing on those motions. Hearing Tr. (Feb. 6, 2025) at 69-70 (The Department "is prepared to represent that it has no present intention, directly or indirectly, to publicly release that while the Court is resolving the motion for preliminary injunction."). Defendants also agreed to a consent order prohibiting them from publicizing the list until resolution of the anticipated preliminary injunction motion. Order (ECF No. 14). Most recently, Todd Blanche, nominee to be the Deputy Attorney General, was asked by Senator Durbin during a Senate Judiciary Hearing whether Mr. Blanche "would stop any effort to disclose this information that might jeopardize the safety of FBI agents." Mr. Blanche responded that "we will never do anything to put the lives of the family or the agents of the Federal Bureau of Investigation in danger." Press Release: *Durbin Questions Todd Blanche, Trump's Nominee To Be Deputy Attorney General, During Senate Judiciary Committee Hearing* (Feb. 12, 2025), available at https://www.durbin.senate.gov/newsroom/press-releases/durbin-questions-todd-blanche-trumps-nominee-to-be-deputy-attorney-general-during-senate-judiciary-committee-hearing. As FBI leadership informed FBI personnel, there is no "information indicating the Department of Justice intends to disseminate these lists publicly[.]" Ex 1., Feb. 6, 2025, Driscoll Email (attached hereto).

In a final attempt to salvage their claims, Plaintiffs point to a February 7, 2025, public statement by U.S. Attorney Edward Martin, Jr. Am. Compl. (ECF No. 24) ¶¶ 82-84. Even a cursory review shows the statement made no reference to any FBI (or other government)

employee.  *Id.* ¶ 82.  To the contrary, the statement expressed the U.S. Attorney's commitment to protecting federal employees and property.  *Id.*  Nothing in it hints at taking adverse employment actions against the Plaintiffs in this case or making their identities public.

Plaintiffs thus have pled no facts to raise any inference of an imminent risk of disclosure of the list at issue as would be required to establish standing, nor does the existing record support such an inference.[4]  *See Ctr. for Bio. Diversity v. Bernhardt*, 490 F. Supp. 3d 40, 51-52 (D.D.C. 2020) (standing cannot rest on "a series of subsequent events . . . which are still purely hypothetical"); *Lujan*, 504 U.S. at 564 ("'[S]ome day' intentions—without any description of concrete plans, or indeed even any speculation of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." (emphasis omitted)).

Moreover, the individual Plaintiffs, all of whom are appearing as "Does," have failed even to allege that their names and involvement in January 6 matters are not already in the public domain as a result of the performance of their official duties.  Consequently, setting aside their failure to plausibly plead a risk of imminent disclosure of the list at issue, Plaintiffs have not even plausibly alleged that they personally would be harmed by such a disclosure were one to occur as would be necessary to establish their individual standing to sue based on such a disclosure and, in turn, the standing of the putative class that they seek to represent or the association of which they claim to

---

[4]    Citing to paragraph 48 of the *FBI Agents* complaint, the motion for expedited discovery asserts that "acting leadership of the DOJ has made clear that they believe they have the right to publicly disseminate the names of FBI employees who were involved in any of those investigations and/or who responded to the Survey[.]"  Mot. for Expedited Disc. (ECF No. 20-1) at 4 (citing to paragraphs 46-48 of the *FBI Agents* complaint).  But that assertion is not supported by the cited paragraph to the complaint, which is based on "information and belief."  *FBI Agents* Compl. (ECF No. 1) ¶ 48.  *See, e.g., Kareem*, 986 F.3d at 865–69 (finding no standing for suit challenging plaintiff's inclusion on a U.S. target list where the allegation was based solely upon "information and belief").  In any event, any citations to the *FBI Agents* complaint are now irrelevant given Plaintiffs' Amended Complaint.

be members.  *See, e.g., Am. Fed. of Lab. v. Dep't of Lab.*, Civ. A. No. 25-0339 (JDB), 2025 WL 543938, at *3 (D.D.C. Feb. 7, 2025) (recognizing that "[a]ssociational standing's first requirement . . . necessitates more than generalizations about the organization's members" and finding a failure to plead standing when the organization failed to "point to a particular member and establish she would have standing if she were a plaintiff herself").

        To the extent the association-plaintiff in this case asserts claims on its own behalf rather than on behalf of its members, it too has failed to plead any facts to support standing.  To assert standing on its own behalf, the association-plaintiff here must show "actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision."  *Equal Rts. Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1138 (D.C. Cir. 2011) (internal citations omitted).  The "D.C. Circuit precedent clearly requires both a harm and the use of resources for organizational standing."  *Am. Fed. of Lab.*, 2025 WL 543938, at *3 (compiling cases).  "An organization's expenditure of resources on a lawsuit does not constitute an injury in fact sufficient to establish standing."  *Equal Rts. Ctr.*, 633 F.3d at 1138.  "Nowhere does the record state that [the association-plaintiff]—or any other plaintiff—will use its resources to counteract the harm alleged caused by [the Department's] challenged conduct."  *Am. Fed. of Lab.*, 2025 WL 543938, at *3 (cleaned up).  The Amended Complaint simply alleges the association advocates for its members.  Am. Compl. (ECF No. 24) ¶ 4.  The association speculates a mass disclosure of FBI personnel identities would "impose massive consequences" on the association's resources to provide "legal counsel" and any following "exodus of those" employees would "hollow out" the association's membership.  *Id.* ¶ 93.  But that is premised on speculation about a potential future disclosure, and on conclusory allegations that fail to establish standing as addressed above.  The allegations, therefore, fail to establish the association's standing to sue on its own behalf.

Accordingly, because Plaintiffs in these consolidated cases lack standing to seek prospective relief, the Court should dismiss their claims entirely for lack of subject matter jurisdiction.

**B.    Plaintiffs Have Failed to State Any Claim Upon Which Relief Can Be Granted.**

Even if Plaintiffs have standing, the Court should dismiss these consolidated cases for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

1.    Plaintiffs' First Amendment Claims Fail Because Performance of Their Official Duties is Not a Protected Activity.

Plaintiffs assert a First Amendment claim, alleging they will be discharged in retaliation for participating in the January 6 investigations and prosecutions.  Am. Compl. (ECF No. 24) ¶¶ 111-21.  Plaintiffs also allege their speech would be chilled.  *Id.* ¶¶ 126-31.  To state a First Amendment retaliation claim, Plaintiffs must allege that: "(1) [they] engaged in conduct protected under the First Amendment; (2) the [Government] took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again; and (3) a causal link between the exercise of a constitutional right and the adverse action taken against him."  *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016) (quotation marks omitted).  Plaintiffs have failed to plausibly plead any of these elements.

Although public employees "do not surrender all their First Amendment rights by reason of their employment," they do not enjoy First Amendment protections when performing their official duties.  *Garcetti v. Ceballos*, 547 U.S. 410, 417, 422 (2006).  "Underlying [the Supreme Court's First Amendment] cases has been the premise that while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'"  *Id.* at 420 (quoting *Connick v. Myers*, 461 U.S. 138, 154 (1983)).

Here, Plaintiffs' alleged protected activity is the performance of their official duties—namely, their participation in certain investigations and prosecutions related to the events of January 6. None of those activities is protected by the First Amendment because the Plaintiffs "did not act as [] citizen[s] when [they] went about conducting [their] daily professional activities[.]" *Id.* at 422. "When [they] went to work and performed the tasks [they were] paid to perform, [Plaintiffs] acted as [] government employee[s]." *Id.* Consequently, Consequently, FBI personnel who worked on such matters in their official capacity did not engage in protected First Amendment activity.

Because Plaintiffs' participation on January 6 matters was not protected speech, Plaintiffs also cannot meet the second element of a First Amendment retaliation claim, namely, that the commencement of an internal review process into January 6 prosecutions was in retaliation for protected speech. Finally, Plaintiffs have not pled they have suffered any adverse employment action as would be necessary to assert a First Amendment claim. None of the Plaintiffs claim to have been terminated or subjected to any other adverse employment action.

2.      Plaintiffs Fifth Amendment Privacy Claim And Claims Under the Privacy Act Fail.

Plaintiffs assert a claim under the Fifth Amendment for violation of privacy rights. Am. Compl. (ECF No. 24) ¶¶ 122-25. They also assert a claim under sections 552a(e)(6) and 552a(b) of the Privacy Act. *Id.* ¶¶ 94-101. These claims are facially defective because Plaintiffs have failed to allege any public disclosure of the list at issue, have failed to plead that they have suffered any actual pecuniary harm, and, in any event, the FBI's providing the list to the Department is permitted under the Privacy Act.

Plaintiffs' claims under the Privacy Act fail as a matter of law. *First*, section 552a(e)(6) of the Privacy Act solely applies to regulate disseminations of Privacy Act records made to persons

outside an agency.  *Lamb v. Millennium Challenge Corp.*, 228 F. Supp. 3d 28, 40 (D.D.C. 2017).

Plaintiffs have not alleged any such dissemination, only an intra-agency dissemination between

the FBI and the Department.  *See generally* Am. Compl. (ECF No. 24).  Accordingly, Plaintiffs'

claims based on section 552a(e)(6) fail.

 *Second*, Plaintiffs only seek injunctive relief.  *Id.* at 39.  However, it is well settled that any

injunctive relief sought under the Privacy Act is available only under subsections (g)(1)(A) (suits

to amend an individual's record) and (g)(1)(B) (suits for access to a record), neither of which

Plaintiffs assert here and both of which require administrative exhaustion.  And injunctive relief is

not available pursuant to the other two bases for suing under the Privacy Act, subsection (g)(1)(C)

and (g)(1)(D).  *See FAA v. Cooper*, 566 U.S. 284, 310 (2012) (Sotomayor, J., dissenting) ("It bears

noting that the Privacy Act does not authorize injunctive relief when a suit is maintained under 5

U.S.C. § 552a(g)(1)(C) and (D). Rather, injunctive relief is available under the Privacy Act only

for a limited category of suits: suits to amend a record and suits for access to a record. *See* Sections

552a(g)(2), (g)(3)."); *Risley v. Hawk*, 108 F.3d 1396, 1397 (D.C. Cir. 1997) (per curiam); *Haase

v. Sessions*, 893 F.2d 370, 374 (D.C. Cir. 1990); *Doe v. Stephens*, 851 F.2d 1457, 1463 (D.C. Cir.

1988); *Scott v. Conley*, 937 F. Supp. 2d 60, 79 (D.D.C. 2013) ("Our circuit precedent suggests that

injunctive relief is not available for suits alleging violations § 552a(e)(1) brought under either

§ 552a(g)(1)(C) or (g)(1)(D).").  Thus, Plaintiffs have no basis to seek injunctive relief under the

Privacy Act.

 Moreover, to state a claim under the Privacy Act based on subsections (g)(1)(C) or

(g)(1)(D)—the provisions that are potentially applicable to the Privacy Act provisions cited in the

Amended Complaint—a plaintiff must plead  an adverse determination or adverse effect resulting

in actual damages, and "actual damages" under the Privacy Act is limited to pecuniary loss and

does not include loss of reputation or other generalized emotional injuries. *Cooper*, 566 U.S. at 298 ("[W]e think it likely that Congress intended 'actual damages' in the Privacy Act to mean special damages for proven pecuniary loss."); *see also Chichakli v. Tillerson*, 882 F.3d 229, 234 (D.C. Cir. 2018) ("To state a claim under the Privacy Act, a plaintiff must establish that . . . the violation had an 'adverse effect' on the plaintiff in the form of actual damages."). Here, however, Plaintiffs have not alleged any pecuniary harm from the transmission of the list from the FBI to the Department, or any pecuniary harm at all. They have only alleged they fear what may happen should there be a release of the list containing their employment information to the public. That is insufficient to state a Privacy Act claim under section 552a(g)(1)(C) or (g)(1)(D).[5]

*Finally*, Plaintiffs' claims under Section 552a(b) fail because the Privacy Act permits an intra-agency disclosure under subsections 552a(b)(1) and (b)(3). Under the former, the Privacy Act permits the FBI to provide to officials within the Department, of which the FBI is a component, information contained in FBI records regarding its employees when those officials "have a need for the [information] in the performance of their duties." 5 U.S.C. § 552a(b)(1); *see also Walker v. Ashcroft*, Civ. A. No. 99-2385 (GK), 2001 WL 37153642, at *8 n.6 (D.D.C. Apr. 30, 2001) ("FBI employees and federal prosecutors are considered employees of the same agency, namely the Department of Justice. As such, the need-to-know exception properly applies to disclosures between these employees" (citing 5 U.S.C. § 552a(b)(1)), *aff'd*, No. 01-5222, 2002 WL 335530,

---

[5]    To the extent Plaintiffs allege at a later date that an alleged Privacy Act violation has resulted in an adverse employment action, such claims would be subject to the exclusive remedial scheme of the Civil Service Reform Act and could not be brought under the Privacy Act. *See, e.g., Elgin v. Dep't of Treasury*, 567 U.S. 1, 10-13 (2012); *Harrison v. Bowen*, 815 F.2d 1505, 1516 n.25 (D.C. Cir. 1987) (agreeing that the Civil Service Reform Act "'creates an extensive scheme regulating civil service personnel decisions'" and that courts should not "'allow an employee to circumvent this detailed scheme governing federal employer-employee relations by suing under the more general APA.'").

at *1 (D.C. Cir. Jan. 25, 2002) (summarily affirming the district court's finding that the "need to know" exception of the Privacy Act applies).  Under the latter, the Privacy Act permits the FBI to disclose records "for routine use."  5 U.S.C. § 552a(b)(3).  The statute defines "routine use" as "the use of such record for a purpose which is compatible with the purpose for which it was collected[.]"  *Id.* § 552a(a)(7).  The FBI has established as a routine use the transmission of personnel information "relevant to a decision concerning the hiring, appointment, or retention of an employee."  System of Records BRU-13, 70 Fed. Reg. 7513, 7518 (Feb. 14, 2005).

Here, the list was specifically created by the FBI at the Department's request.  The stated purpose for the Department seeking the information from the FBI was to "'commence a review process'" in conjunction with an Executive Order directing the Attorney General to review the activities of all departments and agencies exercising civil or criminal enforcement authority of the United States.  Acting Deputy AG Jan. 31, 2025, Email (ECF No. 11-3) at 2 (underline in original); Exec. Order 14,147.  The Executive Order specifically referenced the prosecution by the Department of "more than 1,500 individuals associated with January 6" as a basis for its stated concern of the "weaponization of prosecutorial power."  Exec. Order 14,147.  Accordingly, the Department's inquiry into the FBI's role in January 6 prosecutions plainly falls within the official duties of Department officials.  The FBI's disclosure of a list to the Department of FBI personnel involved in January 6 matters therefore constitutes a permitted disclosure under section 552a(b)(1).  *See Doe v. Dep't of Just.*, 660 F. Supp. 2d 31, 46 (D.D.C. 2009) ("As the 'highest-ranking officers' in the office, with 'supervisory and disciplinary authority over plaintiff,' the Criminal Chief and Acting U.S. Attorney had a need to know the information disclosed about plaintiff.").

The list also was transmitted by the FBI to the Department for purposes of evaluating conduct that could result in an adverse employment action.  Acting Deputy AG Jan. 31, 2025,

Email (ECF No. 11-3) at 2 (stating that the information "will be used to 'determine <u>whether</u> any additional personnel actions are necessary.'" (underline in original)). Thus, the disclosure to the Department was consistent with a routine use and constitutes a permitted disclosure under section 552a(b)(3).

Plaintiffs also purport to assert a Fifth Amendment due process claim styled as "intentional violation of privacy interests." Am. Compl (ECF No. 24) ¶¶ 122-25. That claim also fails for several reasons. First, to assert a procedural due process claim, Plaintiffs must identify a constitutionally protected property or liberty interest in the FBI sharing their employment information with the Department, and they have failed to do so. "For a property interest to be constitutionally protected by procedural due process, a person must have a legitimate claim of entitlement to it, beyond "an abstract need or desire." *Langeman*, 88 F.4th at 295. The D.C. Circuit explained "[s]uch protectable property interests are derived from existing rules or understandings that stem from an independent source such as state law." *Id*. (quotation marks omitted). "To create this legitimate claim of entitlement, the independent source must place substantive limitations on official discretion." *Id*. (quotation marks omitted). The "independent source" Plaintiffs have identified is the Privacy Act but, as discussed above, Plaintiffs' Privacy Act claims fail. Thus, the Privacy Act "does not create a legitimate property interest sufficient to state a claim under procedural due process." *See id*. at 296.

The D.C. Circuit has also "recognized the possibility of an action for deprivation of a liberty interest without due process" under two theories of recovery: "reputation-plus" and "stigma or disability." *Id*. Plaintiffs no longer assert such claims. *See generally* Am. Compl. (ECF No. 24). Nor could they, because they do not allege that Defendants have "actually revealed

[Plaintiffs'] identit[ies,]" let alone in "any defamatory public statement." *Langeman*, 88 F.4th at 296.

Finally, Plaintiffs have not identified what process has been denied to them related to the list at issue, or what additional process they claim is constitutionally required as would be necessary to state a claim. Thus, to the extent Plaintiffs complain about improper or inadequate procedures in the compilation of the list, Plaintiff must rely on a statutory claim (i.e., the Privacy Act) and not the procedural Due Process Clause of the Constitution.

To the extent Plaintiffs purport to assert a substantive right to privacy, "neither [the D.C. Circuit] nor the Supreme Court has ever held that this interest is a constitutional right." *OPM*, 928 F.3d at 72. In fact, the D.C. Circuit has expressed "grave doubts as to the existence of a constitutional right of privacy in the nondisclosure of personal information." *Am. Fed'n of Gov't Employees v. HUD*, 118 F.3d 786, 791 (D.C. Cir. 1997). Both the Supreme Court and the D.C. Circuit "have, so far, steadfastly rejected all informational privacy claims purporting to rest on the Constitution[.]" *OPM*, 928 F.3d at 72 (collecting cases). Put simply, there is no recognized substantive right to privacy under the Constitution that Plaintiffs can assert.

3.    Plaintiffs' APA Claims Fails Because They Have Not Identified a Final Agency Action Subject to Judicial Review.

Plaintiffs bring an APA claim, though they do not identify the challenged final agency action. Am. Compl. (ECF No. 24) ¶¶ 102-04. As an initial matter, as federal employees, Plaintiffs are foreclosed from pursuing their claims under the APA because the remedial scheme provided by the Civil Service Reform Act is the exclusive remedy for federal employment and personnel complaints, except those expressly exempted by statute (such as statutes addressing claims of discrimination, which are inapplicable here). *See, e.g., Elgin v. Dep't of Treasury*, 567 U.S. 1, 10-13 (2012); *Harrison v. Bowen*, 815 F.2d 1505, 1516 n.25 (D.C. Cir. 1987) (agreeing that the CSRA

"'creates an extensive scheme regulating civil service personnel decisions'" and that courts should not "'allow an employee to circumvent this detailed scheme governing federal employer-employee relations by suing under the more general APA.'").  "Although FBI employees are generally excluded from CSRA provisions, exclusion of a class of employees from the judicial review provisions of the CSRA means that those employees have lesser, not greater, rights to judicial review."  *McCabe v. Barr*, 490 F. Supp. 3d 198, 211 (D.D.C. 2020) (cleaned up) (quoting *Graham v. Ashcroft*, 358 F.3d 931, 933 (D.C. Cir. 2004), and citing *United States v. Fausto*, 484 U.S. 439, 449 (1988)).

Moreover, to obtain judicial review of agency action, Plaintiffs must identify a final agency action.  *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 808 (2024) (holding that "judicial review is available only for 'final agency action'" (quoting 5 U.S.C. § 704)).  Plaintiffs fail to do so and only allude to "current and anticipated actions."  Am. Compl. (ECF No. 24) ¶ 104.  That is wholly insufficient because to be "final," the action must mark the "consummation" of the agency's decisionmaking process" and cannot "be of a merely tentative or interlocutory nature."  *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).  Plaintiffs' APA claim thus fails as a matter of law.[6]

---

[6]    The requirement of the local rules to produce an administrative record with the filing of this dispositive motion does not apply because, as discussed above, Plaintiffs have not challenged a specific final agency action.  *See* LCvR 7(n) (requirement applies "[i]n cases involving the judicial review of administrative agency *actions*" (emphasis added)).  Moreover, the production of an administrative record at this stage is unnecessary because Defendants seek to dismiss these consolidated not based on an administrative record but instead based on the allegations in the complaints; "'the administrative record is unnecessary to decide the threshold legal questions presented by the pending motion to dismiss.'"  *Theint Win Htet v. Trump*, Civ. A. No. 24-1446 (RC), 2025 WL 522033, at *9 (D.D.C. Feb. 18, 2025) (quoting *Janay v. Blinken*, 743 F. Supp. 3d 96, 105 (D.D.C. 2024)).

4.    Plaintiffs' Mandamus Claim Fails

Plaintiffs also bring a mandamus claim.  Am. Compl. (ECF No. 24) ¶¶ 105-10.  The Court may "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  "To qualify for a writ of mandamus, three conditions must be satisfied: (1) the mandamus petitioner must have no other adequate means to attain the relief he desires, (2) the mandamus petitioner must show that his right to the issuance of the writ is clear and indisputable, and (3) the court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances."  *Dhiab v. Obama*, 787 F.3d 563, 568 (D.C. Cir. 2015) (cleaned up).  Mandamus is a "drastic" remedy, "hardly ever granted," and "is available only in extraordinary situations."  *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005).

Even assuming Plaintiffs have no other adequate remedy, they do not even attempt to identify any mandatory duty owed to them under law.  That duty "must be narrowly defined, and [] a plaintiff's legal grounds supporting the government's duty to [them] must be clear and compelling."  *Id*.  "It is well-settled that a writ of mandamus is not available to compel discretionary acts."  *Cox v. Sec'y of Lab.*, 739 F. Supp. 28, 30 (D.D.C. 1990) (citing cases).  Plaintiffs do not identify any statute that creates a mandatory duty that Defendants owe to them that can be vindicated through mandamus.  With the absence of a "clear and compelling duty under [a] statute [] [], the district court must dismiss the action."  *Cheney*, 406 F.3d at 729.

## II.    Even if Plaintiffs' Claims Could Proceed, Plaintiffs Are Not Entitled to Expedited Discovery.

### A.    Any Discovery At This Juncture Is Inappropriate Because The Court Has Not Yet Determined Its Own Jurisdiction.

The Court "has jurisdiction to determine its own jurisdiction[.]"  *United States v. United Mine Workers of Am.*, 330 U.S. 258, 292 n.57 (1947).  That said, before the Court confirms it has jurisdiction over the subject matter of the claims presented (including Plaintiffs' request for

expedited discovery), its authority is limited. The Court may "determine the facts . . . or the law" relevant to its inquiry into its subject matter jurisdiction over the merits of the dispute, *id.*, and it may also enter orders to preserve or protect the status quo to afford it time to reach a determination on its jurisdiction. *Id.* at 293. In aid of its jurisdictional inquiry the Court may also permit discovery to resolve factual issues necessary to its jurisdictional inquiry. *See generally Diamond Servs. Mgmt. Co., LLC v. C&C Jewelry Mfg., Inc.*, Civ. A. No. 19-7675, 2021 WL 2433653, at *4 (N.D. Ill. June 15, 2021) ("although courts are reluctant to allow even jurisdictional discovery where personal jurisdiction seems clearly absent, jurisdictional discovery is still permitted in some circumstances to allow courts to determine whether they have jurisdiction"). But the Court's authority stops there before it satisfies itself that it has jurisdiction over a matter.

Controlling authorities make clear that a court may not turn to the merits before satisfying itself of jurisdiction. *See, e.g.*, *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."); *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 511 (D.C. Cir. 2018) ("With regard to subject-matter jurisdiction, a court must assure itself of the existence of subject-matter jurisdiction before reaching the merits regardless of whether a party raises a jurisdictional challenge."). Thus, a court lacks authority to command discovery into the merits of a dispute before determining whether jurisdiction exists. *Aland v. Dep't of Interior*, Civ. A. No. 22-5821, 2022 WL 18027569, at *4 (N.D. Ill. Dec. 30, 2022) ("proceeding to merits discovery before subject matter jurisdiction has been litigated raises concerns about overstepping this court's authority" (cleaned up)). "That is because a federal court acting without subject-matter jurisdiction violates federalism and separation-of-powers principles

underlying our constitutional system." *Id.* (cleaned up; quoting *McHugh v. Ill. Dep't of Transp.*, 55 F.4th 529, 533 (7th Cir. 2022) ("if there is no jurisdiction there is no authority to sit in judgment of anything else" (quoting *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 778–79 (2000) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.")))).

The Court must decide its jurisdiction before it exercises any other authority over Plaintiff's request for expedited discovery. The Court's authority over suits in its jurisdiction is vast, but the Court has no authority over the merits of suits that fall outside of its jurisdiction. Ordering discovery before determining the threshold jurisdictional issues raised by the Government would be inappropriate.

Also, while not raising constitutional concerns, permitting discovery where Plaintiffs lack standing or have failed to plead facts making a claim for relief plausible would run counter to the Supreme Court's holdings on the role of motions to dismiss in civil actions. *See Iqbal*, 556 U.S. 662 at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions . . . only a complaint that states a plausible claim for relief survives a motion to dismiss."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560 (2007) ("It is no answer to say that a claim just shy of plausible entitlement can be weeded out early in the discovery process[.]").

For this reason, cases are legion in holding that discovery should wait until after resolution of a threshold dispositive motion. *Iqbal*, 556 U.S. at 678 (a complaint that fails to state a plausible claim for relief "does not unlock the doors of discovery"); *Institut Pasteur v. Chiron Corp.*, 315 F. Supp. 2d 33, 37 (D.D.C. 2004) ("[i]t is well settled that discovery is generally considered

inappropriate while a motion that would be thoroughly dispositive of the claims in the Complaint is pending" (citing *Anderson v. U.S. Att'ys Off.*, Civ. A. No. 91-2262, 1992 WL 159186, at *1 (D.D.C. Jun. 19, 1992) (staying discovery during pendency of dispositive motion))); *see also Small Bus. in Transp. Coal. v. Dep't of Transp.*, Civ. A. No. 20-0883 (CKK), 2021 WL 7287302, at *1 (D.D.C. Mar. 21, 2021) ("Defendant's motion [to dismiss], if granted, would be dispositive of Plaintiff's claims in this action. Accordingly, the Court finds that it would be inappropriate to allow Plaintiff the discovery it requests while Defendants' motion is pending."); *Loumiet v. United States*, 225 F. Supp. 3d 79, 82 (D.D.C. 2016) ("[C]ourts in this district have often stayed discovery while a motion that would be thoroughly dispositive of the claims in the Complaint is pending." (cleaned up)); *Sai v. Dep't of Homeland Sec.*, 99 F. Supp. 3d 50, 58 (D.D.C. 2015) ("Here, a stay of the Rule 26(f) conference and of discovery pending resolution of the threshold, dispositive motions is appropriate. Both threshold motions raise significant issues, and their resolution will likely define the scope of discovery, if any."); *Kelly v. Raimondo*, Civ. A. No. 20-3203 (RDM), 2022 WL 14807447, at *10 (D.D.C. Oct. 26, 2022) (granting stay of Rule 26(f) conference pending resolution of motion to dismiss); *Covad Commc'ns Co. v. Revonet, Inc.*, 250 F.R.D. 14, 18 (D.D.C. 2008) (noting that Court "stayed discovery pending resolution of [ ] Motion for Judgment on the Pleadings in order to save the litigants potentially unnecessary discovery expenses"); *Clemmons v. Dep't of Homeland Sec.*, Civ. A. No. 06-0518 (RCL), 2007 WL 2059796, at *1 (D.D.C. July 13, 2007) (granting stay of discovery pending resolution of dispositive motion); *Chavous v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 5 (D.D.C. 2001) ("A stay of discovery pending the determination of a dispositive motion 'is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources.' . . . A stay of discovery in the circumstances presented here furthers the ends of economy and efficiency,

since if either the plaintiffs' dispositive motion or defendant['s] . . . dispositive motion is granted, there will be no need for discovery." (quoting *Costal States Gas Corp. v. Dep't of Energy*, 84 F.R.D. 278, 282 (D. Del. 1979))); *Sinclair Nat'l Bank v. Off. of the Comptroller of the Currency*, Civ. A. No. 00-2398, 2000 WL 34012862, at *4 (D.D.C. Dec. 18, 2000) (staying discovery pending resolution of dispositive motion); *Kauffman v. Anglo-Am. Sch. of Sofia*, Civ. A. No. 89-3419 (RCL), 1992 WL 200025, at *7 (D.D.C. July 30, 1992) (denying motion to reconsider stay of discovery pending resolution of dispositive motion); *Maljack Prods., Inc. v. Motion Picture Ass'n of Am.*, Civ. A. No. 90-1121, 1990 WL 157900, at *1 (D.D.C. Oct. 3, 1990) (same); *Capital Eng'g & Mfg. Co. v. Weinberger*, Civ. A. No. 87-1623, 1988 WL 13272, at *1 (D.D.C. Feb. 5, 1988) ("courts have not hesitated to stay discovery as to the merits of an action pending initial consideration of preliminary, and potentially dispositive, motions"); *Prows v. Dep't of Just.*, Civ. A. No. 87-1657, 1988 WL 8256, at *7 (D.D.C. Jan. 22, 1988) (noting discovery stayed pending resolution of dispositive motion); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) ("Facial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should, however, be resolved before discovery begins. Such a dispute always presents a purely legal question; there are no issues of fact because the allegations contained in the pleading are presumed to be true."); *Rutman Wine Co. v. E.&J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (the idea that discovery should be permitted before deciding a motion to dismiss "is unsupported and defies common sense").

Here, Defendants' threshold defenses do not turn on disputed issues of fact that would necessitate it providing the Court or Plaintiffs with additional information. As already explained, even accepting as true the allegations in Plaintiffs' pleadings to the extent non-conclusory as

required by *Iqbal* and *Twombly,* Plaintiffs fail to state a claim upon which relief may be granted even were this suit within the Court's subject-matter jurisdiction.

**B.    Plaintiffs Are Not Entitled to Expedited Discovery Because They Have Failed to Establish Good Cause.**

Even if Plaintiffs could overcome the insurmountable jurisdictional impediment and the challenge to the legal sufficiency of their claims, their request for expedited discovery should still be denied because the applicable standard for such discovery has not been met.  "To determine whether expedited discovery is appropriate, courts have developed two commonly recognized approaches: (1) the *Notaro* [*v. Koch*, 95 F.R.D 403 (S.D.N.Y. 1982),] test and (2) the reasonableness, or good cause, test."  *Disability Rts. Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006).  Courts in this District have favored the reasonableness test.  *Legal Tech. Group, Inc. v. Mukerji*, Civ. A. No. 17-0631 (RBW), 2017 WL 7279398, at *2 (D.D.C. Jun. 5, 2017).  "Under the reasonableness test, 'courts consider the reasonableness of the request in light of the entire record to date and all of the surrounding circumstances."  *Id.* (quoting *Disability Rights Council*, 234 F.R.D. at 6)); *see also Dunlap v. Presidential Advisory Comm'n on Election Integrity*, 319 F. Supp. 3d 70, 103-04 (D.D.C. 2018) (collecting cases).  Common factors include: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made."  *Disability Rts. Council*, 234 F.R.D. at 6.  Each factor favors denying the request.

*First*, briefing on Plaintiffs' motion for a preliminary injunction is ongoing, with Plaintiffs having just filed their motion two days ago.  *See generally* PI Mot. (ECF No. 25).  Under the

briefing schedule, Defendants' response is due on March 14,2025.  *See* Consent Order (ECF No. 14) at 2.

Any information Plaintiffs seek through this discovery, therefore, will be of limited use to that already filed motion as Plaintiffs effectively conceded by agreeing to a briefing schedule that did not contemplate any discovery.  Moreover, the Court has declined to disturb that briefing schedule on account of Plaintiffs' motion for discovery.  *See* Min. Order (Feb. 19, 2025).  And to the extent Plaintiffs wish to extend the preliminary injunction briefing schedule to permit for discovery, that would extend the duration of the existing Consent Order for a potentially indefinite period, effectively achieving an extended injunction contrary to the existing Consent Order.

*Second*, "plaintiffs' proposed discovery requests are not narrowly tailored to discovering [information relevant to their preliminary injunction motion] and instead seek significant discovery on the merits."  *Attkisson v. Holder*, 113 F. Supp. 3d 156, 162 (D.D.C. 2015).  A request for expedited discovery is inappropriate if it "seeks to prove an element of the plaintiffs case[.]"  *Id.* (citation omitted).

Plaintiffs argue their requests are "narrowly tailored" and "directly related to the claims upon which Plaintiffs intend to move for an injunction."  Mot. for Expedited Disc. (ECF No. 20-1) at 7.  But even a cursory review of Plaintiffs requests shows the requests are "actually quite broad."  *True the Vote v. IRS*, Civ. A. No. 13-0734 (RBW), 2014 WL 4347197, at *7 (D.D.C. Aug. 7, 2014).  The discovery requests consist of fifteen interrogatories (including sub-paragraphs) and nine requests for production.  Pl.'s Disc. Reqs. (ECF No. 20-2) at 6-9.  Much of the information sought concerns the development and purpose of the survey (Interrogatory Nos. 1 to 5, Document Request Nos. 1 to 3), lists of Executive Branch employees with access to the lists (Interrogatory Nos. 6 to 8, Document Request No. 3), and communications internal to the Department of Justice

related to the Department's ongoing review (Interrogatory Nos. 9 to 15, Document Request Nos. 3 to 9). In other words, much of the information sought relates to either the creation of the list or its transmission from the FBI to the Department, which Plaintiffs have already conceded is moot. Hearing Tr. (Feb. 6, 2025) at 19. The remainder of the requests seek information about the Department's internal review. Those requests go to Plaintiffs' speculation about alleged impending employment actions against them. But none of the requests actually seek information regarding Defendants' intent (or lack thereof) of releasing the list publicly, which is their stated principal basis for seeking the discovery in support of their preliminary injunction motion. Mot. for Expedited Disc. (ECF No. 20-1) at 2. For these same reasons, the third factor—the purpose of expedited discovery—also weighs against granting Plaintiffs' motion.

*Fourth*, the burden to respond to the expedited discovery requests would be "heavy" but only a "low" burden "supports granting the motion for expedited discovery." *Attkisson*, 113 F. Supp. 3d at 165. Even assuming the information Plaintiffs seek exists, responding to Plaintiffs' discovery requests would involve multiple Executive departments and offices: the FBI (Interrogatory Nos. 2, 3, 9 and Document Request Nos. 1, 2, 8, 9), the Department of Justice broadly (Interrogatory Nos. 1, 4, 5, 10, 11, 12, 13 and Document Request Nos. 2, 6, 7), the Office of the Deputy Attorney General specifically (Interrogatory Nos. 9, 15 and Document Request Nos. 2, 4, 5, 6), and the White House (Interrogatory Nos. 6, 13), and the Department of DOGE Services (Interrogatory Nos. 7). Some discovery requests span years: Interrogatory 1 asks for information spanning eight years, from January 20, 2017, through the present; Interrogatories 11 and 12 ask for information spanning four years, from January 6, 2021, through the present. Plaintiffs fail to explain the need for information dating back four to eight years or how such dated information is relevant to the issues in the filed motion for preliminary injunction.

Moreover, each response to Plaintiffs' discovery requests necessarily will need to be evaluated for applicable privileges, which heightens the burden on the Government to respond to these requests expeditiously. Privileges that could be implicated include the attorney-client privilege, the attorney work product doctrine, presidential communication privilege, and the deliberative process privilege. Thus, it is not clear whether Plaintiffs will be able to obtain the information they seek in any expedited timeline even if permitted to serve their requests and the information they seek actually exists. What is certain, however, is that responding to these expansive discovery requests would place a "heavy" burden on Defendants' officials, which the Supreme Court has cautioned against, especially where, like here, these consolidated cannot survive a motion to dismiss:

> If a Government official is to devote time to his or her duties, and to the formulation of sound and responsible policies, it is counterproductive to require the substantial diversion that is attendant to participating in litigation and making informed decisions as to how it should proceed. Litigation, though necessary to ensure that officials comply with the law, exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government.

*Iqbal*, 556 U.S. at 685.

*Finally*, the timing of the discovery requests counsels against granting Plaintiffs' motion. "Because discovery typically occurs after the resolution of motions to dismiss, presenting a motion for expedited discovery prior to rulings on motions to dismiss is often disfavored." *Attkisson*, 113 F. Supp. 3d at 165 (cleaned up). "[R]equiring defendants to comply with an order for expedited discovery when the case may later be dismissed for failure to state a claim could "force the defendants to expend significant resources responding to discovery requests in a case where plaintiffs did not have a viable cause of action." *Id.* (cleaned up). Here, Plaintiffs' requested discovery comes before the Court has had an opportunity to resolve the Department's motion to dismiss. "'At the very least, reasonableness dictates that the Court consider [the Department's]

motion to dismiss before requiring extensive and expensive discovery.'" *Id.* at 165-66 (quoting *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 99 (D.D.C. 2014)).

Furthermore, Plaintiffs' delay in seeking discovery also counsels against granting their last-minute request here.  Plaintiffs had plenty of opportunities to seek leave for expedited discovery in this case but they simply failed to do so.  Beyond a single cursory reference at the beginning of the nearly six-hour hearing to "limited discovery," Hearing Tr. (Feb. 6, 2025)  at 17 ("If we needed to go into more detail with the Court, we can certainly go down that route and we would ask for limited discovery as well to be able to show further documentation as to what was happening."), Plaintiffs did not press the possibility or explain the need for expedited discovery before they could file their preliminary injunction motion.

In fact, Plaintiffs waited another eight days after the hearing before contacting Defendants' counsel over the federal holiday weekend to advise of Plaintiffs' anticipated discovery.  Even then, their outreach was just a notice of an intent to seek discovery, without any explanation as to the scope of the discovery, its timing, or purpose.  Plaintiffs specifically indicated they would further confer with Defendants before seeking leave from this Court to serve their discovery requests.

Before Defendants' counsel could respond to their overture and without further conferring with Defendants' counsel, Plaintiffs hastily filed their current discovery motion.  The Court noted Plaintiffs failure to comply with the Local Civil Rule 7(m)'s dictates and ordered Plaintiffs to engage in a meaningful meet-and-confer with Defendants.  *See* Feb. 18, 2025, Min. Order.  The parties ultimately conferred and Defendants conveyed their opposition to Plaintiffs' inappropriate discovery requests, of which Plaintiffs informed the Court.  *See* Resp. to Court Order (ECF No. 21).  Although the Court was aware of Plaintiffs' desire to take expedited discovery "to obtain additional facts directly relevant to [their] preliminary injunction motion," Mot. for Expedited

Disc. (ECF No. 20-1) at 7; *see also* Resp. to Court Order (ECF No. 21) at 2 ("Plaintiffs maintain that the discovery they seek is directly material to the issues that will be argued before this Court, is limited in scope, and is easily retrievable by the Government."), the Court did not order Defendants to respond to Plaintiffs' discovery motion until two days after their preliminary injunction motion due date. *See* Feb. 19, 2025, Min. Order (requiring Defendants to respond by February 26, 2025).

Finally, the relevant information necessary for the Court to rule on the parties' litigation over Plaintiffs' motion for preliminary injunction is already in the record. Plaintiffs describe the requested written discovery as seeking information related to:

> Defendants' design and creation of the Survey, Defendants' intended uses for the information provided in response to the Survey, what, if any, other information Defendants intend to gather about FBI personnel in support of its proffered implementation of an Executive Order(s), the manner in which Defendants intend on disseminating the contents of the Survey, and email and written communications between leadership at [the Department], FBI, and any other government agency concerning the collection and dissemination of the Survey information. The requested discovery will also elucidate the connection, if any, between the Survey information and [the Department's] purported attempt to implement recent Executive Orders and other related guidance.

Mot. for Expedited Disc. (ECF No. 20-1) at 2. That information already is in their possession to the extent needed to address the merits of their claims at the preliminary injunction stage particularly when, as already established above, those claims are defective on their face for reasons independent of the information sought.

Specifically, the records attached to Defendants' opposition to Plaintiffs' motions for temporary restraining orders and with this filing establish the stated bases for the Department seeking information from the FBI regarding personnel involved on January 6 matters, the reason the survey was sent to individuals identified as being involved in those matters, and how the list of personnel at issue is intended to be used. *See* TRO Opp'n Exs. 1-4 (ECF No. 11-1 to 11-5);

Feb. 6, 2025, Driscoll Email (Ex. 1 enclosed herewith). Plaintiffs have failed to establish how discovery into the matters described above would allow them to address the facial deficiencies in their purported claims. Because the rules do not permit the "unlock[ing] [of] the doors of discovery for a plaintiff armed with nothing more than conclusions," *Iqbal*, 556 U.S. at 678–79, and conclusory allegations form the basis of Plaintiffs' claims, their request for expedited discovery should be denied.

*    *    *

**CONCLUSION**

For these reasons, Defendants respectfully requests that the Court grant the Department's motion to dismiss, deny Plaintiffs' motion for expedited discovery (ECF No. 17) as moot, and dismiss these consolidated cases (i.e., the Amended Complaint) in their entirety.

Dated: February 26, 2025

Respectfully submitted,

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: _____/s/ *Dimitar P. Georgiev*_____
DIMITAR P. GEORGIEV, D.C. BAR #1735756
JEREMY S. SIMON, D.C. BAR #447956
Assistant United States Attorneys
601 D Street, NW
Washington, DC 20530
(202) 252-2500 (main)

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN AND JANE DOES 1 TO 9, et al.,

          Plaintiffs,

     v.

DEPARTMENT OF JUSTICE, et al.,

          Defendants.

Civil Action Nos.
25-0325 (JMC), 25-0328 (JMC)

## **[PROPOSED] ORDER**

UPON CONSIDERATION of Defendants' motion to dismiss, Plaintiffs' motion for expedited discovery (ECF No. 20), and the entire record herein, it is hereby

ORDERED that Defendants' motion is GRANTED, and it is further

ORDERED that Plaintiffs' motion is DENIED as moot, and it is further

ORDERED that Plaintiffs' TRO motion (ECF No. 3) is DENIED as moot, and it is further

ORDERED that these consolidated cases are DISMISSED.


SO ORDERED:


_____
Date

_____
JIA M. COBB
United States District Judge