UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN AND JANE DOES 1-9, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF JUSTICE, <br><br> Defendant. | Civil Action No. 25-0325 (JMC) |
| FEDERAL BUREAU OF INVESTIGATION AGENTS ASSOCIATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF JUSTICE, et al., <br><br> Defendants. | Civil Action No. 25-0328 (JMC) |

**EXHIBIT B: PLAINTIFFS' INDIVIDUAL JUSTIFICATONS FOR REVISED REQUESTS FOR EXPEDITED DISCVOERY**

In accordance with the Court's Minute Order dated February 28, 2025, Plaintiffs submit the following information specific to each revised discovery request. *See* Minute Order, February 28, 2025 ("Any such motion must specifically identify, for each item of discovery sought, why Plaintiffs require that information to litigate the motions before the Court and why Plaintiffs cannot obtain that information, or respond to Defendants' legal arguments, absent discovery.").

**INTERROGATORIES (REVISED)**

Unless otherwise noted, all interrogatories below relate to the time period of January 20, 2025, up through and including the date of any response:

1. **Identify every non-DOJ person, including White House personnel and DOGE personnel, who is known to have, or had, access to the data collected pursuant to the Survey.**

    Discovery on this point would establish essential facts about the current disclosure status of the Survey. It would allow the Court to ascertain the Government's own knowledge of and control over this data. Confirming current access to the collected information is necessary because the Government was unable to provide basic information on this point at the February 6 hearing. The exchange between Government counsel and the Court takes on even more significance now that a key point of the discussion—whether the DOJ possessed only employee identification numbers or full names at the time of the hearing—was later shown to be inaccurate.

    > THE COURT: Okay. Are you in a position this [sic] confirm where this information is? It's relevant -- I mean, it was a question that will come up in the merits hearing. So it's a relevant merits question as well. What is the purpose of the survey? What is the investigation? Because they're claiming there's no legitimate purpose. So that's squarely a merits issue. So I'm going to get into all of that if we continue. So are you in a position to indicate where this information is?
    > GOVERNMENT COUNSEL: All I can state is there's nothing in the record to indicate that it's gone outside the DOJ. An affirmative representation, you know -- beyond what's in the record, I'm not in a position to make to the Court --
    > THE COURT: Well, the record includes the arguments of the parties and what comes out at the hearing. So I'm asking the government, which I think -- again, I was going to get into this anyway. The FBI provided this information to the DOJ. **My understanding is not names but identification numbers**. So my question for the government is has the DOJ disseminated further that information that was provided by the FBI in response to these surveys beyond any DOJ component or division, branch, whatever you want to call it?
    > GOVERNMENT COUNSEL: Yes, Your Honor. Standing here today, all I can say is that there's nothing to indicate that that has occurred in the record.
    > THE COURT: But has it occurred? Do you not know if it's occurred?
    > GOVERNMENT COUNSEL: I don't have reason to believe it has occurred but I can't make definitive representation.
    > THE COURT: I don't know if it's occurred is a full and complete answer. You can say "I don't know."
    > GOVERNMENT COUNSEL: I don't know.

> THE COURT: So who -- are you able to find that out? Because it's relevant to the merits of -- if I get into the merits of the TRO, not only do I need to discuss harm, discuss the statutory and constitutional allegations, discuss the likelihood that this information will be released, but under Privacy Act I have to get into routine use. So I need to know kind of what -- where this information has gone and why. And so it's something that will come up if we continue. So I think either way we should get the answer to that question.

Draft Transcript ("Tr.") at 38:23-40:12 (emphasis added).

Later in the hearing, Government counsel somewhat hesitantly agreed that there had been no "known" disclosures.  Tr. at 96:14-97:1. Plaintiffs (and apparently, Government counsel) later learned that a different key fact discussed at the hearing—whether the names had been provided to DOJ—was incorrect.  *See* ECF No. 21, ¶ 2.  The DOJ, having been the initial and only recipient of the list of names sent by the FBI following A/DAG Emil Bove's February 6 meeting with the then-acting FBI Director, is the only entity able to know with whom it has shared this information. The Plaintiffs will have no ability to determine this information until it is by definition "too late," e.g., when an individual makes the list public.

A current, accurate update on the above topic would be informative both on the issue of imminence and on the legality of the Survey data collection. Any full-scale disclosure of the list outside of the DOJ, including to the White House, would undermine the Government's contention that the list compilation was in support of a "review process" related to the Weaponization Executive Order directive.

2. **Identify any additional information (meaning, beyond or in addition to the information compiled in the Survey) Defendants intend to collect about the Survey respondents which they plan to use to identify whether FBI personnel had "partisan intent" or engaged in "weaponization," as well as how those terms are defined by Defendants.**

Plaintiffs note they seek not only to enjoin any disclosure of the list, but also to enjoin any further constitutional violations that have ensued since its creation. *See, e.g.*, ECF 25-2 ("Proposed Order").  Basic facts about the process by which DOJ is reviewing the list is necessary for arguments on both points. How the Government defines "weaponization" and what factors it will assess as part of its review into supposed "partisan intent" will directly bear on the Plaintiffs' First Amendment claims. The Government's yet-to-be-revealed definitions of these terms are solely within the possession and knowledge of the Government.  Its refusal to provide mundane information central to its justification for collecting the Plaintiffs' information should create serious doubts as to the credibility of Defendants' arguments.

For example, if the consequence for being named on the Survey is summary termination, the process by which A/DAG Bove reviews the list would be out of line with standard FBI procedure and injury both FBIAA and individual Doe plaintiffs. *See* FAC ¶¶ 17-19. Or, if DOJ's process involves sharing the list with non-DOJ entities for insight as to whether someone listed

3

was "weaponized," this again bears on the risk for disclosure. As the Court explained at the February 6 hearing, what the list is being used for is a relevant fact:

> THE COURT: For the government, I have questions about the First Amendment issue, and I want to talk about Privacy Act. There was some representation at some point today about whether or not the survey or information gathered constitutes a system of records. But I also have questions about the survey, itself, including what's it being used for. A response to the argument that nothing on the face of the survey provides any indication or information about misconduct. So I do have questions about the survey. Particularly because I'm interested in routine use potential exemption under the Privacy Act. So I want to know what the government plans to do with the information. I want to know what is being investigated, what is this review process, and more about routine use."

Tr. at 97:23-98:10.

FBIAA, whose primary mission is to advocate for its members, and the Doe members, who risk being punished for protected speech, are equally injured by the DOJ's apparent deviation from standard FBI processes for misconduct reviews. The injuries from this deviation contribute to Plaintiffs' standing arguments. See ECF No. 25-9, FBIAA Decl. at ¶¶ 6-12. Cloaking the nature of the "review" in secrecy also deprives the Plaintiffs of key facts relevant to their arguments that such a review is not routine.

3. **Identify every purpose and routine use for which the Government claims it can lawfully publicly disclose any employee data collected pursuant to the Survey.**

Throughout their opposition to Plaintiffs' requested relief, and as is plainly reflected in Paragraph 2 of the current Consent Order, Defendants continue to assert a perceived legal right to publicly release the names of January 6 FBI personnel. ECF No. 22, ¶¶ 1-2. The Plaintiffs maintain that there is no such legal basis to do so. This speaks to a core issue relevant to both parties' arguments.

An answer to this interrogatory would reflect what the Court has already identified as relevant information as to confirming the purpose of the list. As the Court explained at the February 6 hearing, any purported "routine use" or "potential exemption" which might allow disclosure of the list is going to be a relevant fact. *See* Tr. at 98:2-10. Plaintiffs submit there is no lawful basis for public disclosure, and Defendants have yet to publicly identify one.

4. **In both the Terminations Memo and the February 5, 2025 Message from A/DAG Bove, Mr. Bove stated that DOJ is undertaking a "process" to review the conduct of FBI personnel who participated in the January 6 investigations. Identify and describe the "process" identified by Mr. Bove and any lawful basis pursuant to which it is authorized.**

4

As alleged in Plaintiffs' First Amended Complaint, DOJ appears to be deviating from standard procedures for establishing whether or not FBI personnel engaged in misconduct or otherwise should face adverse actions. *See* FAC ¶¶ 17-19. At the February 6 hearing, the Court directly asked about this process and whether it would involve any sort of public disclosure:

> THE COURT: . . . And let me just ask you directly, in your papers you indicate that this information was collected as part of an internal review process and that it is not for public dissemination; is that correct?

Tr. at 22:17-20.

In response, Government counsel equivocated and gave an answer that did not answer the direct question from the Court about whether the process involves public dissemination, instead implying effectively that "it depends." See Tr. at 22:21-25:8.

Further discovery about the "process" will establish important factual questions like "where this information has gone and why." Tr. at 40:10; *see also* Tr. 98:8-1 ("I want to know what is being investigated, what is this review process, and more about routine use."). Plaintiffs have no way of ascertaining what this process is without discovery from DOJ. Based on the Terminations Memo, the Restoring Integrity Memo, and A/DAG Bove's February 5, 2025 email, it appears all traditional and lawful forms of adverse action review processes are being eschewed in favor or summary terminations and de facto determinations of "weaponization." If there has been any structured process to arrive at such consequential conclusions, it has not been shared with FBI personnel or anyone at FBIAA.

## **REQUESTS FOR PRODUCTION (REVISED)**

Unless otherwise noted, all requests for production ("RFP") below relate to the time period of January 20, 2025, up through and including the date of any response:

1. **Any Document that relates to the Government's intent for any potential future disclosure or use of the Survey.**

For the reasons stated above, the Government's intent as to the Survey is central to this Court's determination of its lawfulness. Documents and communications currently within Plaintiffs' possession are limited to the following:

- The January 31, 3025 "Terminations" memo, which effectuated summary terminations based on "weaponization." The names of those being terminated were listed without any explanation or review process as to how they were determined to be "weaponized" or any process that DOJ undertook to establish such a finding. *See* ECF No. 25-5, Exhibit 3 ("Ex.") to Plaintiffs' Motion for Preliminary Injunction ("PI").
- The February 5, 2025 email from A/DAG Emil Bove, which conspicuously failed to address this lawsuit's accusations that A/DAG Bove would release the names of the

5

agents, and instead only referenced a never-before-implemented "review process" seeking out "partisan intent." *See* ECF No. 25-6, Ex. 4 to Plaintiffs' Motion for PI.
- The February 5, 2025 "Restoring Integrity Memo," which similarly relied on vague terms like whether or not a person acted with "righteous spirit." Like the Terminations Memo, the Restoring Integrity Memo referenced a "review process" to determine whether "weaponization" had occurred while simultaneously making summary findings—without any review process—that certain individuals had engaged in weaponization. *See* ECF No. 25-7, Ex. 5 to Plaintiffs' Motion for PI.
- Numerous public statements of Acting U.S. Attorney Ed Martin, Attorney General Pam Bondi, DOGE leader Elon Musk, and others, that heavily imply that individuals will be targeted based on protected speech. *See, e.g.*, FAC ¶¶ 57-59, 82, 83, 89.

Defendants' external (via individual leaders' social media) and internal (via employee email or memo) communications have thus far indicated that Plaintiffs will be targeted specifically based on perceived partisanship, and that once targeted they should fear the "radical transparency" of that targeting.

If the Defendants are in possession of any other documents that provide any further clarity as to their intent for the Survey results, it is they alone who possess those documents. They should be ordered to produce them prior to the hearing to establish the key fact of their own intentions.

2. **Any Document that relates to the Government's Responses to any of the Interrogatories above.**

In addition to the individual justifications for the Interrogatories referenced above, Plaintiffs note that provision of documents responsive to those Interrogatories may mitigate the need for deposition testimony, provided those documents are fulsome and reliable.

March 7, 2025

Respectfully Submitted,

| | |
|---|---|
| LAW OFFICE OF MARK S. ZAID, P.C. | CENTER FOR EMPLOYMENT JUSTICE |
| By: _____*Mark S. Zaid*_____<br>MARK S. ZAID, D.C. Bar #440532<br>BRADLEY P. MOSS, D.C. Bar #975905<br>1250 Connecticut Avenue, NW, Suite 700<br>Washington, D.C. 20036<br>(202) 498-0011<br>Mark@MarkZaid.com<br>Brad@MarkZaid.com<br>*Attorneys for John Does 1,3-4,*<br>*Jane Does 1-3 (25-328)* | By: _____*Pamela M. Keith*_____<br>PAMELA M. KEITH, D.C. Bar #448421<br>SCOTT M. LEMPERT, D.C. Bar #1045184<br>650 Massachusetts Ave., NW, Suite 600<br>Washington, DC 20001<br>(202) 800-0292<br>pamkeith@centerforemploymentjustice.com<br>Slempert@centerforemploymentjustice.com<br>*Attorneys for John and Janes Does 1-9, et al.*<br>*(25-325)* |
| STATE DEMOCRACY DEFENDERS FUND | KOSKOFF, KOSKOFF & BIEDER, PC |
| By: _____*Norman L. Eisen*_____<br>Norman L. Eisen D.C. Bar # 435051<br>Pooja Chaudhuri, D.C. Bar # 888314523<br>600 Pennsylvania Avenue, SE, #15180<br>Washington, D.C. 20003<br>(202) 594-9958<br>norman@statedemocracydefenders.org<br>pooja@statedemocracydefenders.org<br>*Attorneys for John Does 1,3-4,*<br>*Jane Does 1-3 (25-328)* | By: _____*Margaret Donovan*_____<br>Christopher Mattei, Bar # 27500 (*pro hac vice*)<br>Margaret Donovan, Bar # 31787 (*pro hac vice*)<br>350 Fairfield Ave., Suite 501<br>Bridgeport, CT 06604<br>(203) 336-4421<br>cmattei@koskoff.com<br>mdonovan@koskoff.com<br>*Attorneys for Federal Bureau of Investigation*<br>*Agents Association (25-328)* |

*Attorneys for Plaintiffs*