UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN AND JANE DOES 1 TO 9, et al.,

Plaintiffs,

v.

DEPARTMENT OF JUSTICE, et al.,

Defendants.

Civil Action Nos.
25-0325 (JMC), 25-0328 (JMC)

**DEFENDANTS' OPPOSITION
<u>TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION</u>**

# TABLE OF CONTENTS

Table of Contents ................................................................................................................ i

Table of Authorities ............................................................................................................ ii

Background ............................................................................................................................ 1

Legal Standards .................................................................................................................... 3

Argument .............................................................................................................................. 3

I.      The Court Is Without Subject-Matter Jurisdiction Because Plaintiffs Lack
        Standing. .................................................................................................................... 4

        A.      Plaintiffs Have Failed To Establish Standing In Their Own Right ............ 6

        B.      The FBI Association Lacks Standing. ........................................................ 17

II.     Plaintiffs Are Not Entitled To a Preliminary Injunction. .................................... 20

        A.      Plaintiffs Have Not Shown That They Will Suffer Irreparable Harm ....... 20

        B.      Plaintiffs Are Not Likely To Succeed On The Merits Of Their Claims .... 26

        C.      Plaintiffs Have Not Shown The Balance Of The Equities Favors Injunctive
                Relief. ........................................................................................................ 35

Conclusion .......................................................................................................................... 38

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aamer v. Obama*,
  742 F.3d 1023 (D.C. Cir. 2014) ........................................................................................25

*Air Excursions LLC v. Yellen*,
  66 F.4th 272 (D.C. Cir. 2023) ...........................................................................................8

*Aliotta v. Bair*,
  614 F.3d 556 (D.C. Cir. 2010) ...........................................................................................9

*All. for Retired Ams. v. Bessent*,
  Civ. A. No. 25-0313 (CKK), 2025 WL 740401 (D.D.C. Mar. 7, 2025) ...........................passim

*Am. Anti-Vivisection Soc'y v. Dep't of Agric.*,
  946 F.3d 615 (D.C. Cir. 2020) .........................................................................................17

*Am. Chem. Council v. Dep't of Transp.*,
  468 F.3d 810 (D.C. Cir. 2006) ...........................................................................................4

*Am. Fed. of Lab. v. Dep't of Lab.*,
  Civ. A. No. 25-0339 (JDB), 2025 WL 543938 (D.D.C. Feb. 7, 2025) ..............................17

*Animal Legal Def. Fund v. Vilsack*,
  111 F.4th 1219 (D.C. Cir. 2024) ........................................................................................5

*Ariz. Christian Sch. Tuition Org. v. Winn*,
  563 U.S. 125 (2011) ...........................................................................................................4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .........................................................................................................33

*Bibum v. Wilson*,
  Civ. A. No. 23-1587 (JMC), 2024 WL 1328416 (D.D.C. Mar. 28, 2024) ........................33

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988) .........................................................................................................26

*Bowie v. Maddox*,
  653 F.3d 45 (D.C. Cir. 2011) ...........................................................................................30

*Brewer v. Holder*,
  Civ. A. No. 08-1747 (BJR), 2013 WL 12399112 (D.D.C. Dec. 16, 2013) .........................4

*Broadrick v. Oklahoma*,
  413 U.S. 601 (1973) ...........................................................................................15

*Cafeteria & Rest. Workers Union v. McElroy*,
  367 U.S. 886 (1961) ...........................................................................................37

*Cal. Ass'n of Private Postsecondary Schs. v. DeVos*,
  344 F. Supp. 3d 158 (D.D.C. 2018) ....................................................................21

*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006) ................................................................. 3, 20, 21

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ...............................................................................................5

*Clapper v. Amnesty Int'l*,
  568 U.S. 398 (2013) .........................................................................................4, 8

*Cobell v. Norton*,
  391 F.3d 251 (D.C. Cir. 2004) ...........................................................................35

*Collins v. City of Harker Heights*,
  503 U.S. 115 (1992) .....................................................................................11, 12

*Comm. in Solidarity with People of El Sal. v. Sessions*,
  929 F.2d 742 (D.C. Cir. 1991) ...........................................................................21

*Credico v. Dep't of Homeland Sec.*,
  Civ. A. No. 15-1127 (RDM), 2016 WL 11716746 (D.D.C. Apr. 28, 2016) ...........................15

*Ctr. for Democracy & Tech. v. Trump*,
  507 F. Supp. 3d 213 (D.D.C. 2020) ....................................................................19

*Ctr. for L. & Educ. v. Dep't of Educ.*,
  396 F.3d 1152 (D.C. Cir. 2005) .........................................................................19

*Citizens for Resp. & Ethics in Wash. v. Dept. of Just.*,
  746 F.3d 1082 (D.C. Cir. 2014) .........................................................................36

*Davis v. FEC*,
  554 U.S. 724 (2008) .............................................................................................5

*Davis v. Pension Ben. Guar. Corp.*,
  571 F.3d 1288 (D.C. Cir. 2009) .........................................................................35

*Ctr. for Bio. Diversity v. Bernhardt*,
    490 F. Supp. 3d 40 (D.D.C. 2020) ......................................................................11

*Doe v. Stephens*,
    851 F.2d 1457 (D.C. Cir. 1988) ...................................................................27, 28

*Dominguez v. UAL Corp.*,
    666 F.3d 1359 (D.C. Cir. 2012) ..........................................................................4

*E. Tex. Motor Freight Sys. Inc., v. Rodriguez*,
    431 U.S. 395 (1977) ............................................................................................4

*Env't Working Grp. v. FDA*,
    301 F. Supp. 3d 165 (D.D.C. 2018) ..................................................................19

*FAA v. Cooper*,
    566 U.S. 284 (2012) ..........................................................................................27

*Food & Water Watch, Inc. v. Vilsack*,
    808 F.3d 905 (D.C. Cir. 2015) ..........................................................................20

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006) ....................................................................................passim

*Garcia v. Vilsack*,
    563 F.3d 519 (D.C. Cir. 2009) ..........................................................................26

*Gordon v. Holder*,
    632 F.3d 722 (D.C. Cir. 2011) ..........................................................................25

*Gulf Oil Corp. v. Brock*,
    778 F.2d 834 (D.C. Cir. 1985) ..........................................................................36

*Harris v. Bessent*,
    Civ. A. No. 25-0412 (RC), 2025 WL 679303 (D.D.C. Mar. 4, 2025) ..................37

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ..........................................................................................17

*Hospitality Staffing Sols., LLC v. Reyes*,
    736 F. Supp. 2d 192 (D.D.C. 2010) ..............................................................3, 20

*In re Off. of Pers. Mgmt. Data Sec. Breach Litig.*,
    928 F.3d 42 (D.C. Cir. 2019) ....................................................................5, 7, 8

*Kallstrom v. City of Columbus,*
  136 F.3d 1055 (6th Cir. 1998) ............................................................... 33, 34, 35

*Kareem v. Haspel,*
  986 F.3d 859 (D.C. Cir. 2021) ................................................... 5, 7, 8, 11

*League of Women Voters of the U.S. v. Newby,*
  838 F.3d 1 (D.C. Cir. 2016) ...................................................................20

*Lewis v. District of Columbia,*
  Civ. A. No. 22-3369 (RDM), 2025 WL 661603 (D.D.C. Mar. 2, 2025) ................................30

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ............................................................... 4, 11, 17

*Martin v. EPA,*
  271 F. Supp. 2d 38 (D.D.C. 2002) ........................................................ 13, 14, 31

*Nagel v. Dep't of Health, Educ. & Welfare,*
  725 F.2d 1438 (D.C. Cir. 1984) ...........................................................32

*New Mexico v. Musk,*
  Civ. A. No. 25-0429 (TSC), 2025 WL 520583 (D.D.C. Feb. 18, 2025)................................9

*Nken v. Holder,*
  556 U.S. 418 (2009) ...........................................................................3

*Owner-Operator Independent Drivers Ass'n, Inc. v. Dep't of Transp.,*
  879 F.3d 339 (D.C. Cir. 2018) .................................................................6

*Pursuing Am.'s Greatness v. FEC,*
  831 F.3d 500 (D.C. Cir. 2016).................................................................20

*Rutan v. Republican Party of Illinois,*
  497 U.S. 62 (1990)........................................................................31, 32

*Sampson v. Murray,*
  415 U.S. 61 (1974).............................................................................37

*Seila Law LLC v. Consumer Fin. Prot. Bureau,*
  591 U.S. 197 (2020).......................................................................15, 37

*Sierra Club v. EPA,*
  292 F.3d 895 (D.C. Cir. 2002)..................................................................4

*Spokeo, Inc. v. Robins,*
  578 U.S. 330 (2016) ...................................................................................... 5, 6

*Texas v. United States,*
  523 U.S. 296 (1998) .......................................................................................... 29

*TransUnion LLC v. Ramirez,*
  594 U.S. 413 (2021) ....................................................................................... 6, 14

*United Transp. Union v. Interstate Commerce Comm'n,*
  891 F.2d 908 (D.C. Cir. 1989) ...................................................................... 7, 11

*Univ. of Cal. Student Ass'n v. Carter,*
  Civ. A. No. 25-0354 (RDM), 2025 WL 542586 (D.D.C. Feb. 17, 2025) ............... 9, 22, 23, 24

*Wilson v. McHugh,*
  842 F. Supp. 2d 310 (D.D.C. 2012) ................................................................... 27

*Winter v. Nat. Res. Def. Council,*
  555 U.S. 7 (2008) ........................................................................................ passim

*Wis. Gas Co. v. Fed. Energy Regul. Comm'n,*
  758 F.2d 669 (D.C. Cir. 1985) ...................................................................... 21, 22

**Statutes**

5 U.S.C. § 552a(a)(2) ...................................................................................... 18, 27

5 U.S.C. § 552a(b) ............................................................................................... 26

5 U.S.C. § 704 ..................................................................................................... 26

5 U.S.C. § 706 ..................................................................................................... 27

**Other Authorities**

Exec. Order 14,147: Ending the Weaponization of the Federal Government,
  90 Fed. Reg. 8235 (Jan. 20, 2025) ........................................................... 9, 30, 31

Defendants, the Department of Justice ("Department") and the United States of America (collectively, "Defendants"), respectfully submit this opposition to Plaintiffs' Motion for Preliminary Injunction ("Mot.," ECF No. 25-1).[1]

## BACKGROUND

For a summary of the factual and procedural background of this case, Defendants refer the Court to Defendants' motion to dismiss. *See* Mot. to Dismiss (ECF No. 28) at 4-9. Defendants supplement that factual discussion only to clarify a few points that Plaintiffs obfuscate in their filings.

First, Plaintiffs confusingly use the term "results of the survey" as synonymous with the lists that the FBI provided to the Department of Justice (the "Department"), which are at issue in this case. *Compare* Am. Compl. (ECF No. 24) ¶ 74, *with* Order (ECF No. 14) ¶ 1 ("The Government will not disseminate the list at issue in these consolidated cases[.]"). The two are distinct.

The information requested by the Department as part of its review pursuant to the Executive Order, and reflected on the lists provided by the FBI to the Department, is summarized in contemporaneous emails as being limited to employees' "current title, their title at the time of the relevant investigation or prosecution, the office to which they are currently assigned, their role in the relevant investigation or prosecution, and the date of last activity related to the investigation or prosecution." Driscoll Email (ECF No. 11-2) at 2; *see also* Deputy Director Email (ECF No. 11-5) at 3-4. That is not "personal" information as mischaracterized by Plaintiffs, but information related to Plaintiffs' official duties as employees with the FBI. Although a questionnaire to

---

[1]    Citations to docket filings are to filings made in the lead action in this consolidated matter, *Does v. Department of Justice*, Civ. A. No. 25-0325 (JMC) (D.D.C.) ("*Does*"), unless otherwise noted herein.

employees that was used by the FBI to create the list sought additional information, Am. Compl. (ECF No. 24) ¶ 68, Plaintiffs do not allege—nor does the contemporaneous email record reflect— that the questionnaires were shared by the FBI with the Department.  Deputy Director Email (ECF No. 11-5) at 3-4; Hr'g Tr. (Feb. 6, 2025) at 19 (acknowledgement by Plaintiffs' counsel that certain information from the surveys "has been held back from DOJ").

Defendants use the term "lists" to refer to the list that originally was provided by the FBI to the Department which identified employees by a unique employee identifier (Driscoll Email (ECF No. 11-2) at 2) and its subsequent version that identified employees by name (Driscoll Email (ECF No. 28-1) at 1).  When Defendants use the term "list" they are referring to the latter, which is the version that contains personally identifying information and which Defendants understand to be the focus of Plaintiffs' concerns regarding public disclosure.

Second, Plaintiffs' Amended Complaint asserts in a conclusory fashion that they have "restrain[ed] their personal expression of free speech and political advocacy" and that those among the Plaintiffs who would otherwise "wish" to do so are "restricted" from "discuss[ing] politics in their private lives, express[ing] support for the prior administration or its political allies," or "associate[ing] with others who share similar political beliefs."  Am. Compl. (ECF No. 24) ¶¶ 128-29.  Notably, there are no facts pled in the Amended Complaint to support these conclusory assertions or even to specify who among the named Plaintiffs, if any, claims to feel so constrained. Neither the allegations in the Amended Complaint, nor the declarations filed in support of the motion for preliminary injunction, provide any specifics regarding what public speech or political activity any particular Plaintiff would otherwise be engaged in but for the lists that have been provided by the FBI to the Department that are at issue.  Beyond conclusory allegations, the operative pleading and the supporting declarations are silent on this issue.  The absence of any

concrete and particularized injury regarding the alleged "chilling" of their speech is evident from the overly broad and ambiguous language in the portion of their proposed order addressed to those conclusory allegations.  Proposed Order (ECF No. 25-2) at 2.

## LEGAL STANDARDS

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008).  "A plaintiff seeking a preliminary injunction must establish that [1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Id.* at 20.  The last two factors "merge when the Government is the opposing party."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  The moving party bears the burden of persuasion and must make "a clear showing" that the requested relief is warranted.  *Hospitality Staffing Sols., LLC v. Reyes*, 736 F. Supp. 2d 192, 197 (D.D.C. 2010) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).

## ARGUMENT

As set forth in Defendants' pending motion to dismiss, this Court lacks subject matter jurisdiction over this action based on a lack of standing.  Mot. to Dismiss (ECF No. 28) at 10-21.  As also established in that motion, Plaintiffs have failed to plausibly plead any cognizable claim against Defendants on which any claim for relief could be based, let alone the requested injunctive relief.  *Id.* at 21-29.  As an initial matter, therefore, the Court need not reach Plaintiffs' motion for preliminary injunction because this action should be dismissed at the threshold, rendering the motion for preliminary injunction moot.  Should the Court address Plaintiffs' motion, however, it should be denied for the reasons stated below.

I.      **The Court Is Without Subject-Matter Jurisdiction Because Plaintiffs Lack Standing**.

Defendants' pending motion to dismiss shows that Plaintiffs have failed to plausibly plead, or otherwise establish through competent extrinsic evidence, that they have standing to assert their claims for the overly broad prophylactic injunction requested against the government.  Mot. to Dismiss (ECF No. 28) at 10-21. Defendants also establish below that Plaintiffs' limited arguments to the contrary are unpersuasive.

Standing is a necessary predicate to any exercise of federal jurisdiction and, when it is lacking, the dispute fails to present a concrete case or controversy under Article III. *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133-34 (2011); *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012).  To establish standing, Plaintiffs must demonstrate that they suffered an injury-in-fact, specifically an injury that is "concrete, particularized, and actual or imminent;" is "fairly traceable to the challenged action;" is "likely," not speculative; and is "redressable by a favorable ruling." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013) (quotation marks omitted); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).  Plaintiffs bear the burden of establishing each element. *Lujan*, 504 U.S. at 561.  And, when plaintiffs purport to represent a putative class as the Doe Class Plaintiffs do in this case, the standing analysis necessarily focuses on whether the specific putative class representatives—the specific Doe Plaintiffs—have standing to sue in their own right for "once a plaintiff's individual claims fail, he cannot be an adequate representative for class claims under Rule 23." *Brewer v. Holder*, Civ. A. No. 08-1747 (BJR), 2013 WL 12399112, at *4 (D.D.C. Dec. 16, 2013) (citing *E. Tex. Motor Freight Sys. Inc., v. Rodriguez*, 431 U.S. 395, 403 (1977)).  Similarly, when an association joins as a plaintiff, the association either must plead facts establishing standing in its own right for the asserted claims or otherwise establish the standing of a specific individual member. *See, e.g.*, *Sierra Club v. EPA,* 292 F.3d 895, 898 (D.C. Cir. 2002); *Am. Chem. Council v. Dep't of Transp.,* 468 F.3d 810, 815 (D.C. Cir. 2006).

Importantly, standing is "not dispensed in gross." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (quotation marks omitted). "Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Id.* (quotation marks omitted). Thus, it is not sufficient for Plaintiffs to allege in the abstract that they have suffered "invasions" of legally protectible interests; they must identify concrete and particularized harm (either actual or imminent), connect that harm to the conduct underlying the specific claims they assert, and establish that their alleged injury is redressable by the Court. *Animal Legal Def. Fund v. Vilsack*, 111 F.4th 1219, 1228-31 (D.C. Cir. 2024) (separately addressing whether imminent future harm had been pled with respect to each of plaintiff's claims by analyzing whether the specific alleged unlawful conduct underlying each claim was substantially likely to cause plaintiff future injury).

And when, as here, Plaintiffs seek solely prospective relief, they cannot rest on alleged past harm. They satisfy the injury-in-fact requirement for standing only if they have sufficiently alleged that they are threatened with an impending future injury that is concrete and particularized. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 109 (1983); *see also In re Off. of Pers. Mgmt. Data Sec. Breach Litig. ("OPM")*, 928 F.3d 42, 54 (D.C. Cir. 2019) ("'[a]n allegation of future injury'" to support the injury-in-fact element of standing "passes Article III muster only if it 'is 'certainly impending,' or there is a 'substantial risk' that the harm will occur'"); *Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir. 2021) ("Because Kareem's complaint 'seeks prospective declaratory and injunctive relief, he must establish an ongoing or future injury that is 'certainly impending'; he may not rest on past injury.'").

The Supreme Court also has rejected the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341

(2016). Only those plaintiffs who have been concretely harmed by an alleged statutory violation may sue over that violation in federal court. *Id*. In short, the "[f]ederal courts do not exercise general legal oversight of the Legislative and Executive Branches," and "federal courts do not issue advisory opinions." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Yet, by failing to plead or otherwise establish an imminent "concrete and particularized" future injury, that is precisely what Plaintiffs ask the Court to do here. *See Owner-Operator Independent Drivers Ass'n, Inc. v. Dep't of Transp.*, 879 F.3d 339, 345, 347 (D.C. Cir. 2018) ("the mere existence of inaccurate database information is not sufficient to confer Article III standing" when the "alleged injury arises only from a statutory violation" without any existing "concrete injury").

## A.    Plaintiffs Have Failed To Establish Standing In Their Own Right

Plaintiffs do not attempt to base their standing on their claims under section 552a(e)(6) of the Privacy Act (count one) and the Administrative Procedure Act ("APA") (count three), or for their claim for mandamus (count four). Mot. (ECF No. 25-1) at 11-15. Because standing is not dispensed in gross, Plaintiffs' failure to establish standing for these claims precludes them from basing their request for preliminary injunctive relief on them.[2] Their arguments for standing as to their other claims (counts two, five, six and seven) are without basis as discussed below.

---

[2]    Plaintiffs do not reference section 552a(e)(6), mandamus or the APA in their standing discussion, thus conceding that it is lacking as to those claims. Plaintiffs also expressly acknowledge that their section 552a(e)(6) claim (addressing the dissemination of a record "about an individual to any person other than an agency") is not a subject of their motion for preliminary injunction. Mot. (ECF No. 25-1) at 12 n.10.

1.    Plaintiffs Have Failed to Establish Standing to Assert a Claim Under Section 552a(b) of the Privacy Act or Under a Privacy-Based Due Process <u>Theory.</u>

In support of their standing to assert a claim under section 552a(b) of the Privacy Act (count two), Plaintiffs cite as their alleged injury-in-fact "the potential disclosure of the Doe Plaintiffs' personal information to members of the public," which they assert would be a violation of section 552a(b) of the Privacy Act were such a disclosure to occur.  Mot. (ECF No. 25-1) at 11-12. Plaintiffs also assert, as the apparent basis for standing for their Fifth Amendment privacy claim (count six), that disclosure of their identities to the public would impact their "legally cognizable interest in their right to privacy, *e.g.*, protecting their bodily integrity from harm, under the Due Process Clause." *Id.* at 13.

Standing for both claims is based on an "allegation of future injury," which "passes Article III muster only if it is certainly impending, or there is a substantial risk that the harm will occur." *OPM*, 928 F.3d at 54 (quotation marks omitted); *see also Kareem*, 986 F.3d at 865 ("Because [plaintiff's] complaint seeks prospective declaratory and injunctive relief, he must establish an ongoing or future injury that is certainly impending; he may not rest on past injury." (quotation marks omitted)).  Both assertions of alleged future injury are speculative, with the assertion underlying the constitutional claim being doubly so—it is based on speculation that the lists will be publicly disclosed by the Department absent an injunction and further speculation that, if disclosed, third parties would use that information to cause the Plaintiffs actual physical harm. *United Transp. Union v. Interstate Commerce Comm'n*, 891 F.2d 908, 912 (D.C. Cir. 1989) ("When considering any chain of allegations for standing purposes, we may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties) and those which predict a future injury that will result from present or ongoing

actions[.]"); *Clapper*, 568 U.S. at 414 (a "speculative chain of possibilities does not establish that injury based on potential future [conduct] is certainly impending").

Plaintiffs fail to establish standing for prospective relief because they do not allege facts that could raise a plausible inference of a "certainly impending" public disclosure or one that is substantially likely to occur. *Kareem*, 986 F.3d at 865. At best, Plaintiffs speculate about that potential, which is insufficient. *See Clapper*, 568 U.S. at 414; *Air Excursions LLC v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023). Their reliance on *OPM* (Mot. (ECF No. 25-1) at 14) is misplaced because that case involved a prior instance of a cyber-attack on a government database in which personal data was stolen, and the plaintiffs alleged that the agency had failed to secure its database from a further cyber-attack following that breach. *OPM*, 928 F.3d at 54-55. Based on those specific allegations, the Court held that the plaintiffs had plausibly pled a substantial risk that their personal information would be stolen again and thus sufficiently alleged an ongoing, imminent threat to have standing to seek prospective relief. [3] *Id*. at 55. Here, in contrast, Plaintiffs have not alleged any unlawful access by third parties to their information or any failure by the Department to protect their information. All that is alleged is an internal disclosure between the FBI and the Department (of which the FBI is a component) regarding official activities of FBI employees. That request was made pursuant to a request by the Department in accordance with an Executive Order directing the Attorney General to undertake a review of components of the government, including

---

[3]    Although a substantial risk of future disclosure might be sufficient to establish standing when adequately pled as in *OPM* (it has not been adequately pled here), that still would be insufficient to meet the distinct requirement of irreparable harm for a preliminary injunction as addressed in section II below. *See, e.g., All. for Retired Ams. v. Bessent*, Civ. A. No. 25-0313 (CKK), 2025 WL 740401, at *23 (D.D.C. Mar. 7, 2025) ("merely asserting that the Treasury DOGE Team's operations increase the risk of a catastrophic data breach or public disclosure of sensitive information . . . is not sufficient" because the standard for a preliminary injunction requires a demonstration that "such a breach or improper disclosure is "'likely in the absence of an injunction'" not merely that there is a heightened risk of it occurring).

the FBI, that exercise civil or criminal enforcement authority.  Exec. Order 14,147: Ending the Weaponization of the Federal Government, 90 Fed. Reg. 8235 (Jan. 20, 2025).

Plaintiffs' speculation, moreover, is derived from news reports of unrelated events, such as an allegation that Elon Musk allegedly "shared the names and titles" of individuals in "'relatively obscure climate-related government positions,'" that the CIA transmitted portions of names of its employees to the Office of Personnel Management over "an unclassified system," and that the Department sent an internal memorandum to the FBI that allegedly ordered eight senior officials to resign or be fired.  Am. Compl. (ECF No. 24) ¶¶ 57, 60, 65.  As to the latter, Plaintiffs do not allege that the memorandum, or the names of those eight senior officials within the memorandum, was disclosed by the Department (or through any official government disclosure) or that the eight senior officials held positions that were not publicly facing.  Allegations based on news reports, moreover, "cannot substitute for 'specific facts in an affidavit or a verified complaint' that 'clearly show that immediate and irreparable injury, loss, or damage will result.'"  *New Mexico v. Musk*, Civ. A. No. 25-0429 (TSC), 2025 WL 520583, at *4 (D.D.C. Feb. 18, 2025).  And, to the extent Plaintiffs attempt to suggest the existence of a pattern or practice of public disclosure by these isolated and unrelated allegations, "more than the mere occurrence of isolated or 'accidental'" events would be necessary to establish such a pattern. *See Aliotta v. Bair,* 614 F.3d 556, 562 (D.C. Cir. 2010).

Plaintiffs' speculation is particularly deficient in the face of the Congressional testimony of Todd Blanche, the now-confirmed Deputy Attorney General, cited in Defendants' motion to dismiss, Mot. (ECF No. 28) at 18, and about which this Court can take judicial notice, and the presumption that public officers will properly discharge their official duties.  *Univ. of Cal. Student Ass'n v. Carter*, Civ. A. No. 25-0354 (RDM), 2025 WL 542586, at *6 (D.D.C. Feb. 17, 2025)

(applying this presumption in denying a motion for preliminary injunction). Thus, unlike the allegations in *OPM*, Plaintiffs here have not pled facts to raise a plausible inference of a substantial risk of an imminent disclosure of the lists at issue to the public.

Finally, Plaintiffs have failed to plead that their affiliation with the FBI and January 6 matters is not already in the public domain as would be necessary for Plaintiffs to establish that they individually would experience future injury if a public disclosure of the lists at issue occurred. It is not sufficient for Plaintiffs to contend that some unidentified members of a putative class might be harmed by such a disclosure. The named Plaintiffs must each establish their individual standing, and none have done so. As they have the burden to establish standing, their failure to plead that their employment information and role in January 6 matters is not already publicly known is fatal to their claims because, in the absence of such allegations, they have not established that a future disclosure would harm them or that an injunction against such a disclosure would redress the alleged harm (i.e., preventing public knowledge of their employment information).

> 2.     Plaintiffs Have Failed To Establish Standing To Assert A Claim Under The First Amendment.

As to the alleged injury-in-fact for their First Amendment retaliation claim (count five) and chilling of free speech claim (count seven), Plaintiffs focus mainly on alleged past harm that they claim to have experienced already by being included on the lists that the FBI provided to the Department. Specifically, they claim that their inclusion on the lists has branded them as "disloyal" to the current Administration, has "grouped [them] into a subcategory" of those having participated in "'weaponization,'" and has caused them to experience a "'chilling' harm created by the list [that] has already manifested." Mot. (ECF No. 25-1) at 12-14. But Plaintiffs do not seek relief in the Amended Complaint for any alleged past injury. The only form of relief sought is prospective relief, and Plaintiffs cannot rely on an alleged past injury to establish standing for

such forward-looking relief. *Kareem*, 986 F.3d at 865 ("Because [plaintiff's] complaint seeks prospective declaratory and injunctive relief, he must establish an ongoing or future injury that is certainly impending; he may not rest on past injury." (quotation marks omitted)).

Plaintiffs also allege as the basis for standing for their First Amendment retaliation claim (count five) the potential that they may be subject to an adverse employment action based on their inclusion on the list, but that fear also is too speculative to support standing. They have not alleged a specific threat directed to them personally of an imminent adverse employment action, and standing cannot rest on "a series of subsequent events . . . which are still purely hypothetical." *Ctr. for Bio. Diversity v. Bernhardt*, 490 F. Supp. 3d 40, 51-52 (D.D.C. 2020); *see also Lujan*, 504 U.S. at 564 ("'[S]ome day' intentions—without any description of concrete plans, or indeed even any speculation of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." (emphasis omitted)); *United Transp. Union,* 891 F.2d at 912 ("When considering any chain of allegations for standing purposes, we may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties) and those which predict a future injury that will result from present or ongoing actions[.]").

Their assertion that their "free speech" continues to be chilled by the "Government's crackdown on their work in particular—combined with the Government's statements on weaponization" also is insufficient. Mot. (ECF No. 25-1) at 13. The Court must "focus on the allegations in the [Amended] [C]omplaint to determine how [Plaintiffs] describe[] the constitutional right at stake and what the [Government] allegedly did to deprive [them] of that right." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). As already addressed in the Factual Background discussion above, Plaintiffs' allegations about their speech being chilled is

entirely conclusory and unsupported by any specific allegation in the Amended Complaint or in the declarations accompanying their motion for preliminary injunction.

In particular, Plaintiffs mischaracterize the record in describing the purpose of the lists to claim that their inclusion on them has produced a chilling effect on their speech. The record reflects that, following issuance of the Executive Order, the Acting Deputy Attorney General requested that the FBI "identify the core team in Washington, D.C. responsible for the investigation related to events on January 6, 2021." Acting Deputy Att'y Gen. Feb. 5, 2025, Email (ECF No. 11-3) at 2. According to an email dated January 31, 2025, the FBI's acting leadership failed to comply with that request "necessitat[ing]" the Department's issuance of a broader directive to the FBI on January 31, 2025, specifically, to identify all FBI personnel assigned to investigations relating to January 6. *Id.*; *see also* Deputy Director Email (ECF No. 11-5) at 3-4. That email explained that this broader request "was intended to obtain a complete data set that the Justice Department can reliably pare down to the core team that will be the focus of the weaponization review pursuant to the Executive Order." Acting Deputy Att'y Gen. Feb. 5, 2025, Email (ECF No. 11-3) at 2. The Doe Plaintiffs have not alleged to what extent they worked on January 6 matters and thus have not plausibly pled that they might be considered part of the "core team" about which the "weaponization review" would be focused.

As regards to the alleged chilling of their speech, Plaintiffs fail to plausibly plead how discussion of political matters in their private lives would become known to their employer so as to deter them from engaging in such private conversations out of fear of a future adverse employment action as a result of this review. Plaintiffs also fail to plead any specifics regarding what public speech or political activity they would otherwise be engaged in but for their inclusion on the list. Indeed, as FBI employees, Plaintiffs already are governed by existing statutes and

policies that place limitations on their political activities and are cautioned about the risks of the personal use of social media. *See* 5 U.S.C. §§ 7321-26 (The Hatch Act); FBI Ethics & Integrity Program Policy Guide, at § 7.1 (Feb. 2, 2015),[4] available at https://vault.fbi.gov/fbi-ethics-and-integrity-program-policy-guide/FBI%20Ethics%20and%20Integrity%20Program%20Policy%20Directive%20and%20Policy%20Guide%200754DPG%20Part%2001%20%28Final%29/view (last visited March 11, 2025); *see also* Media Relations, External Communications, and Personal Use of Social Media at § 4.2.4 (Nov. 14, 2017), available at https://vault.fbi.gov/public-affairs-policy-guide-media-relations-external-communications-and-personal-use-of-social-media-1002pg/Public%20Affairs%20Policy%20Guide%20Media%20Relations%2C%20External%20Communications%2C%20and%20Personal%20Use%20of%20Social%20Media%201002PG%20Part%2001%20%28Final%29/view (last visited March 11, 2025).

Consequently, in light of these existing statutes and policies, Plaintiffs' failure to make specific allegations to support their assertions of a "chilling" effect on their speech, including by identifying the extent to which they each had engaged in public speech on political matters (if at all) in the past, precludes them from meeting their burden of demonstrating the required causal connection for standing. Such specifics are necessary to assert a "concrete and particularized" injury in the First Amendment context. *See Martin v. EPA*, 271 F. Supp. 2d 38, 47 (D.D.C. 2002). In *Martin*, for example, the Government Accountability Project alleged that EPA's plan to move EPA's National Ombudsman from one office to another violated its First Amendment right to receive information. *Id.* at 47. Although Martin was decided on a motion to dismiss under Rule 12(b)(6), it is nevertheless instructive. The court dismissed the claim because the association did

---

[4]    Although there is a more recent version of the FBI Ethics and Integrity policy guide cited above, the language of Section 7.1 is identical in both the 2015 version and the more recent version. Defendants are citing to the prior version because a link to it is publicly accessible.

"not allege that [the Ombudsman was] no longer willing to speak with the public on issues he was previously willing to discuss" and thus had failed to "establish that [he would] no longer speak to the public as he had before the transfer." *Id.* Here, too, Plaintiffs have failed to allege that they had spoken on political matters publicly in the past as would be necessary to support their conclusory assertion that they are now "chilled" from doing so based on their inclusion on the lists at issue. To be "concrete," an injury in fact must be "real" and cannot be "abstract" as Plaintiffs' alleged First Amendment injury is here. *TransUnion*, 594 U.S. at 424 (quotation marks omitted) (collecting cases). Thus, because Plaintiffs fail to plead any specifics regarding what public speech or political activity they would otherwise currently be engaged in by, for instance, alleging examples of past speech or political activity, they have not met their burden of establishing that their speech has been chilled in a "concrete and particularized" manner traceable to their inclusion on the lists at issue.

Even were the Court to determine that Plaintiffs have plausibly pled that their speech already has been chilled by their inclusion on the lists, Plaintiffs still have failed to establish standing because that alleged past injury is not redressable. Indeed, Plaintiffs have already conceded that any questions relating to the creation of the list or its transmission to the Department are moot. Hr'g Tr. (Feb. 6, 2025) at 19-20 (admitting that any claim regarding compilation of the list is moot as "that cat is pretty much out of the bag").

Further, Plaintiffs seek only prospective relief in their Amended Complaint and, as already noted, cannot rest on alleged past injury to establish standing. To the extent the abstract chilling effect alleged by Plaintiffs is attributable to a concern about a future adverse employment action, it is redundant of Plaintiffs' First Amendment retaliation claim (count five) already addressed above and cannot establish standing for the same reason. To the extent the alleged chilling effect

is cited to support standing for count seven of the Amended Complaint (alleging an abstract chilling effect), any such assertion amounts to an improper effort to "'constitutionalize the employee grievance.'" *Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006). Plaintiffs in that count are claiming, in essence, that their speech is currently being chilled by a review process of their official government activity undertaken pursuant to an Executive Order that they have not challenged as unlawful, and which reflects an exercise of the President's power to "supervise" the Executive workforce that "wield[s] executive power on his behalf." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 204 (2020). Because they are not challenging the Executive Order, which is the source of the review process and the alleged ongoing chilling effect on their speech they claim to be experiencing, their alleged harm is not redressable by any order that could be issued in this action based on the limited claims that have been pled. *Cf. Broadrick v. Oklahoma*, 413 U.S. 601, 616-18 (1973) (statute that "regulates a substantial spectrum of conduct that is as manifestly subject to state regulation as the public peace or criminal trespass" is not "substantially overbroad" even if "some persons' arguably protected conduct may or may not be caught or chilled by the statute"); *Credico v. Dep't of Homeland Sec.*, Civ. A. No. 15-1127 (RDM), 2016 WL 11716746, at *1 (D.D.C. Apr. 28, 2016) (rejecting overbreadth doctrine claim on the basis that plaintiff "has failed to present any basis for the Court to conclude that the statute is so 'substantial[ly]' overbroad as to outweigh its 'plainly legitimate sweep'"). Plaintiffs do not ask the Court to enjoin the review process, nor have they pled any claim that could possibly support such expansive relief. Plaintiffs, accordingly, have failed to establish that their alleged injury—an alleged "chilling effect" by virtue of their inclusion on a list obtained by the Department to initiate the review process—would be redressable by any claim asserted in this action. Thus, they lack standing.

- 15 -

The relief requested in their proposed order demonstrates why an abstract allegation of a "chilling effect" fails to meet constitutional muster. Plaintiffs seek an order that would enjoin the Department or FBI "from taking any additional action which would infringe on [their] Constitutional rights." Proposed Order (ECF No. 25-2) at 2. The ambiguity and overbreadth of that order, and Plaintiffs' inability to propose a narrowly tailored one, highlight their failure to establish a "concrete and particularized" constitutional injury attributable to the conduct underlying their claims that could be redressed by the Court.

Finally, Plaintiffs make the conclusory allegation that the Department's internal review has "had immediate negative impacts on the assignments that Plaintiffs can currently take and has further placed Plaintiffs at a distinct disadvantage as to their future employment." Mot. (ECF No. 25-1) at 12-13. Regarding the former, there are no allegations in the Amended Complaint or statements in the declarations accompanying the motion for preliminary injunction regarding specific assignments Plaintiffs have sought or been denied since the lists were provided by the FBI to the Department. The assertions instead are entirely conclusory. Several declarants in these consolidated actions—i.e., *Does* and *FBI Agents Association v. Department of Justice*, Civ. A. No. 25-0328 (JMC) (D.D.C.) ("*FBI Agents*")—state their "firm[] belie[f]" that being on the list "will cause [them] reputational harm that may or will impact [them] for the remainder of [their] federal career." *FBI Agents* Jane Doe #3 Decl. (ECF No. 25-12 ¶ 20; *see also FBI Agents* Jane Doe #2 Decl. (ECF No. 25-11) ¶ 18 (same); *Does* Jane Doe #3 Decl. (ECF No. 25-18) ¶ 19 (same). One declarant also expresses concern "about the future impact this investigation will have on [his or her] job prospects[.]" *FBI Agents* Jane Doe #3 Decl. (ECF No. 25-12) ¶ 21; *see also FBI Agents* Jane Doe #2 Decl. (ECF No. 25-11) ¶ 19 (same); *Does* Jane Doe #3 Decl. (ECF No. 25-18) ¶ 21 (same). But nothing in those declarations indicates what assignments Plaintiffs sought and were

denied. And none of the declarants indicates what employment they sought and failed to obtain or how any such decisions would be causally connected to their inclusion on the lists provided by the FBI to the Department that Plaintiffs acknowledge have not been publicly disclosed.

**B.    The FBI Association Lacks Standing.**

Because the individual Doe Plaintiffs lack standing to sue as addressed above, and the FBI Agents Association (the "FBI Association") has not pointed to any other individual that would have standing in his or her own right, the FBI Association cannot base its standing on the standing of its members. *See Am. Fed. of Lab. v. Dep't of Lab.*, Civ. A. No. 25-0339 (JDB), 2025 WL 543938, at *3 (D.D.C. Feb. 7, 2025) (recognizing that "[a]ssociational standing's first requirement . . . necessitates more than generalizations about the organization's members" and finding a failure to plead standing when the organization failed to "point to a particular member and establish she would have standing if she were a plaintiff herself"). And the FBI Association also has failed to establish standing in its own right.

To establish organizational standing, the FBI Association, like an individual, must show an actual or imminent injury in fact that is fairly traceable to the challenged action and likely to be redressed by a favorable decision. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-379 (1982); *see also Am. Anti-Vivisection Soc'y v. Dep't of Agric.*, 946 F.3d 615, 618 (D.C. Cir. 2020). Standing is "substantially more difficult to establish" when, as here, a party invoking federal jurisdiction is not "the object of the government action or inaction" they challenge. *Lujan*, 504 U.S. at 562. The FBI Association is not itself the subject of the alleged conduct on which the claims asserted in the Amended Complaint are based. Thus, it faces a significant hurdle to establish that it has standing to pursue those claims in its own right.

As an initial matter, the civil remedy provisions of the Privacy Act focus on alleged harm to an "individual," which is defined in the statute as a "citizen of the United States or an alien

lawfully admitted for permanent residence." 5 U.S.C. § 552a(a)(2), (g)(1).  Accordingly, the FBI Association lacks standing as an organization to assert a claim under the Privacy Act, and Plaintiffs do not meaningfully contend otherwise.

The FBI Association focuses instead on the First Amendment claims asserted in the Amended Complaint, but that effort also fails.  Plaintiffs contend that the FBI Association "has established that the Government's actions chill its protected speech."  Mot. (ECF No. 25-1) at 18. The Amended Complaint makes the broad and conclusory assertion that "the current leadership within DOJ has created an environment where [the FBI Association's] protected speech on behalf of its members—namely, external advocacy that often requires bipartisan support—risks drawing a government response."  Am. Compl. (ECF No. 24) ¶ 93.  That allegation seeks to generally impugn the policies of the current Administration and does not identify any chilling effect specifically attributable to the lists at issue that could be redressable by the Court.

The assertions in the declaration submitted by the FBI Association in support of the motion for preliminary injunction fare no better.  FBI Ass'n Decl. (ECF No. 25-9) ¶¶ 37-45.  Those assertions also fail to identify any chilling of the Association's speech that is causally connected to the FBI's sharing of the lists with the Department.  Instead, the declaration attributes the alleged chilling effect to various actions by the new Administration, several of which precede the creation of the lists, including January 6 pardons and the Executive Order directing the "weaponization review."  *Id*. ¶ 43.  The declaration further describes the Association's overall belief that "any partisanship that appears to align with policymakers, groups, or public officials associated with the 'previous administration' will risk the organization being seen as running afoul of the current administration's efforts against 'weaponization'" and that "any attempts at engaging in advocacy or communications activities with policymakers, groups, or public officials who hold the view that

the January 6 investigations and prosecutions were not a 'grave national injustice' may be viewed by the DOJ as an act demonstrating unacceptable 'partisan intent." *Id*. ¶ 44.

The FBI Association, however, does not specify what advocacy in which it has engaged in the past that it is no longer pursuing. The Association instead appears to contend that it is currently being deterred from engaging in any "External Advocacy," *id*. ¶ 45, but that abstract assertion fails to establish a concrete and particularized injury. Even if it could satisfy that requirement, the alleged chilling effect the FBI Association claims to be experiencing in the abstract is the result of positions taken by the current Administration that are independent of the limited issues in this lawsuit and which, according to the declaration, would continue to have the same chilling effect on the Association regardless of the outcome of this lawsuit. Thus, even were the Court to determine that the FBI Association has established an alleged ongoing harm—the chilling of its "External Advocacy"—it has failed to establish that the alleged chilling effect is fairly traceable to the limited conduct at issue here as opposed to unchallenged actions beyond this lawsuit. For the same reason, it also has failed to establish the redressability prong of standing—that the alleged chilling effect would end by the injunction requested in this action.

Plaintiffs otherwise attempt to establish standing of the FBI Association based on the alleged "impairment of its advocacy," but "that will not suffice to show standing." *Ctr. for Democracy & Tech. v. Trump*, 507 F. Supp. 3d 213, 220 (D.D.C. 2020); Mot. to Dismiss (ECF No. 28) at 20. "[I]njuries to an organization's government lobbying and issue advocacy programs cannot be used to manufacture standing, because that would allow lobbyists on either side of virtually any issue to take the Government to court." *Env't Working Grp. v. FDA*, 301 F. Supp. 3d 165, 172 (D.D.C. 2018). "Frustration of an organization's objectives is the type of abstract concern that does not impart standing." *Ctr. for L. & Educ. v. Dep't of Educ.*, 396 F.3d 1152,

1162-63 (D.C. Cir. 2005). The D.C. Circuit's "precedent makes clear that an organization's use of resources for litigation, investigation in anticipation of litigation, or advocacy is not sufficient to give rise to an Article III injury." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015). Finally, to the extent the Association speculates about harm that might arise if the list at issue is disclosed, FBI Ass'n Decl. (ECF No. 25-9) ¶¶ 54-57, that is insufficient for reasons already addressed above in connection with the equally speculative claims of the individual Plaintiffs.

Given the absence of standing, the Court need not proceed further and should dismiss these consolidated cases in their entirety.

## II.    Plaintiffs Are Not Entitled To a Preliminary Injunction.

"[A] preliminary injunction is an extraordinary remedy never awarded as of right." *Winter* 555 U.S. at 24. A party seeking preliminary relief must make a "clear showing that four factors, taken together, warrant relief: likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest." *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (quoting *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 505 (D.C. Cir. 2016)). The moving party bears the burden of persuasion and must demonstrate, "by a clear showing," that the requested relief is warranted. *Hospitality Staffing Sols., LLC v. Reyes*, 736 F. Supp. 2d 192, 197 (D.D.C. 2010) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). Plaintiffs have failed to meet their burden of establishing any of these factors.

### A.  Plaintiffs Have Not Shown That They Will Suffer Irreparable Harm.

Even were the Court to determine that Plaintiffs have pled sufficient harm that is "real and sufficiently concrete to support the exercise of this Court's subject matter jurisdiction, those asserted harms are not necessarily 'irreparable.'" *All. for Retired Ams. v. Bessent*, Civ. A.

No. 25-0313 (CKK), 2025 WL 740401, at *21 (D.D.C. Mar. 7, 2025).[5]  An injury "sufficient to establish standing . . . does not necessarily satisfy the more demanding burden of demonstrating irreparable injury." *Cal. Ass'n of Private Postsecondary Schs. v. DeVos*, 344 F. Supp. 3d 158, 170 (D.D.C. 2018).

The standard for irreparable harm is "high."  *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.  "The moving party must show the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Id*. (cleaned up).  "Bare allegations of what is likely to occur are of no value since the court must decide whether the harm will in fact occur." *Wis. Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985).  "Injunctions . . . will not issue to prevent injuries neither extant nor presently threatened, but only merely feared." *Comm. in Solidarity with People of El Sal. v. Sessions*, 929 F.2d 742, 745–46 (D.C. Cir. 1991) (cleaned up).  "A movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.  Importantly, in this Circuit, the irreparable harm requirement is not met by allegations of an "increased risk" of negative consequences; instead, "an irreparable injury 'must be both certain and great' to support a preliminary injunction." *All. for Retired Ams.,* 2025 WL 740401, at *20 (quoting *Wis. Gas*, 758 F.2d at 674).

---

[5]      In the above case, Judge Kollar-Kotelly held that the disclosure of personal taxpayer information by the Treasury Department to personnel with the Department of Government Efficiency was a sufficient injury-in-fact to support standing based on the close relationship between the claims in that case and the common law tort of intrusion upon seclusion.  *All. for Retired Ams.*, 2025 WL 740401, at *17.  That analysis is not applicable here because the information on the lists is not "personal" but contains employment-related information and thus is not analogous to that common law tort.

Although irreparable harm is an essential requirement to obtain preliminary injunctive relief, Plaintiffs fail to address that requirement meaningfully in their motion, limiting their discussion to a single paragraph of three conclusory sentences. Mot (ECF No. 25-1) at 32. They assert that (1) "any risk that the List may be shared outside DOJ with other agencies or the public would be detrimental to the safety of the Plaintiffs and [the FBI Association's] members"; (2) the Department's "investigation into those FBI personnel who worked on the January 6 cases has had the effect of falsely branding Plaintiffs disloyal, partisan actors"; and (3) the "Government's selection of these individuals for investigation has chilled the core political speech of Individual Does and the members of the [FBI Association] and of [the FBI Association] as an organization." *Id.* None suffices.

*First*, the question under a preliminary injunction standard regarding Plaintiffs' speculation about a future public disclosure (or disclosure to another agency) is not whether the list, if disclosed, would cause irreparable harm. The question is whether Plaintiffs have met their burden to establish that such a disclosure is likely. *All. for Retired Ams.,* 2025 WL 740401, at *24. "[C]ourts in this District have consistently 'declined to find irreparable injury' from the disclosure of private information 'where the challenged disclosure is not 'public,' but instead is to a small number of 'individuals obligated to keep [the information] confidential." *Id.* at *21 (quoting *Univ. of Cal. Student Ass'n v. Carter*, Civ. A. No. 25-0354 (RDM), 2025 WL 542586, at *5 (D.D.C. Feb. 17, 2025)).

Thus, in *Alliance for Retired Americans*, the Court denied a motion for preliminary injunction seeking to preclude Department of Government Efficiency personnel from accessing personal financial data maintained by the Treasury Department. 2025 WL 740401, at *23. Although the Court determined that "[t]here is no doubt that public dissemination of sensitive,

private information is an irreparable harm[,]" the Court held that plaintiffs failed to carry "their burden of showing that such dissemination is likely." *Id.* at *21. The Court also found that "merely asserting that the Treasury DOGE Team's operations increase the *risk* of a catastrophic data breach or public disclosure of sensitive information . . . is not sufficient" because the standard requires a demonstration that "such a breach or improper disclosure is "'*likely* in the absence of an injunction'" not merely that there is a heightened risk of it occurring. *Id.* at *23 (emphasis in original).

In *University of California Student Association*, 2025 WL 542586, at *1, the Court likewise denied a motion for emergency relief (there a motion for temporary restraining order) seeking to enjoin the Department of Education "'from disclosing information' about Plaintiff's members 'to individuals affiliated with the . . . Department of Government Efficiency.'" As here, the plaintiffs in that case "provide[d] no evidence, beyond sheer speculation," that would allow the Court to infer that" those with access to the information "will misuse or further disseminate" it. *Id.* at *6. The Court also noted that "'the courts must presume' that the government will exercise its powers 'responsibly' and with 'due regard' to affected individuals" and that, "in the absence of clear evidence to the contrary," the Court would presume that Department of Government Efficiency personnel would properly discharge their official duties by using the information "for lawful purposes" and "keep[ing] it confidential, in accordance with the Privacy Act . . . and other federal laws." *Id.* at *16-17.

Here, Plaintiffs have not pled facts, or offered competent evidence, that would allow the Court to infer from the record that the Department will publicly disseminate the list or otherwise disseminate it to agencies outside of the Department. As regards a dissemination to other agencies, moreover, Plaintiffs have failed to establish how they would be irreparably harmed by such a

dissemination were it to occur. *See id.* at *6 (observing that "the remedies provided in the Privacy Act . . . confirm that UCSA's members are not suffering (and will not suffer) an irreparable harm" because "injuries are not 'irreparable' if there is a 'possibility' that 'adequate compensatory or other corrective relief will be available at a later date'").

Although Plaintiffs disagree with the review process conducted by the Department, that process is occurring pursuant to an Executive Order that Plaintiffs do not challenge as unlawful. Plaintiffs may disagree with the Executive Order as it relates to January 6 matters as well as the review of such matters that the Department has undertaken in accordance with that order. But that disagreement does not render the review improper or suggest the Department will use the list provided by the FBI other than for the purpose of that review. Accordingly, as in *University of California Student Association,* the Court should presume officials within the Department with access to the list will discharge their public duties in accordance with applicable law. Even in the absence of that presumption, however, Plaintiffs' speculation about a potential future disclosure to the public (or to another agency) is insufficient to establish irreparable harm.

To the extent Plaintiffs contend that Defendants have conceded irreparable harm, as they wrongly suggested at the temporary restraining order hearing, Hr'g Tr. (Feb. 6, 2025) at 52, any such contention would be baseless. At that hearing and in their opposition to the temporary restraining order motions, Defendants consistently maintained (as they do here) that Plaintiffs have failed to demonstrate irreparable harm because they have failed to establish that a public disclosure of the list was likely or imminent. *Does* TRO Opp'n (ECF No. 11) at 12; Hr'g Tr. (Feb. 6, 2025) at 24, 42. Although the Court expressed the view at the hearing that a public disclosure of the lists would cause harm (the degree and nature of which was not addressed) to individuals whose FBI affiliation and role in January 6 matters is not already in the public domain, and the Government

did not dispute that observation (Hr'g Tr. (Feb. 6, 2025) at 43-44), that is not a concession that Plaintiffs satisfied the irreparable harm requirement. As already addressed above, the relevant question is not whether the list, if disclosed to the public, would cause irreparable harm; the question is whether Plaintiffs have met their burden to establish that such a disclosure is likely. *All. for Retired Ams.,* 2025 WL 740401, at *23. They have not done so and, accordingly, their motion for preliminary injunction should be denied.

*Second*, Plaintiffs argue that they have been stigmatized as "disloyal, partisan actors" by their inclusion on the lists. As an initial matter, as framed by Plaintiffs, that harm already has occurred and, therefore, it cannot form the basis for preliminary injunctive relief. *See Winter*, 555 U.S. at 22 (petitioners seeking preliminary relief must "'demonstrate that irreparable injury is likely in the absence of an injunction'"); *Gordon v. Holder*, 632 F.3d 722, 725 (D.C. Cir. 2011) (delay in filing is significant to the question of irreparable harm particularly when "'the harm has occurred and the parties cannot be returned to the status quo'"). To the extent they contend that a public dissemination of the list would further stigmatize them, any such assertion would fail because Plaintiffs have not established that a public disclosure is likely, as already addressed above.

*Relatedly and finally*, the alleged harm to Plaintiffs' "core political speech" also already has occurred as framed by Plaintiffs' own argument. Plaintiffs' motion contends their "selection . . . for investigation has chilled" their political speech. Mot. (ECF No. 25-1) at 32. Harm that has occurred cannot form the basis for seeking preliminary injunctive relief because the requested injunction cannot return the allegedly injured party to the status quo ante. *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014) ("The primary purpose of a preliminary injunction is to preserve the object of the controversy in its then existing condition—to preserve the status quo."). Indeed,

as already noted, Plaintiffs conceded at the temporary restraining order hearing that any such claim was moot.  Hr'g Tr. (Feb. 6, 2025) at 19-20.  To the extent Plaintiffs are concerned about the potential for a future adverse employment action, that is too speculative to establish the irreparable harm requirement.

### B.   Plaintiffs Are Not Likely To Succeed On The Merits Of Their Claims.

Defendants have already articulated the reasons why Plaintiffs' claims fail on the merits. Mot. to Dismiss (ECF No. 28) at 21-29.  Defendants incorporate those arguments herein, and only address Plaintiffs' specific arguments in their motion for preliminary injunction.

Plaintiffs first improperly attempt to marry their Section 552a(b) and Administrative Procedure Act ("APA") claims.  Mot. (ECF No. 25-1) at 20-24.  They concede that "the Privacy Act does not specifically authorize injunctive relief for violations of 5 U.S.C. § 552a(b)"— precisely the relief Plaintiffs seek in this case—but assert that such relief is available through the APA predicated not on an APA violation but on an alleged violation of section 552a(b) of the Privacy Act.  *Id.* at 21.  That argument fails for several reasons.

First, a cause of action exists under the APA only if no other adequate remedy is available under another statute.  *See* 5 U.S.C. § 704.  Section 704 reflects Congress' judgment that "the general grant of review in the APA" should not "provide additional judicial remedies in situations where Congress has provided special and adequate review procedures." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988); *see also Garcia v. Vilsack*, 563 F.3d 519, 522-23 (D.C. Cir. 2009) (observing that "this court has held that the alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre'" and that "relief will be deemed adequate 'where a statute affords an opportunity for de novo district-court review' of the agency action").  Accordingly, because the Privacy Act provides an adequate remedy, Plaintiffs "cannot

bring an independent APA claim predicated on a Privacy Act violation." *Wilson v. McHugh*, 842 F. Supp. 2d 310, 320 (D.D.C. 2012).

Second, Plaintiffs have failed to plausibly plead a Privacy Act violation as addressed in detail in Defendants' motion to dismiss.  Mot. to Dismiss (ECF No. 28) at 22-26.  Among other things, Plaintiffs have failed to plead pecuniary harm as required to assert a Privacy Act claim based on an alleged violation of section 552a(b)—the sole Privacy Act section on which Plaintiffs' motion for preliminary injunction is based (*supra* n. 2).  *See FAA v. Cooper*, 566 U.S. 284, 296 (2012) ("the basic idea is that Privacy Act victims, like victims of libel per quod or slander, are barred from any recovery unless they can first show actual—that is, pecuniary or material—harm.").  In any event, the disclosure at issue (from the FBI to the Department) is permissible under section 552a(b) based on the routine use and need to know provisions of that section, and Plaintiffs have not asserted otherwise in their motion.  Mot. (ECF No. 25-1) at 20-24.

Third, Plaintiffs have failed to allege any final agency action, which is a prerequisite for asserting a claim under the APA.  *See* 5 U.S.C. § 706.  Plaintiffs' reliance on *Doe v. Stephens*, 851 F.2d 1457 (D.C. Cir. 1988), is misplaced here, other than to confirm that the Privacy Act's "subsection on civil remedies authorizes entry of injunctive relief in only two specific situations" and "precludes other forms of declaratory and injunctive relief." *Id.* at 1463 (citing 5 U.S.C. §§ 552a(g)(2)(A), (g)(2)(B)) (collecting cases).  That is consistent with Defendants' argument in their motion to dismiss.  Mot. to Dismiss (ECF No. 28) at 23.

*Doe* is otherwise inapposite.  It did not grant injunctive relief (the sole remedy requested here) under the APA but only declaratory relief and only after determining that the defendant had engaged in final agency action that was contrary to law, which is the applicable standard under the APA.  5 U.S.C. § 706(2).  In *Doe*, the final agency action concerned the agency's promulgation of

a routine use policy under the Privacy Act that would permit the public disclosure of confidential medical records pursuant to a grand jury subpoena when the D.C. Circuit already had held "that a grand jury subpoena did not qualify as an 'order of the court' so as to come within the exception to the Privacy Act's prohibition upon the disclosure of confidential medical records." *Doe*, 851 F.2d at 1466. The Court granted declaratory relief under the APA because the Court found a violation of the APA—that is, final agency action (a routine use policy) that was contrary to law.

Here, unlike in *Doe*, there is no final agency action challenged by Plaintiffs and thus no basis to contend that the Court can rely on the APA to fashion injunctive relief simply because a claim for violation of section 552a(b) of the Privacy Act also is asserted. In the absence of final agency action, Plaintiffs cannot rely on the APA, and instead only can proceed to the extent they have asserted a cognizable claim under the Privacy Act. Because they have not done so for the reasons set forth in Defendants' motion to dismiss, and injunctive relief is not available for alleged violations of the provisions of the Privacy Act that are at issue, Plaintiffs are not likely to succeed on the merits of their Privacy Act or APA claims.

Plaintiffs' argument is also misplaced because it focuses on the survey that the FBI utilized to compile the lists, not the lists that the FBI provided to the Department. Mot. (ECF No. 25-1) at 22 ("That is because the information contained in the Survey exceeds the parameters of the Executive Order."); *id*. at 22-23 ("That information, however, is not contained anywhere within the four concerns of the Survey"); *id*. at 23 ("[t]o permit the Government to avoid any commitment to keeping the Survey within DOJ"); *id*. at 24 ("DOJ would have the unfettered discretion to disseminate the Survey to the White House").

That focus is misplaced because the alleged disclosure that forms the basis for Plaintiffs' claims in this case concerns the lists that the FBI provided to the Department, not the survey that

the FBI conducted of its employees to prepare the lists at issue.  *See*, *e.g.*, Order (ECF No. 14) ¶ 1 ("The Government will not disseminate the list at issue in these consolidated cases[.]").  Plaintiffs have not alleged, nor does the contemporaneous email record reflect, that the responses to the survey have been shared by the FBI with the Department, except to the extent incorporated into the lists.  *See also* Hr'g Tr. (Feb. 6, 2025) at 19 (counsel for Plaintiffs acknowledging that information from the survey results "has been held back from DOJ").  And, as already established, Plaintiffs have acknowledged that claim is moot to the extent it is based on the compilation of the lists.  *Id.* at 19-20.

As to the disclosure of the lists by the FBI to the Department—the only disclosure alleged in the Amended Complaint—Plaintiffs do not argue that the FBI's sharing of the lists with the Department is impermissible under the routine use or need to know provisions of section 552a(b). Mot. (ECF No. 25-1) at 20-24.  Thus, they do not even argue that the disclosure at issue violates section 552a(b)—and it does not as established in Defendants' motion to dismiss.  Mot. to Dismiss (ECF No. 28) at 24-25.

Plaintiffs also focus their argument on a hypothetical disclosure to the White House and how such a disclosure allegedly would not constitute a routine use.  Mot. (ECF No. 25-1) at 20-24.  But Plaintiffs have not alleged that a disclosure outside the Department has occurred (whether of the survey results or the lists), which would be a prerequisite to alleging a Privacy Act violation on that basis.  By this argument, therefore, Plaintiffs are improperly asking this Court to issue an advisory opinion on a hypothetical claim that is not ripe for consideration and for which this Court lacks jurisdiction to entertain. *Texas v. United States*, 523 U.S. 296, 300 (1998) (a claim is unripe for judicial resolution "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all").

Plaintiffs also assert a likelihood of success for their First Amendment claim of retaliation based on political affiliation (count five) and the alleged chilling of speech.  Mot. (ECF No. 25-1) at 24, 27-30.  Neither claim has merit, however.  The retaliation claim fails because the lists and review process are addressed to Plaintiffs' official conduct, which is not protected under the First Amendment.  *Garcetti*, 547 U.S at 422; *see also Bowie v. Maddox*, 653 F.3d 45, 48 (D.C. Cir. 2011) ("The critical question under *Garcetti* is not whether the speech at issue has a civilian analogue, but whether it was performed 'pursuant to . . . official duties.'").  In addition, Plaintiffs have not alleged that they have been subject to any adverse employment action as would be necessary to state a claim, and, in the event of a future employment action were one to occur, Plaintiffs also would need to establish but-for causation between protected First amendment activity and any such future action.  *Lewis v. District of Columbia*, Civ. A. No. 22-3369 (RDM), 2025 WL 661603, at *31 (D.D.C. Mar. 2, 2025).  That conjecture is doubly speculative given that the focus of the review is on official conduct, which is not protected speech.

As regards to the chilling of speech claim, the gravamen of Plaintiffs' theory is that the internal review—conducted pursuant to Executive Order 14,147—targets them for perceived disloyalty and political allegiances.  Mot. (ECF No. 25-1) at 24-25, 27.  As explained in the Defendants' motion to dismiss, and as addressed in the section on standing above, that is contrary to the contemporaneous email record, which identifies the stated purpose of the review process as to ascertain whether law enforcement acted improperly in performing their official duties.  The alleged chilling effect of the review process, moreover, is based on entirely conclusory allegations that fail to plausibly plead a claim.  Motion to Dismiss (ECF No. 28) at 21-22.  Moreover, the list responds to a directive to the FBI to identify FBI personnel who worked on January 6 matters and does not distinguish between individuals based on speech outside the workplace, political party

affiliation, or any First Amendment activity. It is limited to identifying individuals who, in their official capacity as FBI employees, worked on a particular matter. Consequently, it invariably impacts individuals of various political parties and viewpoints and, for that reason, cannot be characterized as motivated by such considerations.

Moreover, "[a] speaker's speech is chilled when an otherwise willing speaker is prevented from speaking, or cajoled into no longer speaking, by government conduct." *Martin*, 271 F. Supp. 2d at 47. In *Martin*, the claim failed because the association failed to allege that the speaker was "no longer willing to speak with the public on issues he was previously willing to discuss." *Id*. at 48. As already addressed above, Plaintiffs' conclusory allegations in the Amended Complaint fail to plausibly allege that any of the individual Doe Plaintiffs were willing speakers before the events at issue and fail to identify what, if any speech, those Plaintiffs now claim to be deterred from engaging in based on their inclusion on the list at issue.

At bottom, because the Amended Complaint seeks only prospective relief, the "chilling of speech" claim is a veiled challenge to the constitutionality of Executive Order 14,147. But Plaintiffs have not challenged the lawfulness of that Executive Order or asserted a claim that it violates their constitutional rights. Having failed to make such allegations, they likewise have failed to plead that the review process undertaken pursuant to that order is unlawful. The First Amendment is not a vehicle to "constitutionalize the employee grievance," as already established above. *Garcetti*, 547 U.S. at 420 (cleaned up).

Plaintiffs' reliance on *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 79 (1990), does not change this analysis and, to the contrary, demonstrates the deficiencies in Plaintiffs' claim. The Supreme Court in *Rutan* held that "promotion, transfer, recall, and hiring decisions involving low-level public employees may [not] be based on party affiliation and support." *Rutan*, 497 U.S.

at 65. At issue in that case was the practice of a governor to grant waivers to a hiring freeze for supporters of a particular political party. *Id*. at 66. The state government evaluated that support by looking at "whether the applicant voted in Republican primaries in past election years, whether the applicant has provided financial or other support to the Republican Party and its candidates, whether the applicant has promised to join and work for the Republican Party in the future, and whether the applicant has the support of Republican Party officials at state or local levels." *Id*. The Supreme Court held the practice inconsistent with the First Amendment. *Id*. at 79. "The First Amendment," as the Supreme Court explained, "prevents the government, except in the most compelling circumstances, from wielding its power to interfere with its employees' freedom to believe and associate, or to not believe and not associate." *Id*. at 76.

There is nothing close to those allegations in this case. Plaintiffs acknowledge that the list at issue identifies FBI personnel who worked on a particular matter in their official capacity (Am. Compl. ¶ 67) and thus have not plausibly pled that they were targeted for inclusion on the list because of their party allegiances. Acts undertaken in an official capacity by government employees are not protected First Amendment activity. *Garcetti*, 547 U.S at 422; s*ee also Nagel v. Dep't of Health, Educ. & Welfare*, 725 F.2d 1438, 1441 (D.C. Cir. 1984) ("A federal agency does not violate the [Privacy] Act [provision preventing the recordation of an individuals' First Amendment activities] if it records, for evaluative or disciplinary purposes, statements made by employees while at work."). As Plaintiffs readily concede, at issue is an internal review process pursuant to an Executive Order—the validity of which Plaintiffs have not challenged. Am. Compl. (ECF No. 24) ¶¶ 63, 67.

Plaintiffs also assert that "the Government's statements and actions have chilled [the FBI Association's] speech" and the Association has "cull[ed] its lobbying and political speech, for risk

of being used as an indicator of partisan intent of its members." Mot. (ECF No. 25-1) at 28, 29 (cleaned up). As Defendants explain in their motion to dismiss and addressed above, the FBI Association has pleaded no facts, beyond conclusory allegations, to allege a constitutional injury attributable to the list at issue, let alone one redressable by the Court. Mot. to Dismiss (ECF No. 28) at 20; Am. Compl. (ECF No. 24) ¶ 93. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor are there any facts in the Amended Complaint suggesting that the government has "banned altogether" the FBI Association's lobbying efforts. Mot. (ECF No. 25-1) at 29.

Finally, Plaintiffs contend that they are likely to succeed on their privacy claim under the due process clause of the Fifth Amendment (count six). Mot. (ECF No. 25-1) at 30. As established in Defendants' motion to dismiss, there is no substantive right to privacy under the Fifth Amendment. Mot. to Dismiss (ECF No. 28) at 27. Apparently recognizing this, Plaintiffs' motion (not in the Amended Complaint) characterizes their claim as focusing on their right to bodily integrity, which they contend would be placed at risk were the list publicly disclosed. Mot. (ECF No. 25-1) at 30); *compare* Am. Compl. (ECF No. 24) ¶¶ 122-25; *see also Bibum v. Wilson*, Civ. A. No. 23-1587 (JMC), 2024 WL 1328413, at *2 (D.D.C. Mar. 28, 2024) ("[I]t is well settled that a plaintiff may not use her opposition to a motion to dismiss to amend her complaint.")

In support of this theory, Plaintiffs rely on *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998), but that case involved an entirely distinct situation from the one at issue here. There, a municipality had disclosed personal information from personnel files of undercover police officers to third parties outside the government (including attorneys representing gang members on trial in a matter investigated by the officers) based on the city's determination that the records were not exempt from disclosure under the state's record disclosure law. The court held that the

disclosure of personal information, which included home addresses, placed the officers at substantial risk of bodily harm and thereby violated the officers' right to privacy under the Fourteenth Amendment (not Fifth Amendment which is the constitutional provision alleged here). *Id*. at 1069-70.  In addition, because the municipality continued to maintain its position that it was required to disclose this information in response to requests under the state's record disclosure law, the court determined that the officers were entitled to injunctive relief prohibiting the city from again disclosing this information without first providing the officers meaningful notice in advance of the disclosure.  *Id.*

The facts here are entirely distinct from *Kallstrom*.  Unlike *Kallstrom*, there has been no prior disclosure to the public of the employment information on the lists, nor have Plaintiffs plausibly pled that such a disclosure is imminent.  The only disclosure at issue is from the FBI to the Department and Plaintiffs have not pled such a disclosure puts them at risk of bodily harm. Consequently, their Fifth Amendment claim is based on a hypothetical scenario that has not occurred and that is not ripe for the Court's consideration.

*Kallstrom* also expressly rejected imposing any blanket disclosure prohibition despite finding that the municipality had, in fact, previously disclosed the plaintiffs' information unlawfully and was planning to continue to disclose the information to the public.  The Sixth Circuit wrote, "we believe that the district court properly refused the officers' request for injunctive relief containing a broad prohibition against the release of personal information about the officers[.]" *Id.* at 1068.  Instead, based on the prior unlawful disclosure of the plaintiffs' information (again, no such past disclosure is alleged here) and a stated intention to make future disclosures (also absent here), the court required the municipality to provide notice before any future disclosure.  *Id.* at 1070.  Requiring notice of future disclosures to remedy past unlawful

disclosures is a far cry from imposing an anticipatory proscription on government disclosure that Plaintiffs seek here.

For these reasons and the reasons articulated in Defendants' motion to dismiss, Plaintiffs' claims are unlikely to succeed on the merits.

### C.    Plaintiffs Have Not Shown The Balance Of The Equities Favors Injunctive Relief.

Plaintiffs do not even attempt to articulate how the balance of the equities and the public interest favor granting the preliminary injunction they seek.  Mot. (ECF No. 25-1) at 33.  They instead attempt to put the burden on Defendants to present "evidence of harm resulting from an injunction."  *Id*.  Yet again, Plaintiffs misunderstand the applicable standard.  A preliminary injunction is "an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion."  *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004).  Plaintiffs have failed to address this factor in any meaningful way, relying instead on a mischaracterization of the review process undertaken pursuant to the Executive Order as involving "unlawful agency action."  Mot. (ECF No. 25-1) at 33. Further, given that Plaintiffs cannot establish the first two factors necessary to obtain an injunction, "it is clear [they] cannot make the corresponding strong showings [on the second two factors] required to tip the balance in their favor."  *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1295 (D.C. Cir. 2009).

The balance of the equities and the public interest favor denying the injunction.  The injunction Plaintiffs seek asks the Court to enjoin Defendants from (1) "publicly disclosing the Plaintiffs' identities, along with the identities of those similarly situated, either directly or indirectly, to any third parties" and (2) "taking any additional action which would infringe on Plaintiffs' Constitutional rights."  Proposed Order (ECF No. 25-2).  As to the former, Plaintiffs have not pled any cognizable claim, let alone one that could support such an expansive

prophylactic injunction against the Executive, nor have they established that they face imminent, concrete and particularized harm to support any prospective relief.  It is plainly not in the public interest for the Court to impose the extraordinary remedy of an injunction on the Executive when a plaintiff has failed to meet its burden for such extraordinary relief.  Moreover, the proposed order—enjoining any disclosure of "Plaintiffs' identities" to any third party—extends well beyond the limited scope of this lawsuit.  Plaintiffs' claims are based on the listing of all FBI personnel who worked on January 6 matters on a single document, the transmittal of that document to the Department of Justice, and fear of what might happen if that document was disclosed publicly. This case is not about a single plaintiff's individual circumstances.  The proposed injunction, however, would impose restrictions with respect to any Plaintiff (or putative class member) regardless of that plaintiff or putative plaintiff's individual circumstances, even if the individual were found during the review process to have engaged in misconduct in a manner that it would be in the public interest to disclose.  *See Citizens for Resp. & Ethics in Wash. v. Dept. of Just.*, 746 F.3d 1082, 1092-95 (D.C. Cir. 2014).  "[A]n injunction must be narrowly tailored to remedy the harm shown," *Gulf Oil Corp. v. Brock*, 778 F.2d 834, 842 (D.C. Cir. 1985), and, for that reason and the other reasons stated above, this aspect of the expansive injunction requested by Plaintiffs would be contrary to the public interest.

The other aspect of the proposed injunction also is contrary to the public interest for the same reasons.  There, Plaintiffs request that the Court enjoin the government from "taking any additional action which would infringe on Plaintiffs' Constitutional rights." As already established, Plaintiffs' "chilling effect" claim underlying this requested relief amounts to an improper attempt to "constitutionalize the employee grievance." *Garcetti*, 547 U.S. at 420.  By proposing this relief, therefore, Plaintiffs in effect ask the Court to enjoin the Department from conducting the

Presidentially ordered internal review of Plaintiffs' official conduct in investigating and prosecuting January 6 defendants. That would be an unprecedented intrusion into the President's authority to exercise "all of" the "executive Power" of the United States. *Seila*, 591 U.S. at 203. This is especially true in matters concerning the internal affairs of an Executive Department. "[T]he Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" *Sampson v. Murray*, 415 U.S. 61, 83 (1974) (quoting *Cafeteria & Rest. Workers Union v. McElroy*, 367 U.S. 886, 896 (1961)).

While a recent district court decision, currently on appeal, has called into question the Executive's ability to take certain employment actions, *Harris v. Bessent*, Civ. A. No. 25-0412 (RC), 2025 WL 679303, at *10 (D.D.C. Mar. 4, 2025) (ordering the restoration of a member of the Merit System Protection Board), that decision involved an actual adverse employment action. That is not the situation here. Granting the requested injunction would infringe upon the ability of the Department to conduct its internal review and the President's power to "supervise" the Executive workforce, which "wield[s] executive power on his behalf." *Seila*, 591 U.S. at 204. Such extraordinary intrusion into the internal affairs of the Executive would be breathtaking. Plaintiffs have not identified a single case where a court has done so. In short, Plaintiffs have offered nothing persuasive to overcome "the general [un]availability of preliminary injunctions in Government personnel cases." *Sampson*, 415 U.S. at 84.

*   *   *

**CONCLUSION**

For these reasons, the Court should deny Plaintiffs' motion for a preliminary injunction.

Dated: March 14, 2025                    Respectfully submitted,

                                         EDWARD R. MARTIN, JR., D.C. Bar #481866
                                         United States Attorney

                                         BRIAN P. HUDAK
                                         Chief, Civil Division

                                         By:  _____/s/ *Jeremy S. Simon*_____
                                              JEREMY S. SIMON, D.C. BAR #447956
                                              DIMITAR P. GEORGIEV, D.C. BAR #1735756
                                              Assistant United States Attorneys
                                              601 D Street, NW
                                              Washington, DC 20530
                                              (202) 252-2500 (main)

                                         *Attorneys for the United States of America*