**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN AND JANE DOES 1-9, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 25-0325 (JMC) |
| DEPARTMENT OF JUSTICE, | |
| Defendant. | |
| FEDERAL BUREAU OF INVESTIGATION AGENTS ASSOCIATION, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 25-0328 (JMC) |
| DEPARTMENT OF JUSTICE, et al., | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

INTRODUCTION .........................................................................................................7

I.      PROCEDURAL HISTORY.............................................................................8

II.     THE FACTUAL ALLEGATIONS IN THE COMPLAINT ..................................9

III.    ARGUMENT .................................................................................................14

        A.    Legal Standard. ...................................................................................14

              1.    Rule 12(b)(1)..............................................................................14

              2.    Rule 12(b)(6)..............................................................................15

        B.    The Court Has Jurisdiction to Hear Plaintiffs' Claims. .............................15

        C.    Plaintiffs Have Pled Facts Sufficient to  State Their Claims. ...................21

              1.    Plaintiffs Have Raised Sufficient Facts to Plead Their
                    Privacy Act Claims and their APA Claim. ...................................21

              2.    Plaintiffs Have Adequately Pled Their First Amendment
                    Claims. .......................................................................................27

              3.    Plaintiffs Have Adequately Pled Their Fifth Amendment
                    Claims ........................................................................................30

              4.    Plaintiffs Have Adequately Pled A Mandamus Claim .................32

CONCLUSION.............................................................................................................34

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*13th Regional Corp. v. U.S. Dep't of Interior,*
    654 F.2d 758 (D.C. Cir. 1980) ..................................................................32, 34

*Am. Petroleum Inst. v. E.P.A.,*
    683 F.3d 382 (D.C. Cir. 2012) ......................................................................16

*Aref v. Lynch,*
    833 F.3d 242 (D.C. Cir. 2016) ......................................................................29

*Armstrong v. Geithner,*
    608 F.3d 854 (D.C. Cir. 2010) ......................................................................26

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ......................................................................................15

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..........................................................................15, 23, 32

*Branti v. Finkel,*
    445 U.S. 507 (1980) ................................................................................28, 29

*Chamber of Com. of United States v. Reich,*
    74 F.3d 1322 (D.C. Cir. 1996) ......................................................................27

*In re Cheney,*
    406 F.3d 723 (D.C. Cir. 2005) ................................................................32, 34

*Citizens for Resp. & Ethics in Wash. (CREW) v. Trump,*
    302 F. Supp. 3d 127 (D.D.C. 2018) ..............................................................31, 33

*Doe v. Chao,*
    540 U.S. 614 (2004) ................................................................................24, 27

*Doe v. Goss,*
    2007 U.S. Dist. LEXIS 2708 (D.D.C. Jan. 12, 2007) ..................................24

*Doe v. Stephens,*
    851 F.2d 1457 (D.C. Cir. 1988) ....................................................................26

*Elrod v. Burns,*
    427 U.S. 347 (1976) ......................................................................................28

*FAA v. Cooper,*
    566 U.S. 284 (2012) ................................................................................21, 26

*Feldman v. CIA,*
    797 F. Supp. 2d 29 (D.D.C. 2011) ......................................................................................25

*Gentile v. SEC,*
    974 F.3d 311 (3d Cir. 2020)...............................................................................................27

*Gregorio v. Hoover*,
    238 F. Supp. 3d 37 (D.D.C. 2017) ....................................................................................15

*Heffernan v. City of Paterson*,
    578 U.S. 266 (2016)....................................................................................................28, 30

*Hettinga v. United States*,
    677 F.3d 471 (D.C. Cir. 2012) ..........................................................................................16

*Kareem v. Haspel*,
    986 F.3d 859 (D.C. Cir. 2021) ..........................................................................................18

*Kowal v. MCI Commc'ns Corp.*,
    16 F.3d 1271 (D.C. Cir. 1994) ..........................................................................................15

*Langeman v. Garland*,
    88 F.4th 289 (D.C. Cir. 2023) .....................................................................................18, 31

*Metro. Washington Chapter v. District of Columbia*,
    57 F.Supp.3d 1 (D.D.C. 2014) ..........................................................................................14

*Moran v. U.S. Capitol Police Bd.*,
    820 F.Supp.2d 48 (D.D.C. 2011) ......................................................................................14

*Nat'l Treasury Emps. Union v. U.S.*,
    101 F.3d 1423 (D.C. Cir. 1996) ........................................................................................16

*National Aeronautics and Space Admin. v. Nelson*,
    562 U.S. 134 (2011)....................................................................................................30, 31

*Nixon v. Admin. of Gen. Servs.*,
    433 U.S. 425 (1977)....................................................................................................30, 31

*In re OPM Data Sec. Data Breach Litig. v. OPM*,
    928 F.3d 42, 61 (D.C. Cir. 2019) ......................................................................................17

*Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*,
    879 F.3d 339 (D.C. Cir. 2018) ..........................................................................................19

*Paredes v. Garland*,
    No. CV 20-1255 (EGS), 2023 WL 8648830 (D.D.C. Dec. 14, 2023)...................................15

*Peter B. v. CIA*,
 620 F. Supp. 2d 58 (D.D.C. 2009) .......................................................................23

*Rann v. Chao*,
 154 F.Supp.2d 61 (D.D.C. 2001) .........................................................................14

*Rutan v. Republican Party of Illinois*,
 497 U.S. 62 (1990) ..........................................................................................29, 30

*Scolaro v. D.C. Bd. of Elections & Ethics*,
 104 F.Supp.2d 18 (D.D.C. 2000) .........................................................................14

*Tanner-Brown v. Haaland*,
 105 F.4th 437 (D.C. Cir. 2024) ............................................................................14

*Trump v. United States*,
 144 S. Ct. 2312 (2024) .........................................................................................32

*Twin Rivers Paper Co. LLC v. SEC*,
 934 F.3d 607 (D.C. Cir. 2019) ............................................................................24

*United States v. Lee*,
 106 U.S. 196 (1882) .............................................................................................32

*Warren v. District of Columbia*,
 353 F.3d 36 (D.C. Cir. 2004) ...............................................................................23

*Whalen v. Roe*,
 429 U.S. 589 (1977) .............................................................................................30

*Wilbur v. United States ex rel. Kadrie*,
 281 U.S. 206 (1930) .............................................................................................32

*Wilson v. McHugh*,
 842 F. Supp. 2d 310 (D.D.C. 2012) .....................................................................26

**Statutes**

5 U.S.C. § 552a(b) ......................................................................................................25

5 U.S.C. § 552a(e)(6) .................................................................................................23

5 U.S.C. § 552a(g)(1)(C) ...........................................................................................23

5 U.S.C. § 552a(g)(1)(D) ...........................................................................................27

5 U.S.C. § 552a(g)(2)(A) ...........................................................................................26

5 U.S.C. § 702 .............................................................................................................27

18 U.S.C. § 119 ............................................................................................................33

18 U.S.C. § 119(a) .......................................................................................................33

18 U.S.C.§ 1513 ...........................................................................................................33

18 U.S.C § 1513(e) .......................................................................................................34

18 U.S.C. § 2261A(2) ............................................................................................33, 34

**Other Authorities**

Hannity, *The Fox News Channel*, Interview with Pam Bondi, March 3, 2025 .............................13

Kerry Picket, *Agent Who Infiltrated of Two "Honeypots"*, Washington *Trump's Campaign Revealed; Woman Was One* Times (Feb. 26, 2025) ...............................................13

**INTRODUCTION**

Defendants the Department of Justice ("DOJ") and the United States of America (collectively, the "Defendants" or the "Government") seek to have this case dismissed, asserting the Court lacks subject matter jurisdiction because the claims are not ripe and that Plaintiffs have failed to state claims upon which relief may be granted. Defendants' strident opposition to the relief sought underscores the necessity of this case. Defendants have clung to a perceived right to publicly disclose the names of FBI personnel associated with the now-infamous January 6 Survey. They claim no "present intent" to disclose the names of these FBI personnel but remain deafeningly silent as to their "future intent." Furthermore, they have refused to explain the purpose or process behind aggregating the names of FBI personnel, while in the same breath arguing that this factual gap warrants dismissal. All of this has occurred against the backdrop of Defendants' persistent incendiary and conclusory comments about "root[ing] out" the so-called "weaponization" of January 6, 2021.

Plaintiffs the Federal Bureau of Investigation Agents Association ("FBIAA"), John Does 1, 3, and 4 and Jane Does 1-3 ("the 328 Doe Plaintiffs") and John and Jane Does 1-9 et al., individually and on behalf of their putative class ("the 325 Doe Plaintiffs") (collectively, "Plaintiffs" or the "consolidated Plaintiffs"), respectfully submit that this Court should deny Defendants' motion to dismiss. As outlined in Plaintiffs' First Amended Complaint ("FAC") and demonstrated in real time in courtrooms throughout the country, the Government can no longer be trusted at its unenforceable word. Since the filing of this case, the environment which dictates Plaintiffs' fate has grown ever more punctuated with red flags about the intentions of a Department of Justice unencumbered by constitutional norms. The harm which awaits Plaintiffs is real, as are Defendants' violations of Plaintiffs' statutory and constitutional rights.

Defendants have inexplicably downplayed the threat their actions pose and in doing so have misconstrued the nature of Plaintiffs' statutory and constitutional claims, each of which are sufficiently pleaded.[1] In neither a Rule 12(b)(1) nor a Rule 12(b)(6) analysis do these issues resolve in Defendants' favor. For the purposes of the instant motion, under the Rule 12 standard, Plaintiffs respectfully submit that the Court must deny Defendants' motion to dismiss for the reasons outlined herein and allow the case to proceed to a preliminary injunction hearing and discovery.

## I.    PROCEDURAL HISTORY

On February 4, 2025, Plaintiffs in 1:25-cv-325 (the 325 Doe Plaintiffs) and 1:25-cv-328 (the 328 Doe Plaintiffs and FBIAA) filed complaints accompanied by motions for a temporary restraining order, seeking to enjoin Defendants from publicly disclosing the names of FBI personnel who had responded to a DOJ-issued survey seeking identifying information about employees who worked on January 6 investigations. Dkts. 1, 2.[2]

On February 6, the Court formally consolidated the two actions and held a hearing on the motions. By February 7, the parties had reached a consent order that the Court published on the docket the same day while scheduling a preliminary injunction hearing date of March 27, 2025. Dkt. 14. The consent order both restrained the Government from disclosing the names without notice and set a briefing schedule for the injunction. *Id.*

On February 17, Plaintiffs filed a motion for expedited discovery in advance of the upcoming hearing. On February 24, Plaintiffs filed an amended complaint along with their motion for preliminary injunction. Dkts. 24, 25. On February 26, Defendants filed the instant motion to

---

[1] In their First Amended Complaint ("FAC"), Plaintiffs do not challenge the future termination of FBI personnel involved in the January 6 cases. Despite the considerable space devoted to these arguments in Defendants' Motion to Dismiss, the FAC filed at Dkt. 24 contains no reputational due process counts.

[2] Case 1:25-cv-328 was consolidated with 1:25-cv-325 as the first-filed case. Docket entries cited herein will be to 1:25-cv-325 unless noted otherwise.

dismiss as well as an opposition to Plaintiffs' motion for discovery. Dkts. 28, 29. The discovery opposition was linked to the arguments laid out in the motion to dismiss.[3] Dkt. 29.

On February 28, this Court denied Plaintiffs' February 17 motion for expedited discovery without prejudice. On March 10, 2025, Plaintiffs filed a revised motion for expedited discovery. Dkt. 32. On March 14, Defendants filed their opposition to Plaintiffs' motion for preliminary injunction. Dkt. 34.

A hearing on Plaintiffs' motion for preliminary injunction is scheduled for March 27, 2025.

## II.    THE FACTUAL ALLEGATIONS IN THE COMPLAINT

The factual background has been previously outlined in Plaintiffs' First Amended Complaint ("FAC") (Dkt. 24), and their filings in support of a preliminary injunction (Dkt. 25 and accompanying exhibits and declarations; Dkt. 25-1, pp. 3-11) which are incorporated herein by reference. Between January 20, 2025 and present, Defendants have made or taken various statements and actions both formal (through official memorandums, emails, and executive orders) and informal (through social media posts, speeches, and television interviews). These provide important context for Plaintiffs' claims; key facts relevant to the pending motion follow below.

The January 20, 2025 Presidential Proclamation which pardoned all January 6 rioters (the "Pardons Proclamation") referenced "a grave national injustice that has been perpetrated upon the American people over the last four years" without further elaboration. FAC ¶¶ 66, 128; Dkt. 25-3. All January 6 rioters, from those who assaulted police officers to those who committed seditious conspiracy against the United States, were released from their sentences and not subject to any term of supervised release. FAC ¶ 44.

---

[3] Because the Court ultimately denied Plaintiffs' original discovery motion, this opposition does not respond to those portions of Dkts. 28 and 29 which are now moot.

The contemporaneously issued Executive Order, "Ending the Weaponization of the Federal Government" (the "Weaponization EO"), referenced "unprecedented, third-world weaponization of prosecutorial power" and the "ruthless[] prosecut[ion of] more than 1,500 individuals associated with January 6." FAC ¶¶ 62, 63, 76. As to the Department of Justice, the Weaponization EO set forth the following "process to ensure accountability for the previous administration's weaponization of the Federal Government against the American people":

> . . . The Attorney General, in consultation with the heads of all departments and agencies of the United States, shall take appropriate action to review the activities of all departments and agencies exercising civil or criminal enforcement authority of the United States, including, but not limited to, the Department of Justice, the Securities and Exchange Commission, and the Federal Trade Commission, over the last 4 years and identify any instances where a department's or agency's conduct appears to have been contrary to the purposes and policies of this order, and prepare a report to be submitted to the President, through the Deputy Chief of Staff for Policy and the Counsel to the President, with recommendations for appropriate remedial actions to be taken to fulfill the purposes and policies of this order.

*Id.*

The January 31 "Terminations Memo" signed by Acting Deputy Attorney General ("A/DAG") Emil Bove III summarily terminated eight senior FBI personnel without any apparent form of review. FAC ¶¶ 65-68. The Terminations Memo quotes from both the Weaponization EO and the Pardons Proclamation citing a "grave national injustice" and a "systemic campaign" engaged in by the "previous administration." FAC ¶¶ 65-68, 118. The Terminations Memo also referenced "weaponization" in the context of the security clearance process and an alleged "reticence" by the FBI "to address instructions and requests from" the DOJ. Dkt. 25-5. Immediately following a list titled "Employees To Be Terminated Pursuant To [the paragraphs citing the Pardons Proclamation and the Weaponization EO]" was a directive from A/DAG Bove to the FBI to identify "all current and former FBI personnel assigned at any time" to January 6

investigations.[4] FAC 66; Dkt. 25-5. The directive also included an apparent non-sequitur about agents involved in a case connected to the October 7, 2023 Hamas attack on Israel. Dkt. 25-5. Apparently envisioning a "list," the memo directed that "[f]or each employee included in the list, provide the current title, office to which the person is assigned, role in the investigation or prosecution, and date of last activity relating to the investigation or prosecution." A/DAG Bove concluded the Terminations Memo by stating that he will "commence a review process to determine whether any additional personnel actions are necessary." FAC ¶ 67.

On February 2, 2025, the DOJ issued the January 6 Survey to over 5,000 FBI personnel. *See* FAC ¶ 68 (listing questions).

On February 5, 2025, A/DAG Bove sent an email with "additional information" about the January 31 Terminations Memo. FAC ¶73; Dkt. 25-6. The email ham-handedly attempted to blame the FBI for A/DAG Bove's problematic Terminations Memo. In sum, the February 5 email explained that A/DAG Bove had asked the FBI to "identify the core team" responsible for the January 6 investigations so that A/DAG Bove could "review" that team for "weaponization." *Id*. When the FBI would not provide those names, A/DAG Bove claimed he then sought a "complete data set" from which he could "reliably pare down to the core team" in order to make a weaponization determination. *Id*. A/DAG Bove asserted that "[t]he only individuals who should be concerned" about his process were those who acted with "corrupt or partisan intent," "blatantly defied orders" from DOJ, or "exercised discretion in weaponizing the FBI." *Id*.

---

[4] It is worth noting here that even the Government's own interpretation of what constitutes a "January 6 investigation" has shifted. Recently, DOJ reversed its own position on the intent of the Pardons Proclamation (from which the A/DAG Bove's Terminations Memo expressly quotes and on which communications about "weaponization" and the Survey are inextricably linked). *See United States v. Daniel Edwin Wilson*, 1:25-cr-427-DLF, Dkt. No. 113, Memorandum Opinion from March 13, 2025, pp. 4-5, 13-14. The result has been hyper-particularized leniency with January 6 rioters who faced unrelated weapons offenses. *Id*. at 13-14.

Also on February 5, the Department of Justice issued the Restoring Integrity Memo. FAC ¶¶ 76-78. Citing the Weaponization EO, the Restoring Integrity Memo asserted that those who acted with a "righteous spirit and just intentions" need not worry about being "root[ed] out" by the newly-established Weaponization Working Group. FAC ¶¶ 76-78; Dkt. 25-7. Notwithstanding that the working group's purported purpose was to "conduct a review" of department activities to identify weaponization, the memo listed several instances where DOJ was evidently finding de facto weaponization. *See id*. ("the Weaponization Working Group will examine . . . [w]eaponization by Special Counsel Jack Smith and his staff" and "[f]ederal cooperation with the weaponization by the Manhattan District Attorney Alvin Bragg, New York Attorney General Letitia James, and their respective staffs"). The Restoring Integrity Memo also asserted conclusively that "improper investigative tactics and unethical prosecutions" had occurred in relation to the January 6 investigations, and that the working group would examine those matters.

On February 6, at a hearing in this case, the Government made multiple representations on the record that it did not have a "present intent" to disclose the January 6 Survey list. *See* Draft Hearing Transcript ("Tr.") at 45:12, 67:25, 68:25. However, Government counsel also conveyed that the DOJ did not have a list of employee names but rather employee ID numbers, apparently unaware that A/DAG Bove was demanding the personal names of the Survey respondents *as his own lawyers were in court* asserting the opposite. *See* Tr, 66:2-4 (Government counsel: "I understand [the Plaintiffs] to be complaining about a list that was provided to the Department of Justice that doesn't even identify people's names."); Tr. 66:16-8  (The Court: "And, again, the DOJ wanted names and my understanding is the FBI didn't provide names."); Dkt. 28-1 (Defendants' Motion to Dismiss ("Def. Mot."), Exhibit 1) ("Earlier today, we were directed by the Office of the Deputy Attorney General to provide the lists identifying employees by name.")

On February 7, the parties entered a consent order restraining the Government from directly or indirectly releasing the list of January 6 FBI personnel. Dkt. 22 ¶ 1. The order included the following clause, conspicuously left out of the Government's summary of the facts in its motion (Def. Mot. at 8): "Absent further order of the Court, the Government may terminate the proscription set forth in Paragraph 1 at its election by providing two business days' notice to the parties and the Court of its intent to terminate." *Id.* ¶ 2.

Also on February 7, President Trump claimed that he would "very surgically and very quickly" fire FBI personnel who worked on January 6 investigations. FAC ¶¶ 89. That same day, United States Attorney Ed Martin, who is supervising this case, published a memorandum on social media which declared that he would use his powers as United States Attorney to criminally investigate people who did not commit a crime but who he deemed unethical. FAC ¶¶ 82-83.

On February 21, 2025, former Proud Boys leader Enrique Tarrio, who had been released early from his 22-year sentence and had publicly posted the name of an FBI agent who had testified against him at his criminal trial and has openly vowed to seek retaliation and retribution, was arrested outside of the United States Capitol on assault charges. FAC ¶¶ 44-47.[5]

---

[5] Filed February 24, 2025, the FAC does not account for the near-daily drumbeat of warning signs that underscore Plaintiffs' concern. On February 26, 2025, the identity of a FBI undercover employee ("UCE") was disseminated to the media after that individual's identity was disclosed to Congress in a purported "whistleblower" submission from an FBI employee. *See* Kerry Picket, *Agent Who Infiltrated Trump's Campaign Revealed; Woman Was One of Two "Honeypots"*, Washington Times (Feb. 26, 2025). In a March 3, 2025, interview on Fox News, Attorney General Pam Bondi replied to a question about "restor[ing]" the DOJ by stating: "Well, first and foremost, we got rid of the Jack Smith team. Gone. Those people are gone. We're still trying to find out, um, there are a lot of people in the FBI and also in the Department of Justice who despise Donald Trump, despise us, don't want to be there. *We will find them, um, because you have to believe in transparency.* You have to believe in honesty. You have to do the right thing. And, right now, we're going to root them out. We will find them, and they will no longer be employed. Hannity, *The Fox News Channel*, Interview with Pam Bondi, March 3, 2025 (emphasis added). On March 14, 2025, President Trump described January 6 defendants as "political prisoners" and "hostages" while decrying that law enforcement's "weaponization" had "thwart[ed] the will of the American

### III.   ARGUMENT

#### A.   Legal Standard.

##### 1.   Rule 12(b)(1)

When a defendant brings a motion under Fed. R. Civ. P. 12(b)(1), this presents a "threshold challenge" to the court's jurisdiction. *Metro. Washington Chapter v. District of Columbia*, 57 F.Supp.3d 1, 13 (D.D.C. 2014). A plaintiff can overcome this by "establishing jurisdiction by a preponderance of the evidence." *Moran v. U.S. Capitol Police Bd.*, 820 F.Supp.2d 48, 53 (D.D.C. 2011) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "In reviewing a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the court must accept all the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor." *Rann v. Chao,* 154 F.Supp.2d 61, 64 (D.D.C. 2001); *see also Tanner-Brown v. Haaland*, 105 F.4th 437, 445 (D.C. Cir. 2024) ("The Supreme Court has made clear that when considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim . . . we must consider standing separately from the merits by assuming that the plaintiff will ultimately prevail on her legal theory."). The Court, in its analysis, "may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F.Supp.2d 18, 22 (D.D.C. 2000).

---

people" in a televised speech to DOJ. C-SPAN, *President Trump Delivers Remarks at Justice Department*, March 14, 2025, available at https://www.c-span.org/program/white-house-event/president-trump-delivers-remarks-at-justice-department/657237.

### 2.    Rule 12(b)(6)

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) 'tests the legal sufficiency of a complaint.'" *Paredes v. Garland*, No. CV 20-1255 (EGS), 2023 WL 8648830, at *7 (D.D.C. Dec. 14, 2023) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). Moreover, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), "a judge must accept as true all of the factual allegations contained in the complaint." *Gregorio v. Hoover*, 238 F. Supp. 3d 37, 45 (D.D.C. 2017) (citing *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009)). "In evaluating a Rule 12(b)(6) motion, the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)); *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (a court must also give the plaintiff the "benefit of all inferences that can be derived from the facts alleged."). Taken as true, a complaint's factual allegations need only rise above the speculative level. *Twombly* at 555. A claim is "plausible on its face" when the facts pled in the complaint allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly* at 570).

### B.    The Court Has Jurisdiction to Hear Plaintiffs' Claims.

Defendants' only jurisdiction assertion is that Plaintiffs have not adduced sufficient facts to support a plausible inference that the injury they face–disclosure of the list and any other information collected from the Survey–is imminent. Thus, according to Defendants, the case is not

ripe for review.[6] Contrary to their assertions, however, the injury here is imminent based on the facts alleged in Plaintiffs' FAC. Waiting until irreparable harm has manifested, i.e., the names of FBI personnel have been disclosed to the public, would contradict the very relief Plaintiffs seek.

Courts in this Circuit have held that "if a threatened injury is sufficiently "imminent" to establish standing, the constitutional requirements of the ripeness doctrine will necessarily be satisfied." *Nat'l Treasury Emps. Union v. U.S.*, 101 F.3d 1423, 1428 (D.C. Cir. 1996); *Am. Petroleum Inst. v. E.P.A.*, 683 F.3d 382, 386 (D.C. Cir. 2012) ("Part of the [ripeness] doctrine is subsumed into the Article III requirement of standing, which requires a petitioner to allege *inter alia* an injury-in-fact that is imminent or certainly impending.") (cleaned up).

The FAC sets forth facts that, taken as true and as a whole—as they must be, on a motion to dismiss—permit a reasonable inference to be drawn that their identities may be released to individuals outside DOJ, including at the White House, to other agencies, or to the public. In sum, the FAC alleges an uninterrupted sequence of facts highlighting DOJ's statements and actions in a campaign against the FBI that share these characteristics: they are conclusory, issued without warning, and retaliatory in nature. The plausible next step in this dangerous trajectory is the public disclosure of identities under the guise of "transparency" for perceived political disloyalty. There is nothing speculative about the following facts and the inferences that arise from them.

*First*, President Trump has consistently promised vengeance against FBI personnel who he claims engaged in fraudulent and politically driven investigations of him. FAC ¶¶ 40, 41. *Second*, President Trump and members of his Administration have started to make good on that promise by, among other things, unconditionally pardoning January 6 rioters, while contemporaneously

---

[6] Defendants devote significant space to arguing about standing to challenge termination, demotion, or other reputational harm, but these are not part of the counts alleged in the First Amended Complaint.

publicly identifying and threatening to identify government officials. FAC ¶¶ 42, 57. *Third*, DOJ identified and summarily terminated, without warning, high-ranking FBI officials solely because they had supervisory responsibility over the January 6 investigations. FAC ¶ 65. DOJ then joined the attack on the FBI rank-and-file by attempting to "identify" FBI personnel who participated in the January 6 investigations and who are not "faithful[]" FAC ¶¶ 73, 76. *Fourth*, DOJ's creation and issuance of the Survey was based on the conclusory presumption that some, if not all, Survey respondents had weaponized their law enforcement roles against President Trump. FAC ¶¶ 63, 64. *Fifth*, the FBI initially provided the DOJ with employee identifying numbers, but, for reasons the Government has not articulated, the DOJ insisted that the FBI provide the names of every Survey respondent, notwithstanding that this did nothing to support its stated purpose for Weaponization EO. FAC ¶¶ 67, 68, 73, 74; Def. Mot., Exhibit 1. *Sixth*, the defendants have not identified any lawful purpose for which they could disseminate the identities of FBI personnel, but even now are fighting for that option despite their admission that doing so would cause irreparable harm. *Seventh*, Defendants' own shifting positions on culpability of January 6 defendants and other recent public statements, coupled with its past catering to their demands for pardon and retribution, provide scant reassurance for Plaintiffs.  Defendants do not reckon with any of these facts, and instead seek to muddy the waters with unsworn, contradictory out-of-court statements and their own inconsistent and unpredictable positions.

None the cases on which Defendants rely support their arguments against standing, and instead, these cases support Plaintiffs. The D.C. Circuit in *In re OPM Data Security Data Breach Litigation v. OPM*, concluded that the plaintiffs, federal employees, had standing based on their "heightened risk of future identity theft" after their personal information was stolen by hackers in past OPM data breaches. 928 F.3d 42, 61 (D.C. Cir. 2019). The court therefore rejected the

defendants' arguments that the threat of future injury was too speculative, reasoning that even though nearly two years had passed since the previous breach and the plaintiffs had not suffered "misuse" of their data prior to filing the complaint, they had alleged facts to support their claim of future injury. The court went on, "[g]iven the nature of the information stolen," it is "at least plausible" that the plaintiffs "run a substantial risk of falling victim to other such incidents in the future." *Id.* at 59.  Like the plaintiffs in *OPM* who faced a future risk of harm from their information being misused, Plaintiffs here face a future risk of harm from their names being disclosed, particularly where so many members of the public harbor ill will, or have been encouraged to harbor ill will, towards them. FAC ¶¶ 41-56. At this stage, Plaintiffs need not prove the details of how the list will be disclosed, only that a future risk of harm exists.

Nor does *Kareem v. Haspel* support Defendants' position. In *Kareem*, the plaintiff, a journalist, claimed that the U.S. government had designated him "a terrorist target approved for lethal force" and placed him on a suspected terrorist "Kill List." 986 F.3d 859, 864, 866 (D.C. Cir. 2021). The court remarked that these serious claims were devoid of any factual support, noting that the only allegations the plaintiff could muster was that he was in the "vicinity" of U.S. airstrikes. *Id.* at 868–69. The court reasoned that these facts alone were insufficient to establish a plausible inference that the government had "*specifically* targeted Kareem." *Id.* at 869. Here, the FAC includes factual allegations that Plaintiffs were targeted *specifically* because they participated in the January 6 investigations and cases. FAC ¶¶ 67, 68, 73. By Defendants' own admission, *only* Plaintiffs and those similarly situated, and not all FBI personnel, were required to complete the Survey and were placed on a list *because* of their work related to January 6. FAC ¶ 73. The disclosure of that information outside DOJ, even to White House personnel who have expressed

18

interest in knowing the identities of these individuals as the FAC alleges, FAC ¶ 73, would pose an enormous risk to Plaintiffs' safety.[7]

Defendants' other arguments can be easily dispatched. First, the declarations supporting Plaintiffs' Motion for Preliminary Injunction, Defendants contend, do not include the declarants' personal knowledge that Defendants intend to disclose the list outside DOJ. Def. Mot. at 14. But Plaintiffs' personal knowledge of the Government's intent is not a requirement of establishing standing. Instead, it is whether the allegations of the complaint, as a whole and viewed in a light favorable to Plaintiffs, support drawing a plausible inference that a risk of disclosure (outside DOJ) exists. And for the reasons above, the FAC includes ample facts that support drawing such an inference.

Second, contrary to Defendants' assertions, none of the statements offered by A/DAG Bove, Todd Blanche, or Attorney General Bondi support dismissal on standing grounds—these statements do not demonstrate that the list and the results of the Survey will forever be kept confidential within the confines of DOJ. Def. Mot 18. To the contrary, A/DAG Bove specifically did *not* disavow disclosing the names the day after the lawsuit was filed, notwithstanding his implicit acknowledgement of the controversy. FAC ¶ 74. Similarly, Attorney General Bondi has doubled down on DOJ's rhetoric about "root[ing] out" employees who lack "faith" in a "policy agenda." FAC ¶ 76. Nor do the vague statements by Todd Blanche about not bringing harm to FBI employees, stated before having any direct knowledge of DOJ's intent, offer any solace.

---

[7] None of the other cases Defendants cite help them either. *Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*, 879 F.3d 339, 346 (D.C. Cir. 2018) (plaintiffs, truck drivers, faced no risk that presence of inaccurate criminal history records on database would be disclosed to future employers because their disputed violations occurred years ago and data remained available only for three years or because of Department's new rule prohibiting such disclosure of inaccurate information in future); *Langeman v. Garland*, 88 F.4th 289, 296 (D.C. Cir. 2023) (claims dismissed on merits, not on standing).

Likewise, Defendants' counsel's statements in connection with the TRO–namely, that Defendants have no "present" intention of disseminating the names of FBI personnel while the Court is resolving the preliminary injunction–is insufficient to support dismissal on standing grounds. The entire point of Plaintiffs' lawsuit is to ensure that the identities of FBI personnel who worked on the January 6 investigations and cases *are never* revealed outside of DOJ, not just during the pendency of the preliminary injunction or the duration of this case.

Third, Defendants' claim that the Does have failed to allege that their names are already in the public domain misses the point entirely. Def. Mot. At 19. The Does have requested anonymity precisely because their names are not in the public domain and because they wish to safeguard their privacy, including further targeting by Defendants as a result of their participation in this lawsuit.

Finally, Defendants' attempt to dismiss FBIAA on standing grounds also fails. Def. Mot. at 20–21. Like the Does, FBIAA alleges that it has thousands of members who investigated the violent attack on the Capitol on January 6, 2021, and were compelled to respond to the Survey detailing the nature of their involvement. FAC ¶ 71. FBIAA further alleges that disclosure of their members' identities outside DOJ will compromise the safety of their members. FAC ¶ 93. FBIAA's members therefore face the same risk of harm that the individual Does face. Defendants, thus, have not demonstrated why FBIAA cannot pursue associational standing on behalf of its members who are similarly situated to the individual Does.  Similarly, for organizational standing, Defendants misconstrue FBIAA's involvement in this lawsuit with one of its core missions— providing internal and external advocacy for its members.  Cloaking both the future disclosure and "review process" in secrecy directly frustrates FBIAA's ability to conduct its core missions.

### C.    Plaintiffs Have Pled Facts Sufficient to State Their Claims.

#### 1.    Plaintiffs Have Raised Sufficient Facts to Plead Their Privacy Act Claims and their APA Claim.

In pursuing its Motion to Dismiss, the Government largely ignores the arguments and explanations that had already been outlined in the Plaintiffs' Motion for Preliminary Injunction (Dkt. No. 25) with respect to the Privacy Act claims. Instead, the Government's arguments attempt to distort the applicable legal standard and shift the factual burden beyond what is required.

To be clear, the relief being sought by the Plaintiffs, whether under the Privacy Act or other claims, is solely to enjoin the Government. There are no monetary damages being sought at this time. The only way to secure meaningful injunctive relief on the Privacy Act claims is to ensure the information is never unlawfully disclosed in the first place. Quite simply, if the information is unlawfully disclosed, there is no way to ever put that genie back in the bottle. Pursuing relief for subsequent damages will never resolve the existing underlying concerns and the Plaintiffs' primary efforts are to avoid any damage at all from occurring. That is why, in combination with the Privacy Act, the Plaintiffs look towards the APA and other mechanisms to obtain injunctive relief.

As the Supreme Court noted in *FAA v. Cooper*, 566 U.S. 284 (2012), the Privacy Act "directs agencies to establish safeguards to protect individuals against the disclosure of confidential records 'which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained.'" *Id*. at 294-295, *citing* 5 U.S.C. §552a(e)(10); see also §2(b), 88 Stat. 1896 (stating that "purpose of this Act is to provide certain safeguards for an individual against an invasion of personal privacy"). There are two separate Privacy Act counts (only one of which is the subject of the separate, pending PI Motion). Each of the two counts easily survives the Government's Motion to Dismiss.

With respect to Count One, the Government asserts that the claim fails as a matter of law due to the absence of an allegation of dissemination of Privacy Act records outside of the DOJ. Def. Mot. at 22-23. This is factually and legally false. The First Amended Complaint specifically noted that the Government has been unable to verify for this Court that the Survey's contents remain solely within DOJ, FAC ¶ 59, that DOJ has already disseminated names of FBI personnel who were forced to resign or be fired in apparent reliance upon the Executive Order, FAC ¶¶ 65-66, that the Government (through then A/DAG Bove) has refused to affirmatively disavow any intention to release the Survey's contents beyond DOJ, FAC ¶ 74, and, finally, that Mr. Musk has made clear his intention to engage in what is known as "radical transparency" as evidenced by his prior disclosure, FAC ¶¶ 57-58, which taken together with the other known facts amplifies concerns that the information will be unlawfully disclosed.[8] For purposes of a motion to dismiss, that is more than sufficient. Perhaps that is why the Government did not address any of these factual assertions, merely resting upon the idea that the Plaintiffs had not alleged dissemination of the Survey beyond DOJ.

The Government's argument not only ignores the factual assertions in the First Amended Complaint but also misconstrues the premise of the Privacy Act claims (Counts One and Two) in their entirety, and how the APA claim (Count Three) is designed to ensure no unlawful violations occur through an injunction. Count One makes clear the Plaintiffs' contention that the Government has "not made any reasonable efforts to ensure that the maintenance and public release of the

---

[8] Again, near-daily public statements by government officials in this case continue to shape the landscape in which this case exists.  On March 9, 2025, DOGE leader Elon Musk employed a similar tactic when he publicly posted the name of a private citizen who was conducting an apparently First Amendment-protected peaceful protest of his private car company, Tesla.  She was reportedly subject to a torrent of online abuse. *See* Bobby Allyn, *A Tesla Protestor Speaks Out: I Have To Protect Myself*, NPR, March 17, 2025, https://www.npr.org/2025/03/17/nx-s1-5328626/elon-musk-protests-tesla-takedown.

records at issue in this case are accurate, complete, timely, and relevant for agency purposes," FAC ¶ 96, and that the Survey has already or will be imminently disseminated, FAC ¶ 95, in violation of 5 U.S.C. § 552a(e)(6).

The mere dissemination of the protected information, without any reasonable effort to comply with (e)(6), is the very type of violation prohibited by the Privacy Act and which would plausibly entitle the Plaintiffs to monetary relief under 5 U.S.C. 552a(g)(1)(C). *See Peter B. v. CIA*, 620 F. Supp. 2d 58, 76-77 (D.D.C. 2009) ("Thus, '[a] Privacy Act claim survives CSRA preclusion in this jurisdiction if a plaintiff shows the harm alleged was *actually caused* by the alleged violation.'")(emphasis in original). If damages would be allowed under such factual circumstances, injunctive relief to prevent such damage is equally justifiable.

For purposes of surviving this Rule 12(b)(6) motion, all the Plaintiffs are required to do is demonstrate the factual allegations in the First Amended Complaint, if assumed to be true, state a plausible claim for relief under the Privacy Act. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004). It is not necessary for the Plaintiffs to demonstrate that the unauthorized dissemination *has* occurred – because, again, that would defeat the purpose of only seeking injunctive relief – but rather only sufficiently plead facts that demonstrate a reasonable inference the dissemination has or will imminently occur. *See Peter B*, 620 F. Supp. 2d at 72-74; *see also id*. at 75 (clarifying it is not necessary at preliminary stage to plead much detail about precise contents of implicated records, which are solely within possession of government agency).[9] This threshold applies not only to the dissemination itself, but also to the secondary legal requirement that the unlawful disclosure be willful and intentional. *See*

---

[9] If the Government wishes to affirmatively dispute the factual assertions in the First Amended Complaint, it must do so in the form of a Rule 56 motion for summary judgment, complete with sworn declarations. That the Government has declined to do so here speaks volumes.

*Doe v. Goss*, 2007 U.S. Dist. LEXIS 2708, *40 (D.D.C. Jan. 12, 2007) (finding allegations that government agency engaged in sham investigations initiated to retaliate against plaintiff sufficient to survive motion to dismiss).

The Plaintiffs have sufficiently cleared that threshold and then some. The First Amended Complaint more than adequately demonstrates that the information contained within the Survey is the very type of information that cannot be lawfully disseminated outside of DOJ, that the Government cannot confirm if the information has already been disseminated outside of DOJ, that Mr. Musk has made clear his intention through DOGE to publicize this very kind of information, and that Mr. Musk and President Trump's political allies have made numerous public remarks indicating their expectation that the information contained within the Survey will be disseminated to the public. *See generally* Dkt. 24. The Government's unsworn reassurances from counsel do nothing to undermine the sufficiency of those well-pled allegations. Assertions made in legal briefs, on their own and without support in the form of sworn declarations, do not constitute evidence. *See Twin Rivers Paper Co. LLC v. SEC*, 934 F.3d 607, 613 (D.C. Cir. 2019).

Additionally, the Government seeks to inappropriately shift the evidentiary burden onto the Plaintiffs at this preliminary stage of the case to identify actual damages to claim relief under Count One. *See* Def. Mot. at 23-24. The Government's arguments misconstrue the law for the purpose of a Rule 12(b)(6) motion. It is undisputed that the Plaintiffs will have to ultimately prove actual damages in order to recover monetary compensation for the claim in Count One. *See Doe v. Chao*, 540 U.S. 614, 620 (2004). But for purposes of the pleading stage, it is not necessary for the Plaintiffs to articulate any level of particularized detail regarding harm, as the contours of the unlawful disclosures that may have already occurred are known only to the Government and would more than sufficiently satisfy the requisite elements of a Privacy Act claim under § 552a(g)(1)(C)

or (D). *See Feldman v. CIA*, 797 F. Supp. 2d 29, 40-42 (D.D.C. 2011) (denying motion to dismiss Privacy Act claims tied to retaliatory leaking of CIA official's information to unauthorized third parties due to sufficiently plead facts that "nudge [his or her] claims across the line from conceivable to plausible."); *see also id* at 43, n.9 ("The Court adds that a more definite statement regarding the plaintiff's allegations of 'actual damages' resulting from the unlawful disclosure, as requested by the defendant, is not warranted before discovery in this case.").

Plaintiffs have more than sufficiently met their pleading burden. The FAC makes clear that the disclosure is (or will be) unlawful, that the violation is (or will be) intentional or willful, and that the violation will have an adverse effect, including risk to the safety of the Plaintiffs and harm to their employment opportunities. Dkt. 24 at ¶¶ 59, 64-65, 69-70, 74-75, 81, 85, 90. It is true that in order to ultimately succeed at summary judgment or trial on the substantive merits of Count One the Plaintiffs will have to show more including, but not limited to, proof of the actual intent of those who made unlawful disclosures and proof of actual damages incurred by the Plaintiffs. *See Armstrong v. Geithner*, 608 F.3d 854, 856-57 (D.C. Cir. 2010) (upholding dismissal of Privacy Act claim due to failure to satisfy requisite elements after presentation of evidence *at trial*). But this case is not yet remotely at that stage, particularly before discovery has even begun, and the Government's arguments therefore fall short.

Furthermore, despite the fact Plaintiffs filed their motion for a preliminary injunction two days prior to the Government filing the present dispositive motion, the Government argues the Privacy Act claim in Count Two must fail as a matter of law because it only seeks injunctive relief. Def. Mot. at 23. However, the Plaintiffs made it clear in their preliminary injunction motion that they are relying upon the APA claim (Count Three) as the basis for injunctive relief to prevent the unlawful dissemination at issue in Count Two. *See* Dkt. 25 at 21 (identifying cases making clear

injunctive relief for violations of 5 U.S.C. § 552a(b) can be secured in coordination with another statute, such as the APA); *contrast with Wilson v. McHugh*, 842 F. Supp. 2d 310, 320 (D.D.C. 2012) (finding Privacy Act provided adequate remedy and APA relief unavailable with respect to a Privacy Act claim to amend records, which is clearly encompassed by 5 U.S.C. 552a(g)(2)(A)). The Government does not address this legal argument at all: it simply ignores what the Plaintiffs already have outlined in their motion for preliminary injunction (Dkt. 25).[10]

Nor is Defendants' assertion that "injunctive relief is not available pursuant to the other two bases for suing under the Privacy Act," Def. Mot. at 23, supported by any caselaw as applied to the fact pattern of this case. Notably, the Government cites a dissenting view of Justice Sotomayor in *FAA v. Cooper*, 566 U.S. 284, 310 (2012), which, of course, does not hold precedential value. Indeed, the *Cooper* case merely decided "whether the term 'actual damages,' as used in the Privacy Act, includes damages for mental or emotional distress." *Id*. at 287. *Cooper* has nothing to do with the question of injunctive relief under the Privacy Act. Justice Sotomayor, who was actually arguing against the majority view in favor of a federal employee receiving compensation from the Government in light of a Privacy Act violation, simply referred to the statutory language and did not cite to any case law or provide any analysis.

---

[10] The Government's "routine use" reference, *see* Def. Mot. at 24-26, is a red herring that is easily resolved if the Government had reviewed Plaintiffs' motion for preliminary injunction *before* filing their dispositive motion. Plaintiffs' motion made it clear that the Plaintiffs were only seeking to prevent dissemination beyond DOJ and were not disputing the "routine use" exception permitted dissemination *within* DOJ between different components. *See* Dkt. 25-1 at 20-23. Similarly, the Government's argument regarding Count Three (APA), *see* Def. Mot. at 27-28, is misplaced and operates as if the Government was unaware of the Plaintiffs' argument regarding coordination of the Privacy Act with the APA in order to secure injunctive relief. In any event, "[i]t is by now well-established that agencies covered by the Privacy Act may not utilize the 'routine use' exception to circumvent the mandates of the Privacy Act." *Doe v. Stephens*, 851 F.2d 1457, 1466 (D.C. Cir. 1988).

That is not at all surprising as few courts have addressed the injunctive relief issue presented herein. Indeed, there is actually nothing in the statute that limits the authority of this Court to allow for injunctive relief in the manner sought by the Plaintiffs, particularly when the Privacy Act is read in tandem with other available statutes and judicial or constitutional authority.

Notably, the Privacy Act's catchall remedy provision, which authorizes suits in federal district court against agencies that fail to comply with specified Privacy Act provisions in a way that has an "adverse effect" on a plaintiff, 5 U.S.C. § 552a(g)(1)(D), allows for equitable relief such as an injunction because the APA waives sovereign immunity for suits requesting injunctive relief against federal agencies. *See Chao*, 540 U.S. at 619 n.1. Specifically, an action that seeks "relief other than money damages" and states a claim that an agency "acted or failed to act in an official capacity or under color of legal authority" will not be "dismissed nor relief therein be denied on the ground that it is against the United States." 5 U.S.C. § 702. This "broad" sovereign immunity waiver applies whether the suit is brought under the APA or—as with the Plaintiffs' Privacy Act claims—not. *Gentile v. SEC*, 974 F.3d 311, 316 (3d Cir. 2020); *Chamber of Com. of United States v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996).

### 2. Plaintiffs Have Adequately Pled Their First Amendment Claims.

Plaintiffs properly allege a First Amendment retaliation claim based on the various steps taken by the Defendants to identify FBI personnel "who acted with corrupt or partisan intent" in the "investigation related to events on January 6, 2021." FAC ¶¶ 33, 113. Plaintiffs thus allege retaliation based on their perceived political affiliation and also that their free speech has impermissibly been chilled resulting in their silence in their personal lives about politics or any related activity.

Defendants' actions stem from a misguided perception about Plaintiffs' political beliefs, expression, or affiliation, which amounts to retaliation. The new Administration, since taking office, has acted on the false premise that involvement in the January 6 investigations and cases indicated disloyalty to the Administration. Defendants' unsupported claims about the FBI being "weaponized" and their exclusive focus on FBI personnel involved in the January 6 cases, rather than all personnel, further exhibits the false premise that these individuals are politically disloyal. *See, e.g.*, Dkt. 25-5 (Terminations Memo) (DOJ cannot trust FBI to implement "the President's agenda faithfully"); Dkt. 25-7 (Restoring Integrity Memo) (seeking to ensure FBI will "faithfully implement the policy agenda" of the President). This targeted approach reveals a bias against anyone who participated in the January 6 cases, erroneously linking that participation to political allegiance, resulting in retaliation and the chilling of Plaintiffs' free speech.

Defendants fundamentally mischaracterize the basis for Plaintiffs' First Amendment retaliation claim by asserting that the FBI personnel identified who worked on the January 6 investigation "did not engage in protected First Amendment activity" because the work was based on their official capacity. Defendants are wrong. Plaintiffs' claim stems from retaliation taken due to Plaintiffs' perceived political affiliation and not the performance of their official duties (e.g., executing investigative and law enforcement duties pertaining to January 6). FAC ¶ 128. The law is clear that the Government may not make employment decisions based on an employee's actual or perceived political allegiance. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976). The only exception applies to employees who hold positions with significant policymaking responsibilities. *Heffernan v. City of Paterson*, 578 U.S. 266, 273 (2016). In *Heffernan*, the Court held that a hiring decision based on a mistaken assumption of the employee's political beliefs supported a First Amendment claim. 578 U.S. at 273. Similarly, in *Branti*, the Court found that the First Amendment prohibits

the Government from attempting to discharge employees based on the employees' political views, when political affiliation itself is not a job requirement. *Branti v. Finkel*, 445 U.S. 507, 519–20 (1980) (observing that the "[i]f First Amendment protects a public employee from discharge based on what has said, it must also protect him from discharge based on what he believes"); *see also Rutan*, 497 U.S. 62, 68 (ruling that employment decisions based on an employees' political belief and association violates the First Amendment unless the Government has a "vital interest" in its decision making).

Contrary to Defendants' assertions, Plaintiffs *do* plead the elements of their retaliation claim. MTD at 21. Plaintiffs allege that (1) they "engaged in conduct protected under the First Amendment," (2) the Government "took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again," and (3) there is "a causal link between the exercise of a constitutional right and the adverse action taken." *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016). Here, Defendants targeted Plaintiffs and subjected them to review based on their alleged political affiliation. Thus, Defendants have undertaken actions because of Plaintiffs' perceived political loyalty to the previous administration which they correlate with Plaintiffs' work related to January 6. FAC ¶¶ 67, 73. Accordingly, Plaintiffs' retaliation claim is based on Plaintiffs' perceived political affiliation and "partisan intent," which Plaintiffs adequately allege in the First Amended Complaint. FAC ¶ 113. And, Plaintiffs do not hold any policymaking responsibilities and are therefore not excepted.

Plaintiffs have also adequately pled that their free speech has been chilled. Plaintiffs aver that they "have no choice but to restrain their personal expression of free speech and political advocacy so as not to be labeled as having 'partisan intent'" and that Plaintiffs who either wish to discuss politics in their private lives, express support for the prior administration or its political

allies, or who simply wish to associate with others who share similar political beliefs, are restricted from doing so lest their speech be used as evidence of "weaponization." FAC ¶¶ 128-29. In fact, Defendants' Motion to Dismiss tellingly makes no argument as to how Plaintiffs fail to allege their free speech has been chilled. *See generally* Def. Mot. at 10-21.

Finally, Plaintiffs have also pled that they suffered adverse employment action, contrary to Defendants' conclusory assertion that they have not. Def. Mot. at 22. It is not necessary for Plaintiffs to have been terminated yet in order to allege adverse employment action. *See, e.g.*, *Heffernan*, 578 U.S. at 266 (finding the demotion of an employee based on perceived political affiliation to violate the First Amendment); *Rutan*, 497 U.S. at 62 (finding promotions, transfers, and recalls based on political affiliation to violate the First Amendment).

### 3. Plaintiffs Have Adequately Pled Their Fifth Amendment Claims.

Defendants claim Plaintiffs' Due Process claim under the Fifth Amendment fails because Plaintiffs have not identified a constitutionally protected activity or liberty interest outside of their Privacy Act claims (which Defendants assert fail). This argument is fatally flawed.

Plaintiffs' Fifth Amendment claim is in no way predicated on the success of their Privacy Act claims. Plaintiffs allege that the Government's action –failing to maintain in the long-term the confidentiality of Plaintiffs' identities and the outcomes of any investigations–violate Plaintiffs' right to privacy under the Due Process Clause which shields them from "unwarranted disclosures and undue dissemination of personal information." *National Aeronautics and Space Admin. v. Nelson*, 562 U.S. 134, 157 (2011) (internal quotation marks omitted). In *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977), the Supreme Court acknowledged the existence of a constitutional right to privacy to protect a person's interest in avoiding the disclosure of personal information which would be harmful if disclosed. *See also Nixon v. Admin. of Gen. Servs.*, 433 U.S. 425, 457

(1977) ("One element of privacy has been characterized as 'the individual interest in avoiding disclosure of personal matters'") (*quoting Whalen*, 429 U.S. at 599).  In *National Aeronautics and Space Admin. v. Nelson*, 562 U.S. 134 (2011), the Supreme Court once again recognized that the Constitution protects a right to informational privacy and that government agencies have a "statutory and regulatory duty to avoid unwarranted disclosures" of information that poses a threat to privacy.  *Id*. at 155 (*quoting Whalen*, 429 U.S. at 605).  Defendants appear to claim there is no carte blanche substantive right to privacy under the Constitution, and Plaintiffs agree.  Def. Mot. at 26-27.  But that is not the issue in this controversy. The case law is clear that there is a privacy interest rooted in the Constitution against *unwarranted* disclosures of the kind here pled.  *See National Aeronautics*, 562 U.S. at 157 (interpreting *Whalen* and *Nixon* and explaining that "neither case suggested that an ironclad disclosure bar is needed to satisfy the privacy interest that may be "root[ed] in the Constitution.").

Plaintiffs also need not allege reputation-plus, stigma or disability theories of recovery to state a Fifth Amendment claim as they do not allege a deprivation of a liberty interest under the Due Process clause.  Indeed, the only case Defendants cite as support, *Langeman*, 88 F.4th at 295, was based a reputation-plus, stigma claim that the plaintiff brought challenging his termination from the federal government—but here, Plaintiffs allege neither reputation-plus or stigma-related harm. Rather, as explained above, Plaintiffs allege the deprivation of a right to privacy under the circumstances presented by Defendants' anticipated disclosure of the Survey results and FBI personnel names.  *See* FAC ¶¶ 122-125.

Finally, Plaintiffs need not identify what specific process has been denied to them and what additional process would be constitutionally required for their Due Process claim to be adequately pled.  *See, e.g.*, MTD at 27.  Plaintiffs' burden at this stage is to show a plausible claim for relief,

and this Court must accept as true all material factual allegations in their complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (requiring "only enough facts to state a claim to relief that is plausible on its face"). Plaintiffs' First Amended Complaint easily meets this threshold requirement.

### 4.    Plaintiffs Have Adequately Pled a Mandamus Claim.

Defendants move to dismiss Plaintiffs' mandamus claim, stating that "assuming Plaintiffs have no other adequate remedy, they do not identify any mandatory duty owed to them under law." Def. Mot. at 38. Mandatory duties under which mandamus is appropriate relief are obligations that "create[] a peremptory obligation for the officer to act." *13th Regional Corp. v. U.S. Dep't of Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980). District courts within this Circuit "have held that mandamus is available 'even when the statute that creates the duty does not contain a private cause of action.'" *Citizens for Responsibility & Ethics in Wash. (CREW) v. Trump*, 302 F. Supp. 3d 127, 134 (D.D.C. 2018) (quoting *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 219 F. Supp. 2d 20, 42 (D.D.C. 2002)); *see also Wilbur v. United States ex rel. Kadrie*, 281 U.S. 206, 218-19 (1930) (permitting mandamus "where the duty in a particular situation is so plainly prescribed as to be free from doubt and equivalent to a positive command"). Such a duty must be "clear and indisputable." *In re Cheney*, 406 F.3d 723, 731 (D.C. Cir. 2005).

Federal officials have a positive, nondiscretionary, and indisputable duty to obey federal criminal law. *See Trump v. United States*, 144 S. Ct. 2312, 2331 (2024); *United States v. Lee*, 106 U.S. 196, 220 (1882). It follows that they should not enable others to do so, either. Defendants have insisted on their authority and implied their intent to publicize the Plaintiffs association with the January 6 prosecutions in a way that could arguably be seen to knowingly aid violations of the federal criminal code.

There are specific federal criminal laws that seek to prevent the direct, predictable consequences that will result from Defendants' disclosure of FBI identities. First, 18 U.S.C. § 119 prevents doxing of certain covered persons. *See* FAC ¶ 91; *see also* Dkt. 25 at 31 (noting the Government's "insistence on reserving the right to disclose the risk notwithstanding that it would be in violation of federal criminal law"). Section 119 prohibits "mak[ing] restricted personal information about a covered person . . . publicly available . . . with the intent and knowledge that the restricted personal information will be used to threaten [or] intimidate" the covered person. 18 U.S.C. § 119(a); *see also* FAC ¶¶ 68-75 (describing the collection of data about agents and their fear of public disclosure). Although the list itself may not contain the exact restricted information proscribed by § 119, using the past as prologue allows the well-supported inference that disclosure on either X or Truth Social—two social media platforms owned and operated by Elon Musk and President Trump, respectively—will inevitably lead to a violation.  That is sufficient for Rule 12 motion to dismiss purposes.

Moreover, the actions Defendants insist are within their authority would likely facilitate others' actions consistent with violations of 18 U.S.C. § 2261A(2), which prohibits the intentional use of the Internet or other facilities of interstate commerce "to engage in a course of conduct that[] places that person in reasonable fear of . . . death . . . or serious injury" or "causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person." 18 U.S.C. § 2261A(2). Additionally, 18 U.S.C.§ 1513 prohibits "knowingly, with the intent to retaliate, tak[ing] any action harmful to any person, *including any interference with lawful employment or livelihood of any person*, for providing to a law enforcement officer any truthful

information relating to the commission or possible commission of any Federal offense." 18 U.S.C § 1513(e) (emphasis added).[11]

Plaintiffs have alleged that Defendants intend to set the conditions—disclosing the names—where others will immediately seek to place Plaintiffs in reasonable fear of physical harm and cause further emotional distress, as proscribed by Section 2261A(2). *See* FAC ¶¶ 75, 81, 97. 120. They have alleged that Defendants' disclosure would enable those who have publicly vowed retaliation against Plaintiffs as a result of their lawful participation in legitimate criminal investigations and prosecutions.

Defendants owe Plaintiffs a "peremptory obligation," *13th Regional Corp. v. U.S. Dep't of Interior*, 654 F.2d at 760, to not assist or set the conditions for the violation of these statutory prohibitions through disclosure of investigators' names, an action which Defendants still do not disclaim their intent to pursue. This duty is "clear and indisputable." *In re Cheney*, 406 F.3d at 731. Because of this, if no other remedy is adequate, mandamus is appropriate in this case. As "courts should take a cautious approach to foreclosing mandamus review," *CREW*, 302 F. Supp. at 134, it would be imprudent to dismiss this claim at this time.

## CONCLUSION

For the reasons outlined herein, Defendants' motion to dismiss should be denied.


March 10, 2025

                                        Respectfully submitted,

---

[11] While Section 1513(e) has typically been used in cases of nonemployee informants, there is nothing in the statute circumscribing its application on behalf of FBI employees who themselves provided truthful information as witnesses in January 6 cases.

LAW OFFICE OF MARK S. ZAID, P.C.

By: _____*Mark S. Zaid*_____
    MARK S. ZAID, D.C. Bar #440532
    BRADLEY P. MOSS, D.C. Bar #975905
    1250 Connecticut Avenue, NW, Suite 700
    Washington, D.C. 20036
    (202) 498-0011
    Mark@MarkZaid.com
    Brad@MarkZaid.com
    *Attorneys for John Does 1,3-4,*
    *Jane Does 1-3 (25-328)*

CENTER FOR EMPLOYMENT JUSTICE

By: _____*Pamela M. Keith*_____
    PAMELA M. KEITH, D.C. Bar #448421
    SCOTT M. LEMPERT, D.C. Bar #1045184
    650 Massachusetts Ave., NW, Suite 600
    Washington, DC 20001
    (202) 800-0292
    pamkeith@centerforemploymentjustice.com
    Slempert@centerforemploymentjustice.com
    *Attorneys for John and Janes Does 1-9, et al.*
    *(25-325)*

STATE DEMOCRACY DEFENDERS FUND

By: _____*Norman L. Eisen*_____
    NORMAN L. EISEN, D.C. Bar # 435051
    POOJA CHAUDHURI, D.C. Bar #
    888314523
    600 Pennsylvania Avenue, SE, #15180
    Washington, D.C. 20003
    (202) 594-9958
    norman@statedemocracydefenders.org
    pooja@statedemocracydefenders.org
    *Attorneys for John Does 1,3-4,*
    *Jane Does 1-3 (25-328)*

KOSKOFF, KOSKOFF & BIEDER, PC

By: _____*Margaret M. Donovan*_____
    CHRISTOPHER M. MATTEI, Bar # 27500 (*pro hac vice*)
    MARGARET M. DONOVAN, Bar # 31787 (*pro hac vice*)
    350 Fairfield Ave., Suite 501
    Bridgeport, CT 06604
    (203) 336-4421
    cmattei@koskoff.com
    mdonovan@koskoff.com
    *Attorneys for Federal Bureau of Investigation Agents Association (25-328)*

*Attorneys for Plaintiffs*