**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN AND JANE DOES 1-9, *et al.*, | |
| Plaintiffs, | Case No. 25-cv-325 (JMC) |
| v. | |
| DEPARTMENT OF JUSTICE, | |
| Defendant. | |
| FEDERAL BUREAU OF INVESTIGATION AGENTS ASSOCIATION, *et al.*, | |
| Plaintiffs, | Case No. 25-cv-328 (JMC) |
| v. | |
| DEPARTMENT OF JUSTICE, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

In these consolidated cases, Federal Bureau of Investigation (FBI) agents who worked on January 6 investigations, along with the FBI Agents Association (FBIAA), sue to enjoin the disclosure of agents' personal identifying information and related alleged constitutional violations. Briefing is underway on Plaintiffs' motion for preliminary injunction, ECF 25, and Defendants' motion to dismiss, ECF 28.[1]

Today, the Court considers Plaintiffs' renewed motion for discovery, ECF 32, which Defendants oppose, ECF 36. Because Plaintiffs' requested discovery (subject to some narrowing

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page. ECF cites in this opinion refer to docket numbers in Case No. 25-cv-325, the lead case, unless otherwise indicated.

by the Court) goes to this Court's jurisdiction to hear the case and also meets the requirements for expedited discovery in general, the Court will **GRANT IN PART** and **DENY IN PART** Plaintiffs' motion. ECF 32.

## I.    BACKGROUND

Plaintiffs allege the following.[2] On January 31, 2025, Acting Deputy Attorney General (A/DAG) Emil Bove issued a memo entitled "Terminations," ordering the Acting Director of the FBI to fire eight named FBI employees. ECF 24 ¶ 65; *see* ECF 25-5 (Terminations Memo). The memo (quoting an Executive Order titled "Ending the Weaponization of the Federal Government") stated that the prior administration had engaged in a "systemic campaign against its perceived political opponents, weaponizing the legal force of numerous Federal law enforcement agencies," including the FBI. ECF 25-5 at 2; *see* ECF 25-4 (Executive Order). Per the memo, the FBI "actively participated in what President Trump appropriately described as 'a grave national injustice that has been perpetrated upon the American people over the last four years' with respect to events that occurred at or near the United States Capitol on January 6, 2021." ECF 25-5 at 2. Bove stated that he "d[id] not believe that the current leadership of the Justice Department can trust these FBI employees to assist in implementing the President's agenda faithfully," and "deem[ed] these terminations necessary, pursuant to President Trump's January 20, 2025 Executive Order entitled, 'Ending The Weaponization Of The Federal Government.'" *Id.* The memo listed eight FBI employees by name and directed that they be terminated. *Id.* at 3. It closed with the following directive to the Acting FBI Director:

> You are also directed to identify to the Office of the Deputy Attorney General, by noon on February 4, 2025, all current and former FBI personnel assigned at any time to investigations and/or prosecutions relating to (1) events that occurred at or near the United

---

[2] The Court draws these factual allegations from Plaintiffs' amended complaint, ECF 24, motion for preliminary injunction, ECF 25, and attachments thereto.

States Capitol on January 6, 2021; and (2) *United States v. Haniyeh, et al.*, 24 Mag. 438 (S.D.N.Y.). These lists should include relevant supervisory personnel in FBI regional offices and field divisions, as well as at FBI headquarters. For each employee included in the list, provide the current title, office to which the person is assigned, role in the investigation or prosecution, and date of last activity relating to the investigation or prosecution. Upon timely receipt of the requested information, the Office of the Deputy Attorney General will commence a review process to determine whether any additional personnel actions are necessary.

*Id.*

On Sunday, February 2, Defendants ordered certain FBI agents, including some of the Plaintiffs in this case, "to answer a questionnaire about their work on cases related to the events of January 6, 2021," and to do so by 3:00 p.m. the following day. ECF 24 ¶ 68. The survey was titled "A/DAG Memo Response: Events that Occurred at or Near the US Capitol on January 6, 2021," and required recipients to answer the following questions:

1. Are you submitting this form for yourself or on behalf of your employee?

2. What is your current title?

3. Are you currently a supervisor?

4. Are you currently an ASAC or SSIA?

5. Are you currently an SES employee (e.g., SAC, Section Chief, DAD, AD, etc…)?

6. What was your title when you participated in investigation(s) or prosecution(s) of events that occurred at or near the US Capitol on January 6, 2021?

7. Were you a supervisor when you participated in investigation(s) or prosecution(s) of events that occurred at or near the US Capitol on January 6, 2021?

8. Were you an ASAC or SSIA when you participated in investigation(s) or prosecution(s) of events that occurred at or near the US Capitol on January 6, 2021?

9. Were you an SES employee when you participated in investigation(s) or prosecution(s) of events that occurred at or near the US Capitol on January 6, 2021?

3

10. What division are you currently in? (The drop-down menu is sorted first by Field Offices, Legal Offices, then HQ divisions, and then in alphabetical order by the division's 2-character code).

11. What division were you in when you participated in investigation(s) or prosecution(s) of events that occurred at or near the US Capitol on January 6, 2021?

12. What was your role in the investigation(s) or prosecution(s) relating to events that occurred at or near the US Capitol on January 6, 2021?

13. What was the approximate date of your last activity relating to the investigation(s) or prosecution(s) relating to events that occurred at or near the US Capitol on January 6, 2021?

*Id.*; *see* ECF 25-19 at 14–16 (copy of the survey).

On February 4, Plaintiffs filed two related lawsuits, which have since been consolidated. *See Does 1-9 v. DOJ*, No. 25-cv-235, Feb. 6, 2025 Min. Entry; *FBIAA v. DOJ*, No. 25-cv-238. Consolidated Plaintiffs are the Federal Bureau of Investigation Agents Association ("FBIAA") and a number of John and Jane Does. ECF 24 ¶¶ 4, 6. The FBIAA is a non-profit professional organization that "advocate[s] for the careers, economic interests, conditions of employment, and welfare of its members." *Id.* ¶ 4. The FBI employs approximately 13,800 Special Agents, about 12,000 of whom are FBIAA members. *Id.* The Doe Plaintiffs are current FBI agents and employees who worked on January 6 investigations, proceeding individually and on behalf of a putative class. *Id.* ¶¶ 6, 7. Defendants are the Department of Justice (DOJ) and the United States. *Id.* ¶¶ 8–9.

Directly after filing these suits, Plaintiffs in each case moved for a temporary restraining order (TRO) seeking to enjoin Defendants from publicly disclosing the names of FBI agents who worked on January 6 investigation. *See Does 1–9*, No. 25-cv-325, ECF 3; *FBIAA v. DOJ*, No. 25-cv-238, ECF 2. On February 5, the day after Plaintiffs filed suit, A/DAG Bove sent an email to all FBI personnel with "additional information" about the January 31 memo. ECF 24 ¶ 73. The email stated:

Multiple times during the week of January 27, 2025, I asked the FBI's acting leadership to identify the core team in Washington, D.C. responsible for the investigation relating to events on January 6, 2021. The purpose of the requests was to permit the Justice Department to conduct a review of those particular agents' conduct pursuant to President Trump's Executive Order concerning weaponization in the prior administration. FBI acting leadership refused to comply. That insubordination necessitated, among other things, the directive in my January 31, 2025 memo to identify all agents assigned to investigations relating to January 6, 2021. In light of acting leadership's refusal to comply with the narrower request, the written directive was intended to obtain a complete data set that the Justice Department can reliably pare down to the core team that will be the focus of the weaponization review pursuant to the Executive Order. The memo stated unambiguously, and I stand by these words, that the information requested was intended to "commence a review <u>process</u>" that will be used to "determine <u>whether</u> any additional personnel actions are necessary."

Let me be clear: No FBI employee who simply followed orders and carried out their duties in an ethical manner with respect to January 6 investigations is at risk of termination or other penalties. The only individuals who should be concerned about the process initiated by my January 31, 2025 memo are those who acted with corrupt or partisan intent, who blatantly defied orders from Department leadership, or who exercised discretion in weaponizing the FBI. There is no honor in the ongoing efforts to distort that simple truth or protect culpable actors from scrutiny on these issues, which have politicized the Bureau, harmed its credibility, and distracted the public from the excellent work being done every day. If you have witnessed such behavior, I encourage you to report it through appropriate channels.

ECF 25-6 at 3 (emphases in original).

On February 6, the Court held a TRO hearing. *See* ECF 13. At that time, the parties seemed to agree that the FBI's Acting Director had not provided the names of those agents who completed the survey to DOJ, and had instead provided only their Employee Identification Numbers (EINs). *See* ECF 13 at 12–13, 34, 41 (Hr'g Tr. 12:21–13:4, 34:14–18, 41:12–23). Plaintiffs allege that, while the TRO hearing was underway, "A/DAG Bove was contemporaneously in a meeting with acting FBI leadership demanding that the FBI turn over the Survey names." ECF 24 ¶ 79.

Ultimately, the FBI turned over the names of survey respondents, linked to their EINs, to DOJ. *Id.* ¶ 80.

On February 7, the parties negotiated a consent order to preserve the status quo until the Court could rule on Plaintiffs' motion for preliminary injunction. ECF 14. Plaintiffs filed an amended complaint, ECF 24, and a motion for preliminary injunction, ECF 25. They argue that Defendants intend to disclose their personal identifying information in violation of the Privacy Act and the Fifth Amendment's Due Process Clause. ECF 25-1 at 27–31, 37–39. Plaintiffs also bring First Amendment claims. *See id.* at 31–37. Per Plaintiffs, Defendants consider them disloyal to the current administration solely because they worked on January 6 investigations and are targeting them for "internal review" for that reason alone—an act of retaliation in violation of the First Amendment. *Id.* at 33–34. Plaintiffs contend that this review "ha[s] had immediate negative impacts on the assignments that [they] can currently take and has further placed [them] at a distinct disadvantage as to their future employment," and they understand they may be subject to "additional" personnel actions in the near future. *Id.* at 19–20. Plaintiffs also argue that Defendants' actions have chilled their First Amendment rights to free speech and association. *See id.* at 34–37. They seek a preliminary injunction to prevent (a) "the disclosure of the Plaintiffs' identities, along with the identities of those similarly situated, by DOJ, either directly or indirectly, to any third parties," and (b) "any additional action which would infringe on Plaintiffs' Constitutional rights." *Id.* at 10.

Defendants have filed a motion to dismiss, arguing that the Court lacks subject matter jurisdiction and that Plaintiffs have failed to state a claim. ECF 28. As relevant here, Defendants insist that Plaintiffs lack standing because any future injuries—public disclosure of their identities, adverse personnel actions—are too speculative, and are not "certainly impending." *Id.* at 21–22

(quoting *Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir. 2021)). Briefing on both the motion to dismiss and motion for preliminary injunction is underway.

On February 17, Plaintiffs filed a motion for expedited discovery. ECF 20. That motion sought "extensive, expedited discovery," that was not tailored to the pending motions before the Court. Feb. 28, 2025 Min. Order. The Court "decline[d] to order full-blown merits discovery, particularly with a pending motion to dismiss that raises jurisdictional concerns," and therefore denied Plaintiffs' motion without prejudice. *Id.*

The Court indicated that it would entertain a renewed, narrowed motion for discovery on two grounds. *See id.* The first was "discrete issues concerning this Court's jurisdiction"—in other words, expedited jurisdictional discovery. *Id.* That is because the Court "has jurisdiction to determine its own jurisdiction," *United States v. United Mine Workers of Am.*, 330 U.S. 258, 292 n.57 (1947), and can order limited discovery to determine whether it has jurisdiction to hear a case, *see* ECF 36 at 7–8 (Defendants, making this argument); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978). Second, the Court stated that it would entertain discovery requests tailored to "issues essential to Plaintiffs' motion for preliminary injunction"—in other words, expedited general discovery. Feb. 28, 2025 Min. Order. Federal Rule of Civil Procedure 26(d)(1) allows for discovery before a Rule 26(f) conference "by court order," and courts in this District apply a five-factor reasonableness test to determine whether such discovery is warranted, as discussed further below. *See Guttenberg v. Emery*, 26 F. Supp. 3d 88, 98 (D.D.C. 2014).

Plaintiffs have now filed a narrowed motion on those two grounds. ECF 32. Defendants oppose, arguing that discovery is inappropriate because the Court has not yet determined its jurisdiction, Plaintiffs' requested discovery does not bear on jurisdiction, and their requests do not survive the five-factor reasonableness test. ECF 36. The Court finds that some of Plaintiffs'

discovery requests do bear on jurisdiction and meet the requirements for jurisdictional discovery, so the Court will permit expedited discovery for those requests. In the alternative, Plaintiffs' requests—as narrowed by the Court—also pass the five-factor reasonableness test.

## II.    LEGAL STANDARDS

The Court turns first to the standard for expedited jurisdictional discovery, and then to the standard for expedited general discovery.

### A.  Expedited Jurisdictional Discovery

"[W]here issues arise as to jurisdiction . . . discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund*, 437 U.S. at 351 n.13. "The Federal Rules of Civil Procedure generally provide for liberal discovery to establish jurisdictional facts," and "the scope of discovery lies within the district court's discretion." *Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143, 1147 (D.C. Cir. 1994).

The D.C. Circuit "allow[s] jurisdictional discovery and factfinding if allegations indicate its likely utility." *Nat. Res. Def. Council v. Pena*, 147 F.3d 1012, 1024 (D.C. Cir. 1998). That includes discovery that goes to a plaintiff's standing. *See, e.g.*, *id.* (remanding for jurisdictional discovery into standing where "the record suggests at least one way in which the appellees *may* be able to establish their standing" (emphasis in original)); *Travelers United, Inc. v. Hyatt Hotels Corp.*, No. 23-cv-2776, 2025 WL 27162, at *16 (D.D.C. Jan. 3, 2025) (evaluating whether jurisdictional discovery was warranted to support party's standing allegations). Indeed, the Circuit has instructed that "'it is an abuse of discretion to deny jurisdictional discovery' in light of allegations suggesting jurisdiction." *Id.* (quoting *Edmond v. U.S. Postal Serv. Gen. Couns.*, 949 F.2d 415, 425 (D.C. Cir. 1991)). "[I]f a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified." *GTE New Media Servs.*

*Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000). "A plaintiff need only have a good faith belief that reasonable discovery could supplement [its] jurisdictional allegations." *Lewis v. Mutond*, 62 F.4th 587, 596 (D.C. Cir. 2023). Put differently, the discovery request cannot be a mere "fishing expedition." *Id.* (quoting *Bastin v. Fed. Nat'l Mortg. Ass'n*, 104 F.3d 1392, 1396 (D.C. Cir. 1997)).

As with any sort of discovery, the district court's discretion is "cabined by Rule 26(b)'s general limitations." *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1207 (D.C. Cir. 2020). Pursuant to Rule 26(b), discovery must be relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

## B. Expedited General Discovery

Generally, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1). However, Rule 26(d)(1) allows the court to authorize earlier discovery, which "will be appropriate in some cases, such as those involving requests for a preliminary injunction." *Id.* (Advisory Committee's note to 1983 amendment).

The Federal Rules "do not provide specific standards for evaluating expedited discovery motions." *Disability Rts. Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 4, 6 (D.D.C. 2006). Courts in this District generally apply a five-factor reasonableness test.[3] *See*

---

[3] Some courts apply the *Notaro* test to determine whether expedited discovery is appropriate, see *Notaro v. Koch*, 95 F.R.D 403, 405 (S.D.N.Y. 1982), which tracks the preliminary injunction standard. *See Guttenberg*, 26 F. Supp. 3d at 97–98. Under the *Notaro* test, a party must show "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Id.* at 97. Given that neither party advocates for the Court to apply the *Notaro* test, *see* ECF 32-1 at 4–5; ECF 36 at 16–17, and the reasonableness test appears to be the majority approach in this District, the Court will apply the latter. *See also New Mexico v. Musk*, No. 25-cv-429, 2025 WL 783192, at *2 (D.D.C. Mar. 12, 2025) (explaining that the reasonableness test "better reflects [a court's] broad discretion over discovery matters"); *Guttenberg*, 26 F. Supp. 3d at 97 (favoring the reasonableness test because "when a plaintiff

*New Mexico v. Musk*, No. 25-cv-429, 2025 WL 783192, at *2 (D.D.C. Mar. 12, 2025). The Court considers, "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Guttenberg*, 26 F. Supp. 3d at 98. These factors are "only guidelines for the Court's discretion," and the Court considers "the reasonableness of the request in light of all of the surrounding circumstances." *Id.*

## III.    ANALYSIS

Because there is a pending motion to dismiss for lack of jurisdiction, the Court begins by analyzing whether Plaintiffs are entitled to jurisdictional discovery. Subject to some narrowing by the Court, Plaintiffs' requests go to the heart of jurisdiction and expedited jurisdictional discovery is appropriate. In the alternative, Plaintiffs' narrowed discovery requests also pass the five-factor reasonableness test for expedited general discovery.

### A.  Expedited Jurisdictional Discovery

Plaintiffs have established a "good faith belief" that reasonable discovery will supplement their jurisdictional allegations. *Lewis*, 62 F.4th at 596. They allege that Defendants "have disseminated or will imminently disseminate records about the Plaintiffs and their involvement in sensitive investigations," threatening their physical safety and harming their professional reputations. *See* ECF 24 ¶¶ 95, 97, 101, 120–21, 124. They further allege, based on Defendants' own representations (the Terminations Memo and related communications), that Defendants are in the process of assembling a "core list" of individuals who worked on January 6 cases, that Plaintiffs are likely to appear on that list, and that Plaintiffs will face (and might already

---

requests expedited discovery for the purpose of fleshing out a preliminary injunction motion, it does not make sense to use preliminary injunction analysis factors to determine the propriety of an expedited discovery request").

be facing) adverse personnel actions and unlawful retaliation as a result. *Id.* ¶¶ 119–21. These allegations rely on a lengthy discussion of the relevant facts, *see id.* ¶¶ 42–84, and Defendants' own communications, *see* ECF 25-5; ECF 25-6; ECF 25-7. Plaintiffs also submit declarations attesting that Defendants' review of the January 6 cases will include them; that they believe the "weaponization review" may "have an immediate or future negative impact" on what assignments they receive; that they would be obligated to reveal this fact to a prosecutor if asked whether they are being or have ever been investigated for misconduct; and that, should their names be publicly disclosed, they are extremely concerned about their personal safety. *See* ECF 25-9; ECF 25-10; ECF 25-11; ECF 25-12; ECF 25-13; ECF 25-14; ECF 25-15; ECF 25-16; ECF 25-17; ECF 25-18. Plaintiffs argue that information that would allow them to supplement these allegations is in Defendants' possession. *See* ECF 32-3 at 2–4. Accordingly, the Court is persuaded that Plaintiffs believe, in good faith, that they can "supplement [these] jurisdictional allegations through discovery," *GTE New Media Servs. Inc.*, 199 F.3d at 1351, and that this is no "fishing expedition," *Lewis*, 62 F.4th at 596. Some amount of jurisdictional discovery is therefore justified.

Next, the Court evaluates each of Plaintiffs' discovery requests to determine whether they are targeted to address jurisdictional issues related to standing, the "likely utility" of that discovery, and whether that discovery is relevant and proportional to the needs of the case. *See Nat. Res. Def. Council*, 147 F.3d at 1024; Fed. R. Civ. P. 26(b)(1). The Court begins with the requests that it will grant, and then explains why Plaintiffs' remaining requests are denied.

### 1. *Requests Granted*

#### a. Request for Production (RFP) 1 and Interrogatory 1

Plaintiffs seek to enjoin Defendants from disclosing their personal identifying information. *See* ECF 24 ¶¶ 100–01, 124–25; ECF 25-1 at 10, 39. To determine whether Plaintiffs have

standing to bring that claim, the Court will have to assess whether disclosure is "imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Plaintiffs allege that it is, *see* ECF 24 ¶¶ 75, 90, 91, 95, 127, but Defendants contend that their allegations on this point are insufficient, *see* ECF 28 at 21–22. RFP 1 seeks "[a]ny Document that relates to the Government's intent for any potential future disclosure or use of the Survey." ECF 32-2 at 6. This information will inform a key jurisdictional inquiry: whether disclosure of any of Plaintiffs' personal identifying information is "imminent," as Plaintiffs allege, or purely speculative, as Defendants claim. *See TransUnion LLC*, 594 U.S at 435 ("[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial."). However, the Court will strike the words "or use" from RFP 1 because it renders the request overbroad. A "use" of the survey could mean almost anything, and Plaintiffs have not clearly explained how it bears on jurisdiction.[4] With that revision, RFP 1 is likely to be useful in assessing jurisdiction, *see Nat. Res. Def. Council*, 147 F.3d at 1024, and is not so sweeping that it is disproportionate to the needs of the case, Fed. R. Civ. P. 26(b)(1).

Interrogatory 1 asks that Defendants "[i]dentify every non-DOJ person, including White House personnel and DOGE personnel, who is known to have, or had, access to the data collected pursuant to the Survey." ECF 32-2 at 6. Plaintiffs allege that Defendants "have disseminated" this information. ECF 24 ¶ 95. Defendants say otherwise. ECF 28 at 27 (arguing that DOJ has "repeatedly represented" that it has not disseminated this information). If Plaintiffs' information

---

[4] To the extent the words "or use" are intended to capture any acts of disclosure not just of "the Survey" but any of its responses, results, or other data collected pursuant to it, the Court clarifies that it understands the term "disclosure of the Survey" to include disclosure of any its responses, results, or other collected data. That understanding of RFP 1 is consistent with one of Plaintiffs' justifications for RFP 1, and it goes to the heart of one of the jurisdictional questions this Court may need to decide in this case. *See* ECF 32-3 at 5–6. Further, to the extent the words "or use" intend to capture uses of the survey's results in the course of the "weaponization" investigation, Plaintiffs' other requests adequately (and more proportionately) cover the part of that question that goes to jurisdiction.

has in fact already left the DOJ in a way that did not conform with the Privacy Act, that may establish standing. *See All. for Retired Americans v. Bessent*, No. 25-cv-0313, 2025 WL 740401, at *16, *21 (D.D.C. Mar. 7, 2025) (finding that "disclosure of [plaintiffs'] private information to third parties without a lawful right to access it" conferred standing, although it did not constitute irreparable harm for purposes of a preliminary injunction). Again, this interrogatory is narrowly tailored to that key jurisdictional question, and its "likely utility" is clear. *Nat. Res. Def. Council*, 147 F.3d at 1024.

    b.    Interrogatory 4

    Interrogatory 4 goes to Plaintiffs' First Amendment claims. Plaintiffs allege that Defendants have violated their First Amendment rights by subjecting them to an investigation and adverse personnel actions solely because of their perceived political affiliation. ECF 24 ¶¶ 119–21. To determine whether Plaintiffs have standing to bring that claim, the Court must assess whether Plaintiffs have sufficiently alleged that they have been or will be subjected to some adverse personnel action—and where Plaintiffs allege a future adverse action, whether that action is imminent or merely speculative. *See TransUnion*, 594 U.S at 423, 435.

    Interrogatory 4 requests that Defendants "[i]dentify and describe the 'process' identified by Mr. Bove [in the Terminations Memo and February 5, 2025 message] and any lawful basis pursuant to which it is authorized." ECF 32-2 at 6. A fulsome response to this request would necessarily inform Plaintiffs' (and the Court's) understanding of what timeline the "process" is proceeding on, what adverse professional consequences the process could result in, and whether those consequences are "actual or imminent." *See TransUnion*, 594 U.S at 423. Those factual questions strike at the heart of the standing inquiry.

However, the Court will strike the language in the interrogatory that purports to require Defendants to provide "any lawful basis pursuant to which [the 'process'] is authorized." That seems to request a legal conclusion or position, or at least a request for how Defendants believe the law applies to these facts. *See Hemp Indus. Ass'n v. DEA*, No. 20-cv-2921, 2020 WL 12918344, at *1 (D.D.C. Dec. 15, 2020). But the purpose of jurisdictional discovery is to suss out jurisdictional facts, not Defendants' legal theories. The latter is what briefing is for.

With that revision, jurisdictional discovery on Interrogatory 4 is justified. The interrogatory allows Plaintiffs to supplement their jurisdictional allegations while remaining proportional to the needs of the case.

### c.   Request for Production 2

RFP 2 requests "[a]ny document that relates to the Government's Responses" to Plaintiffs' interrogatories. ECF 32-2 at 6. Because the Court has narrowed Plaintiffs' interrogatories to only those requests that go directly to standing, the Court finds that RFP 2 is narrowly tailored to address those same jurisdictional issues.

### d.   Relevance and Proportionality

Defendants argue that responding to Plaintiffs' discovery requests would be burdensome because they "involve multiple Executive departments and offices." ECF 36 at 21. In particular, Defendants claim that they "will be required to instruct every office of [DOJ] to search for records because Plaintiffs' definition of 'Department of Justice' includes every Department office and subcomponent." *Id.* Given the expedited timeline and the limited nature of the discovery requests the Court is granting, the Court agrees that it would be disproportionate (and unnecessary) to require Defendants to search and coordinate with, say, all 93 U.S. Attorney's Offices or the Department of Agriculture—which is what Plaintiffs' requests as written would require. *See*

14

ECF 32-2 at 2–3 (defining the United States of America, one of the Defendants, as "all components and members of the Executive Branch of the United States Government"). The Court will therefore limit discovery to the components that seem most relevant to Plaintiffs' jurisdictional inquiry: the DOJ's Leadership Offices (i.e., the offices at Main Justice that house the decision-makers relevant to this suit) and the FBI. This limitation ensures that jurisdictional discovery remains relevant and proportional to the needs of the case, consistent with Rule 26(b).

### 2. *Requests Denied*

#### a. Interrogatory 2

Interrogatory 2 asks Defendants to "[i]dentify any additional information (meaning, beyond or in addition to the information compiled in the Survey) Defendants intend to collect about the Survey respondents which they plan to use to identify whether FBI personnel had 'partisan intent' or engaged in 'weaponization,' as well as how those terms are defined by Defendants." ECF 32-2 at 6. Plaintiffs' justification for this request is somewhat difficult to parse but, as the Court understands it, seems primarily concerned with the fact that DOJ may be "deviat[ing] from standard FBI processes for misconduct reviews." ECF 32-3 at 4. That may be relevant to the broader merits of the case, but Plaintiffs have not explained how this request goes to jurisdiction (namely, standing). Because the Court cannot discern the "likely utility" of this request as to jurisdiction, jurisdictional discovery on this issue is not warranted. *Nat. Res. Def. Council*, 147 F.3d at 1024.

#### b. Interrogatory 3

Interrogatory 3 asks Defendants to "[i]dentify every purpose and routine use for which the Government claims it can lawfully publicly disclose any employee data collected pursuant to the Survey." ECF 32-2 at 6. Again, this seems to be a demand for legal conclusions rather than a

targeted inquiry relevant to standing. Jurisdictional discovery on Interrogatory 3 is therefore inappropriate.

*    *    *

In sum, the Court concludes that expedited jurisdictional discovery is warranted as to Interrogatory 1, Interrogatory 4 (as limited), RFP 1 (as limited), and RFP 2 because Plaintiffs have made a showing that they can supplement their jurisdictional allegations with this information. The Court's order limits discovery only to the Department of Justice's Leadership Offices and the FBI. The Court may exercise its discretion to order this discovery, although it has not yet had the opportunity to rule on subject matter jurisdiction, because it has "jurisdiction to determine its own jurisdiction," *United Mine Workers of Am.*, 330 U.S. at 292 n.57, and because Plaintiffs satisfy the D.C. Circuit's requirements for jurisdictional discovery, *see Nat. Res. Def. Council*, 147 F.3d at 1024; *Lewis*, 62 F.4th at 595–96.

In the alternative, these same discovery requests would also pass the five-factor reasonableness test for expedited general discovery in support of Plaintiffs' pending motion for a preliminary injunction. The Court turns to that inquiry now.

### B.  Expedited General Discovery

In assessing a request for expedited general discovery, the Court considers "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Guttenberg*, 26 F. Supp. 3d at 98.

The first and fifth factors are easily addressed. Plaintiffs' motion for a preliminary injunction is pending before the Court, ECF 32, which weighs in Plaintiffs' favor. But Plaintiffs

seek discovery in advance of the typical discovery process, and before the Court has resolved any dispositive motion, which weighs against discovery.

The second and third factors assess the breadth and purpose of the requested discovery. The same discovery requests that the Court has determined bear on Plaintiffs' standing are also relevant to their motion for preliminary injunction. Because the requests may support Plaintiffs' allegations of actual and imminent harm (including public disclosure of their identities and adverse professional consequences from the investigation), those requests are also relevant to whether Plaintiffs can establish irreparable harm as required for early injunctive relief. And as narrowed by the Court, Plaintiffs' requests are not unduly broad. On the other hand, for the requests the Court is denying, Plaintiffs have not made clear how they bear specifically on the motion for preliminary injunction rather than the merits of the case as a whole. As explained above, Plaintiffs' justification for Interrogatory 2 appears to go to the merits of the case rather than preliminary injunctive relief, and Interrogatory 3 seeks legal conclusions rather than factual discovery. Because the Court has denied those requests that are overbroad or not focused on the preliminary-injunction inquiry, the second and third factors weigh in favor of discovery.

As to the fourth factor, these discovery requests of course impose some burden on Defendants. All discovery does. But "[w]hen the burden is low, such as responding to only one or a few discovery requests, then this factor supports granting the motion for expedited discovery." *Attkisson v. Holder*, 113 F. Supp. 3d 156, 165 (D.D.C. 2015). The Court has winnowed Plaintiffs' requested discovery to two narrow interrogatories, two targeted requests for production, and two components (DOJ's Leadership Offices and the FBI).

Now the question of timing: Defendants need some reasonable amount of time to respond to the requests, even though they are limited. Given that Plaintiffs' renewed motion was filed last

week and became ripe only a few days ago, the Court orders that discovery shall be completed by **April 14, 2025**. If the parties seek any adjustment to the existing schedule in light of the Court's order, they shall promptly notify the Court. With the adjustments made herein, the burden on Defendants is reasonable and the fourth factor of the expedited discovery test tips in favor of Plaintiffs.

Because the first four factors of the reasonableness test weigh in favor of discovery and only the fifth factor weighs against it, Plaintiffs have justified their request for expedited discovery in support of their motion for a preliminary injunction.

\*       \*       \*

For the foregoing reasons, the Court **ORDERS** that Defendants shall produce the following discovery to Plaintiffs by **April 14, 2025**:

- Interrogatory 1: Identify every non-DOJ person, including White House personnel and DOGE personnel, who is known to have, or had, access to the data collected pursuant to the Survey.

- Interrogatory 4: In both the Terminations Memo and the February 5, 2025 Message from A/DAG Bove, Mr. Bove stated that DOJ is undertaking a "process" to review the conduct of FBI personnel who participated in the January 6 investigations. Identify and describe the "process" identified by Mr. Bove.

- Request for Production 1: Any Document that relates to the Government's intent for any potential future disclosure of the Survey.

- Request for Production 2: Any Document that relates to the Government's Responses to any of the Interrogatories above.

18

The relevant components for purposes of this discovery order are the Department of Justice's Leadership Offices and the Federal Bureau of Investigation.

**SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: March 22, 2025