UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN AND JANE DOES 1 TO 9, et al., | |
| Plaintiffs, | |
| v. | Civil Action Nos. |
| | 25-0325 (JMC), 25-0328 (JMC) |
| DEPARTMENT OF JUSTICE, et al., | |
| Defendants. | |

**<u>DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

Table of Contents ........................................................................................................................ i

Table of Authorities ................................................................................................................... ii

I.    The Court Should Dismiss This Consolidated Case For Lack of Subject-Matter Jurisdiction. ..........................................................................................................2

    A.    The Individual Plaintiffs Have Failed To Plead Standing For Their Privacy-Based Claims.................................................................................2

    B.    The Individuals Plaintiffs Have Failed To Address Standing For Their Other Claims. .........................................................................................9

    C.    The FBI Association Has Failed To Plead Standing ...............................12

II.    Plaintiffs Have Failed to State Any Claim Upon Which Relief Can Be Granted. 13

    A.    Plaintiffs Have Failed To Plead Any Privacy Act Or APA Claim............13

    B.    Plaintiffs' Fifth Amendment Privacy Claim Fails....................................19

    C.    Plaintiffs' First Amendment Claims Fail.................................................21

    D.    Plaintiffs' Mandamus Claim Fails..........................................................25

Conclusion .............................................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All. for Retired Ams. v. Bessent*,
Civ. A. No. 25-0313 (CKK), 2025 WL 740401 (D.D.C. Mar. 7, 2025) ...................................9

*Am. Fed. of Gov't Emplys. v. Hawley*,
543 F. Supp. 2d 44 (D.D.C. 2008) ......................................................................................13

*Am. Fed'n of Gov't Employees v. HUD*,
118 F.3d 786 (D.C. Cir. 1997)............................................................................................20

*Anderson v. Wiggins*,
460 F. Supp. 2d 1 (D.D.C. 2006) ..........................................................................................5

*Aref v. Lynch*,
833 F.3d 242 (D.C. Cir. 2016)............................................................................................24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................................15

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................................................15

*Chambers v. Dep't of Interior*,
568 F.3d 998 (D.C. Cir. 2009)............................................................................................14

*Chichakli v. Tillerson*,
882 F.3d 229 (D.C. Cir. 2018)............................................................................................16

*Clapper v. Amnesty Int'l*,
568 U.S. 398 (2013) .............................................................................................................7

*Connick v. Myers*,
461 U.S. 138 (1983) .....................................................................................................22, 23

*Davis v. FEC*,
554 U.S. 724 (2008) .............................................................................................................2

*Dillard v. O'Kelley*,
961 F.3d 1048 (8th Cir. 2020) ...........................................................................................20

*Diversity v. Bernhardt*,
490 F. Supp. 3d 40 (D.D.C. 2020) ......................................................................................11

*Doe v. Chao*,
   540 U.S. 614 (2004) ................................................................................................3

*Doe v. Stephens*,
   851 F.2d 1457 (D.C. Cir. 1988) ................................................................ 6, 17, 18

*FAA v. Cooper*,
   566 U.S. 284 (2012) ...........................................................................................3, 17

*Feldman v. CIA*,
   797 F. Supp. 2d 29 (D.D.C. 2011) ...................................................................15, 17

*Fischer v. United States*,
   603 U.S. 480 (2024) ..............................................................................................23

*Flannery v. Eckenwiler*,
   Civ. A. No. 23-2804 (ABJ), 2024 WL 4345832 (D.D.C. Sep. 30, 2024) ................24

*Garcetti v. Ceballos*,
   547 U.S. 410 (2006) .......................................................................................passim

*Heffernan v. City of Paterson*,
   578 U.S. 266 (2016) ..............................................................................................22

*Hill Dermaceuticals, Inc. v. FDA*,
   709 F.3d 44 (D.C. Cir. 2013) ................................................................................19

*In re Cheney*,
   406 F.3d 723 (D.C. Cir. 2005) ..............................................................................25

*In re Off. of Pers. Mgmt. Data Sec. Breach Litig.*,
   928 F.3d 42 (D.C. Cir. 2019) .............................................................................4, 20

*Kaempe v. Myers*,
   367 F.3d 958 (D.C. Cir. 2004) ..............................................................................22

*Lamb v. Millennium Challenge Corp.*,
   228 F. Supp. 3d 28 (D.D.C. 2017) ........................................................................15

*Lewis v. District of Columbia*,
   Civ. A. No. 22-3369 (RDM), 2025 WL 661603 (D.D.C. Mar. 2, 2025) ................24

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ...........................................................................................7, 8

*Lujan v. Nat'l Wildlife Fed.*,
  497 U.S. 871 (1990) ........................................................................................6

*M.O.C.H.A. Soc'y, Inc. v. City of Buffalo*,
  872 F. Supp. 2d 264 (W.D.N.Y. 2012) ...........................................................21

*NASA v. Nelson*,
  562 U.S. 134 (2011) .......................................................................... 8, 9, 19, 20

*Nunes v. Mass. Dep't of Corr.*,
  766 F.3d 136 (1st Cir. 2014).........................................................................20

*Productos Varios v. Dep't of Treasury*,
  606 F. Supp. 2d 59 (D.D.C. 2009) .................................................................21

*Solidarity with People of El Salvador v. Sessions*,
  929 F.2d 742 (D.C. Cir. 1991)........................................................................19

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) .........................................................................................3

*Texas v. United States*,
  523 U.S. 296 (1998) .......................................................................................11

*Trump v. Hawaii*,
  585 U.S. 667 (2018) ..................................................................................23, 24

*United Transp. Union v. Interstate Com.*,
  *Comm'n*, 891 F.2d 908 (D.C. Cir. 1989)..........................................................7

*Univ. of Cal. Student Ass'n v. Carter*, Civ. A.,
  No. 25-0354 (RDM), 2025 WL 542586 (D.D.C. Feb. 17, 2025) ...........................25

**Statutes**

5 U.S.C. § 552a ................................................................................ 8, 14, 16, 20

5 U.S.C. § 704 ..................................................................................................6

5 U.S.C. § 706(2) ...........................................................................................18

**Rules**

Fed. R. Civ. P. 12(b)(6) ..................................................................................13

This case has become a lawsuit searching for a claim. What began as a challenge to the Federal Bureau of Investigation's ("FBI") response to the Department of Justice's (the "Department") directive to the FBI to provide the Department with a list of FBI personnel who worked on January 6 matters has now devolved into speculation about potential future conduct untethered from any existing cognizable claim for relief. Plaintiffs now concede that the disclosure of the lists from the FBI to the Department that originally served as the only potential anchor for this lawsuit was permissible under the Privacy Act. Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pls.' Opp'n," ECF No. 35) at 26 n.10.[1]

In the final analysis, Plaintiffs have not pled any existing, cognizable claim that could form the basis for the injunctive relief that they seek. Accordingly, this lawsuit should be dismissed. Although Plaintiffs speculate about the possibility of future conduct, such as a hypothetical release or possibly being the subject of an adverse employment action following completion of the Department's review process in connection with the Executive Order, those issues are not ripe for this Court's consideration. Plaintiffs' limited arguments in opposition to Defendants' motion to dismiss do not change the above analysis but merely serve to confirm it.

Defendants already have extensively addressed the jurisdictional and pleading defects in Plaintiffs' claims in both their motion to dismiss ("Mot," ECF No. 28) and in their opposition to Plaintiffs' motion for preliminary injunction ("PI Opp'n," ECF No. 34). Defendants incorporate those discussions into this reply and otherwise respond below to the arguments made by Plaintiffs in their opposition (ECF No. 35).

---

[1]    Citations to docket filings are to filings made in the lead action in this consolidated matter, *Does v. Department of Justice*, Civ. A. No. 25-0325 (JMC) (D.D.C.) ("*Does*"), unless otherwise noted herein.

**ARGUMENT**

**I.      The Court Should Dismiss This Consolidated Case For Lack of Subject-Matter Jurisdiction.**

Standing is not dispensed in gross, *Davis v. FEC*, 554 U.S. 724, 734 (2008), but Plaintiffs have made no attempt to establish the requirements of standing for each of their claims and the relief sought (injunctive relief) for those claims.  To the extent Plaintiffs address at all Defendants' extensive discussion of standing, their argument is limited to their Privacy Act and Fifth Amendment privacy claims only.

Specifically, they claim to have pled facts that, if assumed true, "permit a reasonable inference to be drawn that their identifies may be released to individuals outside [the Department], including at the White House, to other agencies, or to the public."  Pls.' Opp'n (ECF No. 35) at 16.  They suggest that such hypothetical disclosures would violate the Privacy Act were they to occur and, on that basis, claim to have adequately pled a privacy-based claim notwithstanding their concession that the alleged disclosure to date (the disclosure of the lists from the FBI to the Department) was lawful.  *Id*. at 25, 26 n.10.

As discussed below, the individual Plaintiffs have failed to plausibly plead standing for any privacy-based claim and, as their silence regarding their other claims demonstrates, have failed to plead standing for their remaining claims.  The FBI Association also has failed to establish standing, whether derivatively based on the standing of its members or in its own right.

**A.      The Individual Plaintiffs Have Failed To Plead Standing For Their Privacy-Based Claims.**

Plaintiffs contend that they would suffer "irreparable harm" if the lists are disclosed to the public and seek prospective relief to prevent what they claim would be a Privacy Act violation were such a disclosure to occur.  Pls.' Opp'n (ECF No. 35) at 16, 25.  Plaintiffs admit that they are not alleging that the Privacy Act has been violated based on the sole disclosure that is alleged to

have occurred to date—namely, the FBI's disclosure of the lists to the Department. *Id.* at 26 n. 10 (explaining that Plaintiffs are "only seeking to prevent dissemination beyond DOJ and [are] not disputing the 'routine use' exception permitted dissemination *within* DOJ between different components"). Plaintiffs, therefore, have not alleged an "injury-in-fact" based on a past Privacy Act violation but claim to have done so based on a potential future injury regarding a potential future disclosure that has not yet occurred.

As a threshold matter, Plaintiffs have no standing to assert any privacy-based claim because they admit that, as regards to the sole disclosure alleged to have occurred to date, the Privacy Act has not been violated. For Plaintiffs to have standing to assert a Privacy Act claim, there already must be an impermissible dissemination of information about an individual that has caused the individual to experience an adverse effect. *Doe v. Chao*, 540 U.S. 614, 624-25 (2004). The Supreme Court has explained that the term "adverse effect" in the Privacy Act is

> a term of art identifying a potential plaintiff who satisfies the injury-in-fact and causation requirements of Article III standing, and who may consequently bring a civil action without suffering dismissal for want of standing to sue. . . . That is, an individual subjected to adverse effect has injury enough to open the courthouse door, but without more has no cause of action for damages under the Privacy Act.

*Id.* In other words, to have standing to sue ("to open the courthouse door") under the Privacy Act, Plaintiffs must have experienced an adverse effect from an impermissible disclosure. Plaintiffs concede that the only disclosure alleged in their pleading was permissible and, because that disclosure admittedly was lawful, they have no standing under the Privacy Act. Likewise, they have not pled pecuniary or economic harm associated with that disclosure (or any intra-government disclosure about which they may hypothesize) and thus have not alleged that they have experienced any adverse effect as would be necessary to assert a claim. *FAA v. Cooper*, 566 U.S. 284, 299 (2012); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) (rejecting the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a

statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right").

In assessing this issue, *In re Office of Personnel Management Data Security Breach Litigation ("OPM")*, 928 F.3d 42 (D.C. Cir. 2019), is instructive. That case involved a prior instance of a cyber-attack on a government database in which personal data was stolen, and the plaintiffs alleged that the agency had failed to secure its database from a further cyber-attack following that breach. *Id.* at 54-55. Based on those specific allegations, the Court held that the plaintiffs had plausibly pled a substantial risk that their personal information would be stolen again and thus sufficiently alleged an ongoing, imminent threat to have standing to seek prospective relief. *Id.* at 55. Essential to that holding were the allegations that the government had already allowed a breach to occur, causing harm to the plaintiffs, and that the government had failed to secure its database against a future breach, creating a substantial risk of future harm. *Id.* at 54-55.

Here, in contrast, Plaintiffs have not pled any facts to establish that any misuse of their employment information has occurred. To the contrary, they concede that the FBI's dissemination of the lists to the Department was consistent with a routine use and thus permissible under the Privacy Act. Opp'n (ECF No. 35) at 26 n. 10. Thus, by Plaintiffs' own admission, the disclosures alleged to have occurred to date have been entirely lawful.

Plaintiffs assert that their allegations establish sufficient "patterns and practices" that creates "a strong threat of irreparable injury." Pls.' Reply (ECF No. 37) 3-4. They point to statements of the President, his exercise of Article II powers, and the Department's actions to effectuate the President's orders, none of which are alleged by Plaintiffs to be contrary to law. *Id.* at 4-5. But Plaintiffs have not identified any instance where the Department has publicly identified any Department employee holding a non-public facing position, or any pattern across the

government of such public disclosures occurring, to raise an inference of a substantial risk of public disclosure here.  *Id.* at 16-17.  Their allegations instead are of alleged government actions that do not involve any public disclosure of employee information and thus are irrelevant.  *Id.*  Plaintiffs cite, for example, a repost by Elon Musk of a social media post that contained names of four government employees.  *Id.* at 17 (citing Am. Compl. (ECF No. 24) ¶ 57).  Amended Complaint paragraph 57 cites to a CNN article regarding the repost that states that the names of those employees already were public.  Am. Compl. (ECF No. 24) ¶ 57 (citing Hadas Gold and Rene Marsh, *Elon Musk Publicized the Names of Government Employees He Wants to Cut. It's Terrifying Federal Workers*, CNN (Nov. 27, 2024), https://www.cnn.com/2024/11/27/business/elon-musk-government-employees-targets/index.html (last visited Mar. 22, 2025).  That article clearly states: "the information [Mr. Musk] posted on those government positions is available through public online databases."  Even were the Court to find that repost inappropriate, "[o]ne act does not a pattern make."  *Anderson v. Wiggins*, 460 F. Supp. 2d 1, 8 (D.D.C. 2006).

Plaintiffs also contend that the Department "has already disseminated names of FBI personnel who were forced to resign or be fired in apparent reliance upon the Executive Order."  Opp'n (ECF No. 35) at 22 (citing Am. Compl. (ECF No. 24) ¶¶ 65-66).  But that is a mischaracterization of their allegations.  They allege only that the Department identified eight senior level officials in an internal memorandum to the FBI.  Am. Compl. (ECF No. 24) ¶¶ 65-66.  They do not allege that the Department publicized the names of those individuals.  *Id.*  In short, Plaintiffs have not identified a single public disclosure by the Department of information about non-public facing employees that could ground their speculation in any facts that could plausibly establish a heightened risk that the lists will be publicly disclosed.

Plaintiffs, moreover, have cited no case where the Court has found standing to assert a Privacy Act claim based on a heightened risk of public disclosure when there has been no alleged underlying impermissible disclosure under the Privacy Act to anchor such a claim. And because the Privacy Act does not provide for injunctive relief for violations of the provisions cited in the Amended Complaint, Plaintiffs have failed to establish how the Court could redress their fear of a future disclosure in violation of that Act when injunctive relief is not available under the Act. *Doe v. Stephens*, 851 F.2d 1457, 1463 (D.C. Cir. 1988) (recognizing that the Privacy Act's "subsection on civil remedies authorizes entry of injunctive relief in only two specific situations" and "precludes other forms of declaratory and injunctive relief"). Because Plaintiffs have not identified any final agency decision that is being challenged, the Administrative Procedure Act ("APA") does not afford a basis for injunctive relief as Plaintiffs wrongly assert. *See Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 882 (1990) ("When . . . review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'" (citing 5 U.S.C. § 704)); *see also* PI Opp'n (ECF No. 34) at 27-28.

The individual Plaintiffs also have not meaningfully addressed their failure to affirmatively plead, or attest in their supporting declarations, that their employment information is not already in the public domain. If their employment information already is in the public domain, then the disclosure of a list identifying their FBI affiliation and work on January 6 matters could not cause them harm. Their assertion that this pleading deficiency is addressed by their request to proceed under pseudonym is misplaced. Opp'n (ECF No. 35) at 20. As they implicitly acknowledge, they have requested to proceed under pseudonym because they do not want to be associated by name with this lawsuit. *Id.* That is a different question from whether their employment information is

already in the public domain.  Although well aware of this defect, Plaintiffs have made no attempt to meaningfully address it, not even in their recently filed reply in support of their motion for preliminary injunction, which contains no supplemental declarations.  *See generally* PI Reply (ECF No. 37).  Plaintiffs "bear[] the burden of establishing the [] elements" of standing and this deficiency is fatal to their privacy-based claims.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

Plaintiffs also claim to have pled sufficient facts of a risk of disclosure of the lists to "the White House" and "other agencies."  Opp'n (ECF No. 35) at 16.  Plaintiffs do not allege that any such disclosure has occurred, and thus this argument is based on speculation.  Consequently, the above analysis would apply equally to it.  Equally fatal to such a claim, however, is Plaintiffs' failure to allege that they have experienced to date any "adverse effect" as required for standing, or that they would suffer any harm (let alone the required "adverse effect") from an intra-government disclosure were one to occur.  They only allege harm from a public disclosure.  *Id.* To the extent they insinuate that an intra-government disclosure, were it to occur (which they have not alleged), would be a further step in a "trajectory" toward public disclosure, *id.*, that causal chain is too attenuated to establish standing for prospective relief.  *See Clapper v. Amnesty Int'l*, 568 U.S. 398, 414 (2013) (a "speculative chain of possibilities does not establish that injury based on potential future [conduct] is certainly impending"); *United Transp. Union v. Interstate Com. Comm'n*, 891 F.2d 908, 912 (D.C. Cir. 1989) ("When considering any chain of allegations for standing purposes, we may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties)[.]").  "'[S]ome day' intentions—without any description of concrete plans, or indeed even any speculation of when the some day

will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*,

504 U.S. at 564 (emphasis omitted).

For similar reasons, Plaintiffs lack standing to assert a Fifth Amendment privacy-based

claim. "Plaintiffs agree" that "there is no carte blanche substantive right to privacy under the

Constitution." Pls.' Opp'n (ECF No. 35) at 31. Plaintiffs' reliance on *NASA v. Nelson*, 562 U.S.

134 (2011), undermines, rather than advances, their position. *Id.* In *Nelson*, the Supreme Court

assumed, without deciding, that there existed a "constitutional privacy 'interest in avoiding

disclosure of personal matters.'" *Id.* at 138. At issue in *Nelson* was the government's collection

of highly personal information regarding drug use (not employment-related information as here)

on standard background check forms. The lower court had held that "'most of the questions on

the form," including those related to past employment and "other basic biographical information"

did not implicate any constitutional privacy right, but the lower court held that the portion

regarding "disclosure of drug 'treatment or counseling' furthered no legitimate interest and was

thus likely to be held unconstitutional." *Id.* at 141, 143. The Supreme Court reversed, holding

that "[t]he Government's interests as employer and proprietor in managing its internal operations,

combined with the protections against public dissemination provided by the Privacy Act of 1974,

5 U.S.C. § 552a . . . satisfy any 'interest in avoiding disclosure" that may "arguably ha[ve] its

roots in the Constitution.'" *Id.* at 138.

Here, the information at issue is employment-related and not of the highly personal nature

at issue in *Nelson* that could potentially implicate a constitutional privacy right. Plaintiffs also

have conceded that there has been no Privacy Act violation in this case. Pls.' Opp'n (ECF No. 35)

at 26 n.10. If the Privacy Act by itself allayed the privacy concerns in *Nelson*, the admitted absence

of a Privacy Act violation here precludes any inference that the disclosure at issue could implicate

any constitutional right to privacy were it even to exist under the Fifth Amendment. Thus, Plaintiffs lack standing to assert a Fifth Amendment claim because they have failed to identify a cognizable constitutional right to privacy that has been implicated by the disclosure at issue. And, as regards to Plaintiffs' speculation about the potential of a future disclosure, "the mere possibility that security measures will fail provides no 'proper ground' for a broad-based attack on government information-collection practices." *Nelson,* 562 U.S. at 158.

Finally, Plaintiffs' belated attempt to analogize their situation to the common law tort of "intrusion upon seclusion" fails. Reply (ECF No. 37) at 7. That tort is applicable to an intrusion on an individual's private affairs. *All. for Retired Ams. v. Bessent*, Civ. A. No. 25-0313 (CKK), 2025 WL 740401, at *15 (D.D.C. Mar. 7, 2025) ("At common law, the essential features of intrusion upon seclusion are that the defendant intentionally intruded upon the solitude or seclusion of another or his private affairs or concerns and that such intrusion would be highly offensive to a reasonable person." (cleaned up)). The lists at issue here, in contrast, concern Plaintiffs' official duties. *Cf. id.* at *17 (the disclosure of personal taxpayer information was a sufficient injury-in-fact to support standing based on the close relationship with the common law tort of intrusion upon seclusion).

## B.    The Individuals Plaintiffs Have Failed To Address Standing For Their Other Claims.

Plaintiffs' Opposition has also failed to address standing as to any of their other claims. As established in Defendants' motion to dismiss and opposition to Plaintiffs' motion for preliminary injunction, Plaintiffs lack standing for those claims. *See* Mot. to Dismiss (ECF No. 28) at 12-13 (noting that Plaintiffs have identified only two potential future injuries: future adverse employment action and publication of the lists); Opp'n to PI (ECF No. 34) at 6. Briefly stated, Plaintiffs have not identified any final agency action under the APA, and thus have not pled that they have been

harmed by final agency action as would be necessary to afford them standing to assert an APA claim. Nor have Plaintiffs identified any failure by the government to comply with a discrete duty owed to them that could afford them standing to assert a mandamus claim.

Plaintiffs likewise have not identified any protected speech—and thus have not pled any injury to an interest protected by the First Amendment—to afford them standing to assert their First Amendment claims. Based on Plaintiffs' own allegations, the sole requirement for their inclusion on the lists was participation on January 6 matters, and a work assignment is not First Amendment speech. *Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006).

Consequently, there is simply no plausible basis for Plaintiffs to contend that they have been targeted for inclusion on the lists based on their perceived political affiliation. Indeed, Plaintiffs acknowledge as much in their opposition, writing that their pleading "includes factual allegations that Plaintiffs were targeted *specifically* because they participated in the January 6 investigations and cases." Pls.' Opp'n (ECF No. 35) at 18 (emphasis in original). Plaintiffs also admit in the declarations filed in support of their motion for preliminary injunction that assignments to January 6 matters had no connection to political viewpoints or affiliations. For example, John Doe #1 (25-328) attests "to my knowledge, the topic of my political views or opinions played no role whatsoever in the assignment of these cases" and that participation in those cases was solely the result of "direct orders to investigate and execute my duties." John Doe #1 Decl. (ECF No. 25-13) ¶ 10; *see also* Jane Doe #2 Decl. (ECF No. 25-11) ¶ 10 (same); John Doe #4 Decl. (ECF No. 25-15) ¶ 10 (same); Jane Doe Decl. (ECF No. 25-16) ¶ 10 (same); Jane Doe #2 (ECF No. 25-17) ¶ 11. And, in their preliminary injunction reply, Plaintiffs reiterate that their names were collected (along with other FBI personnel) "*only because* they worked on the January

6 cases." Reply (ECF No. 37) at 7 (emphasis in original); *id.* at 9 (stating that Plaintiffs are subject to the ongoing review "*because* they worked on the January 6 cases") (emphasis in original).

Standing for the First Amendment claims is lacking for additional reasons as addressed more fully in Defendants' opposition to Plaintiffs' motion for preliminary injunction and, for the Court's convenience, is briefly described here. Regarding their First Amendment retaliation claim (count five), the potential that Plaintiffs may be subject to an adverse employment action based on their inclusion on the lists and ongoing review process is too speculative to support standing, which cannot rest on "a series of subsequent events . . . which are still purely hypothetical." *Ctr. for Bio. Diversity v. Bernhardt*, 490 F. Supp. 3d 40, 51-52 (D.D.C. 2020); *see also Texas v. United States*, 523 U.S. 296, 300 (1998) (a claim is unripe for judicial resolution "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all"). Regarding their chilling of speech claim (count seven), standing is lacking for the additional reason that the alleged injury is not redressable. Plaintiffs have already conceded that any questions relating to the creation of the lists or its transmission to the Department are moot. Hr'g Tr. (Feb. 6, 2025) at 19-20 (admitting that any claim regarding compilation of the list is moot as "that cat is pretty much out of the bag"). To the extent they claim that their speech has been chilled by inclusion on the lists, that past alleged injury is not redressable by injunctive relief.

To the extent Plaintiffs contend that their speech is chilled by the ongoing review process of their official conduct in connection with January 6 matters, Plaintiffs have not asked the Court to enjoin the review process, nor have they pled any claim that could possibly support such expansive relief. Am. Compl. (ECF No. 24) ¶ 132. It is telling, too, that after Defendants challenged Plaintiffs' conclusory allegations, PI Opp'n (ECF No. 34) at 2, 11-13, Plaintiffs have not elaborated with any particularity, by way of a supplemental declaration or otherwise, how their

speech has been chilled, *see generally* Pls.' Reply (ECF No. 37). And the logical conclusion of Plaintiffs' misplaced argument that the First Amendment is implicated based on an employee's "subjective" beliefs, *id*. at 10-11, means that the government can never conduct an employee review without offending the Constitution. That cannot be squared with the Supreme Court holding that government employers have discretion to review their employees' job performance and that "displacement of [that] managerial discretion by judicial supervision finds no support in our precedents." *Garcetti*, 547 U.S. at 423. The Supreme Court has made clear that judicial scrutiny is not permitted when, as here, "the employee is simply performing his or her job duties." *Id.* For "[t]o hold otherwise would be to demand permanent judicial intervention in the conduct of governmental operations to a degree inconsistent with sound principles of federalism and the separation of powers." *Id.* In short, "while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Id*. at 420.

Because this lawsuit does not seek to enjoin the review process itself (nor could it) any relief obtained in this action will not redress the alleged chilling effect that Plaintiffs claim to be experiencing from that process. Indeed, the ambiguous and overbroad relief that is requested— "to enjoin the Defendants from taking any additional action which would infringe on [their] Constitutional rights"—merely highlights their failure to plead a "concrete and particularized" injury underlying their First Amendment claims that could be redressed by the Court. Am. Compl. (ECF No. 24) ¶ 132.

### C.    The FBI Association Has Failed To Plead Standing

Plaintiffs' arguments for associational standing for the FBI Association Plaintiff is limited to a short paragraph. Opp'n (ECF No. 35) at 20. There, Plaintiffs briefly argue that the FBI Association has standing based on the standing of its members, but that contention is baseless for the reasons discussed above. The asserted basis for the Association to have standing in its own

right, moreover, is limited to a single sentence—that "[c]loaking both the future disclosure and 'review process' in secrecy directly frustrates [the FBI Association's] ability to conduct its core missions," providing "internal and external advocacy for its members." *Id.*

Plaintiffs make no attempt to identify which claim the Association claims to have standing to assert in its own right. *See* PI Opp'n (ECF No. 35) at 20; Pls.' Reply (ECF No. 37) at 13-15. For instance, the speculation about a future disclosure appears to relate to the Privacy Act but an organization has no standing to assert a claim under that Act. *Am. Fed. of Gov't Emplys. v. Hawley*, 543 F. Supp. 2d 44, 49 n.8 (D.D.C. 2008). The Association also offers no explanation how its alleged injury is traceable to the conduct underlying any particular claim, or how its alleged injury would be redressable by a favorable ruling in this case. *See* PI Opp'n (ECF No. 28) at 20. As regards to allegedly "cloaking" the "'review process' in secrecy," the FBI Association has asserted no claim that would entitle it to information about the privileged deliberative process of the Department as it undertakes a review process directed by an Executive Order.

For all of these reasons, Plaintiffs lack standing to pursue their claims and this action should be dismissed on that basis.

## II.    <u>Plaintiffs Have Failed to State Any Claim Upon Which Relief Can Be Granted.</u>

Even if Plaintiffs have standing, the Court should dismiss these consolidated cases for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

### A.    <u>Plaintiffs Have Failed To Plead Any Privacy Act Or APA Claim.</u>

Plaintiffs purport to assert a claim under sections 552a(e)(6) (count one) and 552a(b) (count two) of the Privacy Act. Am. Compl. (ECF No. 24) ¶¶ 94-101. Defendants' motion identified multiple reasons why Plaintiffs have failed to plead a claim for violations of either of these sections. To the extent Plaintiffs have responded to those grounds for dismissal, Defendants reply to those arguments below. In addition, Plaintiffs have not responded to Defendants' arguments

for dismissal of their APA claim (count three).  Instead, their opposition merely claims that "they are relying upon the APA Claim . . . as the basis for injunctive relief to prevent the unlawful dissemination at issue in [count two]."  Pls.' Opp'n (ECF No. 35) at 25.  Accordingly, Defendants address the APA claim below as well.

        1.    <u>Plaintiffs Have Failed To State A Claim Under The Applicable Civil Remedy Provisions Of The Privacy Act.</u>

As an initial matter, only two of the four civil remedy provisions of the Privacy Act are potentially applicable here based on the Privacy Act provisions cited in count one (section 552a(e)(6)) and count two (section 552a(b)) of the Amended Complaint.  Those civil remedy provisions are sections 552a(g)(1)(C) and (g)(1)(D).  Plaintiffs have failed to plead the elements required to assert a claim under either provision.

*First*, section 552a(g)(1)(C) permits a claim for violation of section 552a(e)(6)—failure to maintain any record concerning an individual with sufficient accuracy—but only if a "determination is made which is adverse to the individual."  5 U.S.C. § 552a(g)(1)(C).  In addition, the obligation to ensure reasonable accuracy within section 552a(e)(6) arises if a record is disseminated "to any person other than an agency."  *Id.* § 552a(e)(6).

Plaintiffs have not asserted a claim under section 552a(e)(6), nor can they avail themselves of section 552a(g)(1)(C), for two independent reasons.  First, they have not alleged that they have experienced any adverse determination as a result of the provision of the lists from the FBI to the Department.  *Chambers v. Dep't of Interior*, 568 F.3d 998, 1007 (D.C. Cir. 2009) ("Central to a cause of action under subsection (g)(1)(C) is the existence of an adverse agency determination resulting from inaccurate agency records. Yet Chambers does not even attempt to identify an adverse determination by a government agency that was caused by Interior's alleged failure to accurately maintain her records.").

Plaintiffs, moreover, have not alleged any dissemination to persons outside an agency. *Lamb v. Millennium Challenge Corp.*, 228 F. Supp. 3d 28, 40 (D.D.C. 2017). They attempt to obfuscate that defect by speculating that it is possible the lists "might not remain solely within" the Department. Pls.' Opp'n (ECF No. 35) at 22 (citing Am. Compl. (ECF No. 24) ¶ 59). But no disclosure, other than by the FBI to the Department, has been alleged in the Amended Complaint. Although Plaintiffs contend that the government has not "verif[ied] for the Court" that the lists[2] "remain solely within" the Department, *id.*, that is not the government's burden at the motion to dismiss stage. Plaintiffs instead bear the burden of pleading sufficient facts "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs' speculation about a possibility of such a disclosure does not satisfy their pleading obligation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.").

Although the full details of an alleged disclosure need not be asserted at the pleading stage, a plaintiff must at least plead specific facts to raise a plausible inference that a disclosure occurred, such as identifying unauthorized individuals, or individuals outside the relevant agency, who have knowledge of the record's contents. *Feldman v. CIA*, 797 F. Supp. 2d 29, 41 (D.D.C. 2011) (allegations that specifically identified employees with no official connection to an investigation learned about the investigation's details and that identified the approximate period in which they did so are sufficient to raise an inference that a disclosure occurred to survive a motion to dismiss).

---

[2]     Plaintiffs appear to use the term "Survey's contents" in their opposition to refer to the lists. Opp'n (ECF No. 35) at 22. The individual survey results were not themselves provided by the FBI to the Department except to the extent incorporated within the columns of the lists that were transmitted. Acting Deputy Director Feb. 2, 2025, Email (ECF No. 11-5). Nor do the Plaintiffs allege to the contrary.

No such facts are alleged here to raise any plausible inference that a disclosure outside the Department has occurred. The facts that have been pled instead refer to a single disclosure—the disclosure of the lists from the FBI to the Department—and their Privacy Act claim is necessarily evaluated based on that disclosure alone. That disclosure does not implicate section 552a(e)(6) and, therefore, cannot form the basis for a claim under that section of the Privacy Act.

*Second*, section 552a(g)(1)(D) is a catch-all provision that requires the following elements to be plausibly pled to state a claim: A "plaintiff must establish that (1) the agency violated a provision of the Act; (2) the violation was intentional or willful; and (3) the violation had an 'adverse effect' on the plaintiff in the form of actual damage." *Chichakli v. Tillerson*, 882 F.3d 229, 234 (D.C. Cir. 2018). Section 552a(g)(1)(D) can encompass a claim based on a violation of section 552a(b). That section prohibits a non-consensual disclosure of a "record" unless, as is relevant here, the disclosure is within the agency that maintains the record and to officers or employees who have a need for the record in the performance of their duties or for a routine use. 5 U.S.C. § 552a(b).

Plaintiffs, however, have now conceded that the disclosure of the lists from the FBI to the Department—the only disclosure plausibly pled in their pleading as established above—was made pursuant to a routine use and thus was permissible under section 552a(b). Pls.' Opp'n (ECF No. 35) at 26 n.10. Consequently, the first element of a section 552a(g)(1)(D) claim—a violation of a provision of the Act—is lacking and dismissal is warranted on that basis alone. *Chichakli*, 882 F.3d at 231 (affirming the grant of a motion to dismiss on the basis that the challenged disclosure was made pursuant to a proper routine use of the information). As a separate, independent basis for dismissal, Plaintiffs also have failed to plead an "adverse effect in the form of actual damages." *Chichakli*, 882 F.3d at 234. Under the Privacy Act, "actual damages" is limited to economic and

pecuniary harm.  *Cooper*, 566 U.S. at 298 ("[W]e think it likely that Congress intended 'actual damages' in the Privacy Act to mean special damages for proven pecuniary loss.").  This defect also would require dismissal even were the Court to determine that Plaintiffs have plausibly pled a disclosure within the government outside the Department (they have not).

Plaintiffs contend that, "for purpose of the pleading stage, it is not necessary for [them] to articulate any level of particularized harm," citing a case in which a plaintiff sought actual damages as relief but had not pled damages with particularity.  Pls.' Opp'n (ECF No. 35) at 24-25.  That case, *Feldman v. CIA*, 797 F. Supp. 2d 29 (D.D.C. 2011), predates the Supreme Court's decision in *FAA v. Cooper*, 566 U.S. 284 (2012).  In *Cooper*, the Supreme Court held that actual damages under the Privacy Act are limited to economic and pecuniary harm.  566 U.S. at 298.  Accordingly, the statement in *Feldman* about the definition of "actual damages" being unresolved, *Feldman*, 797 F. Supp. 2d at 43 n.9, is no longer accurate.  Here, moreover, Plaintiffs have disavowed seeking actual damages and instead concede that "the relief being sought . . . is solely to enjoin the Government."  Pls.' Opp'n (ECF No. 35) at 21.  Consequently, this is not a case about the sufficiency of a damage claim at the pleadings stage, but the complete absence of one.  Because Plaintiffs have not pled actual damages and seek only injunctive relief, they have no claim under sections 552a(g)(1)(C) or (g)(1)(D).  *See Doe*, 851 F.2d at 1463 (recognizing that the Privacy Act's "subsection on civil remedies authorizes entry of injunctive relief in only two specific situations" and "precludes other forms of declaratory and injunctive relief").

### 2.    Plaintiffs Cannot Rely On The APA To Seek Injunctive Relief

Plaintiffs contend that Defendants cite no binding authority for the proposition that injunctive relief is unavailable under sections 552a(g)(1)(C) and (g)(1)(D) of the Privacy Act.  Pls.' Opp'n (ECF No. 35) at 26.  In the same breath they assert that "the Privacy Act specifically does not authorize injunctive or declaratory relief[.]"  Pls.' Reply (ECF No. 37) at 16.  Exactly so:

injunctive relief is not available under those sections.  *Doe*, 851 F.2d at 1463.  Equally misplaced is Plaintiffs' argument that the Privacy Act can be read "in tandem" with the APA to provide for injunctive relief in this context where Plaintiffs have not identified a final agency decision that is being challenged.  Plaintiffs cite no authority for that proposition in their opposition other than referring to the argument in their motion for preliminary injunction that "they are relying upon the APA claim (Count Three) as the basis for injunctive relief" in connection with the Privacy Act claim in count two of their pleading.  Pls.' Opp'n (ECF No. 35) at 25.

In their motion for preliminary injunction, Plaintiffs relied on *Doe* for this argument, but *Doe* is inapposite.  That case did not grant injunctive relief (the sole remedy requested here) under the APA but only declaratory relief and only after determining that the defendant had engaged in final agency action that was contrary to law, which is the applicable standard under the APA.  5 U.S.C. § 706(2).  In *Doe*, the final agency action concerned the agency's promulgation of a routine use policy under the Privacy Act, which permitted the public disclosure of confidential medical records pursuant to a grand jury subpoena when the D.C. Circuit already had held "that a grand jury subpoena did not qualify as an 'order of the court' so as to come within the exception to the Privacy Act's prohibition upon the disclosure of confidential medical records."  *Doe*, 851 F.2d at 1466.  The Court granted declaratory relief under the APA because the Court found a violation of the APA—that is, final agency action (a routine use policy) that was contrary to law.  *Id.*

Plaintiffs' attempt to invoke the "spirit of the Privacy Act" through an APA injunction fails.  Pls.' Reply (ECF No. 37) at 16.  Here, unlike in *Doe*, there is no final agency action challenged by Plaintiffs and thus no basis to contend that the Court can rely on the APA to fashion injunctive relief simply because they cite to the Privacy Act.  Indeed, as to the one disclosure that Plaintiffs have identified—the FBI's disclosure of the lists to the Department—that disclosure

already has occurred and Plaintiffs concede that it did not violate section 552a(b). Pls.' Opp'n (ECF No. 35) at 26 n.10. Thus, Plaintiffs have not even plausibly pled a disclosure that violates the Privacy Act on which to base an injunction. *See Comm. in Solidarity with People of El Salvador v. Sessions*, 929 F.2d 742, 744 (D.C. Cir. 1991) ("In injunction suits, plaintiffs usually must establish that the allegedly illegal actions of the past are causing or threatening to cause them present injuries."). Regardless, in the absence of a challenge to final agency action, Plaintiffs cannot rely on the APA to base their request for injunctive relief. Their speculation about a potential future agency action is not a challenge to final agency action. *See Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 46 n.1 (D.C. Cir. 2013) ("But because preliminary injunctions are expedited, they may sometimes be appropriate in APA cases where time is of the essence — for instance, where a party believes there is an immediate need to prevent a new drug from reaching the market. But any such injunction would need to be limited only to vacating the unlawful action, not precluding future agency decisionmaking.").

In the absence of final agency action, Plaintiffs only can proceed to the extent they have asserted a cognizable claim under the Privacy Act (which they have not, as established above, and which does not afford injunctive relief in any event). Defendants otherwise refer the Court to their additional arguments as to why the APA is inapplicable as set forth in their opposition to the motion for preliminary injunction. PI Opp'n (ECF No. 34) at 26-29.

**B.    Plaintiffs' Fifth Amendment Privacy Claim Fails**

Plaintiffs assert a Fifth Amendment right "which shields them from 'unwarranted disclosures and undue dissemination of personal information.'" Pls.' Opp'n (ECF No. 35) at 30 (quoting *Nelson*, 562 U.S. at 157). As already discussed above, *Nelson* undermines their position because it assumed (without deciding) a privacy right under the Constitution only with respect to highly personal information, not employment information, and held that the protections of the

Privacy Act sufficed to preclude a constitutional privacy-based claim. *Nelson*, 562 U.S. at 138. Neither the Supreme Court nor the D.C. Circuit has recognized a substantive right to privacy, *OPM,* 928 F.3d at 72, and the D.C. Circuit has expressed "grave doubts as to the existence of a constitutional right of privacy in the nondisclosure of personal information." *Am. Fed'n of Gov't Employees v. HUD*, 118 F.3d 786, 791 (D.C. Cir. 1997). Moreover, Plaintiffs' attempts to ground such a right in the "inconclusive statements in *Whalen* and *Nixon* as Supreme Court recognition of a substantive due process right to informational privacy" is erroneous. *Dillard v. O'Kelley*, 961 F.3d 1048, 1054 (8th Cir. 2020); Pls.' Reply (ECF No. 37) at 20. As the Eight Circuit observed, "[a]lthough *Nelson* left the issue unresolved, it confirmed that our court and other circuits erred in reading [those statements] as Supreme Court recognition of a substantive due process right to informational privacy." *Id.*

Even if the courts now were to recognize such a right, Plaintiffs' Fifth Amendment claim would still fail because (1) any such right is limited to sensitive personal information, not employment-related information at issue here and (2) the only alleged disclosure—from the FBI to the Department—was permissible as Plaintiffs concede. Thus, no right of the type discussed in *Nelson* could have been violated. Moreover, courts have repeatedly reaffirmed that the government's use of personal information for governmental purposes does not infringe on any privacy interest a person may have. *See*, *e.g.*, *Nelson*, 562 U.S. at 138 ("The Government's interests as employer and proprietor in managing its internal operations, combined with the protections against public dissemination provided by the Privacy Act of 1974, 5 U.S.C. § 552a (2006 ed. and Supp. IV), satisfy any interest in avoiding disclosure that may arguably have its roots in the Constitution." (cleaned up)); *Nunes v. Mass. Dep't of Corr.*, 766 F.3d 136, 144 (1st Cir. 2014) ("We need not decide in this case whether prisoners have a constitutional right to keep

medical information private. Rather, because the inadvertent and sporadic disclosures here occurred in the context of a reasonable government policy, the plaintiffs cannot prevail even if the department infringed on a privacy interest protected by the Constitution"); *M.O.C.H.A. Soc'y, Inc. v. City of Buffalo*, 872 F. Supp. 2d 264, 290 (W.D.N.Y. 2012) ("[E]ven assuming the existence of a constitutionally protected privacy interest in avoiding disclosure of positive drug test results, the weight of authority instructs that any such interest is decidedly outweighed by the City's clearly stated, compelling public interest in maintaining a drug-free Fire Department."). Ultimately, Plaintiffs' privacy-based constitutional claim fails because their Privacy Act claims fail. *See Empresa Cubana Exportadora de Alimentos y Productos Varios v. Dep't of Treasury*, 606 F. Supp. 2d 59, 80 (D.D.C. 2009) ("OFAC's decision-making was not arbitrary under the APA; *a fortiori* its decision was not so arbitrary that it was of the 'most egregious' type prohibited by the Constitution.").

### C. Plaintiffs' First Amendment Claims Fail.

Plaintiffs' First Amendment retaliation claim (count five) and related "chilling" of speech claim (count seven)—which focus on the Department's ongoing review process—fail of their own weight because Plaintiffs have not identified any protected speech that could support such claims. As acknowledged in the Amended Complaint, the lists at issue that are the focus of the review encompass all FBI personnel who worked on January 6 matters in their official capacity, and Plaintiffs are among thousands of FBI personnel on the lists who met that requirement. Am. Compl. (ECF No. 24) ¶¶ 67, 73, 80. Plaintiffs attest, "to my knowledge, the topic of my political views or opinions played no role whatsoever in the assignment of these cases" and that participation in those cases was solely the result of "direct orders to investigate and execute my duties." John Doe #1 Decl. (ECF No. 25-13) ¶ 10; *see also* Jane Doe #2 Decl. (ECF No. 25-11) ¶ 10 (same); John Doe #4 Decl. (ECF No. 25-15) ¶ 10 (same); Jane Doe Decl. (ECF No. 25-16) ¶

10 (same); Jane Doe #2 (ECF No. 25-17) ¶ 11.  Consequently, because the sole requirement for inclusion on the lists was participation on those matters, and a work assignment is not First Amendment speech, there is simply no plausible basis for Plaintiffs to contend that they have been targeted for inclusion on the lists based on their perceived political affiliation.

Indeed, Plaintiffs acknowledge as much in their opposition, writing that their pleading "includes factual allegations that Plaintiffs were targeted *specifically* because they participated in the January 6 investigations and cases." Pls.' Opp'n (ECF No. 35) at 18 (emphasis in original). Thus, Plaintiffs admit what is obvious from their own allegations—that their inclusion on the lists was based on the work they performed as FBI employees, not protected speech.  That also is obvious from contemporaneous emails incorporated by reference in the Amended Complaint and described more fully in Defendants' motion. *See Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004) ("Nor must we accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice.").

In assessing a First Amendment claim in the workplace context, the Court must first determine whether any protected speech is alleged to have occurred.  *See Garcetti*, 547 U.S. at 418; *Connick v. Myers*, 461 U.S. 138, 143 (1983).  If the employee's speech cannot "be fairly characterized as constituting speech on a matter of public concern, it is unnecessary for us to scrutinize the reasons for [the employee's] discharge." *Connick*, 461 U.S. at 146; *see also Heffernan v. City of Paterson*, 578 U.S. 266, 271 (2016) (explaining the question in *Connick* as "whether the circulation of that document amounted to constitutionally protected speech" and "[i]f not, the Court need go no further").  The Supreme Court has explained that

> [w]hen employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment. Perhaps the government employer's

> dismissal of the worker may not be fair, but ordinary dismissals from government service which violate no fixed tenure or applicable statute or regulation are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable.

*Connick*, 461 U.S. at 146.  When, as here, "the employee is simply performing his or her job duties," and selected for a review of their performance based on their work assignments, there is "no warrant for" judicial scrutiny.  *Garcetti,* 547 U.S. at 423.  The First Amendment, in other words, does not empower employees to "'constitutionalize the employee grievance'" when investigated for job-related activity.  *Id.* at 420.

Here, Plaintiffs attempt to characterize their First Amendment claim as arising from "retaliation taken due to Plaintiffs' perceived political affiliation and not the performance of their official duties."  Pls.' Opp'n (ECF No. 35) at 28.  But they do not allege facts that could plausibly raise the inference that they were selected for inclusion on the lists in connection with the review process based on perceived political affiliation.  The requirement for inclusion on the list was work on January 6 matters, and Plaintiffs do not allege that those work assignments were based on political affiliation.  Indeed, the political affiliation of the thousands of FBI personnel on the lists invariably would have varied and would not have been limited to any specific political party.

The Executive Order, pursuant to which the review is being conducted, did not refer to political affiliation as the basis for the review but specifically identified January 6 prosecutions as potentially over-zealous and therefore warranting inquiry.  Executive Order 14,147; *see also Fischer v. United States*, 603 U.S. 480, 498 (2024) (rejecting the government's "all-encompassing interpretation" of a statutory provision on which January 6 prosecutions were based in favor of a narrower interpretation consistent with 'the context from which the statute arose'").  Courts "cannot substitute [their] own assessment for the Executive's predictive judgments on such matters," *see Trump v. Hawaii*, 585 U.S. 667, 708 (2018), nor are they charged with attempting to

divine subjective motives behind a facially neutral directive.  *Id*. at 702 (declining to "probe the sincerity of the stated justification" for a proclamation that was "facially neutral toward religion"). Plaintiffs do not contend that the Executive Order violates the First Amendment and, for this additional reason, have no basis to contend that a review process targets them based on political affiliation as opposed to their work-related participation in January 6 matters.

Plaintiffs have not alleged that they have experienced an adverse employment action as required to state a First Amendment retaliation claim.  *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016) (listing the three elements of a First Amendment retaliation claim).  They contend that the retaliatory act is their inclusion on the lists but that is not a sufficiently adverse action to state a claim given the absence of any allegations that Plaintiffs engaged in public speech prior to the creation of the lists.  *Flannery v. Eckenwiler*, Civ. A. No. 23-2804 (ABJ), 2024 WL 4345832, at *4 (D.D.C. Sep. 30, 2024) ("In this Circuit, a retaliatory action is materially 'adverse' where it is 'sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again.'" (quoting *Aref*, 833 F.3d at 258)).  Even if it was, Plaintiffs have not alleged that their perceived political affiliation is the "but for" cause for their inclusion on the lists.  *See Lewis v. District of Columbia*, Civ. A. No. 22-3369 (RDM), 2025 WL 661603, at *31 (D.D.C. Mar. 2, 2025).  To the contrary, they admit that they were included on the list because they worked on January 6 matters. Opp'n (ECF No. 35) at 18.

Ultimately, Plaintiffs claim that their speech has been chilled by virtue of the review process undertaken pursuant to the Executive Order, but they do not seek to enjoin the review process, nor have they pled facts that would permit this Court to do so.  *See Garcetti*, 547 U.S. at 423 (recognizing the absence of precedent to permit courts to "displace[]" such "managerial discretion by judicial supervision").  Consequently, Plaintiffs' abstract "chilling effect" claim fails

for this additional reason. *Id.* ("When, however, the employee is simply performing his or her job duties, there is no warrant for a similar degree of scrutiny. To hold otherwise would be to demand permanent judicial intervention in the conduct of governmental operations to a degree inconsistent with sound principles of federalism and the separation of powers."). For all of the above reasons, Plaintiffs' First Amendment claims fail.

### D.    Plaintiffs' Mandamus Claim Fails

As Defendants explained in their motion to dismiss, Plaintiffs' mandamus claim fails because they have not identified any mandatory duty owed to them by law. Mot. to Dismiss (ECF No. 28) at 38. As best can be surmised from their opposition, Plaintiffs seem to ask the Court to exercise its mandamus authority to require the Executive to enforce federal criminal law. Pls.' Opp'n (ECF No. 35) at 32. To the extent Plaintiffs allege that Defendants will either violate federal criminal law or enable others to do so, they have not pled any fact that a public official has done so. Moreover, public officers are entitled to the presumption that they will properly discharge their official duties. *Univ. of Cal. Student Ass'n v. Carter*, Civ. A. No. 25-0354 (RDM), 2025 WL 542586, at *6 (D.D.C. Feb. 17, 2025).

Finally, Plaintiffs contend "if no other remedy is adequate, mandamus is appropriate in this case" Pls.' Opp'n (ECF No. 35) at 34. But, as the D.C. Circuit has cautioned, "mandamus is drastic; it is available only in extraordinary situations; it is hardly ever granted; those invoking the court's mandamus jurisdiction must have a clear and indisputable right to relief; and even if the plaintiff overcomes all these hurdles, whether mandamus relief should issue is discretionary." *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (cleaned up). Here, Plaintiffs have not identified a "clear and compelling" duty owed to them and as a result are not entitled to a writ of mandamus.

## CONCLUSION

For these reasons and those set forth in Defendants' motion to dismiss, Defendants respectfully request that the Court grant Defendants' motion to dismiss.

Dated: March 24, 2025                Respectfully submitted,

                                     EDWARD R. MARTIN, JR., D.C. Bar #481866
                                     United States Attorney

                                     BRIAN P. HUDAK
                                     Chief, Civil Division


                                     By: _____/s/ *Dimitar P. Georgiev*_____
                                          DIMITAR P. GEORGIEV, D.C. BAR #1735756
                                          JEREMY S. SIMON, D.C. BAR #447956
                                          Assistant United States Attorneys
                                          601 D Street, NW
                                          Washington, DC 20530
                                          (202) 252-2500 (main)

                                     *Attorneys for the United States of America*