UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN AND JANE DOES 1 TO 9, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>DEPARTMENT OF JUSTICE, et al.,<br><br>    Defendants. | Civil Action Nos.<br>25-0325 (JMC), 25-0328 (JMC) |

**DEFENDANTS' RESPONSE
TO PLAINTIFFS' NOTICE OF FILING OF RELEVANT NEW INFORMATION**

Pursuant to the Court's May 16, 2025, Minute Order, Defendants respectfully submit this response to Plaintiffs' Notice of Filing of Relevant New Information ("Notice," ECF No. 51). Plaintiffs' Notice fails to support their requested relief for several reasons. First, Plaintiffs selectively and misleadingly quote former U.S. Attorney Edward Martin's statement from his last day as U.S. Attorney, which when reviewed in full context plainly expresses his commitment to following the law and all Department of Justice ("Department") policies. Second, to the extent Mr. Martin's comments—made on the last day of his previous employment and prior to the assumption of his new role—could be read to be in tension with the Department's previously submitted discovery responses, that interpretation does not reflect the Department's planned review process. And third, even accepting Plaintiffs' mischaracterizations of Mr. Martin's statements, Plaintiffs still lack standing, and their claims should be dismissed for failure to state a claim based on the grounds advanced in Defendants' motion to dismiss.

To begin, the Court should reject Plaintiffs' blatant mischaracterization of Mr. Martin's comments, which deliberately omits important context. Defendants reproduce the question and Mr. Martin's response in their entirety for the Court's review:

Question: On weaponization, you have been making a lot of public comments in media appearances saying that you intend to release information on people even who you don't charge. My reading of the Justice Department Manual is that it clearly states prosecutors shouldn't name people, especially people who they don't intend to charge. So, how do you square those two things? What you have been saying publicly and what the DOJ Manual says.

Mr. Martin: Well, I'd have to look at what the provision you are referring to to see. We will want to square ourselves with doing the things correctly. But I will say that the prosecutor's role and at this moment in our history is to make clear what the truth is and to get that out. And when [Senator] Chuck Grassley is asking for more transparency from the government, we need to listen. When whistleblowers are talking about what is going on, and it can't be that the system is stifling the truth from coming out because of some procedure. If it is in the Manual, if there is a law, look, I am the guy that stands here and tells you the January 6 defendants, every one of them wants all their documents back. They want us to release all the video. And we said that's not how it works. We have to be thoughtful and serious about how the system works. If you want all that information, there is a path. If you are suing about it, there is a way. But we have to be serious about it, just like we have to be serious about getting to the truth. There are some really bad actors, some people who did some really bad things to the American people. And if they can be charged, we will charge them. But if they can't be charged, we will name them. And we will name them and in a culture that respects shame, they should be people that are shamed and that's a fact. That's the way things work. And so, that's how I believe the job operates.

Reviewing the exchange in full context, several things become clear. Far from announcing an intent to imminently release individual identities, Mr. Martin explicitly states that any review will be conducted consistent with the law and Department policy. Mr. Martin references both the "law" and Departmental policies, expresses a commitment to looking at the relevant provisions, and notes that "we will want to square ourselves with doing the things correctly," and further, that any review will "be thoughtful and serious about how the system works." Plaintiffs misleadingly omitted entirely those portions of Mr. Martin's statement. Notice (ECF No. 51) at 2. Contrary to Plaintiffs' mischaracterization, Mr. Martin's statement clearly describes his intent to comply with Department policies and the law.

Mr. Martin's statement also does not support Plaintiffs' false assertion that "DOJ leadership is in regular contact with January 6th defendants." *Id*. at 3. Instead, Mr. Martin

indicated that, while certain January 6th defendants have called for the release of "their documents" and "all the video," the Department has declined to release that information because "that's not how it works"—that is, because releasing the requested material would fail to comply with either the law or Department policies.  And Plaintiffs cite nothing to support their bald allegation that "January 6th defendants [] are imploring [the Department] to release . . . the survey results at issue in this litigation."  Indeed, Mr. Martin did not reference the lists at issue in this litigation, otherwise reference this litigation, or even reference the identities of FBI personnel.

Even if Mr. Martain's statements somehow could be read as Plaintiffs' wish, the Department previously outlined the review process it plans to undertake, and its discovery responses remain accurate.  To the extent there is any tension between Plaintiffs' interpretation of Mr. Martin's statements and that process, that interpretation does not reflect the Department's planned review process.  As the Department previously explained, the planned review will consist of an "evaluation of documents" and "communications" "concerning events on January 6, 2021," as well as "interviews with certain FBI personnel … as appropriate."  ECF No. 45-1 at 4.  The Department also explained that "[d]epending on the outcome of the process," the Department may take "appropriate disciplinary action."  *Id.*  However, the "Department has not commenced this process."  *Id.*  Nor has the Department "shared the lists, or any data collected pursuant to the survey of FBI personnel, with any non-DOJ person."  *Id.* at 3.[1]

---

[1]   To the extent Mr. Martin's comments could be interpreted to reflect the possibility that the Department may, at some future time, release the names of certain individuals if they are found to have engaged in egregious misconduct, such a release would not be unusual, depending on the specific circumstances.  On May 30, 2018, for example, the Department released its *Report of Investigation into the Conduct of Former United States Attorney R. Booth Goodwin II and Former Assistant U.S. Attorney Steven Ruby* in *United States v. Blankenship*, Cr. No. 5:14-00244 (S.D.W. Va.), available at https://www.justice.gov/opr/page/file/1207181/dl?inline (last visited May 21, 2025).  That Report details the Department's findings after investigating alleged prosecutorial

Finally, far from supporting their requested relief, Plaintiffs' Notice reinforces that there is no case or controversy ripe for the Court's adjudication—and that, even if Plaintiffs had standing, their claims fail on several grounds. Plaintiffs' Notice cannot change the fact that there has been no Privacy Act violation, the internal review process is at an early stage, the Privacy Act does not itself provide for injunctive relief, and there is no final agency action reviewable under the Administrative Procedure Act that could support injunctive relief under that statute. Rather, Plaintiffs ask the Court for an advisory opinion regarding some speculative future release. But "[t]he federal courts established pursuant to Article III of the Constitution do not render advisory opinions." *Laird v. Tatum*, 408 U.S. 1, 14 (1972). And, in any event, if any name is disclosed in the future, the Court can then evaluate on that record the legality of that disclosure. In the FOIA context, for example, the Court would do so by applying a "case-by-case balancing approach that considers the rank of the public official involved and the seriousness of the misconduct alleged." *Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, 746 F.3d 1082, 1094 (D.C. Cir. 2014) (quotation marks omitted).

Even if this case were ripe, the Court should dismiss Plaintiffs' claims on the numerous other grounds set forth in Defendants' motion to dismiss. Plaintiffs cannot obtain the revised preliminary injunctive relief they now seek. *See* Notice (ECF No. 51) at 3-4). Among other things, Executive actions that are facially valid—that is, within the lawful authority of the executive—are

---

misconduct by a line federal prosecutor, and names "Assistant U.S. Attorney (AUSA) Steven Ruby" who "led the government's criminal investigation and litigation team." *Id*. at 1. As a further example, on December 20, 2013, the Department released its *Report of Investigation of Allegations of Professional Misconduct Against Former Assistant United States Attorneys Salvador Perricone and Jan Mann, United States Attorney's Office for the Eastern District of Louisiana*, available at https://www.justice.gov/opr/file/884691/dl?inline (last visited May 21, 2015). That Report named numerous individuals, including Assistant United States Attorneys, federal judges, and state officials.

entitled to a presumption of regularity.  It is undisputed that the Department's review is facially valid because, during the April 30, 2025, hearing, Plaintiffs' counsel conceded that "[i]f the [Department] wants to spend the next three years looking over January 6th cases and trying to find weaponization, have at it.  They can do that.  We have no issues with that.  Indeed, if they find corruption or some criminal behavior, of course they should act on that."  Apr. 30, 2025, Hr'g Trans. at 12.

"The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."  *United States v. Chemical Found.*, 272 U.S. 1, 14 (1926).  Because "judicial inquiry into 'executive motivation' represents 'a substantial intrusion' into the workings of another branch of Government," it "should normally be avoided."  *Dep't of Com. v. New York*, 588 U.S. 752, 781 (2019) (quoting *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268, n.18 (1977)); *see also id.* at 787 (Thomas, J., concurring in part) ("[W]e have often stated that courts reviewing agency action owe the Executive a 'presumption of regularity.'" (citation omitted)).  That presumption imposes a high bar to review that Plaintiffs cannot surmount because Plaintiffs' Notice does not constitute the "strong showing of bad faith or improper behavior" required to overcome the presumption.  *FDA v. Wages & White Lion Invs., L.L.C.*, 145 S. Ct. 898, 923 (2025) (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)).[2]

---

[2]  Likewise, the language in the email from then-Acting Deputy Attorney General Bove referencing "partisan intent" that the Court discussed at length with counsel during the April 30, 2025 hearing, on its face and in the context of the email as a whole, is a reference to whether FBI employees allowed partisan views to improperly affect the discharge of their official duties, not to an individual employee's personal political beliefs, as Plaintiffs wrongly contend.  Regardless, it is well-settled that, when an allegation is consistent with a lawful purpose as here, the allegation fails to cross "'the line between possibility and plausibility.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007).  Failing to meet even *Iqbal*'s

Ultimately, Plaintiffs resort to misleading mischaracterizations to request relief that would interfere with the Department's internal review, which Plaintiffs themselves concede the Department has the authority to pursue. Plaintiffs have offered no argument why the Supreme Court's decision in *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972), does not foreclose this lawsuit even were the Court to find that Plaintiffs had standing to seek prospective relief. And Plaintiffs' Notice is immaterial to Defendants' additional arguments for dismissal based on Rule 12(b)(6), which are evaluated on the pleadings.

Dated: May 21, 2025

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:     */s/ Dimitar P. Georgiev*
DIMITAR P. GEORGIEV, D.C. BAR #1735756
JEREMY S. SIMON, D.C. BAR #447956
Assistant United States Attorneys
601 D Street, NW
Washington, DC 20530
(202) 252-2500 (main)

*Attorneys for the United States of America*

---

more lenient plausibility pleading standard, Plaintiffs' allegations necessarily fall short of the "clear evidence" required to rebut the presumption of regularity. *See Paracha v. Trump*, Civ. A. No. 04-2022 (PLF), 2019 WL 5296839, at *2 (D.D.C. Oct. 18, 2019) ("The presumption can only be rebutted by clear evidence of irregularity.").