**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN AND JANE DOES 1-9, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF JUSTICE, <br><br> Defendant. | Civil Action No. 25-0325 (JMC) |
| FEDERAL BUREAU OF INVESTIGATION AGENTS ASSOCIATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF JUSTICE, et al., <br><br> Defendants. | Civil Action No. 25-0328 (JMC) |

**REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' NOTICE OF FILING OF RELEVANT NEW INFORMATION**

Plaintiffs respectfully submit this Reply to Defendants' Response to Plaintiffs' Notice of Filing of Relevant New Information, ECF Nos. 51 and 52. To the extent this submission requires leave of the Court, Plaintiffs respectfully request the same in order to respond to legal arguments raised in Defendants' Response and to provide further factual context that may be relevant here.

On February 2, 2025, DOJ initiated a systematic collection of names of FBI personnel who participated in January 6 cases. Plaintiffs have maintained since the outset of this case that the collection of names was in preparation for a mass firing, a public release, conveyance to the White House, or a combination of each of these actions. Defendants have maintained that they were

collected as part of a "process" pursuant to the Weaponization Executive Order. It is now clear from discovery that DOJ's stated justification was completely false and pretextual. In fact, there was no process in place. And in fact, there still is no process in place. *See* ECF No. 45-1 at 4 ("However, the Department has not commenced this process[.]").[1] Moreover, by the Government's own admission, the planned process has *absolutely nothing* to do with the list of names it created in February. *Id.* (discussing an "evaluation of documents," "communications," and "relevant materials such as documents relating to arrests, searches, and other operational plans," followed by "interviews with certain FBI personnel identified during the review, as appropriate"). Even when cobbling together an after-the-fact justification to comply with the Court's discovery order, the Government still could not summon any legitimate basis for its actions in February.

What the Government *has* done, however, is hold a press conference to announce precisely what DOJ's intent is with regards to the Plaintiffs, i.e., those who investigated January 6. *See* ECF 51. In its response to Plaintiffs' filing, the Government argues the statements of Ed Martin, the former U.S. Attorney for the District of Columbia and now a senior official in the Department of Justice, on May 13 "expresse[d] a commitment" to following the law, and that "any review will be conducted consistent with the law and Department policy." ECF No. 52 at 2. The Government bemoaned Plaintiffs' "mischaracterization" of Mr. Martin's comments. To the extent there may be any ambiguity as to whether Mr. Martin intends to follow the law or Department procedure, this issue is put to bed by Mr. Martin's numerous other interviews on this topic, which occurred after the May 13 press conference and its associated blowback.

---

[1] Contrast this statement with Mr. Bove's statements in his February 5, 2025 email to all FBI personnel in an attempt to justify his demand for their names, referencing "*the process* initiated by January 31, 2025 memo. . ..." ECF No. 25-6 at 3 (emphasis added).

For example, at some point after his May 13 remarks, Mr. Martin was interviewed by Jesse Kelly on the political talk show The First TV, a digital-first television network. The interview was published on various platforms on May 15, 2025, including The First TV's X account, @TheFirstonTV, which has 94,600 followers.  Mr. Martin took the interview from what appears to be his DOJ office, with official portraits of the President and Vice President visible in the background.  During the interview, Mr. Martin addressed his May 13 comments:

> One [part] is, to name and shame. And I did a press conference **and they said, you can't do that, and I said, watch me**.  Name and shame.[2]

(Emphasis added.)

Mr. Martin prefaced these comments with his frustration at the limits placed on him by federal courts:

> We're running against the clock. The clock is used against us. The Article III courts, are, they slow us down. And I can tell you, as a prosecutor, you're looking at this and you're saying, this case is going to take 18 months, and you're thinking, eighteen months from now, how are we going to be able to win the battle for the future of the country?[3]

In another interview with conservative podcaster Annie Frey on May 15, also taken by Mr. Martin in his official capacity from his DOJ office, he again referenced January 6 and the concept of "name" and "shame."  He asserted that the prior administration "us[ed] the law against the citizens . . . on January 6" and referenced other targets of the Weaponization Working Group, as itemized in the Restoring Integrity Memo. On these topics, including the specifically referenced January 6 investigators, he stated:

> When there is something that does not make sense, we have an obligation to name it, and if it's bad we should shame it, and if it's illegal we should prosecute it.  But we shouldn't shy away from any of those two things, and I think that's what the

---

[2] Available at https://x.com/TheFirstonTV/status/1923182864130093201 (last visited May 22, 2025).
[3] *Id.*

President has taught us, that's what he asked me to do in this new role that I have and we're gonna do it and we're not gonna be afraid of it, and **let the chips fall where they may**."[4]

(Emphasis added.)

Mr. Martin's comments during his May 15, 2025 interviews lead to several conclusions. First, he views his perceived mandate to "name" and "shame" as a legitimate alternative to following basic standards of federal criminal procedure. Second, he has indicated he is unconcerned about the consequences if he improperly or unlawfully "names" and "shames" government employees. ("Watch me" and "let the chips fall where they may.") Third, he believes that the trigger to "name it and shame it" is when something does not personally "make sense" to him. This is particularly troubling when considering Mr. Martin's frequently publicized views about the events of January 6, 2021, which includes his own representation of several criminal defendants and his dismissal of one of those cases as United States Attorney.[5]

For example, on or about May 14, 2025, Mr. Martin sat for a one hour, twenty minute broad-ranging interview with television personality Tucker Carlson.[6] On the January 6 riots, he lamented that "[m]illions of Americans are falling victim to the hoaxes, one after the other, and if you fall victim to the January 6th hoax, that it was an insurrection, armed, and this close to the end, then you might . . . rant and rave and things like that."[7] To say the least, this indicates a vast departure from the Department of Justice's previous position that the January 6 insurrection at the United States Capitol was not a hoax, and in fact involved the commission of serious, violent

---

[4] Available at https://www.youtube.com/shorts/QjmQ5TPbSvA (last visited May 22, 2025).
[5] *See* Andrew Perez, *Trump's New Federal Attorney Withdrew Jan. 6 Charge Against His Own Client*, Rolling Stone, Feb. 5, 2025 *and United States v. Padilla*, 1:21-cr-214-JDB (D.D.C.), Unopposed Motion to Dismiss Case by USA, ECF No. 125.
[6] Available at https://www.youtube.com/watch?v=LotMJAdWyOs (last visited May 22, 2025).
[7] *Id*. beginning at approximately 00:09:00.

crimes. Far from enjoying the presumption of regularity, today's Department of Justice is anything but regular. *Al-Hela v. Biden*, 66 F.4th 217, 237 (D.C. Cir. 2023) ("[The presumption of regularity] can be rebutted if a petitioner demonstrates internal inconsistencies or inconsistencies with other evidence.").

After discussing his suspicions about the FBI's involvement in January 6, including in the FBI's investigation into the pipe bombs found near political party headquarters that day, Mr. Martin again addressed his frustration with Article III courts, and emphasized why publicizing private information is preferable to going through established procedures:

> **Mr. Martin**:   And by the way, one of the reasons why I say information is so key, you can't, we can't win the Article III battle fast enough. We can fight it, and we can eventually win lots of them, you can't win it fast enough to get the progress we need, in terms of our, so you've got to be doing the information from . . .
>
> **Mr. Carlson**:  For people watching, what's the Article III battle?
>
> **Mr. Martin**:   Yea, the Article III means like, the federal courts, we're in federal courts, the President says you can't let people come into the country, and then the courts say nationwide injunction, then you know you're not allowed to do that, and you're constantly in court.  You know, the U.S. Attorney's Office for D.C. has all of the cases of when the government is sued, and the President is sued, they all come into our office on the civil side, and so you see all that stuff coming in.  During the Biden administration, the conservatives were suing in Texas, it was friendlier judges, now it's in D.C.  So you're in the courts, fighting to get the truth out, fighting to make these things, prosecutions and all, but they take a longer time than just getting the word out, right?  Getting the information out.  I just, I feel like it's a different moment in history, and that's how I was as U.S. Attorney, that's why you saw, people saw so much outfacing action, because I wasn't just looking at courts, I was looking at making an argument for the public so they could see the policies.[8]

In Mr. Martin's own words, the Department of Justice is not operating in "regular" times, but in a "different moment in history."  He later discussed his intent to publicly release the names of government officials who have not been arrested for a crime, stating:

---

[8] *Id*. beginning at approximately 00:18:45.

> **Mr. Martin**:   Again, the question is, are we going to get all of it out?  Are we going to name it, and then hold some people accountable?  People say, are you going to walk people out in cuffs?  Right now, I'd be happy to have just people know their names, right? I'd like the cuffs later, if they've committed a crime, but right now people don't even know their names, and the question is whether we can even get through the information storm that we're in to get that out.[9]

> No doubt, this lawsuit is part of that "information storm."  Mr. Carlson and Mr. Martin

then went on to the lament the delayed release of classified documents in various high-profile

events.  Mr. Carlson inquired whether others in DOJ shared Mr. Martin's valuing of publicizing

information over following processes:

> **Mr. Carlson**: So how many people, in your experience so far at DOJ, have your mindset?

> **Mr. Martin**:   Well, most of the ones I work with.  I come out of the, I mostly work with DAG's office, you know that's Blanche, and Emil Bove, some of those guys there. Those guys, when they turned the lights on, on inauguration day, there was only a handful of us there.  And those folks are in the mindset we're talking about.

> **Mr. Carlson**:  What do career DOJ people think of you?

> **Mr. Martin**:   Oh, no, no, they're mostly scared.  I mean, they're mostly scared and nervous.[10]

On whether there will be "accountability" for various events, including related to the

investigation of January 6th, Mr. Martin again complained about how long criminal prosecutions

took, and then asserted that DOJ's appeasement of January 6 rioters will extend beyond President

Trump's mass pardoning of their crimes:

> **Mr. Martin**: The truth will be known, people will be accountable. And as importantly, by the way, people that have been damaged will be healed.  They will be given either pardons, like the President has done for a lot of people, **or other things**. I think, you know, we have a set of people that have been targeted by the government that deserve to be helped. And that's going to be part of this, guaranteed . . . and by the way, that did make them mad, I will say this, people ask me in all my interviews, the Senate, they said, are you for reparations [for January 6 defendants]? I said hey, that's a stupid term that was used about, but, I am for, when somebody

---

[9] *Id*. beginning at approximately 01:02:10.
[10] *Id*. beginning at approximately 01:03:50.

gets wronged and destroyed by their government, **that they be taken care of**, that they try to make them whole in so far as they can, that's only fair.[11]

(Emphasis added.)

Plaintiffs have alleged from the beginning that January 6 rioters and their sympathizers have been demanding the release of the names of their FBI investigators. *See, e.g.*, First Amended Complaint, ECF No. 24, ¶¶ 48, 55, 56. In fact, Mr. Martin has previously responded to the posts of certain accounts listed in Plaintiffs' First Amended Complaint by saying "Declassify Jan 6!"[12] Their quest for the list that DOJ created in February remains unabated as of the date of this filing. Collecting the full universe of X posts which make these types of demands is simply impracticable, but one informative example is from May 18, 2025, when the X account of "Pamela Hensley," using X handle @PamelaHensley22, posted the following:



This account is "followed" by Ed Martin. The post has been viewed more than 60,000 times and garnered over 200 comments, many of which implore DOJ to release the names.[13] "Likes" on X are no longer publicly traceable since Elon Musk's takeover of the platform, but Mr.

---

[11] *Id.* beginning at approximately 01:14:03.

[12] Available at https://x.com/EagleEdMartin/status/1864295559218991454 (last visited May 22, 2025).

[13] Available at https://x.com/PamelaHensley22/status/1924124399851982928 (last visited May 22, 2025).

Martin's recent comments about alternatives to processes governed by Article III courts for things that don't "make sense" to him leaves one to wonder what his response to this post might be.[14]

In its response, the Government urges this Court to ignore now-Associate Deputy Attorney General Martin's repeated, publicly stated intention to "name" people, including DOJ employees who were involved January 6 investigations, who he believes should be "shamed."  In the words of George Orwell, the Government asks this Court to "reject the evidence of your ears and eyes," even though doing so places thousands of FBI personnel in imminent jeopardy, as Plaintiffs have already proven.  No matter how Defendants attempt to square the circle of Mr. Martin's words, he has made clear that he has a present intent to publicly shame FBI agents who are not charged with any transgression.  Consequently, this has nothing to do with ensuring proper procedure going forward--it is simply about obtaining revenge for Mr. Martin's former clients.

If implemented, Mr. Martin's plan would immediately violate multiple provisions of the Justice Manual ("JM"), DOJ's comprehensive policy manual. *See* Justice Manual §§ 1-7.100, 1-7.610, 9-27.760 (collectively, directing prosecutors to protect the identities and privacy interests of uncharged parties).  It should go without saying that Mr. Martin's plan also strikes at basic notions of fairness and due process.  The JM provisions are designed not only to protect personnel who are uniquely situated to incur harm and danger by the nature of their work, but also to protect the mission of the agency, which would be severely compromised should future personnel be discouraged from serving for fear of what would happen to them during or after their service if their investigative actions displeased someone in power.  DOJ's clearly stated intent to violate its

---

[14] To the extent Defendants argue that any new information included here is irrelevant to their Rule 12(b)(6) motion as the motion is "decided on the pleadings," ECF No. 52 at 6, this is a form-over-substance argument.  "The court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), to allow Plaintiffs to amend their complaint, but this is unnecessary where the Notice, ECF No. 51, and its related filings have now made this information part of the record.

own procedures easily overcomes the presumption of regularity. *Wilson v. United States*, 369 F.2d 198, 200 (D.C. Cir. 1966)  (presumption of regularity is overcome when acts are shown to be "in violation of prescribed procedures").

Taken as a whole, Mr. Martin's comments demonstrate his belief that the traditional investigative and prosecutorial processes are too slow and, perhaps, too fair, to achieve his desired result: the public punishment of FBI personnel who investigated January 6 crimes.  He will therefore pursue an unlawful alternative, that is, the naming and shaming of Plaintiffs and all similarly situated FBI personnel.

In its response, the Government attempts to defend the indefensible.  Defendants' standing arguments insists that Mr. Martin be allowed to publicly shame FBI agents first, and that FBI personnel should seek recourse later.  As noted during oral arguments on Plaintiffs' motion, any after-the-fact recourse will do nothing to protect FBI personnel or their families from the promised wrath of January 6 convicts as demonstrated in Plaintiffs' previous filings, or from any other global malign actors.

Defendants reliance on *Laird v. Tatum*, 408 U.S. 1 (1972), similarly misses the mark. There, a group of conscientious objectors challenged the implementation of the Army's data-gathering system intended to further one of its domestic missions.  But unlike here, the Plaintiffs in that case did not allege that they themselves were chilled or injured.  Instead, they argued that they "'represent millions of Americans not nearly as forward (and) courageous' as themselves," whom they argued may be chilled by the Army's intelligence collection. *Laird*, 408 at 14, n.7. The Court observed, correctly, that "if respondents themselves are not chilled, but seek only to represent those 'millions' whom they believe are so chilled, respondents clearly lack that 'personal stake in the outcome of the controversy' essential to standing" *Id*. (quoting *Baker v. Carr*, 369

9

U.S. 186 (1972). Here, Plaintiffs themselves—having been literally listed by name on a target list—will suffer irreparable, unthinkable injuries (not to mention the threats to their families) if DOJ is not enjoined by this Court from putting them in harm's way. *Cf. Laird* at 13 (noting the "established principle that to entitle a private individual to invoke the judicial power . . . he must show that he has sustained, *or is immediately in danger of sustaining*, a direct injury as the result of that action") (emphasis added and internal quotations omitted).

Finally, Defendant's citations to DOJ reports of previous instances in which the Department released names, ECF No. 52 at 3, n.1, are inapposite because the identity of those individuals were already public, and re-released following a legitimate, policy-guided review process in accordance with DOJ procedures. Moreover, one of the two referenced examples includes *redactions* of the names of individuals who are almost certainly in the same category as Plaintiffs, that is, non-public facing third-parties with no finding of misconduct.

If the list is destroyed, this case is over. DOJ can spend the next 3.5 years re-reading through January 6 FBI reports, re-listening to interviews, re-ordering trial transcripts, and re-interviewing witnesses whose testimony has been dissected a hundred times over, in an attempt to find some injustice that the well-represented January 6 defendants could not themselves find. But DOJ should not be allowed to maintain this list of names—an incorrect one at that—over the heads of Plaintiffs like, a sword of Damocles, when that list serves absolutely no legitimate purpose and DOJ has long ago lost the "presumption of regularity." At the very least, this Court should prevent Defendants from their overtly stated intent to "name" and "shame" Plaintiffs by enjoining the release of the list.

Date: May 23, 2025

Respectfully submitted,

LAW OFFICE OF MARK S. ZAID, P.C.

By:  _____*Mark S. Zaid*_____
    MARK S. ZAID, D.C. Bar #440532
    BRADLEY P. MOSS, D.C. Bar #975905
    1250 Connecticut Avenue, NW, Suite 700
    Washington, D.C. 20036
    (202) 498-0011
    Mark@MarkZaid.com
    Brad@MarkZaid.com
    *Attorneys for John Does 1,3-4,*
    *Jane Does 1-3 (25-328)*

CENTER FOR EMPLOYMENT JUSTICE

By:  _____*Pamela M. Keith*_____
    PAMELA M. KEITH, D.C. Bar #448421
    SCOTT M. LEMPERT, D.C. Bar #1045184
    650 Massachusetts Ave., NW, Suite 600
    Washington, DC 20001
    (202) 800-0292
    pamkeith@centerforemploymentjustice.com
    Slempert@centerforemploymentjustice.com
    *Attorneys for John and Janes Does 1-9, et al.*
    *(25-325)*

DEMOCRACY DEFENDERS FUND

By:  _____*Norman L. Eisen*_____
    Norman L. Eisen D.C. Bar # 435051
    Pooja Chaudhuri, D.C. Bar # 888314523
    Tianna Mays, D.C. Bar # 21597
    600 Pennsylvania Avenue, SE, #15180
    Washington, D.C. 20003
    (202) 594-9958
    norman@statedemocracydefenders.org
    pooja@statedemocracydefenders.org
    tianna@statedemocracydefenders.org
    *Attorneys for John Does 1,3-4,*
    *Jane Does 1-3 (25-328)*

KOSKOFF, KOSKOFF & BIEDER, PC

By:  _____*Margaret Donovan*_____
    Christopher Mattei, Bar # 27500 (*pro hac vice*)
    Margaret Donovan, D.C. Bar # CT0026
    350 Fairfield Ave., Suite 501
    Bridgeport, CT 06604
    (203) 336-4421
    cmattei@koskoff.com
    mdonovan@koskoff.com
    *Attorneys for Federal Bureau of Investigation*
    *Agents Association (25-328)*

*Attorneys for Plaintiffs*